# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE CORPORATION FOR PUBLIC BROADCASTING,<br> 401 Ninth St., NW<br> Washington, DC 20004<br><br> Plaintiff,<br><br>v.<br><br>THE FEDERAL EMERGENCY MANAGEMENT AGENCY,<br> 500 C Street, SW<br> Washington, DC 20472<br><br>and<br><br>CAMERON HAMILTON, in his Official Capacity as Senior Official Performing the Duties of the FEMA Administrator,<br> 500 C Street, SW<br> Washington, DC 20472<br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF DARYL MINTZ

I, Daryl Mintz, do hereby state under oath as follows:

1. I am the Chief Financial Officer and Treasurer of the Corporation for Public Broadcasting ("CPB"). The CPB is a Congressionally-created nonprofit corporation established pursuant to the Public Broadcasting Act of 1967, 47 U.S.C. §396 (the "Act"). CPB is the steward of the federal government's investment in public broadcasting and the largest single source of

1

funding for public radio, television, and related online and mobile services through federal grants and other funds appropriated by Congress.

2.  Public broadcasting stations across the country reach 99% of the American population and are the only local media in many areas of the country, particularly rural communities. The Act requires more than 70% of CPB's annual federal appropriation goes directly to more than 1,500 public media stations across the country, and not more than 5% is allocated to CPB's administrative costs. CPB's mission is to ensure universal access to non-commercial, high-quality content and telecommunications services. In addition to distributing of CPB's appropriated funds, CPB also serves, in effect, as the administrator for two sets of federal grants one of which was issued by the Department of Homeland Security and the Federal Emergency Management Agency ("FEMA") as part of the critical national Emergency Alert System. Pursuant to the Act, CPB cannot use the appropriated money for purposes outside of the required spending categories.

3.  As CPB's Chief Financial Officer, I am responsible for CPB's financial procedures as well as the direction of all administrative, human resources, and treasury functions within the organization, including, but not limited to, ensuring the proper review and submission of expenses to be reimbursed by federal agencies under existing grants.

**Public Media's Role In The National Emergency Alert System**

4.  The Emergency Alert System ("EAS") is a national public warning system used by federal, state, local, and tribal authorities to deliver important and timely emergency information, such as alerts about flash floods, blizzards, tornados, hurricanes, and other national and regional emergencies that affect the lives and property of citizens across the country. As the Department of Homeland Security ("DHS") recognized in its National Emergency Communications Plan issued

in September 2019 (www.cisa.gov/sites/default/files/publications/19_0924_CISA_ECD-NECP-2019_1.pdf):

> Emergency communications are critical to the Nation's ability to respond to devastating natural disasters, terrorist threats, and other emergency events, incidents, and routine activities affecting our communities every day. When faced with these situations, the public safety community has a collective responsibility to share information. Achieving this goal requires communications capabilities that are resilient and secure today, yet agile enough to integrate advanced and emerging technologies tomorrow.

Id. at p.1.

5. Public television and radio stations play an integral and essential role in our nation's emergency alert system. Public media's infrastructure provides the broadest nationwide communications platform in the country, and its national-local organization allows public media entities to distribute federal, state, and regional emergency alerts and provide encrypted, geo-targeted alerts to local communities in times of public emergencies.

6. By way of limited example, during the January 2025 wildfires, Southern California public media stations provided timely news and information, on air and online, to more than 18 million people. From January 7-13, 2025, local alerting authorities issued 111 geotargeted alerts, including fire weather warnings and fire outbreak alerts, evacuation warnings and orders, and curfew notices. The stations also offered real-time guides and resources for those threatened by the fires, partnering to send out daily newsletters with the latest updates from all their organizations.

7. Some public stations serve as their state's primary Emergency Alert Service hub. Between January 1, 2023, and January 1, 2024, approximately 8,500 Wireless Emergency Alerts were issued by over 1,600 federal, state, local, tribal and territorial authorities and transmitted over public media throughout the country.

8.      The U.S. government operates and maintains a national EAS, known as the Integrated Public Alert and Warning Systems ("IPAWS"), which serves a gateway between official entities that need to communicate an emergency alert and the national communications networks capable of delivering those alters to relevant public audiences. Authorized federal, state, local, territorial, and tribal entities can use IPAWS to send national and geographically targeted alerts. IPAWS was created by Executive order 13407, signed by President George W. Bush on June 26, 2006. It is managed by FEMA. On its website, FEMA describes IPAWS as "FEMA's national system for local alerting that provides authenticated emergency and life-saving information to the public through mobile phones using Wireless Emergency Alerts, to radio and television via the Emergency Alert System, and on the National Oceanic and Atmospheric Administration's Weather Radio."(Integrated Public Alert & Warning System, FEMA.gov (2024), https://www.fema.gov/emergency-managers/practitioners/integrated-public-alert-warning-system#:~:text=IPAWS%20is%20FEMA's%20national%20system,EAS%20and%20NOAA%20Weather%20Radio).

### DHS' Next Generation Warning System Grant For Fiscal Year 2022

9.      On September 22, 2022, DHS in conjunction with FEMA issued a Notice of Funding Opportunity ("NOFO") for the Next Generation Warning System ("NGWS") grant being issued as part of the government's efforts to modernize the national EAS. The NGWS program was authorized pursuant to the Department of Homeland Security Appropriations Act, 2022, Title III, Federal Emergency Management Agency, Federal Assistance, Pub. L. No. 117-103 and funds appropriated by Congress pursuant to the Department of Homeland Security Appropriations Act, 2022 (Pub. L. No 117-103). A copy of the NOFO is attached as Exhibit A.

10.     In the NOFO, DHS declared the critical importance of this program:

> Having in place an effective system for warning and informing the American public of impending natural and man-made disasters is an <u>essential part of America's emergency preparedness</u>....The pace of innovation in communications technology is faster than ever before <u>making it imperative that the providers of the nation's alert and warning information - - public broadcasting entities - - have the capacity to acquire and implement emerging technologies</u> that advance the Nation's public alert and warning system. The Next Generation Warning System Grant Program (NGWSGP) makes Federal funds available to enable the adoption of emerging digital broadcast technology and standards and furthers the 2022-2024 DHS Strategic Plan Goal 5 (Strengthen Preparedness and Resilience).

Ex. A at §10(a) (emphasis added).

11. The stated objective of the NGWS Grant is to:

> To have in place a public alert and warning system that provides <u>timely</u> and <u>effective warnings using the latest broadcast technology</u> standards, especially including areas that are traditionally underserved by broadcast providers. Specifically, this NGWSGP grant seeks to:
>
> - Enhance capacity of local broadcast stations to receive, broadcast, and redistribute emergency alert messages from the Integrated Public Alert & Warning System using IPAWS Specification for Common Alerting Protocol (CAP);
>
> - Implement upgrades to the NEXTGEN TV ATSC3 broadcast standard;
>
> - Enhance technology infrastructure to ensure local public broadcast stations can launch new, enhanced broadcast services, that improve and expand the distribution of public alerts and warnings; and
>
> - Expand the delivery and distribution of emergency alert messages from IPAWS to fill gaps in alert and warning delivery to people in underserved areas.

*Id.* at §10(b) (emphasis added).

12. DHS recognized that "[u]pgrading to this advanced technology requires investments in technology, training, and support equipment that may create burdens for broadcasters, especially small stations in rural and underdeveloped areas." *Id.* at §10(a).

13. DHS further made clear that: "Congress intended that FEMA work with the Corporation for Public Broadcasting (CPB) to implement the NGWSP for public broadcast entities. Therefore, CPB was the only entity eligible to submit an application to DHS/FEMA for funding under the Next Generation Warning System Grant Program in FY2022." *Id.* at §C.1.

14. Under the NGWS Grant, FEMA identified priority areas of the country that it wanted addressed immediately and CPB was directed to work with FEMA to focus on those priority areas in issuing sub-awards to public television and radio stations to procure equipment necessary to advance the Nation's public alert and warning system. *Id.* at §§10(a) and 10(c).

15. The NGWS Grant to CPB was made on a cost reimbursement basis, meaning that CPB is accruing liabilities for the costs of the CPB staff dedicated to the NGWS program and for costs incurred or expenditures made by the sub-awardees. So, pursuant to the terms of the NGWS Grant as well as the Uniform Guidance, 2 C.F.R. §200, CPB expends funds by hiring staff to administer the NGWS Grant and make sub-awards to public television and radio stations across the country, which will, in turn, purchase the necessary equipment to enhance their EAS. After purchasing the equipment, those sub-awardees then submit reimbursement requests to CPB. To process those reimbursement requests, CPB accesses FEMA's Payment and Reporting System ("PARS"). Because CPB receives appropriated funds, it cannot use funds appropriated by Congress for one purpose to pay obligations for a different purpose. Put simply, only NGWS Grant funds can be used to pay NGWS Grant obligations.

### CPB's Reliance On FEMA And It Adhering To The Uniform Guidance, 2 C.F.R. § 200

16. In addition to receiving the NGWS Grant for fiscal year 2022, CPB was also awarded NGWS grants for fiscal years 2023 and 2024, which are not yet at issue in this lawsuit.

17. In receiving the NGWS Grant, CPB relied on FEMA's representations and stated desire to prioritize sub-grant awards to certain states and counties identified by FEMA and further relied that the agency would adhere to the Uniform Guidance, set forth in 2 C.F.R. §200. Specifically, since the award of the NGWS Grant, CPB diligently worked with FEMA and currently has issued, in reliance on and at the direction of FEMA, forty-two (42) executed subawards to public media stations in over multiple states across the country, including Alaska, California, Hawaii, Indiana, Kansas, Michigan, Mississippi, Missouri, New York, Pennsylvania, and South Dakota, amounting to approximately $18.8 million in fully committed funds. A representative sample of these contracts are attached hereto as Exhibit B. The form of each contract for the 42 awardees is substantially the same, with only the name of the awardee and the amount varying from station to station.

18. Under these executed sub-awards, the public media stations are expressly "not required to match this Subaward with any amount of Subrecipient's funds." The sub-award agreements, include reimbursing each sub-awardee for the direct costs it incurs to purchase the required equipment up to the amount of the sub-award. Further, the sub-award agreements explicitly incorporated the Uniform Guidance, (Title 2, §200.339), into each contract. *See* Ex. B at §§1, 3-4, 5 and accompanying Terms & Conditions.

19. CPB's contracts with the sub-awardees do not include a termination for convenience provision because the NOFO did not include a termination for convenience provision. In other words, had FEMA reserved some right to shut down the NGWS Grant, CPB would have included a similar provision in the sub-awards to the 42 public media stations.

20. Further, in reliance on the NGWS Grant, CPB hired nine staff members and a consulting firm to provide administrative and technical assistance to CPB and the sub-awardees.

21. At every stage of this process, CPB has kept FEMA fully informed of the status of the subawards. The NOFO does not permit FEMA to terminate the NGWS Grant, and if it did, at no point has FEMA indicated that CPB has done anything that would call the NGWS Grant or the reimbursement requests into question. In stark contrast, FEMA through its designated staffers confirmed that CPB should proceed expeditiously and exhorted CPB to accelerate the procurement of emergency broadcast equipment. Indeed, to this very day, FEMA has not actually directed CPB to suspend grant activities.

## February 19 and 24 Messages On PARS Reflecting Payment Was On "Hold"

22. As a matter of routine practice, and pursuant to the terms of the NGWS Grant as well as the Uniform Guidance, 2 C.F.R. § 200, CPB reimburses the sub-awardees by drawing for that reimbursement through FEMA's Payment and Reporting System ("PARS"). On February 19, 2025, when CPB accessed PARS, it indicated that funds were "on hold," effectively meaning that there were no funds currently available under the NGWS Grant. The same message was present when CPB checked on a reimbursement payment submission on February 24. Below is a true and accurate screenshot from February 19, 2025:



True and accurate copies of the PARS messages from February 19 and 24 are also attached as Exhibit C.

23. FEMA's "hold" on reimbursement requests was odd given that on February 3, 2025, the United States District Court for the District of Columbia had issued a temporary restraining order prohibiting the government from freezing all federal financial assistance under any open awards. *See National Council of Nonprofits, et al. v. Office of Management and Budget, et al.*, Case No. 1:25-cv-002399-LLA (D. D.C.) (ECF Doc. No. 30, at pp. 29-30).

24. In the absence of proper termination, the Uniform Guidance mandates prompt payment:

> Payments for allowable costs ***must not be withheld*** at any time during the period of performance unless required by Federal statute, regulations, or in one of the following instances:
>
> (i) The recipient or subrecipient has failed to comply with the terms and conditions of the Federal award; or
>
> (ii) The recipient or subrecipient is delinquent in a debt to the United States as defined in OMB Circular A-129, "Policies for Federal Credit Programs and Non-Tax Receivables." Under such conditions, the Federal agency or pass-through entity may, after providing reasonable notice, withhold payments to the recipient or subrecipient for financial obligations incurred after a specified date until the conditions are corrected or the debt is repaid to the Federal Government.

2 C.F.R. § 200.305 (emphasis added). Prior to February 19, 2025, CPB, each month, would typically submit a single request for reimbursement related to the NGWS Grant and FEMA would typically issue payment to CPB through PARS within two business days of a submitted request.

25. To date, CPB has received no notices from FEMA – or indeed any communications of any kind – indicating that the status of the 2022 NGWS Grant has changed or the grant was somehow terminated or that CPB has somehow failed to comply with the terms of the NGSW Grant. Additionally, such notifications would not have been justified in fact or in law since CPB is in full compliance with the terms of the NGWS

9

Grant. Moreover, under the Uniform Guidance, with respect to termination of a grant, it provides:

> The Federal agency or pass-through entity **must** provide written notice of termination to the recipient or subrecipient. The written notice of termination should include the reasons for termination, the effective date, and the portion of the Federal award to be terminated, if applicable.

2 C.F.R. § 200.341 (emphasis added).

26. FEMA's "hold" status in the PARS systems prevents CPB from submitting any further reimbursement requests under the NGWS Grant, leaving public media stations across the country with hundreds of thousands of dollars of unreimbursed expenses. To date, there is approximately $1.95 million of incurred expenses that need to be reimbursed to the sub-awardees. Attached as Exhibit D is a spreadsheet detailing the sub-awardees, the total amount awarded to each sub-awardee, and the total amount of reimbursements due sub-awardees.

### CPB's Notice of Stop Work To Sub-Awardees

27. In light of FEMA placing the reimbursements "on hold" and the potential harm to CPB and the sub-awardees, including by having the sub-awardees incur expenses to third-party vendors without the ability to receive reimbursement through CPB for the work mandated under the NGWS Grant, CPB, on February 19, 2025, issued a Notice of Stop Work to all 42 sub-awardees. The Notice alerted them to the fact that CPB does not have access to the NGWS Grant funding, that CPB has not received any formal communication from FEMA, and explained:

> We are in the process of seeking clarification on this situation. Nonetheless, given the current situation, we must direct you to pause any further commitment of funds including the purchase of equipment (including execution of any contract or purchase order) or services as of today. As soon as we have further information, CPB will provide you an update.

Exhibit E - - Notice of Stop Work.

28. For close to 58 years, CPB has been in the steward of administering and ensuring the prompt payment of appropriated funds to public media stations. In that history, it has never had to issue any stop work order either to stations or to other grantees. CPB recognizes that its funding is essential for the operation of the entire public media sector, and that stations depend, and expect CPB to operate in a reliable and predictable fashion. As a result, CPB's Notice of Stop Work to grantees was unprecedented.

### CPB Sends Formal Letter to FEMA, Copying General Counsel for DHS

29. In light of FEMA's failure to allow CPB access to its NWGS Grant funding to reimburse the very sub-awardees that FEMA directed CPB to issue awards, CPB, on February 20, 2025, issued a letter to FEMA demanding that the access to the funding be restored and that in the future it will abide by the terms of the Uniform Guidance. A copy of that letter is attached hereto as Exhibit F. The letter also copied FEMA Office of the Chief Counsel and the Office of the General Counsel of DHS.

30. In light of the necessity for prompt action, the letter requested a response by February 24, 2025, stating:

> While CPB is reluctant to impose any deadlines, it is suffering continuing and irreparable harm for each day that passes with no clarity to the status of the grant award and no means of seeking redress through FEMA procedures. Accordingly, I must request that FEMA respond no later than the close of business on February 24, 2025.

*Id.*

31. To date, neither FEMA, nor DHS has responded to this letter. Moreover, FEMA has failed to provide any explanation for its conduct, including what the "hold" means or the reason for the hold as it relates to the NGWS Grant. Nor has FEMA provided any schedule for resolving the "hold."

### FEMA'S General Email To All Recipients Of A FEMA Grant

32.  On the afternoon of Friday, February 28, FEMA sent out a general email to all recipients of any grant from FEMA. A copy of that email is attached as Exhibit G. The email provides no details on the reasons for the hold other than FEMA was seeking "to ensure the alignment of its grant programs with Secretary Noem's direction." It provided no details as to what that means or when any "alignment" would be complete. Similarly, it did not address how grantees, such as CPB, are to deal with costs already incurred.

33.  In addition to this vague and unspecific email, FEMA also sought to impose additional requirements not included in the NGWS Grant or the Uniform Guidance, stating:

> As part of the manual review of your payment request, FEMA strongly encourages recipients to include the following information when submitting new payment requests:
>
> - Will this disbursement go to any subrecipients, and if so, which ones?
> - What is the total amount of funds going to each subrecipient?
> - What activities will be funded by this disbursement?
> - What is the time period covered by this payment request?
>
> … Please note that if FEMA does not receive this information, payment requests will not be processed.

Ex. G (emphasis added). Not only was this outside of prior practice and the Uniform Guidance, FEMA was imposing demands that were impossible to comply with. Specifically, after receiving this email, CPB attempted to access the PARS portal to provide additional information relating to reimbursement requests, yet because the "hold" that FEMA had placed on the system no information could actually be entered, much less submitted to FEMA.

34.  FEMA's email concluded with the sentence: "[f]or questions, please reach out to your designated FEMA point of contact for the specific grant award." Yet, when CPB contacted its FEMA representatives for the NGWS Grant, they could provide no information as to why the

"hold" was in place, why reimbursement requests could no longer be made, or how the situation could be resolved.

### The Harm To CPB, Its Sub-Awardees, and The Public At Large

35. As a result of FEMA's arbitrary actions, CPB has been placed in a situation where it is obligated to pay its sub-awardees their incurred expenses made pursuant to the NGWS Grant, but cannot gain access to the specific funds appropriated for the NGWS Grant. Although CPB has other funding, such funding is statutorily appropriated for other purposes and cannot cover the sub-awardee and other NGWS Grant expenses.

36. Because the CPB does not operate any part of the EAS directly, its sub-awardees are fundamental to CPB's ability to effectively carry out its mandate, as provided by Congress, and under the NGWS Grant. Harm to sub-awardees, whether through staff layoffs, inability to meet their contractual obligations for equipment purchased, or disruption of their programs, directly compromises CPB's ability to fulfill its mandate under federal law. Further, to the extent the grant has not been cancelled, CPB is still obligated to perform multiple activities relating to the existing grants.

37. FEMA's conduct has frustrated and prevented CPB from accomplishing the objectives and purposes of the NGWS Grant. Indeed, FEMA recognized in the NOFO that ensuring that the technological upgrades were made to the national emergency alert system were "imperative" and "essential." Thus, without these essential technological upgrades, the public is deprived of having "an effective system for warning and informing the American public of impending natural and man-made disasters [which] is an essential part of America's emergency preparedness." *See* Ex. A - NOFO at §10(a).

38. Further, CPB has at least nine employees who are wholly or partly funded through the NGWS Grant, with an expense rate of approximately $80,000/month. In addition, CPB retained a consultant to help administer the NGWS Grant, which has resulted in CPB incurring approximately $908,000 to date that is also required to be reimbursed under the grant. Normally, CPB pays the salaries and benefits and consulting fees and then seeks reimbursement through PARS. The "hold" has prevented CPB from obtaining such reimbursement forcing it into the position of likely furloughing or terminating such employees and being in breach of contract for the consulting firm with no assurance that those employees or the consulting firm will be available when and if access to the NGWS Grant funds are restored.

39. In addition, FEMA's conduct has undermined the goodwill and reputation that CPB has with the American public and, in particular, with public radio and television stations. As stated previously, CPB is the steward of the federal government's investment in public broadcasting and the largest single source of funding for public radio, television, and related online and mobile services. As a result, over the past close to 60 years, CPB developed a strong reputation and trust with public radio and television stations. FEMA's conduct in placing a "hold" on the NGWS Grant funding, thereby impairing CPB's ability to honor its obligation to reimburse sub-awardees and its consultant and has caused a great deal of public concern. Attached hereto as Exhibit H are copies of numerous media articles in which various public radio and television stations from across the country are expressing deep concern about CPB's ability to reimburse the sub-awardees.

Signed under the pain and penalties of perjury this 12th day of March, 2025.

_____
Daryl Mintz