Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

STATE OF NEW YORK, *et al.*,

    Plaintiffs,

      v.

DONALD TRUMP, IN HIS OFFICIAL
CAPACITY AS PRESIDENT OF THE
UNITED STATES, *et al.*,

             Defendants.

Civil Action No. 1:25-cv-39 (JJM)

## DECLARATION

I, Cameron Hamilton, hereby state as follows:

1. I am the Senior Official Performing the Duties of the Administrator, Department of Homeland Security (DHS or Department), Federal Emergency Management Agency (FEMA). The Senior Official Performing the Duties of the FEMA Administrator is the DHS official responsible for being the principal advisor to the President and the Secretary of Homeland Security for all matters relating to emergency management in the United States.

2. Since being sworn in on January 25, 2025, the Secretary of Homeland Security (Secretary) has issued several written and verbal directives regarding payments made by the Department, all of which were designed to ensure that any payments made by the Department are consistent with law and do not promote fraud, waste, or abuse. One such directive is a January 28, 2025, Direction on Grants to Non-governmental Organizations. (Memorandum). *See* Exhibit 1.

1

3. Pursuant to the Secretary's January 28, 2025, direction and for the reasons stated in my declaration filed with this Court on February 11, 2025, FEMA has paused funding to the Shelter and Services Program, Case Management Pilot Program, and Emergency Food and Shelter – Humanitarian program. *See* Exhibit 2.

4. On Monday, February 10, 2025 at 4:31 pm, the Director of FEMA's Office of Grants Administration, Stacey Street, issued an email directing "putting hold toggles on all programs listed in the Daily Dash" for Fiscal Year (FY) 2024 grants in FEMA's grant system, FEMA Grants Outcomes (FEMA GO). In the same email, Ms. Street also directed four team members to "put financial holds on all of your awards – all open awards, all years (2021, 2022, 2023, 2024)" and provided specific direction to each of the four. *See* Exhibit 3.

5. The regulations at 2 C.F.R. Part 200 establish the uniform administrative rules, cost principles, and audit requirements for Federal grants. Among other things, they establish requirements for a federal agency's management of grant programs before and throughout the lifecycle of the grant award. 2 C.F.R. §§ 200.100(a), (b). Pursuant to 2 C.F.R. § 200.300(a), FEMA has an affirmative duty to "manage and administer [its] Federal award[s] in a manner so as to ensure that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations." To effectively accomplish this, FEMA has inherent authority to manually review source documentation from a grant recipient and other information provided the process is otherwise consistent with the regulations at 2 C.F.R. Part 200 and other applicable requirements. Moreover, FEMA's authority to conduct a manual review process is bolstered by its inherent authority to monitor awards, review its

grant records and expenditures, and ensure payments to recipients are used only for allowable, allocable, and reasonable costs under the terms and conditions of the grant award before making payment to the grant recipient.

6. It was not Ms. Street's intention to freeze grant payments. The intention of her direction was to facilitate FEMA staff conducting a manual review process on grant payments. Putting a "hold toggle" or individual hold on an award in FEMA's grant systems referenced in the email is part of the process required in those systems to allow recipient payment requests to be reviewed manually. The term "hold" used by the system is not synonymous with a pause or withholding of grant funds as that term is used in 2 C.F.R. Part 200 or the terms and conditions of the grant awards. It does not mean that the grant is being frozen, held, or not being distributed; in the parlance used by FEMA's grant systems, it means that the grant can be reviewed manually by staff.

7. Notwithstanding the meaning of "hold toggle" within FEMA, within an hour after Ms. Street sent this email, given the complexity of implementing this guidance, Ms. Street instructed her team to stand down and that additional information would be provided the following day.

8. In a follow up email on Tuesday, February 11 at 2:10 p.m., Ms. Street reaffirmed the verbal discussion from Monday and clarified that the intent of her previous guidance was not a direction to freeze grant payments. She acknowledged that her use of the word "hold" could be misconstrued as an action in violation of the temporary restraining order imposed by this Court and explained, "we will still be processing our awards but will be adding a level of internal controls to ensure that payment requests are reviewed prior to payments be [sic] released to recipients" and that payments "will be made within the allotted 30-day

maximum timeline noted by 2 CFR Part 200." *See* Exhibit 4.  Her email also described that several FEMA programs have historically been subject to a manual review process, which is permitted under 2 C.F.R. Part 200.  An example of such a program is Exhibit 5.

9. A manual review process is not a pause or withholding of grant funds as that term is used in C.F.R. Part 200 or the terms and conditions of the grant awards, nor does it mean that the grant is being frozen, held, or not being distributed. Instead, it is simply an internal control where FEMA staff manually review all grant payment requests before disbursing payments to recipients. This means FEMA reviews grant projects, activities, and source documentation before releasing funds for reimbursement paid to its grant recipients. The process is intended to ensure reimbursement payment requests are allowable, allocable, and reasonable per each award's terms and conditions, including the respective program Notices of Funding Opportunity and 2 C.F.R. Part 200, and are free from fraud, waste, or abuse.

10. FEMA's authority to conduct a manual review process for grant payments equally applies to all recipients, including States. Six FEMA programs have historically been subject to a manual review process:   the Assistance to Firefighters Grant Program (AFG); Fire Prevention & Safety Grant Program (FP&S), Staffing for Adequate Fire and Emergency Response (SAFER), Shelter and Services Program (SSP), Tribal Cybersecurity Grant Program (TCGP) and State and Local Cybersecurity Grant Program (SLCGP). AFG and FP&S have used manual review since they were established in Fiscal Year 2002 and Fiscal Year 2003, respectively. SAFER began in Fiscal Year 2005 and FEMA has utilized manual review since their inception. SLCGP and TCGP were first awarded in Fiscal Year 2022

and Fiscal Year 2023, respectively, and FEMA has utilized manual review since their inception.

11. To ensure Secretary Noem has an opportunity to review relevant obligations, disbursements, and payments consistent with the direction of her January 28, 2025, Memorandum, on February 14, 2025, I formalized the additional manual review process described in Paragraph 9of this Declaration through the issuance of the Grant Processing Guidance (Grant Processing Guidance or Guidance). On that same day, I notified FEMA officials of the immediate implementation of the additional manual review.   In this Guidance, I stated it "is necessary to ensure that funding is obligated, disbursed, and paid in line with Secretary Noem's direction, and that we can continue to support the communities and disaster survivors who rely on us for assistance." *See* Exhibit 6.

12. Implementing the Grant Processing Guidance is in furtherance of FEMA grant management obligations described in this Declaration.

13. Further, the issue of payments to recipients under this manual review process is permissible if it complies with the payment regulations governing Federal grant awards at 2 C.F.R. § 200.305. The Grant Processing Guidance specifies that the manual review process must meet regulatory timeframes for timely payments. *See* Exhibit 6.

14. FEMA must comply with regulations governing payments to grant recipients. See 2 C.F.R. §200.305. For grant recipients other than States, 2 C.F.R. §200.305(b)(3) stipulates that FEMA is to make payments on a reimbursement basis within 30 calendar days after receipt of the payment request, unless FEMA reasonably believes the request to be improper.

15. For State recipients, 2 C.F.R. § 200.305(a) instructs that Federal grant payments are governed by Treasury-State Cash Management Improvement Act (CMIA) agreements

("Treasury-State agreement") and default procedures codified at 31 C.F.R. part 205 and Treasury Financial Manual (TFM) 4A-2000, "Overall Disbursing Rules for All Federal Agencies." *See* 2 C.F.R. § 200.305(a).

16. Treasury-State agreements generally apply to "major Federal assistance programs" that are governed by 31 C.F.R. part 205, subpart A and are identified in the Treasury-State agreement. 31 C.F.R. §§ 205.2, 205.6. Where a Federal assistance (grant) program is not governed by subpart A, payment and funds transfers from FEMA to the State are subject to 31 C.F.R. part 205, subpart B. Subpart B requires FEMA to "limit a funds transfer to a State to the minimum amounts needed by the State and must time the disbursement to be in accord with the actual, immediate cash requirements of the State in carrying out a Federal assistance program or project. The timing and amount of funds transfers must be as close as is administratively feasible to a State's actual cash outlay for direct program costs and the proportionate share of any allowable indirect costs." 31 C.F.R. § 205.33(a). Nothing in 31 C.F.R. part 205, subpart B or the Treasury Financial Manual (TFM) 4A-2000 prohibits FEMA's manual review process. Nearly all FEMA grants recently identified by the plaintiffs are not "major Federal assistance programs. "As a result, payments to States for those grants are subject to the "default" rules of subpart B.

17. By implementing this Grant Processing Guidance, in some ways, FEMA is merely expanding how it pays States to additional grant programs. This will include the following programs which Plaintiffs recently inquired about: SLCGP, Homeland Security Grant Program (HSGP), Nonprofit Security Grant Program (NSGP), and the Emergency Management Performance Grant Program (EMPG). With respect to SLCGP, FEMA instituted a manual review process when the program was first authorized in the Fiscal

Year 2022. FEMA is now extending this practice to HSGP, NSGP, EMPG, and other programs subject to my direction in the Grant Processing Guidance.

18. The grant programs identified in Paragraph 17 are generally not considered "major Federal assistance programs" that are governed by 31 C.F.R. part 205, subpart A. For example, they are not identified in the State of New York's FY 2025 Treasury-State agreement. *See* Exhibit 7. As a result, those programs are subject to the "default" rules in 31 C.F.R. part 205, subpart B.

19. There is at least one exception. The District of Columbia's (DC) FY 2025 Treasury-State agreement lists HSGP as a "major federal assistance program." Like the "default rules" at Subpart B, nothing in DC's Treasury-State agreement prohibits FEMA's manual review process. For example, nothing in the agreement stipulates the amount of time for which FEMA must review the State's source documentation to ensure all costs are allowable, allocable, and reasonable, before approving and processing a manual payment.

20. On February 28, 2025, FEMA provided written notice to its grant recipients that it has instituted an additional manual review process for its grant programs (February 28, 2025, Manual Review Notice). *See* Exhibit 8. Specifically, FEMA notified grant recipients:

> Effective immediately, FEMA and DHS are conducting additional reviews of allocations before releasing funds for all grants. These actions will ensure that funding is obligated and disbursed in line with the Secretary's direction so that we can continue to support and prioritize communities and disaster survivors who rely on FEMA for assistance. Upon completion of reviews, approved funding will be processed through the respective grant systems. Per 2 C.F.R. Part 200, payment requests may take up to 30 days to process depending on the size and scope of the submission. If additional information is needed, a request for information will be issued, and the timeline may be extended.

As part of the manual review of your payment request, FEMA strongly encourages recipients to include the following information when submitting new payment requests:

- Will this disbursement go to any subrecipients, and if so, which ones?
- What is the total amount of funds going to each subrecipient?
- What activities will be funded by this disbursement?
- What is the time period covered by this payment request?

For existing payment requests currently in the system, FEMA will reach out if additional information is needed. Please note that if FEMA does not receive this information, payment requests will not be processed.

21. The "hold" from the Payment and Reporting System (PARS), appearing on the screenshots submitted by Plaintiff States, is not a pause or freeze of a grant but is instead a mechanism to assist FEMA with conducting the additional manual review described in Exhibit 8. It gives FEMA the ability to limit the drawdown of funds by a grantee. In PARS, the grantee can see the reason why a certain amount is not available for immediate drawdown by running the Payment Hold Report in Detail Mode. PARS will state "hold", but it is a system term, and, in the description, it clearly states for "additional manual review." FEMA created the new "hold" reason code in PARS on February 18, 2025, and PARS provides a short description that states: "Additional Manual Review." Once the grants team completes the manual reviews the grants will be made available for drawn down post review. This "hold" does not appear for reimbursement requests submitted in the FEMA GO Payment system.

22. In 2018, FEMA began to open new funding opportunities to select grant programs in the FEMA GO grants management system. Because FEMA GO also manages payment requests, recipients were no longer required to use the PARS system for payment requests. For example, FEMA has used FEMA GO to open funding opportunities for the following

8

grants from 2018 to present: AFG, SAFER and FP&S. In 2022, FEMA began using FEMA GO to support funding opportunities for Building Resilient Infrastructure and Communities (BRIC) Grant Program and Flood Mitigation Assistance (FMA).

23. In 2023, an additional 14 non-disaster grant programs began using FEMA GO including:

- Cooperating Technical Partners (CTP)
- Community Assistance Program - State Support Services Element (CAP-SSSE)
- Earthquake Consortium and State Support, National Earthquake Hazard Reduction Program (NEHRP)
- Homeland Security National Training Program/National Domestic Preparedness Consortium (HSNTP-NDPC)
- Homeland Security National Training Program/Continuing Training Grant (HSNTP-CTG)
- National Dam Safety Program (NDSP)
- National Incident Management System (NIMS)
- Shelter and Services Program (SSP)
- State Fire Training System Grant (SFTS)
- Emergency Management Baseline Assessments Grant (EMBAG)
- High Hazard Potential Dams Rehabilitation Grant (HHPD)
- Urban Search and Rescue Readiness Cooperative Agreements (US&R)
- Homeland Security Preparedness Technical Assistance Program (HSPTAP)
- Presidential Residence Protection Assistance Grant (PRPA).

24. In 2024, 18 additional non-disaster grant programs opened funding opportunities in FEMA GO, including:

- Emergency Food and Shelter Program (EFSP)
- Emergency Management Performance Grants (EMPG)
- Intercity Bus Security Grant Program (IBSGP)
- Intercity Passenger Rail Program (IPR)
- Port Security Grant Program (PSGP)

- Targeted Violence and Terrorism Prevention (TVTP) Grant Program
- Transit Security Grant Program (TSGP)
- Tribal Homeland Security Grant Program (THSGP)
- Emergency Operations Center (EOC)
- Regional Catastrophic Preparedness Grant Program (RCPGP)
- Nonprofit Security Grant Program (NSGP-UA)
- Homeland Security Grant Program (HSGP)
- Case Management Pilot Program (CMPP)
- Next Generation Warning System (NGWS)
- Flood Mitigation Assistance SWIFT Current (SWIFT)
- Hazard Mitigation Grant Program (HMGP)
- Hazard Mitigation Grant Program (HMGP) - Post Fire
- Management Assistance Grant Program (FMAG)

25. In 2025, FEMA will begin using FEMA GO for the following grant funding opportunities:

- Disaster Case Management (DCM)
- Safeguarding Tomorrow RLD (STORM)
- Pre-Disaster Mitigation (PDM)

26. Funding opportunities for the years prior to the years in which FEMA GO began supporting the non-disaster grant programs are still managed in the legacy grant systems that use PARS for payment processing. These non- disaster grants will be migrated to FEMA GO beginning in late 2025. Following completion of the data migration, payment of older grants will be processed in FEMA GO. For example, in Paragraph 5 of Mr. McComb's Declaration, he asserts that Arizona's Nonprofit Security Grants for Fiscal Years 2022 and 2023 are subject to a hold or freeze. This is not a hold or a freeze of the grant. Rather, this is language from PARS which reflects the use of the additional manual review process for those grants.

27. Plaintiffs contend that they receive an error message when they attempt to submit a request for payment and that the system generates an error message when an attempt is made. This only occurs in PARS and as explained above only some of the grants identified by Plaintiffs are still subject to payment through PARS.   As part of FEMA's initiation of the additional manual review and given the technical limitations of the PARS system, to facilitate FEMA's ability to conduct the additional manual review, FEMA's Office of the Chief Financial Officer (OFCO) was required to reduce each grant award in PARS to a zero balance. When the OCFO made this change, it temporarily precluded those with grants still subject to PARS from submitting a request for payment. The Grants Programs Directorate (GPD), however, was not aware of this change until on March 3, 2025, and is currently taking steps to rectify the issue. To correct this issue, FEMA must reconfigure its PARS system and which is the reason why the recipients could not submit requests for payment through PARS. FEMA is updating the process by which recipients will be able to submit payments for manual review, through the Non-Disaster Grants System (ND Grants), the grants system where awards in PARS will be functional, by on or around March 14, 2025. FEMA will provide instructions to grant recipients through FEMA's ND Grant System explaining how to submit requests for the manual review process.  For example, for the grants identified in Paragraph 5 of the McCombs Declaration, Arizona will be able to resubmit the request for payment following the instructions provided along with the additional information required set forth in the February 28, 2025, Manual Review Notice, (Exhibit 8) and FEMA then will determine the amount eligible for payment, if any. This will apply to the additional grants identified in the McCombs Affidavit other than the grant identified in Paragraph 3 of this Declaration.

28.. On January 31, 2025, it is my understanding that the Court issued a Temporary Restraining Order and pursuant to the Court's direction that TRO was distributed to FEMA's leadership and staff who administer grants and other financial assistance. *See* Exhibit 9.

29. On March 6, 2025, it is my understanding that the Court issued a Preliminary Injunction and ordered FEMA to file a status report informing it of the status of FEMA's compliance with the Preliminary Injunction. To the best of my knowledge, FEMA is complying with the Preliminary Injunction. FEMA's additional manual review is based upon the Secretary's authority and FEMA's inherent duty to ensure that grants are administered in a manner that is consistent with the US Constitution, applicable Federal statutes and regulations and with the terms and conditions of the grants.

29. On March 9, 2025, Plaintiff, through the Department of Justice, provided FEMA with a list of grants that they contend are "experiencing disruption." Exhibit 10. FEMA has reviewed this list and has determined that, of the 146 grants included:

- 114 are currently undergoing the manual review only as described in this Declaration (including the Colorado SSP award described below in Paragraph 30 and the Wisconsin SSP award described in Paragraph 31 below);
- 15, in addition to the manual review, also have a legacy hold[1] (defined below) on a portion of the grant for reasons described in the table below;
- 13 do not provide sufficient information to make a determination (no grant award number or incomplete grant number provided);
- three were duplicate grant award numbers, and

---

[1]  A Legacy Hold means a hold that was previously in place on all or a portion of a grant award while FEMA was awaiting additional information from a grant recipient. These holds can be in place for several reasons including programmatic reviews, budget reviews, Environmental and Historic Preservation reviews and approvals and other circumstances where the grant recipient is required to provide information to FEMA to ensure allowability, applicability, and eligibility of obligated grant funds.

- 1 (FY 2022 Cooperating Technical Partners grant for the state of Colorado) had drawn down all funds from the grant award.

The table below notes the fiscal year, grant program, award number, recipient, and the rationale for the legacy hold on the award in question.

| Fiscal Year | Grant Program | Award Number | Recipient | Reason for Legacy Hold |
|---|---|---|---|---|
| 2022 | SLCGP | EMW-2022-CY-00024 | Hawaii Department of Law Enforcement | Legacy hold in the amount of $2,136,499: additional project details required |
| 2023 | SLCGP | EMW-2023-CY-00021 | Hawaii Department of Law Enforcement | Legacy hold in the amount of $4,338,969: additional project details required |
| 2024 | SLCGP | EMW-2024-CY-05274 | Hawaii Department of Law Enforcement | Legacy hold in the amount of $3,307,731.85: additional project details required |
| 2023 | SLCGP | EMW-2023-CY-00006 | Maryland Department of Emergency Management | Legacy hold in the amount of $6,172,838: additional project details required |
| 2023 | SLCGP | EMW-2023-CY-00010 | Michigan State Police | Legacy hold in the amount of $9,129,053: additional project details required |
| 2022 | SLCGP | EMW-2022-CY-00053 | Wisconsin Department of Military Affairs | Legacy hold in the amount of $257,513: additional project details and indirect costs (IDC) rate information required |
| 2023 | SLCGP | EMW-2023-CY-00052 | Wisconsin Department of Military Affairs | Legacy hold in the amount of $7,283,592: additional project details required |
| 2023 | SLCGP | EMW-2024-CY-05240 | Wisconsin Department of Military Affairs | Legacy hold in the amount of $5,596,110.85: additional project details required and IDC |
| 2021 | NSGP | EMW-2021-UA-00057 | Maine Emergency Management Agency | Legacy hold in the amount of $150,000: additional project details required |
| 2022 | NSGP | EMW-2022-UA-00031 | Michigan State Police | Legacy hold in the amount of $150,000: additional project details required |
| 2024 | NSGP | EMW-2024-UA-05052 | Michigan State Police | Legacy hold in the amount of $2,240,403: additional project details required |

| 2024 | NSGP | EMW-2024-UA-05153 | Wisconsin Department of Military Affairs | Legacy hold in the amount of $169,200: IDC rate information required |
| 2024 | HSGP | EMW-2024-SS-05237 | Wisconsin Department of Military Affairs | Legacy hold in the amount of $113,717.48: IDC rate information required |
| 2023 | EMPG | EMB-2023-EP-00004 | Maine Emergency Management Agency | Legacy hold in the amount of $48,000: IDC rate information required |
| 2023 | EOC | EMP-2023-EO-00001 | Maryland Department of Emergency Management | Legacy hold in the amount of $5,736,108: Environmental and Historic Preservation review |

30. As to the Colorado SSP Grant on February 18, 2025, I sent Colorado's Director of the Office of Grants Management a non-compliance letter notifying it that DHS/FEMA was temporarily withholding payment to Colorado of SSP Grants, pursuant to 2 C.F.R. § 200.339(a), and was instituting specific restrictions on Colorado's SSP grant awards, pursuant to 2 CFR § 200.208 because DHS has significant concerns that the SSP funding is going to entities engaged in or facilitating illegal activities. FEMA gave Colorado 30 days to provide additional information described in the letter and 60 days to appeal. To my knowledge, Colorado has neither provided the additional information nor appealed. Exhibit 11.

31. As to the Wisconsin SSP Grant listed in Exhibit 12, I sent a non-compliance letter on March 11, 2025 to the Wisconsin Department of Military of Affairs explaining that DHS/FEMA is temporarily withholding payments to Wisconsin for SSP Grant pursuant to 2 C.F.R. §200.339(a) and is instituting specific conditions on these awards pursuant to 2 C.F.R. § 200.208 because DHS has significant concerns that the SSP funding is going to entities engaged in or facilitating illegal activities. Exhibit 12. FEMA gave Wisconsin 30

days to provide additional information described in the letter and 60 days to appeal. *Id.* Specifically, DHS is concerned that entities receiving SSP payments may be guilty of encouraging or inducing an alien to come to, or enter, or reside in the United States in violation of law. *See* Exhibit 12.

I declare, under penalty of perjury, that the foregoing is true and correct based upon my personal knowledge, based upon the collective information known within the Agency and provided by pertinent individuals within the Agency with direct knowledge of that information, and based upon a review of records and information kept in the ordinary course of business pursuant to 28 U.S.C § 1746.

Executed on this ___ day of March 2025.

Cameron Hamilton
Senior Official Performing the Duties of Administrator
Federal Emergency Management Agency



Secretary
**U.S. Department of Homeland Security**
Washington, DC 20528

January 28, 2025

MEMORANDUM FOR COMPONENT AND OFFICE HEADS

FROM:       Kristi Noem
            Secretary

SUBJECT:    **Direction on Grants to Non-governmental Organizations**

Over the last four years, the Department of Homeland Security has spent billions of dollars funding illegal immigration. Much of this funding was given to non-profit organizations, which purported to provide a variety of services to illegal aliens. Effective immediately, all Department grant disbursements and assessments of grant applications that: (a) go to non-profit organizations or for which non-profit organizations are eligible, and (b) touch in any way on immigration, are on hold pending review, except to the extent required by controlling legal authority.

The reasons for this freeze include (1) concerns that these grants may be funding illegal activities, such as encouraging or inducing illegal immigration, 8 U.S.C. § 1324(a)(1)(A)(iv), or illegal harboring of illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(ii)–(iii); (2) concerns that there may be racially discriminatory language in certain grants; and (3) concerns that these grants may not be an efficient use of government resources.

Within 7 days, each component shall provide a report to the Undersecretary for Management with a summary of every grant covered by this memorandum and its status. Also within 7 days, any component that invokes the exception above for grants required by controlling legal authority must obtain the express written consent of the General Counsel or his delegee. Finally, within 7 days, the chief counsel of each component shall provide a report to the General Counsel regarding all available legal tools to investigate whether grantees have or are using Department grant funds for illegal purposes, including any statutory, regulatory, or contractual authority to request or demand documents.

The Department is committed to allocating grant funds in a manner that will achieve maximum effectiveness for the intended purposes and in fulfillment of the Department's statutory mission. This hold does not in any way apply to disbursement of essential disaster relief funds, but it does apply to the Shelter and Services Program, and any similar program.

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

STATE OF NEW YORK, *et al.*,

        Plaintiffs,

        v.

DONALD TRUMP, IN HIS OFFICIAL
CAPACITY AS PRESIDENT OF THE
UNITED STATES, *et al.*,

        Defendants.

Civil Action No. 1:25-cv-39 (JJM)

## DECLARATION

I, Cameron Hamilton, hereby state as follows:

1. I am the Senior Official Performing the Duties of the Administrator, Department of Homeland Security (DHS), Federal Emergency Management Agency (FEMA). The Senior Official Performing the Duties of the FEMA Administrator is the DHS official responsible for being the principal advisor to the President and the Secretary for all matters relating to emergency management in the United States.

2. Since being sworn in on January 25, 2025, the Secretary of Homeland Security has issued a number of written and verbal directives regarding payments made by the Department of Homeland Security, all of which were designed to ensure that any payments made by the Department are consistent with law and do not promote fraud, waste, or abuse. One such directive is attached as Exhibit 1.

3. Consistent with those directives, the Department has been reviewing a variety of grant programs to ensure compliance with all grant conditions. Every grant issued by the

Department requires compliance with applicable federal laws. An example of such grant conditions is attached as Exhibit 2.

4. The current Department leadership believes that its grant programs are not being administered in a way that prevents fraud, waste, and abuse, that its grant programs are going to entities violating applicable federal laws, and that grants are possibly even funding illegal activity. Given the time sensitive nature of this request, I am discussing the Shelter and Services Program as an illustrative example.

## Shelter and Services Program

5. The Shelter and Service Programs is supposed to provide temporary shelter and other services to aliens released from custody. *See* Department of Homeland Security Appropriations Act, 2024, Pub. L. No. 118-47, Div. C (2024); Department of Homeland Security Appropriations Act, 2023, Pub. L. No. 117-328, Div. F (2022).

6. As of today, the Department has paused funding to the Shelter and Services Program based on significant concerns that the funding is going to entities engaged in or facilitating illegal activities.

7. For example, a substantial portion of Shelter and Services Program money goes to funding alien housing at the Roosevelt Hotel in New York City. According to media reports, the vicious Venezuelan gang Tren De Aragua has taken over the hotel and is using it as a recruiting center and base of operations to plan a variety of crimes.[1] According to these same reports, these crimes include gun and drug sales as well as sex trafficking, which can reasonably be presumed to be conducted in the hotel itself. One of the groups responsible

---

[1] https://nypost.com/2024/10/17/us-news/nyc-migrant-hotels-violent-gang-rep-is-all-over-tiktok-say-fed-up-residents-who-worry-its-only-gonna-get-worse/; NYPD says migrant children behind several violent crimes near Times Square - ABC7 New York

for these activities refer to themselves as "diablos de la 42," which means the devils of 42nd St., a street near where the Roosevelt Hotel is located. Notably, the alien who murdered Laken Riley stayed at this hotel, which is funded by payments from the Department.[2]

8. I am aware of criminal investigations into many of these activities, but I have been informed that these details are law enforcement sensitive and should not be shared in a public declaration.

9. Despite all of these issues, absent an exception from this court and with confirmation this funding pause based on the terms of the award falls within the court's order, the Department would be required by the court to make payments to fund the housing of aliens in this hotel, and likely fund criminal activity.

10. In addition to the crimes mentioned above, I am concerned that entities receiving payment under this program may be guilty of encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(1)(A)(iv), transporting or moving illegal aliens, *id.* § 1324(a)(1)(A)(ii), harboring, concealing, or shielding from detection illegal aliens, *id.* § 1324(a)(1)(A)(iii), or applicable conspiracy, aiding or abetting, or attempt liability respecting these statutes. On its face, the program funds sheltering and transportation for unauthorized aliens. And a previous Office of Inspector General report concluded that Department of Homeland Security grant recipients used funds from a similar program to provide service to clandestine aliens who never had an encounter with the Department.[3] *See* Exhibit 3.

---

[2] https://www.nationalreview.com/news/laken-riley-murder-suspect-received-taxpayer-funded-stay-at-roosevelt-hotel-flight-to-georgia/.

[3] https://www.foxnews.com/politics/dhs-oig-finds-millions-american-rescue-plan-funds-misused-ngos-given-gotaway-illegal-immigrants.

11. Based on the above-described concerns of illegal activity in connection with the performance of this award, FEMA paused funding for this award. FEMA is required to administer its grant awards so as to ensure that federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable federal statutes, and regulations. 2 C.F.R. § 200.300(a). The terms and conditions of the award allow the Department to suspend the grant or terminate the award for a failure to comply with the conditions of the award or applicable federal statutes. *See* 2 C.F.R. §§ 200.208; 200.340; and 200.339(a).

12. In addition, FEMA is in the process of requesting information from New York City to further investigate this matter to ensure that federal funds are not being used for illegal activities. The Department paused funding quickly in this matter to protect that funding from the potential for its misuse for the illegal activity described above.

13. FEMA will begin the process of providing notice to New York City regarding the funding pause and will provide the information and process required by regulation and the terms and conditions of the award. *See* 2 C.F.R. § 200.242.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on this 11th day of February 2025.

/s/ _____

Cameron Hamilton
Senior Official Performing the Duties of Administrator
Federal Emergency Management Agency

| From: | Street, Stacey |
|---|---|
| Sent: | Monday, February 10, 2025 4:31 PM |
| To: | ████████████████████████ |
| Cc: | ████████████████████ |
| Subject: | URGENT: Holds on awards |

| Importance: | High |
|---|---|

Good afternoon, all.

AAD is handling for FEMA GO for FY24 awards – ████ is putting hold toggles on **all** programs listed in the Daily Dash.

For all awards FY23 and prior: put financial holds on *all* of your awards – all open awards, all years (2021, 2022, 2023, 2024).

- ████████████████, you can toggle in **FEMA GO** and do so for all of your fire-related programs
- ██████████████, your team will need to go in **ND Grants** and put individual holds on all HSGP and NSGP awards
- ████████████████, your team will need to go in **ND Grants** and put individual holds on all EMPG, RCPGP, EOCGP, THSGP awards
- ████████████████, your team will need to go in **ND Grants** and put individual holds on all SLCGP and TCGP awards

Please confirm once completed.

Stacey

**Stacey N. Street**
**Director, Office of Grants Administration**
**Grant Programs Directorate| Resilience**
**Office:** ████████████ **| Mobile:** ████████████
████████████████

**Federal Emergency Management Agency**
**fema.gov**



1

**From:** Street, Stacey
**Sent:** Tuesday, February 11, 2025 2:10 PM
**To:**
**Cc:**

**Subject:** Follow-up

**Importance:** High

Hi everyone, follow up to yesterday's verbal late afternoon discuss and to the subsequent Teams meeting we had just a short while ago. Here is our action plan going forward:

Awards will be amended so that the following grant programs will result in reimbursement requests being manually reviewed and, when approved by staff, manually reimbursed to recipients:

*Already Standard Manual Approach Employed (no changes needed)*
- Assistance to Firefighters Grant (AFG) Program
- Fire Prevention & Safety (FP&S) Grant Program
- Staffing for Adequate Fire and Emergency Response (SAFER)
- Shelter and Services Program (SSP)
- State and Local Cybersecurity Grant Program (SLCGP) (FY24)

*Existing awards (FY2024/2023/2022/2021/2020) will be modified so that reimbursement requests will be manually reviewed and manually processed upon approval by program/financial staff. Upon approval of reimbursement requests, GPD will have 30 days to process payment, per 2 CFR Part 200.*
- PSGP
- TSGP
- IBSGP
- THSGP
- RCPGP
- EOCGP
- HSGP
- NSGP
- EMPG
- SLCGP
- TCGP

I am setting up a training meeting today with our system colleagues so that they can walk us through steps. PMO will also be able to add rights to staff to help in amending existing awards.

I will set up a timeline action plan with timelines, roles, and responsibilities for all staff to complete the amendments.  I will also coordinate with program colleague counterparts across Resilience and ORR to help ensure that they are aware and can also replicate across their grant program portfolios and will be asking our AAD-Mitigation team members to assist their program colleague counterparts in amending awards.

I am working with ███████ to craft an Information Bulletin that will explain this approach to our grant program recipient stakeholders.

Last but not least, ███████ and I will work to modify the CY25 performance plans to account for this scope of responsibility and ensure that, upon manual review *approvals*, payments will be made within the allotted 30-day maximum timeline noted by 2 CFR Part 200. We will also provide guidance very shortly on program office versus financial office roles and responsibilities with manual reviews and manual reimbursements. I expect that we will model the fire grants approach whereby program offices have primary lead on reimbursement reviews, approval determinations, and manual reimbursement release processings.

**Note that these are not "holds."** We are modifying our programs so that payment requests are now reviewed manually and processed manually. "Holds" implies what we were directed to originally due with OMB M-25-13, which was rescinded and a TRO injunction placed. We are not holding on awards, we will still be processing our awards but will be adding a level of internal controls to ensure that payment requests are reviewed prior to payments be released to recipients (in order to ensure that payments align to the award project, NOFO scope of allowability, 2 CFR Part 200 principles, etc.) For FY 2025, the intent is to have this approach as standard in the NOFOs.

Happy to discuss, thank you.

Stacey

Stacey N. Street
Director, Office of Grants Administration
Grant Programs Directorate| Resilience
Office: ███████ | Mobile: ███████
███████

Federal Emergency Management Agency
**fema.gov**



**The U. S. Department of Homeland Security (DHS)
Notice of Funding Opportunity (NOFO)
Fiscal Year 2024 Assistance to Firefighters Grant Program**

**All entities wishing to do business with the federal government must have a unique entity identifier (UEI). The UEI number is issued by the system. Requesting a UEI using System for Award Management (SAM.gov) can be found at:** https://sam.gov/content/entity-registration.

**Updates in Grant Application Forms:**

The Data Universal Numbering System (DUNS) Number was replaced by a new, non-proprietary identifier requested in, and assigned by, SAM.gov. This new identifier is the Unique Entity Identifier.

Additional Information can be found on Grants.gov: https://www.grants.gov/forms/forms-development/planned-uei-updates.

Table of Contents

Updates in Grant Application Forms: ................................................................................ 1
A.   Program Description ................................................................................................... 6
   1.   Issued By ............................................................................................................ 6
   2.   Assistance Listings Number .............................................................................. 6
   3.   Assistance Listings Title ................................................................................... 6
   4.   Funding Opportunity Title ................................................................................. 6
   5.   Funding Opportunity Number ............................................................................ 6
   6.   Authorizing Authority for Program ................................................................... 6
   7.   Appropriation Authority for Program ................................................................ 6
   8.   Announcement Type ........................................................................................... 6
   9.   Program Category ............................................................................................... 6
   10.  Program Overview, Objectives, and Priorities ................................................. 6
   11.  Performance Measures ....................................................................................... 8
B.   Federal Award Information ......................................................................................... 8
   1.   Available Funding for the NOFO:   $291,600,000 ........................................... 8
   2.   Projected Number of Awards:   2,000 ............................................................... 8
   3.   Period of Performance:     24 months ............................................................... 9
   4.   Projected Period of Performance Start Date(s):  N/A ....................................... 9
   5.   Projected Period of Performance End Date(s):  N/A ......................................... 9
   6.   Projected Budget Period .................................................................................... 9
   7.   Funding Instrument Type:    Grant .................................................................... 9
C.   Eligibility Information ................................................................................................ 9
   1.   Eligible Applicants ............................................................................................ 9
   2.   Applicant Eligibility Criteria .......................................................................... 10
   3.   Subawards and Beneficiaries .......................................................................... 11
   4.   Other Eligibility Criteria/Restrictions ............................................................ 11
      a. National Fire Incident Reporting System (NFIRS) .................................... 11
      b. National Incident Management System (NIMS) ........................................ 11
   5.   Maintenance of Effort (MOE) ........................................................................ 11
   6.   Cost Share or Match ........................................................................................ 12
      a. Types of Cost Share ................................................................................... 12
      b. Economic Hardship Waivers ...................................................................... 13
D.   Application and Submission Information .................................................................. 13
   1.   Key Dates and Times ...................................................................................... 13
      a. Application Start Date:  11/12/2024 at 9 AM ET ...................................... 13
      b. Application Submission Deadline: 12/20/2024 at 5 PM ET ....................... 13
      c. Anticipated Funding Selection Date:  No later than April 30, 2025 .......... 13
      d. Anticipated Award Date: ............................................................................ 14
      e. Other Key Dates ......................................................................................... 14
   2.   Agreeing to Terms and Conditions of the Award ............................................ 14
   3.   Address to Request Application Package ......................................................... 14
   4.   Requirements: Obtain a Unique Entity Identifier (UEI) and Register in the System for
      Award Management (SAM.gov) ...................................................................... 14
   5.   Steps Required to Obtain a Unique Entity Identifier, Register in the System for Award
      Management (SAM), and Submit an Application ............................................ 15

6.    Electronic Delivery ................................................................................. 16
7.    How to Register to Apply ........................................................................ 16
      a. General Instructions: ......................................................................... 16
      b. Obtain an UEI Number: 3 .................................................................. 16
      c. Obtain Employer Identification Number ............................................ 16
      d. Create a login.gov account: .............................................................. 16
      e. Register with SAM: ........................................................................... 17
      f. Register in FEMA GO, Add the Organization to the System, and Establish the AOR:
         ................................................................................................................ 18
8.    Submitting the Application ...................................................................... 18
9.    Timely Receipt Requirements and Proof of Timely Submission ............. 18
10.   Content and Form of Application Submission .......................................... 19
      a. Standard Required Application Forms and Information ....................... 19
      b. Program-Specific Required Forms and Information ............................ 19
11.   Other Submission Requirements ............................................................. 19
12.   Funding Restrictions and Allowable Costs .............................................. 20
      a. Prohibitions on Expending FEMA Award Funds for Covered Telecommunications
      Equipment or Services ............................................................................. 20
      b. Pre-Award Costs ................................................................................ 21
      c. Management and Administration (M&A) Costs .................................. 22
      d. Indirect Facilities & Administrative (F&A) Costs ............................... 22
      e. Evaluation Costs ................................................................................ 23
      f. Other Direct Costs ............................................................................. 23
E.  Application Review Information ...................................................................... 25
    1.    Application Evaluation Criteria .............................................................. 25
          a. Programmatic Criteria ...................................................................... 25
          b. Financial Integrity Criteria ............................................................... 25
          c. Supplemental Financial Integrity Criteria and Review ...................... 26
    2.    Review and Selection Process ................................................................ 26
          a. Pre-Scoring Process .......................................................................... 26
          b. Peer Review Panel Process ................................................................ 27
          c. Technical Evaluation Process (TEP) ................................................. 28
F.  Federal Award Administration Information ...................................................... 29
    1.    Notice of Award .................................................................................... 29
    2.    Difference between Application Request and Award .............................. 29
    3.    Turndown Notifications ......................................................................... 29
    4.    Administrative and National Policy Requirements ................................. 29
          a. DHS Standard Terms and Conditions ............................................... 30
          b. Ensuring the Protection of Civil Rights ............................................ 30
          c. Environmental Planning and Historic Preservation (EHP) Compliance .............. 30
          d. Mandatory Disclosures ..................................................................... 33
    5.    Reporting ............................................................................................... 33
          a. Financial Reporting Requirements .................................................... 33
          b. Programmatic Performance Reporting Requirements ........................ 33
          c. Closeout Reporting Requirements ..................................................... 34
          d. Additional Reporting Requirements .................................................. 35

*FY 2024 AFG NOFO*

6. Monitoring and Oversight ........................................................................... 36

G. DHS Awarding Agency Contact Information ....................................................... 38

  1. Contact and Resource Information ..................................................................... 38

    a. AFG Program Office Contact ........................................................................ 38

    b. FEMA Grants News ..................................................................................... 38

    c. Grant Programs Directorate (GPD) Award Administration Division ....................... 38

    d. FEMA Regional Offices ................................................................................ 38

    e. Civil Rights .................................................................................................. 38

    f. Environmental Planning and Historic Preservation .......................................... 39

  2. Systems Information ......................................................................................... 39

    a. FEMA GO ................................................................................................... 39

H. Additional Information .......................................................................................... 39

  1. Termination Provisions ..................................................................................... 39

    a. Noncompliance ............................................................................................ 39

    b. With the Consent of the Recipient .................................................................. 39

    c. Notification by the Recipient .......................................................................... 39

  2. Program Evaluation ......................................................................................... 40

  3. Period of Performance Extensions ...................................................................... 40

  4. Disability Integration ......................................................................................... 41

  5. Conflicts of Interest in the Administration of Federal Awards or Subawards .............. 42

  6. Procurement Integrity ....................................................................................... 43

    a. Important Changes to Procurement Standards in 2 C.F.R. Part 200 ...................... 43

    b. Competition and Conflicts of Interest ............................................................. 44

    c. Supply Schedules and Purchasing Programs ................................................... 46

    d. Procurement Documentation ........................................................................ 47

  7. Financial Assistance Programs for Infrastructure .................................................. 47

    a. Build America, Buy America Act .................................................................... 47

    b. Waivers ..................................................................................................... 48

    c. Definitions .................................................................................................. 49

  8. Record Retention ............................................................................................ 49

    a. Record Retention Period .............................................................................. 49

    b. Types of Records to Retain ........................................................................... 50

  9. Actions to Address Noncompliance ..................................................................... 50

  10. Audits ........................................................................................................... 51

  11. Payment Information ........................................................................................ 53

  12. Whole Community Preparedness ....................................................................... 53

  13. Report issues of fraud, waste, abuse .................................................................. 53

  14. Hazard-Resistant Building Codes ...................................................................... 53

  15. Appendix A – FY 2024 AFG Program Updates ..................................................... 53

  16. Appendix B – Programmatic Information and Priorities .......................................... 54

    a. Ineligible Applications and/or Organizations .................................................... 55

    b. Supporting Definitions for this NOFO ............................................................. 56

    c. Community Classifications ............................................................................ 57

    d. Application Tips ........................................................................................... 57

    e. Restrictions on Uses of Award Funds ............................................................. 58

    f. Funding Priorities ........................................................................................ 59

    g. Regional Applications ................................................................................. 77

    h. Vehicle Acquisition ................................................................................... 79

17. Appendix C – Award Administration Information ........................................... 85

    a. Help FEMA Prevent Fraud, Waste, and Abuse ......................................... 86

    b. Economic Hardship Waivers of Cost Share and Maintenance of Effort.................. 86

    c. Grant Writer/Preparation Fees.................................................................. 86

    d. Maintenance and Sustainment for AFG Programs ................................... 87

    e. Taxes, Fees, Levies, and Assessments ...................................................... 88

    f. Excess Funds ............................................................................................. 88

    g. Payments and Amendments .................................................................... 89

    h. Disposition of Grant Funded Equipment.................................................. 91

**A.** **Program Description**
1. **Issued By**
   U.S. Department of Homeland Security (DHS)/Federal Emergency Management Agency (FEMA)/Grant Programs Directorate (GPD)

2. **Assistance Listings Number**
   97.044

3. **Assistance Listings Title**
   Assistance to Firefighters Grant (AFG)

4. **Funding Opportunity Title**
   Fiscal Year 2024 Assistance to Firefighters Grant (AFG)

5. **Funding Opportunity Number**
   DHS-24-GPD-044-00-98

6. **Authorizing Authority for Program**
   Section 33 of the *Federal Fire Prevention and Control Act of 1974*, Pub. L. No. 93-498, as amended (15 U.S.C § 2229)

7. **Appropriation Authority for Program**
   Department of Homeland Security Appropriations Act, 2024, Pub. L. No. 118-47, Title III, Protection, Preparedness, Response, and Recovery, Federal Emergency Management Agency, Federal Assistance (2024 DHS Appropriations Act)

8. **Announcement Type**
   Initial

9. **Program Category**
   Preparedness: Fire and Life Safety

10. **Program Overview, Objectives, and Priorities**

    a. **Overview**
       The Fiscal Year (FY) 2024 Assistance to Firefighters Grant (AFG) Program is one of three grant programs that constitute the Department of Homeland Security (DHS), Federal Emergency Management Agency's (FEMA's) focus on enhancing the safety of the firefighters and therefore the public with respect to fire and fire-related hazards. The AFG Program provides financial assistance directly to eligible fire departments, nonaffiliated emergency medical service (EMS) organizations, and State Fire Training Academies (SFTAs) for critical training and equipment. The AFG Program has awarded approximately $8.7 billion in grant funding to provide critically needed resources that equip and train emergency personnel to recognized standards, enhance operational efficiencies, foster interoperability, and support community resilience. Since FY 2018, the AFG Program has awarded more than 800 fire apparatuses,

150,000 personal protective equipment items, and 126,000 other fire equipment to more than 7,000 unique recipients. During the same period, the AFG Program provided funding to 915 recipients to modify department facilities or implement wellness and fitness priorities to protect firefighter health. Information about success stories for this program can be found at [Assistance to Firefighters Grants Program | FEMA.gov](Assistance to Firefighters Grants Program | FEMA.gov).

The AFG Program represents part of a comprehensive set of measures authorized by Congress and implemented by DHS. In awarding grants, the FEMA Administrator is required to consider:

- The findings and recommendations of the Technical Evaluation Panel (TEP);
- The degree to which an award will reduce deaths, injuries and property damage by reducing the risks associated with fire related and other hazards;
- The extent of an applicant's need for an AFG Program grant and the need to protect the United States as a whole; and
- The number of calls requesting or requiring a firefighting or emergency medical response received by an applicant.

**b. Goals, Objectives, and Priorities**
<u>Goal</u>: Enhance the safety of the public and firefighters with respect to fire and fire-related hazards.

<u>Objectives</u>: Provide critically needed resources that equip and train emergency personnel to recognized standards, outfit responders with compliant personal protective equipment to increase responders' physical protection against hazards during incident response, provide funding to retrofit or modify facilities to protect personnel from known health hazards, acquire emergency response vehicles, design and implement health, wellness and resiliency programs that prepare responders for incident response, enhance operational efficiencies, foster interoperability, and support community resilience.

<u>Priorities</u>: Information on program priorities and objectives for the FY 2024 AFG Program can be found in [Appendix B – Programmatic Information and Priorities.](Appendix B – Programmatic Information and Priorities.)

**c. Alignment to Program Purpose and the DHS and FEMA Strategic Plan**
The AFG Program represents part of a comprehensive set of measures authorized by Congress and implemented by DHS. Among the five basic homeland security missions noted in the [DHS Strategic Plan for Fiscal Years 2020-2024](DHS Strategic Plan for Fiscal Years 2020-2024), the AFG Program supports the goal to Strengthen Preparedness and Resilience.

The [2022-2026 FEMA Strategic Plan](2022-2026 FEMA Strategic Plan) creates a shared vision for the field of emergency management and sets an ambitious, yet achievable, path forward to unify and further professionalize emergency management across the country. The AFG Program directly supports Goal 3 to Promote and Sustain a Ready FEMA and

Prepared Nation. We invite all our stakeholders and partners to join us in building a more prepared and resilient nation.

## 11. Performance Measures

The grant recipient is required to collect data to allow FEMA to measure performance of the awarded grant in supporting AFG Program metrics, which are tied to the programmatic objectives and priorities. To measure performance, FEMA may request information throughout the period of performance. In its final performance report submitted at closeout, the recipient must submit sufficient information to demonstrate it has met the performance goal as stated in its award. FEMA will measure the recipient's performance of the grant by comparing the number of items, supplies, projects, and activities needed and requested in its application with the number acquired and delivered by the end of the period of performance using the following programmatic metrics:

- Percentage of AFG Program personal protective equipment (PPE) recipients who equipped 100% of on-duty active members with PPE in compliance with applicable NFPA and Occupational Safety and Health Administration (OSHA) standards.
- Percentage of AFG Program equipment recipients who reported that the grant award brought them into compliance with either state, local, NFPA or OSHA standards.
- Number of AFG Program grant recipients who reported having successfully replaced their fire vehicles in accordance with industry standards.
- Percentage of AFG Program training recipients who reported that the grant award allows their members to achieve firefighter training level I and firefighter training level II within one year of coming into service.
- Percentage of AFG Program wellness and fitness recipients who reported that the grant award allows their members to achieve minimum physical and/or mental operational readiness requirements through tailored health-related fitness programs.
- Percentage of AFG Program grant recipients for modifications to facilities projects who reported that the grant award brought them into compliance with either state, local, NFPA, or OSHA standards on housing and readiness posture.

Please see Appendix B for additional information on the criteria used to evaluate the program priorities.

## B. **Federal Award Information**

**1.** Available Funding for the NOFO:               $291,600,000[1]

**2.** Projected Number of Awards:               2,000

---

[1] Note that this figure differs from the total amount appropriated under the Department of Homeland Security Appropriations Act, 2024, Pub. L. No. 118-47, Title III, Protection, Preparedness, Response, and Recovery, Federal Emergency Management, Agency, Federal Assistance (2024 DHS Appropriations Act). In this FY 2024 AFG Program NOFO, percentages of "available grant funds" refers to the total amount appropriated—$324,000,000—by Pub. L. No. 118-47 to meet the statutory requirements of § 33 of the *Federal Fire Prevention and Control Act of 1974*, as amended (codified at 15 U.S.C. § 2229). A portion of these "available grant funds" will be allocated to the Fire Prevention and Safety (FP&S) Program, which will have a separate NOFO and application period. $32,400,000 will be allocated to FP&S for FY 2024.

*FY 2024 AFG NOFO*

**3.** Period of Performance:                                      24 months

Extensions to the period of performance are allowed. For additional information on period of performance extensions, please refer to Section H of this NOFO.

**4.** Projected Period of Performance Start Date(s):        N/A[2]

**5.** Projected Period of Performance End Date(s):        N/A

**6. Projected Budget Period**

There will be only a single budget period with the same start and end dates as the period of performance.

**7. Funding Instrument Type:**                                Grant

**C. Eligibility Information**
**1. Eligible Applicants**

- ***Fire Departments:*** Fire departments operating in any of the 50 states, as well as fire departments in the District of Columbia, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, Guam, American Samoa, the Commonwealth of Puerto Rico,[3] or any federally recognized Indian tribe or tribal organization. A fire department is an agency or organization having a formally recognized arrangement with a state, local, tribal or territorial authority (city, county, parish, fire district, township, town or other governing body) to provide fire suppression to a population within a geographically fixed primary first due response area.

- ***Nonaffiliated EMS organizations:*** Nonaffiliated EMS organizations operating in any of the 50 states, as well as the District of Columbia, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, Guam, American Samoa, the Commonwealth of Puerto Rico,[3] or any federally recognized Indian tribe or tribal organization. A nonaffiliated EMS organization is an agency or organization that is a public or private nonprofit emergency medical service entity providing medical transport that is not affiliated with a hospital and does not serve a geographic area in which emergency medical services are adequately provided by a fire department. FEMA considers the following as hospitals under the AFG Program:
  - Clinics;

---

[2] FEMA funds AFG Program awards on a rolling basis; as such, the date the FEMA Assistant Administrator for the Grant Programs Directorate signs the obligating document dictates the unique Period of Performance start and end dates for each award.
[3] The District of Columbia, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, Guam, American Samoa, and the Commonwealth of Puerto Rico are all defined as "States" in the Federal Fire Prevention and Control Act of 1974. *See* 15 U.S.C. § 2203(10).

*FY 2024 AFG NOFO*

> o Medical centers;
> o Medical colleges or universities;
> o Infirmaries;
> o Surgery centers; and
> o Any other institution, association, or foundation providing medical, surgical or psychiatric care and/or treatment for the sick or injured.

- ***State Fire Training Academies***: A SFTA operates in any of the 50 states, as well as the District of Columbia, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, Guam, American Samoa, and the Commonwealth of Puerto Rico.[3] Applicants must be designated either by legislation or by a governor's declaration as the sole fire service training agency within a state, territory, or the District of Columbia and recognized by the National Fire Academy. The designated SFTA shall be the only agency, bureau, division or entity within that state, territory, or the District of Columbia, to be an eligible SFTA applicant under the AFG Program.

- ***Non-federal airport and/or port authority fire or EMS organizations*** are eligible only if they have a formally recognized arrangement with the local jurisdiction to provide fire suppression or emergency medical services on a first-due basis outside the confines of the airport or port facilities. Airport or port authority fire and EMS organizations whose sole responsibility is suppression of fires or EMS response on the airport grounds or port facilities are not eligible for funding under the AFG Program.

An application submitted by an otherwise eligible non-federal entity (i.e., the applicant) may be deemed ineligible when the person that submitted the application is not: ***1) a current employee, personnel, official, staff or leadership of the non-federal entity; and 2) duly authorized to apply for an award on behalf of the non-federal entity at the time of application.***

Further, the Authorized Organization Representative (AOR) must be a duly authorized current employee, personnel, official, staff or leadership of the recipient and ***provide an email address unique to the recipient at the time of application and upon any change in assignment during the period of performance. Consultants or contractors of the recipient are not permitted to be the AOR of the recipient.***

2. **Applicant Eligibility Criteria**
   The FY 2024 AFG Program has three activities:
   - Operations and Safety;
   - Vehicle Acquisition; and
   - Regional Projects.

   Each activity has its own eligibility requirements. These requirements are outlined in
   [Appendix B– Programmatic Information and Priorities](#).

**3. Subawards and Beneficiaries**

   **a.** *Subaward allowability*
   Subawards are not allowed under the AFG Program.

   **b.** *Beneficiaries or Participants*
   This NOFO and any subsequent federal awards create no rights or causes of action for any participant or beneficiary.

**4. Other Eligibility Criteria/Restrictions**

   **a.** *National Fire Incident Reporting System (NFIRS)*
   Although NFIRS reporting is not a requirement to apply for AFG Program funding, fire departments that receive funding under this program must agree to provide information to the NFIRS for the period of performance covered by the assistance. If a recipient does not currently participate in the incident reporting system and does not have the capacity to report at the time of the award, that recipient must agree to provide information to the system for a 12-month period commencing as soon as possible after they develop the capacity to report. Capacity to report to NFIRS must be established prior to the end of the 24-month performance period. The recipient may be asked by FEMA to provide proof of compliance in reporting to NFIRS. Any recipient that stops reporting to NFIRS during their grant's period of performance may be subject to the remedies for noncompliance at 2 C.F.R. § 200.339, unless it has yet to develop the capacity to report to NFIRS, as described above. There is no NFIRS reporting requirement for nonaffiliated EMS organizations or SFTAs.

   **Note**: Although data collection is an important tool for understanding and justifying assistance, participation in other data sources (e.g., National Fire Operations Reporting System [NFORS]) does not satisfy the requirement for reporting to NFIRS.

   **b.** *National Incident Management System (NIMS)*
   AFG Program applicants are not required to comply with NIMS to apply for AFG Program funding or to receive an AFG Program award. However, any applicant who receives an FY 2024 AFG Program award must achieve the level of NIMS compliance required by the Authority Having Jurisdiction (AHJ) over the applicant's emergency service operations (e.g., a local government) prior to the end of the grant's period of performance.

**5. Maintenance of Effort (MOE)**
Pursuant to 15 U.S.C. § 2229(k)(3), an applicant seeking an AFG Program grant shall agree to maintain, during the term of the grant, the applicant's aggregate expenditures relating to activities allowable under this NOFO, at not less than 80% of the average amount of such expenditures in the two fiscal years prior to the fiscal year an AFG Program grant is awarded.

In other words, an applicant agrees that if it receives a grant award, the applicant will keep its overall expenditures during the award's period of performance to at least 80% or more of the

average of what the applicant spent on such costs for those activities in fiscal years 2022 and 2023. This includes those funded with non-federal funding for activities that could be allowable costs under this NOFO.

6. **Cost Share or Match**

Recipient cost sharing is generally required as described below and pursuant to 15 U.S.C.§ 2229(k)(1). In general, eligible applicants shall agree to make available non-federal funds to carry out an AFG Program award in an amount equal to not less than 15% of the federal funds awarded. Exceptions to this general requirement apply to entities serving smaller communities as follows:

- When serving a jurisdiction of 20,000 residents or fewer, the applicant shall agree to make available non-federal funds in an amount equal to not less than 5% of the grant awarded;
- When serving a jurisdiction of more than 20,000 residents but not more than 1 million residents, the applicant shall agree to make available non-federal funds in an amount equal to not less than 10% of the grant awarded; or
- When serving a jurisdiction of more than 1 million residents, the applicant shall agree to make available non-federal funds in an amount equal to not less than 15% of the grant awarded.

The cost share for SFTAs will apply the requirements above based on the total population of the state. The cost share for a Regional application will apply the requirements above based on the aggregate population of the primary first due response areas of the host and participating partner organizations that execute a Memorandum of Understanding as described in [Appendix B.g- Regional Applications](#).

FEMA has developed a cost share calculator tool to assist applicants with determining their cost share. The cost share tool is available on the FEMA website at [Assistance to Firefighters Grants](#).

a. *Types of Cost Share*
   i. *Cash (Hard Match):* Cost share of non-federal cash is the only allowable recipient contribution for AFG Program activity (Vehicle Acquisition, Operations and Safety, and Regional).
   ii. *Trade-In Allowance/Credit:* On a case-by-case basis, FEMA may allow recipients already owning assets acquired with non-federal cash to use the trade-in allowance/credit value of those assets as cash for the purpose of meeting their cost share obligation. For FEMA to consider a trade-in allowance/credit value as cash, the allowance amount must be reasonable, and the allowance amount must be a separate entry clearly identified in the acquisition documents.
   iii. *In-kind (Soft Match):* In-kind cost share is not allowable for the AFG Program.

   The award budget will not account for any voluntary committed cost sharing or overmatch. The use of an overmatch is not given additional consideration when scoring applications.

**b.** *Economic Hardship Waivers*
The FEMA Administrator may waive or reduce recipient cost share or MOE requirements in cases of demonstrated economic hardship. Please see Appendix C – Award Administration Information for additional information.

**D.** <u>Application and Submission Information</u>
**1.** **Key Dates and Times**

    *a.*     *Application Start Date:*         11/12/2024 at 9 AM ET

    *b.*     *Application Submission Deadline:*    12/20/2024 at 5 PM ET

All applications **must** be received by the established deadline.

FEMA's Grants Outcomes System (FEMA GO) automatically records proof of timely submission and the system generates an electronic date/time stamp when FEMA GO successfully receives the application. The individual with the AOR role that submitted the application will also receive the official date/time stamp and a FEMA GO tracking number in an email serving as proof of their timely submission. For additional information on how an applicant will be notified of application receipt, see the subsection titled "Timely Receipt Requirements and Proof of Timely Submission" in Section D of this NOFO.

**FEMA will not review applications that are received after the deadline or consider these late applications for funding**. FEMA may, however, extend the application deadline on request for any applicant who can demonstrate that good cause exists to justify extending the deadline. Good cause for an extension may include technical problems outside of the applicant's control that prevent submission of the application by the deadline, other exigent or emergency circumstances, or statutory requirements for FEMA to make an award.

**Applicants experiencing technical problems outside of their control must notify FEMA as soon as possible and before the application deadline**. Failure to timely notify FEMA of the issue that prevented the timely filing of the application may preclude consideration of the award. "Timely notification" of FEMA means the following: prior to the application deadline and within 48 hours after the applicant became aware of the issue.

A list of FEMA contacts can be found in Section G of this NOFO, "DHS Awarding Agency Contact Information." For technical assistance with the FEMA GO system, please contact the FEMA GO Helpdesk at femago@fema.dhs.gov or (877) 585-3242, Monday through Friday, 9 AM – 6 PM Eastern Time (ET). For programmatic or grants management questions, please contact your Program Analyst or Grants Management Specialist. If applicants do not know who to contact or if there are programmatic questions or concerns, please contact the AFG Program Helpdesk at (866) 274-0960 or by e-mail at FireGrants@fema.dhs.gov. The AFG Program Helpdesk is open Monday through Friday, 8 AM – 4:30 PM ET.

    **c.**   *Anticipated Funding Selection Date*: No later than April 30, 2025

**d.** *Anticipated Award Date:*
Beginning on approximately April 30, 2025 and continuing thereafter until all FY 2024 AFG Program grant awards are issued (but no later than September 30, 2025).

**e.** *Other Key Dates*

| Event | Suggested Deadline for Completion |
|---|---|
| Obtaining Unique Entity Identifier (UEI) number | Four weeks before actual submission deadline |
| Obtaining a valid Employer Identification Number (EIN) | Four weeks before actual submission deadline |
| Creating an account with login.gov | Four weeks before actual submission deadline |
| Registering in SAM or updating SAM registration | Four weeks before actual submission deadline |
| Registering Organization in FEMA GO | Prior to beginning application |
| Submitting complete application in FEMA GO | One week before actual submission deadline |

**2. Agreeing to Terms and Conditions of the Award**
By submitting an application, applicants agree to comply with the requirements of this NOFO and the terms and conditions of the award, should they receive an award.

**3. Address to Request Application Package**
Applications are processed through the FEMA GO system. To access the system, go to https://go.fema.gov/.

Hard copies of the NOFO can be downloaded at Grants.gov or obtained via email from the Awarding Office points of contact listed in Section G of this NOFO, "DHS Awarding Agency Contact Information" or by TTY (800) 462-7585.

**4. Requirements: Obtain a Unique Entity Identifier (UEI) and Register in the System for Award Management (SAM.gov)**
Each applicant, unless they have a valid exception under 2 CFR §25.110, must:
   a. Be registered in Sam.Gov before application submission.
   b. Provide a valid UEI in its application.
   c. Continue to always maintain an active SAM registration with current information during the federal award process. Note: Per 2 C.F.R. § 25.300, subrecipients are NOT required to go through the full SAM registration process. First-tier subrecipients (meaning entities receiving funds directly from the recipient) are only required to obtain a UEI through SAM, but they are not required to complete the full SAM registration in order to obtain a UEI. Recipients may not make subawards unless the subrecipient has obtained and provided the UEI.

Lower-tier subrecipients (meaning entities receiving funds passed through by a higher-tier subrecipient) are not required to have a UEI and are not required to register in SAM.

Applicants are also not permitted to require subrecipients to complete a full registration in SAM beyond obtaining the UEI.

**5. Steps Required to Obtain a Unique Entity Identifier, Register in the System for Award Management (SAM), and Submit an Application**

Applying for an award under this program is a multi-step process and requires time to complete. Applicants are encouraged to register early as the registration process can take four weeks or more to complete. Therefore, registration should be done in sufficient time to ensure it does not impact your ability to meet required submission deadlines.

Please review the table above for estimated deadlines to complete each of the steps listed. Failure of an applicant to comply with any of the required steps before the deadline for submitting an application may disqualify that application from funding.

To apply for an award under this program, all applicants must:

    a. Apply for, update, or verify their UEI number and Employer Identification Number (EIN) from the Internal Revenue Service;

    b. In the application, provide an UEI number;

    c. Have an account with login.gov;

    d. Register for, update, or verify their SAM account and ensure the account is active before submitting the application;

    e. Register in FEMA GO, add the organization to the system, and establish the AOR. The organization's electronic business point of contact (EBiz POC) from the SAM registration may need to be involved in this step. For step-by-step instructions, see https://www.fema.gov/grants/guidance-tools/fema-go/startup;

    f. Submit the complete application in FEMA GO; and

    g. Continue to maintain an active SAM registration with current information at all times during which it has an active federal award or an application or plan under consideration by a federal awarding agency. As part of this, applicants must also provide information on an applicant's immediate and highest-level owner and subsidiaries, as well as on all predecessors that have been awarded federal contracts or federal financial assistance within the last three years, if applicable.

Applicants are advised that FEMA may not make a federal award until the applicant has complied with all applicable SAM requirements. Therefore, an applicant's SAM registration must be active not only at the time of application, but also during the application review period and when FEMA is ready to make a federal award. Further, as noted above, an applicant's or recipient's SAM registration must remain active for the duration of an active federal award. If an applicant's SAM registration is expired at the time of application, expires during application review, or expires any other time before award, FEMA may determine that the applicant is not qualified to receive a federal award and use that determination as a basis for making a federal award to another applicant.

Per 2 C.F.R. § 25.110(c)(2)(iii), if an applicant is experiencing exigent circumstances that prevents it from obtaining an UEI number and completing SAM registration prior to

receiving a federal award, the applicant must notify FEMA as soon as possible by contacting FireGrants@fema.dhs.gov and providing the details of the circumstances that prevent completion of these requirements. If FEMA determines that there are exigent circumstances and FEMA has decided to make an award, the applicant will be required to obtain an UEI number, if applicable, and complete SAM registration within 30 days of the federal award date.

## 6. Electronic Delivery

DHS is participating in the Grants.gov initiative to provide the grant community with a single site to find and apply for grant funding opportunities. DHS encourages or requires applicants to submit their applications online through Grants.gov, depending on the funding opportunity.

For this funding opportunity, FEMA requires applicants to submit applications through FEMA GO.

## 7. How to Register to Apply

### a. General Instructions:

Registering and applying for an award under this program is a multi-step process and requires time to complete. Read the instructions below about registering to apply for FEMA funds. Applicants should read the registration instructions carefully and prepare the information requested before beginning the registration process. Reviewing and assembling the required information before beginning the registration process will alleviate last-minute searches for required information.

**The registration process can take up to four weeks to complete.** To ensure an application meets the deadline, applicants are advised to start the required steps well in advance of their submission.

Organizations must have an UEI number, an EIN, and an active SAM registration to apply for a federal award under this funding opportunity.

### b. Obtain an UEI Number: *3*

All entities applying for funding, including renewal funding, must have a UEI number. Applicants must enter the UEI number in the applicable data entry field on the SF-424 form.

For more detailed instructions for obtaining a UEI number, refer to: SAM.gov

### c. Obtain Employer Identification Number

All entities applying for funding must provide an Employer Identification Number (EIN). The EIN can be obtained from the IRS by visiting https://www.irs.gov/businesses/small-businesses-self-employed/apply-for-an-employer-identification-number-ein-online.

### d. Create a login.gov account:

*FY 2024 AFG NOFO*

Applicants must have a login.gov account in order to register with SAM or update their SAM registration. Applicants can create a login.gov account here: https://secure.login.gov/sign_up/enter_email?request_id=34f19fa8-14a2-438c-8323-a62b99571fd3.

Applicants only have to create a login.gov account once. For applicants that are existing SAM users, use the same email address for the login.gov account as with SAM.gov so that the two accounts can be linked.

For more information on the login.gov requirements for SAM registration, refer to https://www.sam.gov/SAM/pages/public/loginFAQ.jsf.

**e.   Register with SAM:**
All applicants applying online through FEMA GO must register with SAM. Failure to register with SAM will prevent an applicant from completing the application in FEMA GO. SAM registration must be renewed annually. Organizations will be issued a UEI number with the completed SAM registration.

For more detailed instructions for registering with SAM, refer to https://apply07.grants.gov/help/html/help/Register/RegisterWithSAM.htm.

Note: Per 2 C.F.R. § 25.200, applicants must also provide the applicant's immediate and highest-level owner, subsidiaries, and predecessors that have been awarded federal contracts or federal financial assistance within the past three years, if applicable.

**I.   ADDITIONAL SAM REMINDERS**
Existing SAM.gov account holders should check their account to make sure it is "ACTIVE" SAM registration should be completed at the very beginning of the application period and should be renewed annually to avoid being "INACTIVE." **Please allow plenty of time before the grant application submission deadline to obtain an UEI number and then to register in SAM. It may be four weeks or more after an applicant submits the SAM registration before the registration is active in SAM, and then it may be an additional 24 hours before FEMA's system recognizes the information.**

It is imperative that the information applicants provide is correct and current. Please ensure that your organization's name, address, and EIN are up to date in SAM and that the UEI number used in SAM is the same one used to apply for all other FEMA awards. Payment under any FEMA award is contingent on the recipient's having a current SAM registration.

**II.   HELP WITH SAM**
The SAM quick start guide for new recipient registration and SAM video tutorial for new applicants are tools created by the General Services Administration (GSA) to assist those registering with SAM. If applicants have questions or

concerns about a SAM registration, please contact the Federal Support Desk at https://www.fsd.gov/fsd-gov/home.do or call toll free (866) 606-8220.

**f. Register in FEMA GO, Add the Organization to the System, and Establish the AOR:**
Applicants must register in FEMA GO and add their organization to the system. The organization's electronic business point of contact (EBiz POC) from the SAM registration may need to be involved in this step. For step-by-step instructions, see https://www.fema.gov/grants/guidance-tools/fema-go/startup.

Note: FEMA GO will support only the most recent major release of the following browsers:
- Google Chrome
- Internet Explorer
- Mozilla Firefox
- Apple Safari
- Microsoft Edge

Users who attempt to use tablet type devices or other browsers may encounter issues with using FEMA GO.

**8. Submitting the Application**
Applicants will be prompted to submit the standard application information and any program-specific information required as described in Section D.10 of this NOFO, "Content and Form of Application Submission." The Standard Forms (SF) may be accessed in the Forms tab under the https://grants.gov/forms/forms-repository/sf-424-family Applicants should review these forms before applying to ensure they have all the information required.

After submitting the final application, FEMA GO will provide either an error message or a successfully received transmission in the form of an email sent to the AOR that submitted the application. Applicants using slow internet connections, such as dial-up connections, should be aware that transmission can take some time before FEMA GO receives your application.

For additional application submission requirements, including program-specific requirements, please refer to the subsection titled "Content and Form of Application Submission" under Section D of this NOFO.

**9. Timely Receipt Requirements and Proof of Timely Submission**
All applications must be completed in FEMA GO by the application deadline. FEMA GO automatically records proof of timely submission and the system generates an electronic date/time stamp when FEMA GO successfully receives the application. The individual with the AOR role that submitted the application will also receive the official date/time stamp and a FEMA GO tracking number in an email serving as proof of their timely submission on the date and time that FEMA GO received the application.

**Applicants who experience system-related issues will be addressed until 3:00 PM ET on the date applications are due.** No new system-related issues will be addressed after this deadline. Applications not received by the application submission deadline will not be accepted.

### 10. Content and Form of Application Submission

    **a.** *Standard Required Application Forms and Information*

        The following forms or information are required to be submitted via FEMA GO. The Standard Forms (SF) are also available at https://grants.gov/forms/forms-repository/sf-424-family

- **SF-424, Application for Federal Assistance**
- **Grants.gov Lobbying Form, Certification Regarding Lobbying**
- **SF-424A, Budget Information (Non-Construction)**
- **SF-424B, Standard Assurances (Non-Construction)**
- **SF-LLL, Disclosure of Lobbying Activities**

    **b.** *Program-Specific Required Forms and Information*

        Program-specific forms or information are required to be submitted in FEMA GO. For program-specific required and optional forms and information, please see the Appendices to this NOFO.

### 11. Other Submission Requirements

FEMA evaluates each application on its merit, veracity, and accuracy to ascertain how the narrative statement(s) outlined within the application depicts the applicant's and community's uniqueness, their particular risks, and how selecting them over a similarly situated applicant advances the objectives of AFG to provide critically needed resources that equip and train emergency personnel to recognized standards, enhance operational efficiencies, foster interoperability, and support community resilience. At any time during application review process, including the technical review stage, FEMA may request additional documentation from applicants, including but not limited to:

- Copies of official or certified documents demonstrating the claimed financial need;
- Copies of the applicant's needs assessment report, survey, or any documented other efforts undertaken to identify the applicant's unique project objectives;
- Copies of the risk analysis conducted to ascertain how said project will address the applicant's unique needs in alignment with their mission and AFG grant purpose;
- Additional information or evidence detailing the applicant's particular risks; and
- Any other information deemed necessary to adequately weigh the applicant's assistance request for funding under this discretionary-competitive grant program. No applicant is guaranteed funding.

The narrative statement blocks do not allow for formatting. Do not type the narrative statements using only capital letters. Additionally, do not include tables, special characters, fonts (e.g., quotation marks, bullets), or graphs. Space for the narrative statements is limited. Although each element must have a minimum of 200 characters, the maximum number of characters varies based on the questions being asked.

## 12. Funding Restrictions and Allowable Costs

All costs charged to federal awards (including both federal funding and any non-federal matching or cost sharing funds) must comply with applicable statutes, rules and regulations, and policies, this NOFO, and the terms and conditions of the federal award. They must also comply with the Uniform Administrative Requirements, Cost Principles, and Audit Requirements at 2 C.F.R. Part 200 unless otherwise indicated in the NOFO or the terms and conditions of the federal award. This includes, among other requirements, that costs must be incurred and products and services must be delivered within the budget period. 2 C.F.R. § 200.403(h). The following identifies a list of activities for which a recipient may not use federal funds and any cost sharing or matching funds under federal awards:

- Matching or cost sharing requirements for other federal grants and cooperative agreements (see 2 C.F.R. § 200.306)
- Lobbying or other prohibited activities under 18 U.S.C. § 1913 or 2 C.F.R. § 200.450
- Prosecuting claims against the federal government or any other government entity (see 2 C.F.R. § 200.435) See subsections below for information on any other funding restrictions.

*Additionally, federal employees are prohibited from serving in any capacity (paid or unpaid) on the development of any proposal submitted under this program.*

### a. *Prohibitions on Expending FEMA Award Funds for Covered Telecommunications Equipment or Services*

Recipients, subrecipients, and their contractors must comply with the prohibitions set forth in Section 889 of the John S. McCain National Defense Authorization Act for Fiscal Year 2019, Pub. L. No. 115-232 (2018) (FY 2019 NDAA) and 2 C.F.R. §§ 200.216, 200.327, 200.471, and Appendix II to 2 C.F.R. Part 200. The FY 2019 NDAA and these regulations, as they apply to recipients, subrecipients, and their contractors and subcontractors, provide for two distinct prohibitions: (1) prevent the use of federal award funds to procure or obtain covered telecommunications equipment or services; and (2) prevent the use of federal award funds to contract with an entity that uses such covered telecommunications equipment or services. Guidance is available at FEMA Policy #405-143-1 - Prohibitions on Expending FEMA Award Funds for Covered Telecommunications Equipment or Services

Additional guidance is available at Contract Provisions Guide: Navigating Appendix II to Part 200 - Contract Provisions for Non-Federal Entity Contracts Under Federal Awards (fema.gov).

FEMA recipients and subrecipients **may not** use any FEMA funds under open or new awards to:

- Procure or obtain any equipment, system, or service that uses covered telecommunications equipment or services as a substantial or essential component of any system, or as critical technology of any system;
- Enter into, extend, or renew a contract to procure or obtain any equipment, system, or service that uses covered telecommunications equipment or

services as a substantial or essential component of any system, or as critical technology of any system; or

- Enter into, extend, or renew contracts with entities that use covered telecommunications equipment or services as a substantial or essential component of any system, or as critical technology as part of any system.

### I. REPLACEMENT EQUIPMENT AND SERVICES

FEMA grant funding may be permitted to procure replacement equipment and services impacted by this prohibition, provided the costs are otherwise consistent with the requirements of the NOFO.

### II. DEFINITIONS

Per section 889(f)(2)-(3) of the FY 2019 NDAA and 2 C.F.R. § 200.216, covered telecommunications equipment or services means:

  i. Telecommunications equipment produced by Huawei Technologies Company or ZTE Corporation, (or any subsidiary or affiliate of such entities);

  ii. For the purpose of public safety, security of Government facilities, physical security surveillance of critical infrastructure, and other national security purposes, video surveillance and telecommunications equipment produced by Hytera Communications Corporation, Hangzhou Hikvision Digital Technology Company, or Dahua Technology Company (or any subsidiary or affiliate of such entities);

  iii. Telecommunications or video surveillance services provided by such entities or using such equipment; or

  iv. Telecommunications or video surveillance equipment or services produced or provided by an entity that the Secretary of Defense, in consultation with the Director of National Intelligence or the Director of the Federal Bureau of Investigation, reasonably believes to be an entity owned or controlled by, or otherwise connected to, the People's Republic of China.

Examples of the types of products covered by this prohibition include phones, internet, video surveillance, and cloud servers when produced, provided, or used by the entities listed in the definition of "covered telecommunications equipment or services." *See* 2 C.F.R. § 200.471.

### b. *Pre-Award Costs*

Generally, grant funds cannot be used to pay for products and services contracted for or obligated prior to the effective date of the award. Fees for grant writers are considered an exception and may be included as a pre-award expenditure, see Appendix C for details. Further, other costs incurred after the application deadline, but prior to an offer of award, may be eligible for reimbursement only if the following conditions are met:

- The recipient must request approval from FEMA to incur such pre-award costs. Requests must be sent via email to FireGrants@fema.dhs.gov and include the application number and justification narrative. Please note, the recipient must seek approval at the time of acquisition and before the award is announced.
- The recipient must receive written confirmation from FEMA that the expenses have been reviewed and that FEMA has determined the costs to be justified, unavoidable, and consistent with the grant's scope of work.
- The pre-award cost must meet the requirements of 2 C.F.R. § 200.458, which provides that the costs must be necessary for efficient and timely performance of the grant's scope of work.

**Note**: FEMA reserves the right to re-evaluate and disallow pre-award costs at time of award monitoring if it is later determined that the services were not properly procured or do not satisfy the requirements of 2 C.F.R. § 200.458.

See Appendix C for further information regarding grant writer fees and Section H-Additional Information of this NOFO for general procurement under grants requirements.

c. ***Management and Administration (M&A) Costs***
M&A costs are allowed by Department of Homeland Security Appropriations Act, 2024, Pub. L. No. 118-47. M&A activities are those directly related to the management and administration of the AFG award funds, such as financial management and monitoring. M&A are not operational costs but are necessary costs incurred in direct support of the federal award or as a consequence of it, such as travel, meeting-related expenses, and salaries of full/part-time staff in direct support of the program. As such, M&A costs can be itemized in financial reports.

M&A expenses should be based only on actual expenses or known contractual costs. Requests that are simple percentages of the award, without supporting justification or adequate documentation, will not be allowed or considered for an award. In addition, reimbursement for fees associated with hiring grants management services is now capped at $1,500. No more than 3% of the federal share of AFG Program funds awarded may be expended by the recipient for M&A for purposes associated with the AFG Program award.

d. ***Indirect Facilities & Administrative (F&A) Costs***
Indirect (F&A) costs (IDC) mean those costs incurred for a common or joint purpose benefitting more than one cost objective and not readily assignable to the cost objectives specifically benefitted, without effort disproportionate to the results achieved. IDC are allowable by the recipient [and subrecipients] as described in 2 C.F.R. Part 200, including 2 C.F.R. § 200.414. Applicants with a current negotiated IDC rate agreement who desire to charge indirect costs to a federal award must provide a copy of their IDC rate agreement with their applications. Not all applicants are required to have a current negotiated IDC rate agreement. Applicants that are not

*FY 2024 AFG NOFO*

required to have a negotiated IDC rate agreement but are required to develop an IDC rate proposal must provide a copy of their proposal with their applications. Applicants who do not have a current negotiated IDC rate agreement (including a provisional rate) and wish to charge the de minimis rate must reach out to FireGrants@fema.dhs.gov for further instructions. Applicants who wish to use a cost allocation plan in lieu of an IDC rate proposal must reach out to FireGrants@fema.dhs.gov for further instructions. As it relates to the IDC for subrecipients, a recipient must follow the requirements of 2 C.F.R. §§ 200.332 and 200.414 in approving the IDC rate for subawards.

e. *Evaluation Costs*

Evaluation costs are allowable. See Section H.2 "Program Evaluation" for more details.

f. *Other Direct Costs*

- **Construction:** Construction costs are not eligible under the AFG Program. Construction includes major alterations to a building that changes the profile or footprint of the structure. Modifications to facilities activities described in Appendix B- Funding Priorities, are not considered construction costs for purposes of general award cost categorization and may be eligible. However, modifications to facilities activities might be considered "construction" for purposes of applicable procurement under grants requirements or environmental protection and historic preservation purposes.

- **Fire Departments and Nonaffiliated EMS organizations funding restrictions:** The total amount of funding a fire department or nonaffiliated EMS organization recipient may receive under an AFG Program award is limited to the maximum amounts set by § 33(c)(2) of the Federal Fire Prevention and Control Act of 1974, as amended (15 U.S.C. § 2229(c)(2)). These award limits are based on two factors: (1) population served and (2) a 1% aggregate amount of available grant funds.

  The population of the jurisdiction served by the recipient will determine the maximum amount of AFG Program funding a recipient is eligible to receive but no recipient may receive an award that exceeds 1% of available grant funds in FY 2024, or $2,916,000.00. FEMA may waive this aggregate cap in individual cases where FEMA determines that a recipient has an extraordinary need for a grant that exceeds the aggregate cap. FEMA may not waive the statutory funding caps based on population.

  The following table explains the maximum funding that a recipient may receive in FY 2024:

| Population of the jurisdiction served by the recipient | Maximum award in FY 2024 | Statutory waiver available subject to extraordinary need? |
|---|---|---|
| 100,000 or fewer people | No more than $1 million | None available |
| 100,001 – 500,000 people | No more than $2 million | None available |
| 500,001 – 1,000,000 people | No more than $2.91 million | None available |
| 1,000,001 – 2,500,000 people | No more than $2.91 million | Yes, but no more than $6 million |
| More than 2,500,000 people | No more than $2.91 million | Yes, but no more than $9 million |

Regional applicants will be subject to the funding limitations based on the total population served by the host of the application and the participating partners. For example, if the host and partners serve a population of 100,000 or fewer and are the recipients of a Regional award for $1 million, then the host has met their cap and is no longer eligible for additional funds under the AFG Program.

- **Allocations and Restrictions of Available Grant Funds by Organization Type**
  - **Fire Departments**: Not less than 25% of available grant funds shall be awarded to career, combination, or volunteer department types (total of 75%).
  - **Nonaffiliated EMS Organizations**: Not more than 2% of available grant funds shall be collectively awarded to all nonaffiliated EMS organization recipients.
  - **Emergency Medical Services Providers**: Not less than 3.5% of available grant funds shall fund emergency medical services provided by fire departments and nonaffiliated EMS organizations.
  - **State Fire Training Academy**: Not more than 3% of available grant funds shall be collectively awarded to all SFTA recipients. Further, not more than $500,000 of available federal grant funds may be awarded per SFTA applicant.
  - **Vehicles**: Not more than 25% of available grant funds may be used by recipients for the purchase of vehicles. Of that amount, based on stakeholder recommendations, FEMA intends to allocate 10% of the total vehicle funds for ambulances.
  - **Micro Grants**: The selection of the voluntary Micro Grant option (cumulative federal funding of $75,000) for eligible High Priority Operations and Safety activities does not impact an applicant's request or participation under the Vehicle Acquisition or Regional projects. Applicants who select Micro Grants under Operations and Safety as a funding opportunity choice may still apply for a Vehicle Acquisition or Regional project. Of the 25% allocated to each of the career, combination, and volunteer departments, FEMA will aim to fund no less than 25% of the allocation for Micro Grants.

*FY 2024 AFG NOFO*

**E. Application Review Information**

**1. Application Evaluation Criteria**

    **a.** *Programmatic Criteria*

Funding priorities and programmatic criteria for evaluating AFG Program applications are established by FEMA based on the recommendations from the Criteria Development Panel (CDP). Each year, FEMA convenes a panel of fire service professionals to develop funding priorities for the AFG Program. The panel makes recommendations about funding priorities as well as developing criteria for awarding grants.

The nine major fire service organizations represented on the panel are:
- International Association of Fire Chiefs
- International Association of Fire Fighters
- National Volunteer Fire Council
- National Fire Protection Association
- National Association of State Fire Marshals
- International Association of Arson Investigators
- International Society of Fire Service Instructors
- North American Fire Training Directors
- Congressional Fire Service Institute

The CDP is charged with making recommendations to FEMA regarding the creation or modification of previously established funding priorities as well as developing criteria for awarding grants. The FEMA Administrator reviews and approves the CDP's recommendations. The content of this NOFO reflects implementation of the CDP's recommendations with respect to the priorities, direction, and criteria for awards.

FEMA will rank all complete and submitted applications based on how well they match the program priorities for the type of jurisdiction(s) served. Answers to the application's activity specific questions provide information used to determine each application's ranking relative to the stated program priorities.

    **b.** *Financial Integrity Criteria*

Prior to making a federal award, FEMA is required by 31 U.S.C. § 3354, as enacted by the Payment Integrity Information Act of 2019, Pub. L. No. 116-117 (2020); 41 U.S.C. § 2313; and 2 C.F.R. § 200.206 to review information available through any Office of Management and Budget (OMB)-designated repositories of governmentwide eligibility qualification or financial integrity information, including whether SAM.gov identifies the applicant as being excluded from receiving federal awards or is flagged for any integrity record submission. FEMA may also pose additional questions to the applicant to aid in conducting the pre-award risk review. Therefore, application evaluation criteria may include the following risk-based considerations of the applicant:

      i.  Financial stability.
     ii.  Quality of management systems and ability to meet management standards.
    iii.  History of performance in managing federal award.
    iv.  Reports and findings from audits.
     v.  Ability to effectively implement statutory, regulatory, or other requirements.

**c.**  ***Supplemental Financial Integrity Criteria and Review***
Prior to making a federal award where the anticipated total federal share will be greater than the simplified acquisition threshold, currently $250,000:

      i.  FEMA is required by 41 U.S.C. § 2313 and 2 C.F.R. § 200.206(a)(2) to review and consider any information about the applicant, including information on the applicant's immediate and highest-level owner, subsidiaries, and predecessors, if applicable, that is in the designated integrity and performance system accessible through the System for Award Management (SAM), which is currently the [Federal Awardee Performance and Integrity Information System](#) (FAPIIS).

     ii.  An applicant, at its option, may review information in FAPIIS and comment on any information about itself that a federal awarding agency previously entered.

    iii.  FEMA will consider any comments by the applicant, in addition to the other information in FAPIIS, in making a judgment about the applicant's integrity, business ethics, and record of performance under federal awards when completing the review of risk posed by applicants as described in 2 C.F.R. § 200.206.

**2. Review and Selection Process**
AFG Program applications are reviewed through a multi-phase process. All applications are electronically pre-scored and ranked based on how well they align with the funding priorities outlined in this funding notice.

Applications with the highest pre-score rankings are then scored competitively by no less than three members of a Peer Review Panel. Applications will also be evaluated through a series of internal FEMA review processes for completeness, adherence to programmatic guidelines, technical feasibility, and anticipated effectiveness of the proposed project(s). Below is the process by which applications will be reviewed:

**a.**  ***Pre-Scoring Process***
The application undergoes an electronic pre-scoring process based on established program priorities listed in Appendix B and answers to activity-specific questions within the online application. Application Narratives are not reviewed during the pre-score process. "Request Details" and "Budget" information should comply with

program guidance and statutory funding limitations. The pre-score is half of the total application score.

**b.** *Peer Review Panel Process*

Applications with the highest rankings from the pre-scoring process will undergo a Peer Review Panel process. A panel of peer reviewers is composed of fire service representatives recommended by the national organizations from the CDP. Peer reviewers will assess each application's merits based on the narrative statement on the requested activity. The evaluation elements listed in the "Narrative Evaluation Criteria" below will be used to calculate the narrative's score for each activity requested. Peer reviewers will independently score each requested activity within the application, discuss the merits and/or shortcomings of the application with his or her peers, and document the findings. A consensus is not required. The panel score is half of the total application score.

**I.   NARRATIVE EVALUATION CRITERIA**

The Narrative Statements must provide specific details about the activity for which the applicants seek funding. Applicants must explain how the proposed activity(ies) relate to the Operations and Safety Activity or the Vehicle Acquisition Activity. FEMA reviews and compares applications for **duplication including narratives and statistical data**. Therefore, all elements of the Narrative Statements must be original, and **all statistical data must be accurate**. Applications with narratives that have substantial copying of sentences or paragraphs **and/or inaccurate data** that may mislead reviewers may be disqualified. Falsification, fabrication, or plagiarism of other grant proposals will disqualify the application(s). Each narrative section allows no more than 4,000 characters each, including spaces and punctuation.

**FEMA has developed a Narrative Development Toolkit and Self Evaluation Sheets available on FEMA website:** Assistance to Firefighters Grants Documents | FEMA.gov**. The documents are designed to assist applicants with narrative preparation and provide specific criteria used by a panel of peer reviewers when evaluating each application. FEMA encourages applicants to use these documents to prepare their applications.**

Peer reviewers will evaluate and select a score of Strongly Agree, Agree, Neither Agree nor Disagree, Disagree or Strongly Disagree for each narrative section based on the following narrative elements within each activity.

**Financial Need (25%). This section allows 4,000 characters (including spaces and punctuation).**

Applicants should describe their financial need and how consistent it is with the intent of the AFG Program. The financial need statement should include details describing the applicant's financial distress, such as summarizing budget constraints, unsuccessful attempts to secure other funding, and proving the financial distress is out of their control.

**Project Description and Budget (25%). This section allows 4,000 characters (including spaces and punctuation).**
The Project Description and Budget statement should clearly explain the applicant's project objectives and their relationship to the applicant's budget and risk analysis. The applicant should describe various activities, including program priorities or facility modifications, ensuring consistency with project objectives, the applicant's mission, and national, state, local, or tribal requirements. Applicants should link the proposed expenses to operations and safety, as well as to the completion of the project's goals.

**Cost Benefit (25%). This section allows 4,000 characters (including spaces and punctuation).**
Applicants should describe how they plan to address the operational and personnel safety needs of the organization, including cost effectiveness and sharing assets. The Operations and Safety/Cost Benefit statement should also include details about gaining the maximum benefits from grant funding by citing reasonable or required costs, such as specific overhead and administrative costs. The applicant's request should also be consistent with their mission and identify how funding will benefit their organization and affected personnel.

**Statement of Effect on Operations (25%). This section allows 4,000 characters (including spaces and punctuation).**
The Statement of Effect on Operations should explain how this funding request will enhance an organization's overall effectiveness. It should address how an award will improve daily operations and reduce an organization's risk(s). Applicants should include how frequently the requested item(s) will be used and in what capacity. Applicants should also indicate how the requested item(s) will help the community and increase an organization's ability to save additional lives and property. Jurisdictions that demonstrate their commitment and proactive posture to reducing fire risk, by explaining their code enforcement (to include Wildfire and Wildland Urban Interface code enforcement) and mitigation strategies (including whether the jurisdiction has a FEMA-approved mitigation strategy) may receive stronger consideration under this criterion.

c. *Technical Evaluation Process (TEP)*
The highest ranked applications will be considered within the fundable range. Applications that are in the fundable range will undergo both a Technical Review by a subject-matter expert as well as a FEMA Program Office review before being recommended for award. The FEMA Program Office will make a final assessment of the application with respect to costs, quantities, feasibility, eligibility, and recipient responsibility prior to recommending any application for award. During TEP, the information in Appendix B is used to make final corrections to any request not meeting program eligibility requirements. This is not a scored phase of the application process. Requests may be recommended for partial funding based on findings made during this assessment.

## F. **Federal Award Administration Information**

In addition to the language below, please see [Appendix C](#) of this NOFO for additional award administration information.

### 1. **Notice of Award**

Before accepting the award, the AOR and recipient should carefully read the award package. The award package includes instructions on administering the grant award and the terms and conditions associated with responsibilities under federal awards. **Recipients must accept all conditions in this NOFO as well as any specific terms and conditions in the Notice of Award to receive an award under this program.**

FEMA will provide the federal award package to the applicant electronically via FEMA GO. Award packages include an Award Letter, Summary Award Memo, Agreement Articles, and Obligating Document. An email notification of the award package will be sent through FEMA's grant application system to the AOR that submitted the application.

Recipients must accept their awards no later 30 days from the award date. The recipient shall notify FEMA of its intent to accept and proceed with work under the award through the FEMA GO system.

Funds will remain on hold until the recipient accepts the award through the FEMA GO system and all other conditions of the award have been satisfied or until the award is otherwise rescinded. Failure to accept a grant award within the specified timeframe may result in a loss of funds.

### 2. **Difference between Application Request and Award**

During the review process for an AFG Program award, FEMA may modify the application request(s). These modifications will be identified in the award package provided upon the offer of an award. If the awarded activities, scope of work, or requested dollar amount(s) do not match the application as submitted, the recipient shall only be responsible for completing the activities actually funded by FEMA. The recipient is under no obligation to start, modify, or complete any activities requested but not funded by the award. The award package will identify any such differences under the Approved Scope of Work section.

### 3. **Turndown Notifications**

FEMA GO will provide all applicants who do not receive an FY 2024 AFG Program award with a turndown notification.

### 4. **Administrative and National Policy Requirements**

In addition to the requirements of in this section and in this NOFO, FEMA may place specific terms and conditions on individual awards in accordance with 2 C.F.R. Part 200.

a. ***DHS Standard Terms and Conditions***
   All successful applicants for DHS grant and cooperative agreements are required to comply with DHS Standard Terms and Conditions, which are available online at: DHS Standard Terms and Conditions.

   The applicable DHS Standard Terms and Conditions will be those in effect at the time the award was made. What terms and conditions will apply for the award will be clearly stated in the award package at the time of award.

b. ***Ensuring the Protection of Civil Rights***
   As the Nation works towards achieving the National Preparedness Goal, it is important to continue to protect the civil rights of individuals. Recipients and subrecipients must carry out their programs and activities, including those related to the building, sustainment, and delivery of core capabilities, in a manner that respects and ensures the protection of civil rights for protected populations.

   Federal civil rights statutes, such as Section 504 of the Rehabilitation Act of 1973 and Title VI of the Civil Rights Act of 1964, along with DHS and FEMA regulations, prohibit discrimination on the basis of race, color, national origin, sex, religion, age, disability, limited English proficiency, or economic status in connection with programs and activities receiving federal financial assistance from FEMA, as applicable.

   The DHS Standard Terms and Conditions include a fuller list of the civil rights provisions that apply to recipients. These terms and conditions can be found in the DHS Standard Terms and Conditions. Additional information on civil rights provisions is available at https://www.fema.gov/about/offices/equal-rights/civil-rights.

   Monitoring and oversight requirements in connection with recipient compliance with federal civil rights laws are also authorized pursuant to 44 C.F.R. Part 7 or other applicable regulations.

   In accordance with civil rights laws and regulations, recipients and subrecipients must ensure the consistent and systematic fair, just, and impartial treatment of all individuals, including individuals who belong to underserved communities that have been denied such treatment.

c. ***Environmental Planning and Historic Preservation (EHP) Compliance***
   As a federal agency, FEMA is required to consider the effects of its actions on the environment and historic properties to ensure that all activities and programs funded by FEMA, including grant-funded projects, comply with federal EHP laws, Executive Orders, regulations, and policies, as applicable.

   **Recipients and subrecipients proposing projects that have the potential to impact the environment, including, but not limited to, the construction of**

communication towers, modification or renovation of existing buildings, structures, and facilities, or new construction including replacement of facilities, must participate in the FEMA EHP review process. The EHP review process involves the submission of a detailed project description along with any supporting documentation requested by FEMA in order to determine whether the proposed project has the potential to impact environmental resources including, but not limited to, threatened or endangered species and historic properties; and identify mitigation measures and/or alternative courses of action that may lessen any impact to those resources.

In some cases, FEMA is also required to consult with other regulatory agencies and the public in order to complete the review process. Federal law requires EHP review to be completed before federal funds are released to carry out proposed projects. FEMA may not be able to fund projects that are not in compliance with applicable EHP laws, Executive Orders, regulations, and policies. FEMA may recommend mitigation measures and/or alternative courses of action to lessen any impact to environmental resources and bring the project into compliance with EHP requirements.

Guidance on the EHP process is found at Environmental Planning and Historic Preservation. The site contains links to various documents including those identifying agency EHP responsibilities and program requirements, such as implementation of the National Environmental Policy Act and other EHP laws, regulations, and Executive Orders. DHS and FEMA EHP policy is also found in the EHP Directive & Instruction.

All FEMA actions, including grant-funded actions, must comply with National Flood Insurance Program criteria or any more restrictive federal, state, or local floodplain management standards or building code (44 CFR § 9.11(d)(6)).

All FEMA-funded non-critical actions in 1% annual chance floodplains (also known as 100-year floodplains) that involve new construction or substantial improvement of structures must be elevated, at a minimum, to the lower of:

- Two feet above the 1% annual chance flood elevation (also known as the base flood elevation), in accordance with the Federal Flood Risk Management Standard (FFRMS) "Freeboard Value Approach" (FVA); or
- The 0.2% annual chance flood elevation. Where 0.2% annual chance flood elevations are not available, such actions must be elevated to at least two feet above the 1% annual chance flood elevation.

All FEMA-funded critical actions in 1% annual chance floodplains or 0.2% annual chance floodplains (also known as 500-year floodplains) that involve new construction or substantial improvement of structures must be elevated, at a minimum, to the higher of:

- Three feet above the 1% annual chance flood elevation; or

- The 0.2% annual chance flood elevation. Where 0.2% annual chance flood elevations are not available, such actions must be elevated to at least three feet above the 1% annual chance flood elevation.

See Executive Order 11988, Floodplain Management, as amended by Executive Order 13690, Establishing a Federal Flood Risk Management Standard and a Process for Further Soliciting and Considering Stakeholder Input.

The GPD EHP screening form is located at https://www.fema.gov/sites/default/files/documents/fema_ehp-screening_form_ff-207-fy-21-100_5-26-2021.pdf. Additionally, all recipients under this funding opportunity are required to comply with the FEMA GPD EHP Policy Guidance, FEMA Policy #108-023-1, available at https://www.fema.gov/sites/default/files/documents/fema_gpd-ehp-policy-guidance.pdf.

All modifications to facility activities, and any renovation to facilities that would qualify as a modification to a facility supporting activities under Training, Equipment, PPE, or Wellness and Fitness, will require an EHP review. Some Equipment activities will require an EHP review as well. Such activities include but are not limited to the installation of:

- Air compressor/fill station/cascade system (fixed) for filling Self-Contained Breathing Apparatus (SCBA);
- Air quality systems;
- Fire/smoke/carbon monoxide alarm systems for the facility (life safety);
- Generators (fixed);
- Sprinklers;
- Vehicle exhaust systems (fixed);
- Washer/dryer/extractor;
- Fixed communications antennas onto a building;
- Building renovations such as removal of walls or installation of electrical or water lines;
- Training/exercises in natural settings such as rope or swift water;
- LED signs; and
- Any scope of work that involves ground disturbances.

The following activities would not require the submission of the FEMA EHP Screening Form:

- Planning and development of policies or processes;
- Management, administrative, or personnel actions;
- Classroom-based training;
- Acquisition of mobile and portable equipment (not involving installation) on or in a building, and does not require a storage area to be constructed; and
- Purchase of PPE and/or SCBA.

**d**. *Mandatory Disclosures*

The non-Federal entity or applicant for a Federal award must disclose, in a timely manner, in writing to the Federal awarding agency or pass-through entity all violations of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. (2 CFR 200.113)

Please note applicants and recipients may report issues of fraud, waste, abuse, and mismanagement, or other criminal or noncriminal misconduct to the Office of Inspector General (OIG) Hotline. The toll-free numbers to call are 1 (800) 323-8603, and TTY 1 (844) 889-4357.

## 5. Reporting

Recipients are required to submit various financial and programmatic reports as a condition of award acceptance. Future awards and funds drawdown may be withheld if these reports are delinquent. Recipients should keep detailed records of all transactions involving the grant. FEMA may at any time request copies of purchasing documentation along with copies of cancelled checks or other proof of payment documentation for verification.

**a.** *Financial Reporting Requirements*

**I.** FEDERAL FINANCIAL REPORT (FFR)

Recipients must report obligations and expenditures through the FFR form (SF-425) to FEMA.

Recipients may review the Federal Financial Reporting Form (FFR) (SF-425) at https://apply07.grants.gov/apply/forms/sample/SF425-V1.0.pdf.

Recipients must file the FFR electronically using FEMA GO.

**II.** FFR REPORTING PERIODS AND DUE DATES

Recipients are required to submit a Federal Financial Report (FFR or SF-425) on a semi-annual basis. The FFR must be submitted through FEMA GO based on the calendar year beginning with the period after the award is made. Grant recipients are required to submit an FFR throughout the entire period of performance of the grant and for closeout. Reports are due:

- **No later than July 30** (for the period January 1 – June 30)
- **No later than January 30** (for the period July 1 – December 31)
- Within 120 days after the end of the Period of Performance

Future awards and fund drawdowns may be withheld if these reports are delinquent, demonstrate lack of progress, or are insufficient in detail.

**b.** *Programmatic Performance Reporting Requirements*

**I.** PERFORMANCE PROGRESS REPORT (PPR)

The recipient is responsible for completing and submitting a PPR using FEMA GO.

The PPR should include:

- A brief narrative of overall project(s) status;
- A summary of project expenditures; and
- A description of any potential issues that may affect project completion.

**II. PPR PERIODS AND DUE DATES**

The following reporting periods and due dates apply for the PPR:

- **No later than July 30 (for the period January 1 – June 30)**
- **No later than January 30 (for the period July 1 – December 31)**

**c. *Closeout Reporting Requirements***

**I. CLOSEOUT REPORTING**

Within 120 calendar days after the end of the period of performance for the prime award or after an amendment has been issued to close out an award before the original POP ends, recipients must liquidate all financial obligations and must submit the following:

i.      The final request for payment, if applicable.

ii.     The final FFR (SF-425).

iii.    The final progress report detailing all accomplishments, including a narrative summary of the impact of those accomplishments throughout the period of performance. If applicable, the recipient must include with the final progress report an inventory of all construction projects.

iv.     Other documents required by this NOFO, terms and conditions of the award, or other FEMA guidance. If the final FFR and performance report periods coincide with the end of the period of performance, FEMA has discretion under 2 C.F.R. Part 200 to waive the last quarterly/semiannual/annual reports and only require the final FFR and performance report for closeout purposes. The recipient is responsible for returning any balances of unobligated or unliquidated funds that have been drawn down that are not authorized to be retained per 2 C.F.R. § 200.344(d).

In addition, pass-through entities are responsible for closing out their subawards as described in 2 C.F.R. § 200.344; subrecipients are still required to submit closeout materials within 90 calendar days of the period of performance end date. When a subrecipient completes all closeout requirements, pass-through entities must promptly complete all closeout actions for subawards in time for the recipient to submit all necessary documentation and information to FEMA during the closeout of the prime award.

After the prime award closeout reports have been reviewed and approved by FEMA, a closeout notice will be completed to close out the grant. The notice will indicate the period of performance as closed, list any remaining funds that will be deobligated, and address the requirement of maintaining the grant records for at least three years from the date of the final FFR. The record retention period may be longer, such as due to an audit or litigation, for equipment or real property used

beyond the period of performance, or due to other circumstances outlined in 2 C.F.R. § 200.334.

The recipient is responsible for refunding to FEMA any balances of unobligated cash that FEMA paid that are not authorized to be retained per 2 C.F.R. § 200.344(d).

## II. ADMINISTRATIVE CLOSEOUT

Administrative closeout is a mechanism for FEMA to unilaterally move forward with closeout of an award using available award information in lieu of final reports from the recipient per 2 C.F.R. § 200.344(h)-(i). It is a last resort available to FEMA, and if FEMA needs to administratively close an award, this may negatively impact a recipient's ability to obtain future funding. This mechanism can also require FEMA to make cash or cost adjustments and ineligible cost determinations based on the information it has, which may result in identifying a debt owed to FEMA by the recipient.

When a recipient is not responsive to FEMA's reasonable efforts to collect required reports needed to complete the standard closeout process, FEMA is required under 2 C.F.R. § 200.344(h) to start the administrative closeout process within the regulatory timeframe. FEMA will make at least three written attempts to collect required reports before initiating administrative closeout. If the recipient does not submit all required reports in accordance with 2 C.F.R. § 200.344, this NOFO, and the terms and conditions of the award, FEMA must proceed to administratively close the award with the information available within one year of the period of performance end date. Additionally, if the recipient does not submit all required reports within one year of the period of performance end date, per 2 C.F.R. § 200.344(i), FEMA must report in Contracting Performance Assessment Reporting System (CPARS) the recipient's material failure to comply with the terms and conditions of the award.

If FEMA administratively closes an award where no final FFR has been submitted, FEMA uses that administrative closeout date in lieu of the final FFR submission date as the start of the record retention period under 2 C.F.R. § 200.334.

In addition, if an award is administratively closed, FEMA may decide to impose remedies for noncompliance per 2 C.F.R. § 200.339, consider this information in reviewing future award applications, or apply special conditions to existing or future awards.

## d. *Additional Reporting Requirements*
### I. DISCLOSING INFORMATION PER 2 C.F.R. § 180.335

This reporting requirement pertains to disclosing information related to government-wide suspension and debarment requirements. Before a recipient enters into a grant award with FEMA, the recipient must notify FEMA if it

knows if it or any of the recipient's principals under the award fall under one
or more of the four criteria listed at 2 C.F.R. § 180.335:

i.      Are presently excluded or disqualified;
ii.     Have been convicted within the preceding three years of any of the
        offenses listed in 2 C.F.R. § 180.800(a) or had a civil judgment rendered
        against it or any of the recipient's principals for one of those offenses
        within that time period;
iii.    Are presently indicted for or otherwise criminally or civilly charged by a
        governmental entity (federal, state or local) with commission of any of the
        offenses listed in 2 C.F.R. § 180.800(a); or
iv.     Have had one or more public transactions (federal, state, or local)
        terminated within the preceding three years for cause or default.

At any time after accepting the award, if the recipient learns that it or any of its
principals falls under one or more of the criteria listed at 2 C.F.R. § 180.335,
the recipient must provide immediate written notice to FEMA in accordance
with 2 C.F.R. § 180.350.

II.   **REPORTING OF MATTERS RELATED TO RECIPIENT INTEGRITY AND
PERFORMANCE**
Appendix XII to 2 C.F.R. Part 200 sets forth a term and condition related to
recipient integrity and performance matters that will apply to all federal awards
under this funding opportunity. If the total value of currently active grants,
cooperative agreements, and procurement contracts from all federal awarding
agencies exceeds $10,000,000 for any period of time during the period of
performance of a federal award under this funding opportunity, then a recipient
must maintain the currency of information reported in the Contracting
Performance Assessment Reporting System (CPARS) about civil, criminal, or
administrative proceedings described in paragraph 2 of Appendix XII at the
reporting frequency described in paragraph 4 of Appendix XII.

III.  **SINGLE AUDIT REPORT**
A recipient that expends $750,000 or more during the recipient's fiscal year in
federal awards (as defined by 2 C.F.R. § 200.1) must have a single audit
conducted in accordance with 2 C.F.R. § 200.514 except when it elects to have a
program-specific audit conducted in accordance with 2 C.F.R. § 200.501. The
audit must be conducted in accordance with 2 C.F.R. Part 200, Subpart F and, as
required by 2 C.F.R. § 200.514, in accordance with the U.S. Government
Accountability Office (GAO) Generally Accepted Government Auditing
Standards, which can be found on the Yellow Book page of the GAO website.

## 6.  Monitoring and Oversight
The regulation at 2 C.F.R. § 200.337 provides DHS and any of its authorized representatives
with the right of access to any documents, papers, or other records of the recipient [and any
subrecipients] that are pertinent to a federal award in order to make audits, examinations,
excerpts, and transcripts. The right also includes timely and reasonable access to the

recipient's or subrecipient's personnel for the purpose of interview and discussion related to such documents. Pursuant to this right and per 2 C.F.R. § 200.329, DHS may conduct desk reviews and make site visits to review project accomplishments and management control systems to evaluate project accomplishments and to provide any required technical assistance. During site visits, DHS may review a recipient's or subrecipient's files pertinent to the federal award and interview and/or discuss these files with the recipient's or subrecipient's personnel. Recipients and subrecipients must respond in a timely and accurate manner to DHS requests for information relating to a federal award.

Effective monitoring and oversight help FEMA ensure that recipients use grant funds for their intended purpose(s); verify that projects undertaken are consistent with approved plans; and ensure that recipients make adequate progress toward stated goals and objectives. Additionally, monitoring serves as the primary mechanism to ensure that recipients comply with applicable laws, rules, regulations, program guidance, and requirements. FEMA regularly monitors all grant programs both financially and programmatically in accordance with federal laws, regulations (including 2 C.F.R. Part 200), program guidance, and the terms and conditions of the award. All monitoring efforts ultimately serve to evaluate progress towards grant goals and proactively target and address issues that may threaten grant success during the period of performance.

FEMA staff will periodically monitor recipients to ensure that administrative processes, policies and procedures, budgets, and other related award criteria are meeting Federal Government-wide and FEMA regulations. Aside from reviewing semi-annual financial and programmatic reports, FEMA may also conduct enhanced monitoring through either desk-based reviews, onsite monitoring visits, or both. Enhanced monitoring will involve the review and analysis of the financial compliance and administrative processes, policies, activities, and other attributes of each federal assistance award, and it will identify areas where the recipient may need technical assistance, corrective actions, or other support.

Financial and programmatic monitoring are complementary processes within FEMA's overarching monitoring strategy that function together to ensure effective grants management, accountability, and transparency; validate progress against grant and program goals; and safeguard federal funds against fraud, waste, and abuse. Financial monitoring primarily focuses on statutory and regulatory compliance with administrative grant requirements, while programmatic monitoring seeks to validate and assist in grant progress, targeting issues that may be hindering achievement of project goals and ensuring compliance with the purpose of the grant and grant program. Both monitoring processes are similar in that they feature initial reviews of all open awards, and additional, in-depth monitoring of grants requiring additional attention.

Recipients and subrecipients who are pass-through entities are responsible for monitoring their subrecipients in a manner consistent with the terms of the federal award at 2 C.F.R. Part 200, including 2 C.F.R. § 200.332. This includes the pass-through entity's responsibility to monitor the activities of the subrecipient as necessary to ensure that the subaward is used for authorized purposes, in compliance with federal statutes, regulations, and the terms and conditions of the subaward; and that subaward performance goals are achieved.

In terms of overall award management, recipient and subrecipient responsibilities include, but are not limited to: accounting of receipts and expenditures, cash management, maintaining adequate financial records, reporting and refunding expenditures disallowed by audits, monitoring if acting as a pass-through entity, or other assessments and reviews, and ensuring overall compliance with the terms and conditions of the award or subaward, as applicable, including the terms of 2 C.F.R. Part 200.

## G. **DHS Awarding Agency Contact Information**
1. **Contact and Resource Information**
   a. *AFG Program Office Contact*
   The AFG Program Help Desk provides technical assistance to applicants for the online completion and submission of applications into FEMA GO, answers questions concerning applicant eligibility and recipient responsibilities, and helps in the programmatic administration of awards. The AFG Program Help Desk can be contacted at (866) 274-0960 or by email at FireGrants@fema.dhs.gov. Normal hours of operation are from 8 a.m. to 4:30 p.m. ET, Monday through Friday.

   b. *FEMA Grants News*
   FEMA Grants News is a non-emergency comprehensive management and information resource developed by FEMA for grants stakeholders. This channel provides general information on all FEMA grant programs and maintains a comprehensive database containing key personnel contact information at the federal, state, and local levels. When necessary, recipients will be directed to a federal point of contact who can answer specific programmatic questions or concerns. FEMA Grants News can be reached by e-mail at fema-grants-news@fema.dhs.gov OR by phone at (800) 368-6498, Monday through Friday, 9 AM – 5 PM ET.

   c. *Grant Programs Directorate (GPD) Award Administration Division*
   GPD's Award Administration Division (AAD) provides support regarding financial matters and budgetary technical assistance. Additional guidance and information can be obtained by contacting the AAD's Help Desk via e-mail at ASK-GMD@fema.dhs.gov.

   d. *FEMA Regional Offices*
   Each FEMA region has Fire Program Specialists who can assist applicants with application information, award administration, and technical assistance. FEMA Regional Office contact information is available on the FEMA website at Assistance to Firefighter Grants Regional Contacts.

   e. *Civil Rights*
   The FEMA Office of Civil Rights (OCR) is responsible for compliance with and enforcement of federal civil rights obligations in connection with programs and services conducted by FEMA and recipients of FEMA financial assistance. All inquiries and communications about federal civil rights compliance for FEMA grants under this NOFO should be sent to FEMA-CivilRightsOffice@fema.dhs.gov.

    **f.** ***Environmental Planning and Historic Preservation***
        GPD's EHP Team provides guidance and information about the EHP review process to recipients and subrecipients. All inquiries and communications about GPD projects under this NOFO or the EHP review process, including the submittal of EHP review materials, should be sent to gpdehpinfo@fema.dhs.gov.

**2. Systems Information**
    **a.** ***FEMA GO***
        For technical assistance with the FEMA GO system, please contact the FEMA GO Helpdesk at femago@fema.dhs.gov or (877) 585-3242, Monday through Friday, 9 AM – 6 PM ET.

## H. Additional Information
**1. Termination Provisions**
FEMA may terminate a federal award in whole or in part for one of the following reasons. FEMA and the recipient must still comply with closeout requirements at 2 C.F.R. §§ 200.344-200.345 even if an award is terminated in whole or in part. To the extent that subawards are permitted under this NOFO, pass-through entities should refer to 2 C.F.R. § 200.340 for additional information on termination regarding subawards.

    **a.** ***Noncompliance***
        If a recipient fails to comply with the terms and conditions of a federal award, FEMA may terminate the award in whole or in part. If the noncompliance can be corrected, FEMA may first attempt to direct the recipient to correct the noncompliance. This may take the form of a Compliance Notification. If the noncompliance cannot be corrected or the recipient is non-responsive, FEMA may proceed with a Remedy Notification, which could impose a remedy for noncompliance per 2 C.F.R. § 200.339, including termination. Any action to terminate based on noncompliance will follow the requirements of 2 C.F.R. §§ 200.341-200.342 as well as the requirement of 2 C.F.R. § 200.340(c) to report in FAPIIS the recipient's material failure to comply with the award terms and conditions. See also the section on Actions to Address Noncompliance in this NOFO.

    **b.** ***With the Consent of the Recipient***
        FEMA may also terminate an award in whole or in part with the consent of the recipient, in which case the parties must agree upon the termination conditions, including the effective date, and in the case of partial termination, the portion to be terminated.

    **c.** ***Notification by the Recipient***
        The recipient may terminate the award, in whole or in part, by sending written notification to FEMA setting forth the reasons for such termination, the effective date, and in the case of partial termination, the portion to be terminated. In the case of partial termination, FEMA may determine that a partially terminated award will not accomplish the purpose of the federal award, so FEMA may terminate the award in

its entirety. If that occurs, FEMA will follow the requirements of 2 C.F.R. §§ 200.341-200.342 in deciding to fully terminate the award.

## 2. Program Evaluation

Federal agencies are required to structure NOFOs that incorporate program evaluation activities from the outset of their program design and implementation to meaningfully document and measure their progress towards meeting agency priority goal(s) and program outcomes.

OMB Memorandum M-21-27, Evidence-Based Policymaking: Learning Agendas and Annual Evaluation Plans, implementing Title I of the Foundations for Evidence-Based Policymaking Act of 2018, Pub. L. No. 115-435 (2019) (Evidence Act), urges federal awarding agencies to use program evaluation as a critical tool to learn, improve equitable delivery, and elevate program service and delivery across the program lifecycle. Evaluation means "an assessment using systematic data collection and analysis of one or more programs, policies, and organizations intended to assess their effectiveness and efficiency." Evidence Act, § 101 (codified at 5 U.S.C. § 311).

As such, recipients and subrecipients are required to participate in a DHS-, Component, or Program Office-led evaluation if selected, which may be carried out by a third-party on behalf of the DHS, its component agencies, or the Program Office. Such an evaluation may involve information collections including but not limited to surveys, interviews, or discussions with individuals who benefit from the federal award program operating personnel, and award recipients, as specified in a DHS-, component agency-, or Program Office-approved evaluation plan. More details about evaluation requirements may be provided in the federal award, if available at that time, or following the award as evaluation requirements are finalized. Evaluation costs incurred during the period of performance are allowable costs (either as direct or indirect). Recipients and subrecipients are also encouraged, but not required, to participate in any additional evaluations after the period of performance ends, although any costs incurred to participate in such evaluations are not allowable and may not be charged to the federal award.

## 3. Period of Performance Extensions

Extensions to the period of performance (POP) for this program are allowed. Extensions to the POP identified in the award will only be considered through formal, written requests via FEMA GO and must contain specific and compelling justifications as to why an extension is required. Recipients are advised to coordinate with the FEMA Fire Program Specialist or Program Analyst as needed when preparing an extension request.

All extension requests must address the following:
  a. The grant program, fiscal year, and award number;
  b. Reason for the delay –including details of the legal, policy, or operational challenges that prevent the final outlay of awarded funds by the deadline;
  c. Current status of the activity(ies);
  d. Approved POP termination date and new project completion date;
  e. Amount of funds drawn down to date;

f.  Remaining available funds, both federal and, if applicable, non-federal;
g.  Budget outlining how remaining federal and, if applicable, non-federal funds will be expended;
h.  Plan for completion, including milestones and timeframes for achieving each milestone and the position or person responsible for implementing the plan for completion; and
i.  Certification that the activity(ies) will be completed within the extended POP without any modification to the original statement of work, as described in the original statement of work and as approved by FEMA.

Extension requests will be granted only due to compelling legal, policy, or operational challenges. Extension requests will only be considered for the following reasons:

- Contractual commitments by the recipient or subrecipient with vendors prevent completion of the project, including delivery of equipment or services, within the existing POP;
- The project must undergo a complex environmental review that cannot be completed within the existing POP;
- Projects are long-term by design, and therefore acceleration would compromise core programmatic goals; or
- Where other special or extenuating circumstances exist.

Recipients should submit all proposed extension requests to FEMA for review and approval at least 60 days prior to the end of the POP to allow sufficient processing time. Extensions are typically granted for no more than a six-month period.

**Example**: Recipients may request an extension when an equipment order was placed during the POP but factors beyond the recipient's control have resulted in a delay in the expected delivery and receipt of the equipment outside of the existing POP; or where a specific statute or regulation mandates an environmental review that cannot be completed within this timeframe or where other extenuating circumstances warrant a brief extension.

4. **Disability Integration**
Pursuant to Section 504 of the Rehabilitation Act of 1973, recipients of FEMA financial assistance must ensure that their programs and activities do not discriminate against qualified individuals with disabilities.

Grant and cooperative agreement recipients should engage with the whole community to advance individual and community preparedness and to work as a nation to build and sustain resilience. In doing so, recipients are encouraged to consider the needs of individuals with disabilities into the activities and projects funded by the grant or cooperative agreement.

FEMA expects that the integration of the needs of people with disabilities will occur at all levels, including planning; alerting, notification, and public outreach; training; purchasing of equipment and supplies; protective action implementation; and exercises/drills.

*FY 2024 AFG NOFO*

The following are examples that demonstrate the integration of the needs of people with disabilities in carrying out FEMA awards:

- Include representatives of organizations that work with/for people with disabilities on planning committees, work groups and other bodies engaged in development and implementation of the grant programs and activities.
- Hold all activities related to the grant in locations that are accessible to persons with physical disabilities and intellectual disabilities to the extent practicable.
- Provide auxiliary aids and services, including American Sign Language interpreters, that provide public information across the community and in shelters.
- Ensure shelter-specific grant funds are in alignment with FEMA's Guidance on Planning for Integration of Functional Needs Support Services in General Population Shelters.
- If making alterations to an existing building to a primary function area utilizing federal funds, complying with the most recent codes and standards and making path of travel to the primary function area accessible to the greatest extent possible.
- Implement specific procedures used by public transportation agencies that include evacuation and passenger communication plans and measures for individuals with disabilities.
- Identify, create, and deliver training to address any training gaps specifically aimed toward whole-community preparedness. Include and interact with individuals with disabilities, aligning with the designated program capability.
- Establish best practices in inclusive planning and preparedness that consider physical access, needs of individuals with intellectual disabilities, and information access.

FEMA grant recipients can fund projects towards the resiliency of the whole community, including people with disabilities, such as training, outreach and safety campaigns, provided that the project aligns with this NOFO and the terms and conditions of the award.

5. **Conflicts of Interest in the Administration of Federal Awards or Subawards**
   For conflicts of interest under grant-funded procurements and contracts, refer to the section on Procurement Integrity in this NOFO and 2 C.F.R. §§ 200.317 – 200.327.

   To eliminate and reduce the impact of conflicts of interest in the subaward process, recipients and pass-through entities must follow their own policies and procedures regarding the elimination or reduction of conflicts of interest when making subawards. Recipients and pass-through entities are also required to follow any applicable federal and state, local, tribal, or territorial (SLTT) statutes or regulations governing conflicts of interest in the making of subawards.

   The recipient or pass-through entity must disclose to the respective Program Analyst or Program Manager, in writing, any real or potential conflict of interest that may arise during the administration of the federal award, as defined by the federal or SLTT statutes or regulations or their own existing policies, within five days of learning of the conflict of interest. Similarly, subrecipients, whether acting as subrecipients or as pass-through entities, must disclose any real or potential conflict of interest to the recipient or next-level pass-

through entity as required by the recipient or pass-through entity's conflict of interest policies, or any applicable federal or SLTT statutes or regulations.

Conflicts of interest may arise during the process of FEMA making a federal award in situations where an employee, officer, or agent, any members of his or her immediate family, his or her partner has a close personal relationship, a business relationship, or a professional relationship, with an applicant, subapplicant, recipient, subrecipient, or FEMA employees.

6. **Procurement Integrity**

Through audits conducted by the DHS Office of Inspector General (OIG) and FEMA grant monitoring, findings have shown that some FEMA recipients have not fully adhered to the proper procurement requirements at 2 C.F.R. §§ 200.317 – 200.327 when spending grant funds. Anything less than full compliance with federal procurement requirements jeopardizes the integrity of the grant as well as the grant program. To assist with determining whether an action is a procurement or instead a subaward, please consult 2 C.F.R. § 200.331. For detailed guidance on the federal procurement standards, recipients and subrecipients should refer to various materials issued by FEMA's Procurement Disaster Assistance Team (PDAT), such as the PDAT Field Manual and Contract Provisions Guide. Additional resources, including an upcoming trainings schedule can be found on the PDAT Website: https://www.fema.gov/grants/procurement.

The below highlights the federal procurement requirements for FEMA recipients when procuring goods and services with federal grant funds. FEMA will include a review of recipients' procurement practices as part of the normal monitoring activities. **All procurement activity must be conducted in accordance with federal procurement standards at 2 C.F.R. §§ 200.317 – 200.327.** Select requirements under these standards are listed below. The recipient and any of its subrecipients must comply with all requirements, even if they are not listed below.

Under 2 C.F.R. § 200.317, when procuring property and services under a federal award, states (including territories) must follow the same policies and procedures they use for procurements from their non-federal funds; additionally, states must now follow 2 C.F.R. § 200.321 regarding socioeconomic steps, 200.322 regarding domestic preferences for procurements, 200.323 regarding procurement of recovered materials, and 2 C.F.R. § 200.327 regarding required contract provisions.

All other non-federal entities, such as tribes (collectively, non-state entities), must have and use their own documented procurement procedures that reflect applicable SLTT laws and regulations, provided that the procurements conform to applicable federal law and the standards identified in 2 C.F.R. Part 200. These standards include, but are not limited to, providing for full and open competition consistent with the standards of 2 C.F.R. § 200.319 and the required procurement methods at § 200.320.

a. ***Important Changes to Procurement Standards in 2 C.F.R. Part 200***
States are now required to follow the socioeconomic steps in soliciting small and minority businesses, women's business enterprises, and labor surplus area firms per 2

C.F.R. § 200.321. All non-federal entities should also, to the greatest extent practicable under a federal award, provide a preference for the purchase, acquisition, or use of goods, products, or materials produced in the United States per 2 C.F.R. § 200.322. More information on OMB's revisions to the federal procurement standards can be found in Purchasing Under a FEMA Award: OMB Revisions Fact Sheet.

The recognized procurement methods in 2 C.F.R. § 200.320 have been reorganized into informal procurement methods, which include micro-purchases and small purchases; formal procurement methods, which include sealed bidding and competitive proposals; and noncompetitive procurements. The federal micro-purchase threshold is currently $10,000, and non-state entities may use a lower threshold when using micro-purchase procedures under a FEMA award. If a non-state entity wants to use a micro-purchase threshold higher than the federal threshold, it must follow the requirements of 2 C.F.R. § 200.320(a)(1)(iii)-(v). The federal simplified acquisition threshold is currently $250,000, and a non-state entity may use a lower threshold but may not exceed the federal threshold when using small purchase procedures under a FEMA award. *See* 2 C.F.R. § 200.1 (citing the definition of simplified acquisition threshold from 48 C.F.R. Part 2, Subpart 2.1).

See 2 C.F.R. §§ 200.216, 200.471, and Appendix II as well as Section D.12.a of the NOFO regarding prohibitions on covered telecommunications equipment or services.

**b.** ***Competition and Conflicts of Interest***
Among the requirements of 2 C.F.R. § 200.319(b) applicable to all non-federal entities other than states, in order to ensure objective contractor performance and eliminate unfair competitive advantage, contractors that develop or draft specifications, requirements, statements of work, or invitations for bids or requests for proposals must be excluded from competing for such procurements. FEMA considers these actions to be an organizational conflict of interest and interprets this restriction as applying to contractors that help a non-federal entity develop its grant application, project plans, or project budget. This prohibition also applies to the use of former employees to manage the grant or carry out a contract when those former employees worked on such activities while they were employees of the non-federal entity.

Under this prohibition, unless the non-federal entity solicits for and awards a contract covering both development and execution of specifications (or similar elements as described above), and this contract was procured in compliance with 2 C.F.R. §§ 200.317 – 200.327, federal funds cannot be used to pay a contractor to carry out the work if that contractor also worked on the development of those specifications. This rule applies to all contracts funded with federal grant funds, including pre-award costs, such as grant writer fees, as well as post-award costs, such as grant management fees.

Additionally, some of the situations considered to be restrictive of competition include, but are not limited to:
- Placing unreasonable requirements on firms for them to qualify to do business;

- Requiring unnecessary experience and excessive bonding;
- Noncompetitive pricing practices between firms or between affiliated companies;
- Noncompetitive contracts to consultants that are on retainer contracts;
- Organizational conflicts of interest;
- Specifying only a "brand name" product instead of allowing "an equal" product to be offered and describing the performance or other relevant requirements of the procurement; and
- Any arbitrary action in the procurement process.

Per 2 C.F.R. § 200.319(c), non-federal entities other than states must conduct procurements in a manner that prohibits the use of statutorily or administratively imposed SLTT geographical preferences in the evaluation of bids or proposals, except in those cases where applicable federal statutes expressly mandate or encourage geographic preference. Nothing in this section preempts state licensing laws. When contracting for architectural and engineering services, geographic location may be a selection criterion provided its application leaves an appropriate number of qualified firms, given the nature and size of the project, to compete for the contract.

Under 2 C.F.R. § 200.318(c)(1), non-federal entities other than states are required to maintain written standards of conduct covering conflicts of interest and governing the actions of their employees engaged in the selection, award, and administration of contracts. **No employee, officer, or agent may participate in the selection, award, or administration of a contract supported by a federal award if he or she has a real or apparent conflict of interest.** Such conflicts of interest would arise when the employee, officer or agent, any member of his or her immediate family, his or her partner, or an organization that employs or is about to employ any of the parties indicated herein, has a financial or other interest in or a tangible personal benefit from a firm considered for a contract. The officers, employees, and agents of the non-federal entity may neither solicit nor accept gratuities, favors, or anything of monetary value from contractors or parties to subcontracts. However, non-federal entities may set standards for situations in which the financial interest is not substantial, or the gift is an unsolicited item of nominal value. The standards of conduct must provide for disciplinary actions to be applied for violations of such standards by officers, employees, or agents of the non-federal entity.

Under 2 C.F.R. 200.318(c)(2), if the recipient or subrecipient (other than states) has a parent, affiliate, or subsidiary organization that is not a state, local, tribal, or territorial government, the non-federal entity must also maintain written standards of conduct covering organizational conflicts of interest. In this context, organizational conflict of interest means that because of a relationship with a parent company, affiliate, or subsidiary organization, the non-federal entity is unable or appears to be unable to be impartial in conducting a procurement action involving a related organization. The non-federal entity must disclose in writing any potential conflicts of interest to FEMA or the pass-through entity in accordance with applicable FEMA policy.

c.  ***Supply Schedules and Purchasing Programs***
Generally, a non-federal entity may seek to procure goods or services from a federal supply schedule, state supply schedule, or group purchasing agreement.

I.  **GENERAL SERVICES ADMINISTRATION SCHEDULES**
States, tribes, and local governments, and any instrumentality thereof (such as local education agencies or institutions of higher education) may procure goods and services from a General Services Administration (GSA) schedule. GSA offers multiple efficient and effective procurement programs for state, tribal, and local governments, and instrumentalities thereof, to purchase products and services directly from pre-vetted contractors. The GSA Schedules (also referred to as the Multiple Award Schedules and the Federal Supply Schedules) are long-term government-wide contracts with commercial firms that provide access to millions of commercial products and services at volume discount pricing.

Information about GSA programs for states, tribes, and local governments, and instrumentalities thereof, can be found at https://www.gsa.gov/resources-for/programs-for-State-and-local-governments and https://www.gsa.gov/buying-selling/purchasing-programs/gsa-schedules/schedule-buyers/state-and-local-governments.

For tribes, local governments, and their instrumentalities that purchase off of a GSA schedule, this will satisfy the federal requirements for full and open competition provided that the recipient follows the GSA ordering procedures; however, tribes, local governments, and their instrumentalities will still need to follow the other rules under 2 C.F.R. §§ 200.317 – 200.327, such as solicitation of minority businesses, women's business enterprises, small businesses, or labor surplus area firms (§ 200.321), domestic preferences (§ 200.322), contract cost and price (§ 200.324), and required contract provisions (§ 200.327 and Appendix II).

II.  **OTHER SUPPLY SCHEDULES AND PROGRAMS**
For non-federal entities other than states, such as tribes, local governments, and nonprofits, that want to procure goods or services from a state supply schedule, cooperative purchasing program, or other similar program, in order for such procurements to be permissible under federal requirements, the following must be true:
- The procurement of the original contract or purchasing schedule and its use by the non-federal entity complies with state and local law, regulations, and written procurement procedures;
- The state or other entity that originally procured the original contract or purchasing schedule entered into the contract or schedule with the express purpose of making it available to the non-federal entity and other similar types of entities;

- The contract or purchasing schedule specifically allows for such use, and the work to be performed for the non-federal entity falls within the scope of work under the contract as to type, amount, and geography;
- The procurement of the original contract or purchasing schedule complied with all the procurement standards applicable to a non-federal entity other than states under at 2 C.F.R. §§ 200.317 – 200.327; and
- With respect to the use of a purchasing schedule, the non-federal entity must follow ordering procedures that adhere to applicable state, tribal, and local laws and regulations and the minimum requirements of full and open competition under 2 C.F.R. Part 200.

If a non-federal entity other than a state seeks to use a state supply schedule, cooperative purchasing program, or other similar type of arrangement, FEMA recommends the recipient discuss the procurement plans with its FEMA Fire Program Specialist or Program Analyst.

### d. *Procurement Documentation*
Per 2 C.F.R. § 200.318(i), non-federal entities other than states and territories are required to maintain and retain records sufficient to detail the history of procurement covering at least the rationale for the procurement method, selection of contract type, contractor selection or rejection, and the basis for the contract price. States and territories are encouraged to maintain and retain this information as well and are reminded that in order for any cost to be allowable, it must be adequately documented per 2 C.F.R. § 200.403(g).

Examples of the types of documents that would cover this information include but are not limited to:
- Solicitation documentation, such as requests for quotes, invitations for bids, or requests for proposals;
- Responses to solicitations, such as quotes, bids, or proposals;
- Pre-solicitation independent cost estimates and post-solicitation cost/price analyses on file for review by federal personnel, if applicable;
- Contract documents and amendments, including required contract provisions; and
- Other documents required by federal regulations applicable at the time a grant is awarded to a recipient.

Additional information on required procurement records can be found on pages 24-26 of the PDAT Field Manual.

## 7. Financial Assistance Programs for Infrastructure
### a. *Build America, Buy America Act*
Recipients and subrecipients must comply with the Build America, Buy America Act (BABAA), which was enacted as part of the Infrastructure Investment and Jobs Act §§ 70901-70927, Pub. L. No. 117-58 (2021); and Executive Order 14005, Ensuring the Future is Made in All of America by All of America's Workers. See also 2 C.F.R. Part 184 and Office of Management and Budget (OMB) Memorandum M-24-02,

Implementation Guidance on Application of Buy America Preference in Federal Financial Assistance Programs for Infrastructure.

None of the funds provided under this program may be used for a project for infrastructure unless the iron and steel, manufactured products, and construction materials used in that infrastructure are produced in the United States.

The Buy America preference only applies to articles, materials, and supplies that are consumed in, incorporated into, or affixed to an infrastructure project. As such, it does not apply to tools, equipment, and supplies, such as temporary scaffolding, brought to the construction site and removed at or before the completion of the infrastructure project. Nor does a Buy America preference apply to equipment and furnishings, such as movable chairs, desks, and portable computer equipment, that are used at or within the finished infrastructure project but are not an integral part of the structure or permanently affixed to the infrastructure project.

For FEMA's official policy on BABAA, please see FEMA Policy 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: Buy American Preference in FEMA Financial Assistance Programs for Infrastructure available at https://www.fema.gov/sites/default/files/documents/fema_build-america-buy-america-act-policy.pdf  To see whether a particular FEMA federal financial assistance program is considered an infrastructure program and thus required to include a Buy America preference, please see Programs and Definitions: Build America, Buy America Act | FEMA.gov. and https://www.fema.gov/sites/default/files/documents/fema_build-america-buy-america-act-policy.pdf

**b. *Waivers***
When necessary, recipients (and subrecipients through their pass-through entity) may apply for, and FEMA may grant, a waiver from these requirements.

A waiver of the domestic content procurement preference may be granted by the agency awarding official if FEMA determines that:
- Applying the domestic content procurement preference would be inconsistent with the public interest.
- The types of iron, steel, manufactured products, or construction materials are not produced in the United States in sufficient and reasonably available quantities or of a satisfactory quality.
- The inclusion of iron, steel, manufactured products, or construction materials produced in the United States will increase the cost of the overall project by more than 25%.

For FEMA awards, the process for requesting a waiver from the Buy America preference requirements can be found on FEMA's website at: "Buy America" Preference in FEMA Financial Assistance Programs for Infrastructure | FEMA.gov.

    **c.** *Definitions*

For BABAA specific definitions, please refer to the FEMA Buy America website at: "Programs and Definitions: Build America, Buy America Act | FEMA.gov."

Please refer to the applicable DHS Standard Terms & Conditions for the BABAA specific term applicable to all FEMA financial assistance awards for infrastructure.

## 8. Record Retention

    **a.** *Record Retention Period*

Financial records, supporting documents, statistical records, and all other non-Federal entity records pertinent to a Federal award generally must be maintained for <u>at least</u> three years from the date the final FFR is submitted. *See* 2 C.F.R. § 200.334. Further, if the recipient does not submit a final FFR and the award is administratively closed, FEMA uses the date of administrative closeout as the start of the general record retention period.

The record retention period **may be longer than three years or have a different start date** in certain cases. These include:

- Records for real property and equipment acquired with Federal funds must be retained for **three years after final disposition of the property**. *See* 2 C.F.R. § 200.334(c).
- If any litigation, claim, or audit is started before the expiration of the three-year period, the records **must be retained until** all litigation, claims, or audit findings involving the records **have been resolved and final action taken**. *See* 2 C.F.R. § 200.334(a).
- The **record retention period will be extended if the non-federal entity is notified in writing** of the extension by FEMA, the cognizant or oversight agency for audit, or the cognizant agency for indirect costs, or pass-through entity. *See* 2 C.F.R. § 200.334(b).
- Where FEMA requires recipients to report program income after the period of performance ends, the **program income record retention period begins at the end of the recipient's fiscal year in which program income is earned**. *See* 2 C.F.R. § 200.334(e).
- For indirect cost rate computations and proposals, cost allocation plans, or any similar accounting computations of the rate at which a particular group of costs is chargeable (such as computer usage chargeback rates or composite fringe benefit rates), the start of the record retention period depends on whether the indirect cost rate documents were submitted for negotiation. If the **indirect cost rate documents were submitted for negotiation, the record retention period begins from the date those documents were submitted** for negotiation. If indirect cost rate documents were **not submitted for negotiation, the record retention period begins at the end of the recipient's fiscal year or other accounting period covered by that indirect cost rate**. *See* 2 C.F.R. § 200.334(f).

**b.** *Types of Records to Retain*
FEMA requires that non-federal entities maintain the following documentation for federally funded purchases:
- Specifications
- Solicitations
- Competitive quotes or proposals
- Basis for selection decisions
- Purchase orders
- Contracts
- Invoices
- Cancelled checks

Non-federal entities should keep detailed records of all transactions involving the grant. FEMA may at any time request copies of any relevant documentation and records, including purchasing documentation along with copies of cancelled checks for verification. *See, e.g.*, 2 C.F.R. §§ 200.318(i), 200.334, 200.337.

In order for any cost to be allowable, it must be adequately documented per 2 C.F.R. § 200.403(g). Non-federal entities who fail to fully document all purchases may find their expenditures questioned and subsequently disallowed.

**9.   Actions to Address Noncompliance**
Non-federal entities receiving financial assistance funding from FEMA are required to comply with requirements in the terms and conditions of their awards or subawards, including the terms set forth in applicable federal statutes, regulations, NOFOs, and policies. Throughout the award lifecycle or even after an award has been closed, FEMA or the pass-through entity may discover potential or actual noncompliance on the part of a recipient or subrecipient. This potential or actual noncompliance may be discovered through routine monitoring, audits, civil rights complaint investigations and compliance reviews, closeout, or reporting from various sources.

In the case of any potential or actual noncompliance, FEMA may place special conditions on an award per 2 C.F.R. §§ 200.208 and 200.339, FEMA may place a hold on funds until the matter is corrected, or additional information is provided per 2 C.F.R. § 200.339, or it may do both. Similar remedies for noncompliance with certain federal civil rights laws are authorized pursuant to 44 C.F.R. Parts 7 and 19 or other applicable regulations.

In the event the noncompliance is not able to be corrected by imposing additional conditions or the recipient or subrecipient refuses to correct the matter, FEMA may  take other remedies allowed under 2 C.F.R. § 200.339. These remedies include actions to disallow costs, recover funds, wholly or partly suspend or terminate the award, initiate suspension and debarment proceedings, withhold further federal awards, or take other remedies that may be legally available. For further information on termination due to noncompliance, see the section on Termination Provisions in the NOFO.

FEMA may discover and take action on noncompliance even after an award has been closed. The closeout of an award does not affect FEMA's right to disallow costs and recover funds as long as the action to disallow costs takes place during the record retention period. *See* 2 C.F.R. §§ 200.334, 200.345(a). Closeout also does not affect the obligation of the non-federal entity to return any funds due as a result of later refunds, corrections, or other transactions. 2 C.F.R. § 200.345(a)(2).

The types of funds FEMA may attempt to recover include, but are not limited to, improper payments, cost share reimbursements, program income, interest earned on advance payments, or equipment disposition amounts.

FEMA may seek to recover disallowed costs through a Notice of Potential Debt Letter, a Remedy Notification, or other letter. The document will describe the potential amount owed, the reason why FEMA is recovering the funds, the recipient's appeal rights, how the amount can be paid, and the consequences for not appealing or paying the amount by the deadline.

If the recipient neither appeals nor pays the amount by the deadline, the amount owed will become final. Potential consequences if the debt is not paid in full or otherwise resolved by the deadline include the assessment of interest, administrative fees, and penalty charges; administratively offsetting the debt against other payable federal funds; and transferring the debt to the U.S. Department of the Treasury for collection.

FEMA notes the following common areas of noncompliance for FEMA's grant programs:
- Insufficient documentation and lack of record retention.
- Failure to follow the procurement under grants requirements.
- Failure to submit closeout documents in a timely manner.
- Failure to follow EHP requirements.
- Failure to comply with the POP deadline.

## 10. Audits

FEMA grant recipients are subject to audit oversight from multiple entities including the DHS OIG, the GAO, the pass-through entity, or independent auditing firms for single audits, and may cover activities and costs incurred under the award. Auditing agencies such as the DHS OIG, the GAO, and the pass-through entity (if applicable), and FEMA in its oversight capacity, must have access to records pertaining to the FEMA award. Recipients and subrecipients must retain award documents for at least three years from the date the final FFR is submitted, and even longer in many cases subject to the requirements of 2 C.F.R. § 200.334. In the case of administrative closeout, documents must be retained for at least three years from the date of closeout, or longer subject to the requirements of 2 C.F.R. § 200.334. If documents are retained longer than the required retention period, the DHS OIG, the GAO, and the pass-through entity, as well as FEMA in its oversight capacity, have the right to access these records as well. *See* 2 C.F.R. §§ 200.334, 200.337.

Additionally, non-federal entities must comply with the single audit requirements at 2 C.F.R. Part 200, Subpart F. Specifically, non-federal entities, other than for-profit subrecipients, that expend $750,000 or more in federal awards during their fiscal year must have a single or

program-specific audit conducted for that year in accordance with Subpart F. 2 C.F.R. § 200.501. A single audit covers all federal funds expended during a fiscal year, not just FEMA funds. The cost of audit services may be allowable per 2 C.F.R. § 200.425, but non-federal entities must select auditors in accordance with 2 C.F.R. § 200.509, including following the proper procurement procedures. For additional information on single audit reporting requirements, see Section F.5.d.iii of this NOFO under the header "Single Audit Report" within the subsection "Additional Reporting Requirements."

The objectives of single audits are to:
- Determine if financial statements conform to generally accepted accounting principles (GAAP);
- Determine whether the schedule of expenditures of federal awards is presented fairly;
- Understand, assess, and test the adequacy of internal controls for compliance with major programs; and
- Determine if the entity complied with applicable laws, regulations, and contracts or grants.

For single audits, the auditee is required to prepare financial statements reflecting its financial position, a schedule of federal award expenditures, and a summary of the status of prior audit findings and questioned costs. The auditee also is required to follow up and take appropriate corrective actions on new and previously issued but not yet addressed audit findings. The auditee must prepare a corrective action plan to address the new audit findings. 2 C.F.R. §§ 200.508, 200.510, 200.511.

Non-federal entities must have an audit conducted, either single or program-specific, of their financial statements and federal expenditures annually or biennially pursuant to 2 C.F.R. § 200.504. Non-federal entities must also follow the information submission requirements of 2 C.F.R. § 200.512, including submitting the audit information to the Federal Audit Clearinghouse within the earlier of 30 calendar days after receipt of the auditor's report(s) or nine months after the end of the audit period. The audit information to be submitted include the data collection form described at 2 C.F.R. § 200.512(c) and Appendix X to 2 C.F.R. Part 200 as well as the reporting package described at 2 C.F.R. § 200.512(b).

The non-federal entity must retain one copy of the data collection form and one copy of the reporting package for three years from the date of submission to the Federal Audit Clearinghouse. 2 C.F.R. § 200.512; *see also* 2 C.F.R. § 200.517 (setting requirements for retention of documents by the auditor and access to audit records in the auditor's possession).

FEMA, the DHS OIG, the GAO, and the pass-through entity (if applicable), as part of monitoring or as part of an audit, may review a non-federal entity's compliance with the single audit requirements. In cases of continued inability or unwillingness to have an audit conducted in compliance with 2 C.F.R. Part 200, Subpart F, FEMA and the pass-through entity, if applicable, are required to take appropriate remedial action under 2 C.F.R. § 200.339 for noncompliance, pursuant to 2 C.F.R. § 200.505.

11. **Payment Information**
FEMA uses the Direct Deposit/Electronic Funds Transfer (DD/EFT) method of payment to recipients.

Payment requests are submitted through FEMA GO.

12. **Whole Community Preparedness**
Preparedness is a shared responsibility that calls for the involvement of everyone—not just the government—in preparedness efforts. By working together, everyone can help keep the nation safe from harm and help keep it resilient when struck by hazards, such as natural disasters, acts of terrorism, and pandemics.

Whole Community includes:
- Individuals and families, including those with access and functional needs
- Businesses
- Faith-based and community organizations
- Nonprofit groups
- Schools and academia
- Media outlets
- All levels of government, including state, local, tribal, territorial, and federal partners

The phrase "Whole Community" often appears in preparedness materials, as it is one of the guiding principles. It means two things:
1. Involving people in the development of national preparedness documents.
2. Ensuring their roles and responsibilities are reflected in the content of the materials.

13. **Report issues of fraud, waste, abuse**
Please note, when applying to this notice of funding opportunity and when administering the grant, applicants may report issues of fraud, waste, abuse, and mismanagement, or other criminal or noncriminal misconduct to the Office of Inspector General (OIG) Hotline. The toll-free numbers to call are 1 (800) 323-8603, and TTY 1 (844) 889-4357.

14. **Hazard-Resistant Building Codes**
Hazard-resistant building codes are a foundational element of a more resilient nation, safeguarding communities and lives against natural disasters, with an estimated $11:1 return on investment. The adoption, enforcement and application of modern building codes mitigates community vulnerabilities, reduces disaster recovery costs, and strengthens nationwide capability. FEMA is working to promote and support building codes in all areas of its work in support of the multi-agency National Initiative to Advance Building Codes. In the interest of building a stronger, more resilient nation, FEMA encourages all grant recipients and subrecipients to meet current published editions of relevant consensus-based building codes, specifications and standards, and to exceed them where feasible."

15. **Appendix A – FY 2024 AFG Program Updates**
Appendix A contains a brief list of changes between FY 2023 and FY 2024 to the AFG Program. The FY 2024 AFG Program funding notice contains some changes to definitions,

descriptions, and priority categories. Changes include:

- Under Narrative Evaluation Criteria:
  A character count for each narrative section and a link to the Narrative Development Toolkit and Self-Evaluation sheets was added.

- Under Application Tips:
  Clarification that scores for applications with a mix of "High," "Medium," and "Low" priorities may be negatively impacted was added to this section. Applicants must consider priorities under each Activity listed in this NOFO when applying.

- Under Equipment Activity:
  o Clarification that FEMA will consider only "High" priority items for funding was added.
  o The following EMS equipment was added as High Priority:
    ▪ Suction Unit (non-disposable)
    ▪ CPAP Device
    ▪ Power Stair Chair
    ▪ Patient Carbon Monoxide Monitor
    ▪ Capnography/capnometer Device
  o The following EMS equipment was added as Medium Priority:
    ▪ O2 Kit
    ▪ Non-disposable Splints
  o The following EMS equipment was added as Low Priority:
    ▪ Stretcher
    ▪ Backboard
    ▪ Trauma Bag
    ▪ Mass Casualty Kit

- Under Wellness and Fitness Activity:
  A clarification that Priority 1 programs must be already in place or requested in the application before Priority 2 programs will be considered for funding. In addition, the following items were added as ineligible:
    ▪ Saunas (including infrared)
    ▪ Hyperbaric chambers
    ▪ Ice baths
    ▪ Purchase of medical equipment

- Under Grant Writer/Preparation Fees:
  Clarification that the grant writer fee is subject to the cost share requirement was added.

## 16. Appendix B – Programmatic Information and Priorities

Appendix B contains details on AFG Program information and priorities. Reviewing this information may help applicants make their application(s) more competitive.

a. *Ineligible Applications and/or Organizations*

FEMA considers two or more separate fire departments or nonaffiliated EMS organizations with different funding streams, personnel rosters, and EINs but sharing the same facilities as being separate organizations for the purposes of AFG Program eligibility. If two or more organizations share facilities and each submits an application in the same program area (i.e., Equipment, Modifications to Facilities, PPE, Training, or Wellness and Fitness Programs), FEMA reserves the right to review all of those program area applications for eligibility. This determination is designed to avoid the duplication of benefits.

**Examples of ineligible applications and/or organizations include:**

- Nonaffiliated EMS organization requests for any activity that is specific or unique to structural/proximity/wildfire firefighting gear.
- Fire departments that are a federal government entity, or contracted by the federal government, and are solely responsible under a formally recognized agreement for suppression of fires on federal installations or land.
- Fire departments or nonaffiliated EMS organizations that are not independent entities but are part of, controlled by, or under the day-to-day operational command and control of a larger department, agency or AHJ.
  - However, if a fire department is considered to be the same legal entity as a municipality or other governmental organization, and otherwise meets the eligibility criteria, that municipality or other governmental organization may apply on behalf of that fire department as long as the application clearly states that the fire department is considered part of the same legal entity.
- Fire-based EMS organization applying as a nonaffiliated EMS organization.
- Auxiliaries, hospitals, or fire service associations or interest organizations that are not the AHJ over the applicant.
- Dive teams, search and rescue squads, or similar organizations that do not provide medical transport.
- Fire departments, regional, or nonaffiliated EMS organizations that are for profit.
- State or local agencies, or subsets of any governmental entity, or any authority that do not meet the requirements as defined by 15 U.S.C. §2229(a), (c).
- If an applicant submits two or more applications for the same equipment or other eligible activity (for example, if an applicant submits two or more applications, one under the Regional activity, and one under the Operations and Safety activity for SCBA), both applications may be disqualified. If an applicant submits two separate applications for the same activity (i.e., two separate vehicle applications for the same vehicle) during the same application period, both applications may be disqualified.
  - This is different from when an entity is applying on behalf of other organizations that are agencies or instrumentalities of the applicant (e.g., multiple fire departments under the same county, city, borough, parish or other municipality). In that situation, the applicant may request similar or the same equipment as long as the application clearly states which equipment (including quantities) is for which agency/instrumentality. This is permissible

even if that entity submits multiple applications across regional versus direct applications.

o   Eligible Fire Department and nonaffiliated EMS applicants may submit only one application for each of the following application types: Individual Operations and Safety, Individual Vehicle, Regional Operations and Safety, and Regional Vehicle. Under the Operations and Safety applications, applicants may submit for multiple activities and for multiple items within each activity. Under the Vehicle application, applicants may submit one application for a vehicle activity (or activities) for their department and one separate application for a Regional vehicle (the same vehicle(s) may not be requested for both purposes). All duplicate application submissions may be disqualified.

**b.   *Supporting Definitions for this NOFO***

**Authority Having Jurisdiction (AHJ)** is an organization, office, or individual responsible for enforcing the requirements of a code or standard, or for approving equipment, materials, and installation, or a procedure (Per NFPA 101, 2021 Edition: Life Safety Code).

**Automatic Aid** is a plan developed between two or more fire departments for immediate joint response on first alarms (Per NFPA 1710, 2020 Edition and NFPA 1720, 2020 Edition).

**Career Fire Department**, as defined in 15 U.S.C. § 2229, means a fire department that has an all-paid force of firefighting personnel other than paid-on-call firefighters.

**Combination Fire Department**, as defined in 15 U.S.C. § 2229, means a fire department that has paid firefighting personnel and volunteer firefighting personnel. FEMA considers a fire department with firefighting personnel paid a stipend, regardless of the amount, on a per event basis, or paid on-call, to be a combination fire department. This includes non-fire emergency medical service personnel of the department.

**Firefighting Personnel**, as defined in 15 U.S.C. § 2229, means individuals, including volunteers, who are firefighters, officers of fire departments, or emergency medical service personnel of fire departments.

**Mutual Aid** is a written intergovernmental agreement between agencies and/or jurisdictions stating that they will assist one another on request by furnishing personnel, equipment, and/or expertise in a specified manner (NFPA 1710 Standard for the Organization and Deployment of Fire Suppression Operations, Emergency Medical Operations, and Special Operations to the Public by Career Fire Departments, 2016 and 2020 edition; and NFPA 1720 Standard for the Organization and Deployment of Fire Suppression Operations, Emergency Medical Operations, and Special Operations to the Public by Volunteer Fire Departments, 2020 Edition).

**Metro Department** is a metropolitan fire department that has a minimum staffing of

350 career firefighters as defined by the International Association of Fire Chiefs (IAFC). DHS/FEMA collects information on metro departments for statistical purposes only. Status as a metro department is not a factor in scoring or funding.

**Primary First Due** is a geographic area surrounding a fire station in which a company from that station is projected to be first to arrive on the scene of an incident.

**Volunteer Fire Department**, as defined in 15 U.S.C. § 2229, means a fire department that has an all-volunteer force of firefighting personnel that do not receive any compensation (does not include length of service award programs).

c. *Community Classifications*
The information the applicant organization supplies in Applicant Characteristics and Community Description of the AFG Program application determines whether the jurisdiction is identified by FEMA as urban, suburban or rural. The community classification will determine the funding priority.

The US Census Bureau's urban/suburban/rural classifications are fundamentally a delineation of geographical areas. For more information, please visit the Census website at Urban and Rural.

FY 2024 demographics for determining urban, suburban, or rural include:

| Community | Urban | Suburban | Rural |
|---|---|---|---|
| **Population of primary first due response area** | >3,000 sq. mi. or 50,000+ population | 1,000-2,999/sq. mi. or 25,000-50,000 Population | 0-999/sq. mi. or <25,000 population |
| **Water Supply (percentage of primary first due response area covered by hydrant service)** | 75-100% hydrants (municipal water) | 50-74% hydrants | <50% hydrants |
| **Land Use within primary first due response area** | <25% for agriculture (based on zoning) >50% industrial and commercial combined | 25%-49% used for agriculture (based on zoning) 25%-49% industrial and commercial combined | >50% used for agriculture (based on zoning) <25% industrial and commercial combined |
| **Square miles within primary first due response area per station** | <3 sq. mi. per station | 3-9 sq. mi. per station | >10 sq. mi. per station |

d. *Application Tips*
The following information may be useful when preparing a competitive application:
- NFPA "FREE ACCESS": As part of its commitment to enhancing public safety and supporting the emergency responder, the NFPA makes its codes and

standards available online for free. Please visit NFPA's Free Access page.

- Regional applicants are only eligible to apply for Training, Equipment, PPE, and/or Wellness and Fitness within Operations and Safety, and Vehicle Acquisition.
- SFTA applicants are only eligible to apply for Equipment and/or PPE within Operations and Safety, and Vehicle Acquisition.
- Successful Regional applicants will be subject to the funding limitations based on the total population served by the host and participating partners. Any Regional award made will impact or be included in the host organization's funding limitations.
- Applications differ based on the applicant type. For example, the SFTA application for a vehicle will be different from the fire department application for a vehicle. Be sure to select the appropriate applicant type when applying.
- Fire Departments or nonaffiliated EMS organizations that are part of a larger organization with a broader scope should apply through the larger organization to avoid limiting eligible activities. For example, a rescue squad that periodically participates in structural firefighting and that belongs to a county fire and rescue agency should apply through the county for structural PPE. In other words, the county should apply on behalf of the rescue squad.
- FEMA recognizes the number of seated riding positions in front line apparatus as a reasonable measurement of the quantity of PPE or relevant equipment (radios, etc.) to be funded. Exceptions to the front-line seated riding position count may be considered by FEMA if compelling need to include seated riding positions in reserve apparatus can be demonstrated and justified. Applicants that seek to include reserve apparatus seated riding positions in the total seated riding position count must submit a justification narrative.
- **Applicants are encouraged to review the funding priorities listed under each activity in Appendix B "Funding Priorities" section in this NOFO. These priorities are marked as "High," "Medium," or "Low" and should be considered when applying for a grant. FEMA will fund items and activities with the highest priority first. Applying for "Medium" or "Low" priority items in addition to "High" priority items/projects may negatively impact the overall score of the activity. In addition, FEMA will only consider "High" priority items for funding under Operations and Safety – Equipment activity.**

e. *Restrictions on Uses of Award Funds*
- No AFG Program funds may be used to support hiring (part-time or full-time), salaries, benefits, or fringe benefits (including but not limited to contributions for social security, insurance, workers' compensation, pension or retirement plans) for any personnel.
- Documented back fill and/or overtime/lost wages costs to support awarded training activities are allowable personnel expenses.
- Instructor's rates/base rates should be provided as part of the application narrative, as well as the market-researched competitive rate for delivering the requested training.
- If the instruction provided for an awarded training activity is delivered by an

existing member(s) of the recipient organization, only the established base rate of compensation, without benefits or overtime, may be eligible for reimbursement.

- Recipients are encouraged to allow other organizations to benefit from an awarded activity; e.g., filling another organization's SCBA cylinders using a grant funded compressor, cleaning another organization's turnout gear, or offering excess capacity training opportunities. If recipients choose to include costs associated with shared benefit (e.g., backfill, overtime, tuition) for members outside of their department, they must apply as a Regional applicant.

- Items requested under Additional Funding may only be from that same Activity area. Furthermore, improper Additional Funding requests may be disqualified, if there is misalignment between the item requested and the Activity area. However, the following requests are allowable:

  o Rapid Intervention Team (RIT) packs supporting a SCBA request under the PPE activity. RIT packs must be requested under the Equipment activity if not supporting an SCBA request.

  o PPE gear bags under the PPE activity (gear bags are only eligible as additional funds in association with a PPE gear request).

  o Air Compressor/Fill Station/Cascade Systems (Fixed or Mobile) in support of a Regional SCBA request under the PPE activity. Regional requests for Air Compressor/Fill Station/Cascade Systems (Fixed or Mobile) must be requested under the Equipment activity if not supporting a SCBA request.

  o PPE gear washer/extractor/dryer in support of a PPE gear request under the PPE activity. Washer/extractor/dryer must be requested under the Equipment activity if not supporting a PPE gear request.

- Items must be requested using individual item dropdowns in the application (e.g. nozzles and appliances should not be requested under 'Hose (Attack/Supply)' dropdown, but under 'Appliance(s)/Nozzle(s)' option). In addition, items requested as a bundle without details on the number of units and cost per individual component will not be considered for funding.

**f.** *Funding Priorities*

   **I.** OPERATIONS AND SAFETY – TRAINING OVERVIEW

   FEMA has determined that hands-on, instructor-led training that meets a national, state, or DHS adopted standard and results in a national or state certification provides the greatest training benefit.

**All of the following are considerations in pre-scoring and peer review determinations: High (H), Medium (M), Low (L)**

| Fire Department, Regional, and SFTA Training Priorities by Purpose | |
|---|---|
| H | Training evaluated using national or state standards |
| H | Training that brings a department into compliance with recommended NFPA or other national standards |
| H | Instructor-led training that requires student testing to demonstrate academic competence or practical proficiency |

| Fire Department, Regional, and SFTA Training Priorities by Purpose | |
|---|---|
| H | Training that benefits the highest percentage of applicable personnel, such as the hazardous materials training within a fire department or training that will be open to other eligible organizations |
| M | Training that does not result in certification |
| M | Training that is self-directed/validated |
| L | Training that will address an identified risk but not associated with compliance to any standards |

| Fire Department and Regional Training Priorities by Course Type | | | | |
|---|---|---|---|---|
| Training | NFPA # | Urban | Suburban | Rural |
| Firefighter I, II | 1001 | H | H | H |
| Fire/Emergency Services Instructor | 1041 | H | H | H |
| Hazardous Materials Response- Awareness, Operations, Technician | 470 | H | H | H |
| Infection Control | 1581 | H | H | H |
| Confined Space Response- Awareness, Operations, Technician | 2500 | H | H | H |
| Wildland firefighting (basic) | 1140 | H | H | H |
| Wildland firefighting certification (red card) | 1140 | H | H | H |
| Wildland Fire Officer | 1051 | H | H | H |
| Rapid Intervention Training | 1407 | H | H | H |
| Fire Officer | 1021 | H | H | H |
| Emergency Medical Responder | | H | H | H |
| Emergency Medical Technician | | H | H | H |
| Advanced Emergency Medical Technician to Paramedic | | H | H | H |
| Paramedic | | H | H | H |
| Paramedic to Community Paramedic | | H | H | H |
| Firefighter Safety and Survival | 1407 | H | H | H |
| Safety Officer | 1026,1521 | H | H | H |
| Fire Apparatus Driver/Operator | 1002 | H | H | H |
| Fire Prevention | 1037,1730 | H | H | H |
| Fire Inspector | 1031 | H | H | H |
| Fire Investigator | 921,1033 | H | H | H |
| Fire Educator | 1035 | H | H | H |
| NIMS/Incident Management System (IMS) | 1026,1561 | H | H | H |
| Emergency Scene Rehab | 1584 | H | H | H |
| Critical Incident Debriefing/Crisis Intervention | 1500 | H | H | H |
| Any training to a National/State or NFPA standards | | H | H | H |

| Fire Department and Regional Training Priorities by Course Type | | | | |
|---|---|---|---|---|
| **Training** | **NFPA #** | **Urban** | **Suburban** | **Rural** |
| Compliance with federal/state-mandated program | | H | H | H |
| Technical Rescue- Operations, Technician | 1006, 2500 | H | H | H |
| Vehicle Rescue | 2500 | H | H | H |
| Another officer | 1021 | H | H | M |
| Aircraft Rescue Firefighting (ARFF) | 440, 460, 1003 | H | H | M |
| Weapons of Mass Destruction (WMD) | 470 | H | H | H |
| Mass Casualty | | H | H | H |

| Fire Department and Regional Training Priorities by Course Type | | | | |
|---|---|---|---|---|
| **Training** | **NFPA #** | **Urban** | **Suburban** | **Rural** |
| Training to address a local risk not elevated to a national or state | | M | M | M |
| Specialized Training | | M | M | M |
| Maritime Firefighting | 1005, 1405, 1910 | L | L | L |
| Instructor-led training that does not lead to certification | | L | L | L |
| Self-taught courses | | L | L | L |
| Training not elevated to a national or state standard | | L | L | L |

**Funding Priorities for Fire Departments and Nonaffiliated EMS Organizations Training**

The AFG Program provides training grants to meet the educational and performance requirements of fire departments and nonaffiliated EMS personnel. Training should align with the U.S. National Highway Traffic Safety Administration, which designs and specifies a National Standard Curriculum for Emergency Medical Technician (EMT) training and the National Registry of Emergency Medical Technicians (NREMT), a private, central certifying entity whose primary purpose is to maintain a national standard (NREMT also provides certification information for paramedics who relocate to another state).

**A higher priority is assigned to the following due to the time and cost of upgrading an organization's response level:**

- Organizations seeking to elevate the response level from Emergency Medical Responder (EMR) to EMT.
- Organizations seeking to elevate the response level from Advanced EMT (AEMT) to Paramedic.
- Organizations seeking to train Community Paramedics: Organizations seeking

to train a high percentage of the active EMRs will receive additional consideration when applying under the Training activity.

| Eligible Training Activities for Fire Departments and Regional Applications include but are not limited to: | |
|---|---|
| • Train-the-trainer courses<br>• Alternative fuel firefighting<br>• Response to natural disasters<br>• Minor interior alterations, requested under Additional Funding and limited to $10,000 total expenditure to support the awarded Training activities (e.g., removal/construction of a non-weight bearing wall)<br>• Overtime expenses paid to career firefighters to attend training or to backfill positions for colleagues who are in training<br>• Rental of facilities to conduct training<br>• Rental of Audio/Visual equipment<br>• Travel expenses associated with attendance at a formal training course or conference (air/rail transportation, mileage, lodging expenses, etc.)<br>• Compensation to volunteers (Fire and nonaffiliated EMS) for wages lost to attend training; there is no overtime or backfill for volunteers<br>• Tuition, exam/course fees, and certifications/certification expenses | • Purchase of training curricula and training services (instructors)<br>• Chemical Biological Radiological Nuclear and Explosive (CBRNE) awareness, performance, planning, and management<br>• Travel expenses associated with Type 3 Incident Management Teams (IMT) attending position development/mentoring assignment with national Type 2 or Type 1 IMTs<br>• Supplies or expendables or one-time use items essential for an award's scope of work, such as foam, breaching materials (e.g., wood or sheetrock) for ventilation or rescue props, or the amount of fuel required to sustain an awarded live fire training activity, or per NFPA 1403 Standard on Live Fire Training Evolutions, reasonable safety mitigations to a structure acquired for training<br>• Props (single-use or permanent) essential for training programs requested in the application cannot exceed $50,000 for Operation and Safety requests; this does not apply to SFTA requests |

| Ineligible Training Activities for Fire Departments and Regional Applications include but are not limited to: | |
|---|---|
| • Construction of facilities (buildings, towers, sheds, etc.)<br>• Firefighting equipment or PPE, such as SCBA, used exclusively for training<br>• Remodeling not directly related to grant activities<br>• Any costs associated with planning and/or participating in formal or planned special event exercises to identify user needs, evaluate an organization's performance capabilities, validate existing capabilities, or to facilitate coordination and asset sharing<br>• Firefighting equipment and PPE rental, as well as training facility personnel costs (such as facility maintenance, cleaning, safety officer services, etc.) | • Site preparation to accommodate or modify any training activity, facility, or prop that is a permanent or semi-permanent improvement, including but not limited to: landscaping, cutting or grading an access road, trenching, paving a training area, exterior stairs or sidewalks, or the installation of utilities<br>• Purchase or lease of real estate (this does not preclude departments from securing necessary training facilities such as classrooms, use of towers, training props, etc.)<br>• Purchase of Unmanned Aerial Vehicles (UAVs) and Drones<br>• Food and beverages |

| Eligible Training Activities for Nonaffiliated EMS include but are not limited to: | |
|---|---|
| • EMR<br>• EMT<br>• AEMT<br>• AEMT to Paramedic<br>• Paramedic (applicant must clearly demonstrate plan to accomplish paramedic training within the period of performance)<br>• Community Paramedics (paramedics with Primary Care certification)<br>• Travel expenses associated with attendance at a formal training course or conference: air/rail transportation, mileage, hotel/lodging expenses, etc. (Note: Food and beverages are ineligible travel expenses) | • Attendance at formal training forums or conferences providing continuing education credits<br>• Overtime expenses paid to career nonaffiliated EMS responders to attend training or to backfill positions for colleagues who are in training<br>• Compensation to volunteers for wages lost to attend training (there is no overtime or backfill for volunteers)<br>• Supplies or expendables or one-time use items essential to complete the training activity of a nonaffiliated EMS award's scope of work; examples include bandages, splints, expendable respiratory supplies, etc. |

II. OPERATIONS AND SAFETY – EQUIPMENT OVERVIEW

AFG grants fund equipment for effective response, firefighting, rescue and emergency medical operations to enhance the public safety.

**Reminder**: When requesting training for any items in this section, enter the request under "Additional Funding" in the "Request Details" section of the application. Make sure to identify the type and scope of training, timeframe, etc. in the item description section. Training must be specific to the use of the

equipment (i.e., vendor training) and not duplicative of courses listed under the Training activity.

**Also note:**
- Accountability systems are located under the Equipment activity.
- All simulators, tow vehicles, and all mobile or fixed fire/evolution props (e.g., burn trailers, forcible entry, or rescue/smoke mazes) are located under the Equipment activity.
- Request for monitors/defibrillators should be based on the number of transport and non-transport ALS response vehicles in the fleet (medic engine, medic chase vehicle, ALS ambulance, etc.).
- P-25 compliant Portable Radios should be requested based on the number of seated riding positions or active members of the department and supported in the request narratives.
- Requests for P-25 mobile radios should be based on the number of vehicles in the fleet.
- Requests to replace obsolete or damaged equipment should enable the applicant to meet applicable industry, local, state, and national standards.
- Equipment product lifecycles are assigned an age category of Short (5-7 years), Intermediate (8-14 years), or Long (15-20 years). These age categories are used to compare like types of equipment of a similar age category. Under this system, an item that should have a useful life of 10 years is only compared to other items that have a similar useful lifespan. An application does not score higher or lower based on the product lifespan of an item. It only serves to ensure a more even scoring of equipment based on type.

**All of the following are considerations in pre-scoring and peer review determinations:**

**Only High (H) priority equipment items listed below will be considered for funding.**

| Priority | Age Category | Fire and Fire Regional | SFTA |
|---|---|---|---|
| | | **BASIC EQUIPMENT** | |
| **M H** | Intermediate | Air Compressor/Fill Station/Cascade System (Fixed or Mobile) for filling SCBA. Fire Department applicants - **M** Regional Applicants - **H** | Air Compressor/Fill Station/Cascade System (Fixed or Mobile) for filling SCBA – **H** |
| **H** | Long | Appliance(s)/Nozzle(s) | Appliance(s)/Nozzle(s) |
| **H** | Long | Basic Hand Tools (Structural/Wildfire) | Basic Hand Tools (Structural/Wildfire) |
| **M H** | Intermediate | Electric/Gas Powered Saws/Tools - **M** | Electric/Gas Powered Saws/Tools - **H** |
| **M H** | Short | Fit Tester - **M** | Fit Tester – **H** |

| Priority | Age Category | Fire and Fire Regional | SFTA |
|---|---|---|---|
| M H | Long | Foam Eductors - M | Foam Eductors - H |
| H | Intermediate | Hose (Attack/Supply) | Hose (Attack/Supply) |
| H | Short | Immediately Dangerous to Life or Health (IDLH) Monitoring Equipment | IDLH Monitoring Equipment |
| H | Immediate | IDLH Protection for Investigators (this is single-use respiratory protection) | |
| M H | Long | Ladders - M | Ladders - H |
| M H | Short | Personal Accountability Systems - M | Personal Accountability Systems - H |
| H | Intermediate | PPE Washer/Extractor/Dryer (Turnout) | PPE Washer/Extractor/Dryer (Turnout) |
| M | Intermediate | Respirator Decontamination System (SCBA) | Respirator Decontamination System (SCBA) |
| M H | Intermediate | Props - M | Props - H |
| H | Intermediate | RIT Pack/Cylinder | RIT Pack/Cylinder |
| M | Intermediate | Generator – Portable | Generator – Portable |
| M H | Intermediate | Tech Rescue (Ropes, Harnesses, Carabiners, Pulleys, etc.) - M | Tech Rescue (Ropes, Harnesses, Carabiners, Pulleys, etc.) - H |
| M H | Short | Simulators (including virtual) - M | Simulators (including virtual) - H Repairs and upgrades (non-construction) to existing Simulators - H |
| H | Short | Thermal Imaging Camera (Must be NFPA 1801 compliant) | Thermal Imaging Camera (Must be NFPA 1801 compliant) |
| L M H | Short | Software and Learning Management System (LMS) to support training for Fire Departments - L Software and LMS to support training for Regional - M | Software and LMS to support training - H |
| M | Short | Computers used in support of training | Computers used in support of training |
| H | Short | Vehicle Mounted Exhaust Systems | Vehicle Mounted Exhaust Systems |
| M | Short | Mobile computing devices intended to be used on scene (Tablets) | Mobile computing devices intended to be used on scene (Tablets) |
| **COMMUNICATIONS** | | | |
| M H | Intermediate | Base Station (must be P-25 Compliant) - M | Base Station (must be P-25 Compliant) - H |
| M H | Intermediate | Headsets - M | Headsets - H |
| M H | Intermediate | Mobile Radios (must be P-25 Compliant) - M | Mobile Radios (must be P-25 Compliant) - H |
| M H | Intermediate | Mobile Repeaters (must be P- 25 Compliant) - M | Mobile Repeaters (must be P-25 Compliant) - H |
| M H | Intermediate | Pagers (limited to number of active members) - M | Pagers (limited to number of active members) - H |
| H | Intermediate | Portable Radios (must be P-25 compliant) | Portable Radios (must be P-25 compliant) |
| M | Intermediate | Mobile Data Terminal (MDT) | MDT |

| Priority | Age Category | Fire and Fire Regional | SFTA |
|---|---|---|---|
| M | Short | Software specifically to enable Radio over IP (RoIP) | Software specifically to enable RoIP |
| **EMS EQUIPMENT** | | | |
| H | Short | Airway Equipment (Non-Disposable) | Airway Equipment (Non-Disposable) |
| H | Short | CPAP Device (Non-Disposable) | CPAP Device (Non-Disposable) |
| H | Short | Suction Unit (Non-Disposable) | Suction Unit (Non-Disposable) |
| H | Short | Automated External Defibrillators (AEDs) BLS Level | AEDs BLS Level |
| H | Short | Automatic Chest Compression Device (CPR) | Automatic CPR |
| H | Short | EMS Training Aids | EMS Training Aids |
| H | Short | Monitor/Defibrillator | Monitor/Defibrillator |
| H | Intermediate | Power Lift Cot | Power Lift Cot |
| H | Intermediate | Power Lift System | Power Lift System |
| H | Short | Pulse Oximeters | Pulse Oximeters |
| H | Short | Responder Rehab Equipment | Responder Rehab Equipment |
| H | Short | Power Stair Chair | Power Stair Chair |
| H | Short | Patient Carbon Monoxide Monitor | Patient Carbon Monoxide Monitor |
| H | Short | Capnography/Capnometer Device | Capnography/Capnometer Device |
| M | Short | O2 Kit | O2 Kit |
| M | Short | Non-Disposable Splints | Non-Disposable Splints |
| L | Intermediate | Stretcher | Stretcher |
| L | Intermediate | Backboard | Backboard |
| L | Short | Trauma Bag | Trauma Bag |
| | Short | Mass Casualty Kit | Mass Casualty Kit |
| L | Short | Portable Lift System (i.e., devices, hydraulic or electrical, used to assist with the lifting of patients that are not associated with cots or stair chairs) | Portable Lift System (i.e., devices, hydraulic or electrical, used to assist with the lifting of patients that are not associated with cots or stair chairs) |
| **EXTRICATION** | | | |
| M H | Intermediate | Cutter/Spreader - M | Cutter/Spreader - H |
| M H | Intermediate | Vehicle Extrication Equipment - M | Vehicle Extrication Equipment - H |
| **HAZARDOUS MATERIALS** | | | |
| M | Intermediate | Basic HazMat Response Equipment | Basic HazMat Response Equipment |
| M | Intermediate | Decon, Clean-Up, Containment and Packaging Equipment | Decon, Clean-Up, Containment and Packaging Equipment |
| M | Short | Sampling Devices (HazMat) | Sampling Devices (HazMat) |
| **SPECIALIZED** | | | |
| H | Intermediate | Skid Unit | Skid Unit |
| M | Intermediate | Air Quality Device | Air Quality Device |
| M | Intermediate | Boats | Boats |
| M | Short | Marine equipment (NFPA 1910: Standard on Marine Fire-Fighting Vessels) | Marine equipment (NFPA 1910: Standard on Marine Fire-Fighting Vessels) |
| M | Intermediate | Mobile Generator | Mobile Generator |

*FY 2024 AFG NOFO*

| Priority | Age Category | Fire and Fire Regional | SFTA |
|---|---|---|---|
| M | Intermediate | Portable Pump | Portable Pump |
| L | Short | Specialized Equipment (Other) | Specialized Equipment (Other) |
| **CHEMICAL BIOLOGICAL RADIOLOGICAL NUCLEAR EQUIPMENT (CBRNE)** | | | |
| L | Short | CBRNE-related Equipment | CBRNE-related Equipment |
| L | Short | Non-Disposable Biological Detection | Non-Disposable Biological Detection |

| Priority | Age Category | Tow Vehicles | Applicant Type |
|---|---|---|---|
| **Note: Tow vehicles may be applied for under different application types with differing priority levels. Please reference the chart below when applying for tow vehicles.** | | | |
| H | Long | Tow Vehicle | SFTA |
| M | Long | Tow Vehicle | Regional |
| L | Long | Tow Vehicle | Fire Department |

| Priority | Age Category | Nonaffiliated EMS | Nonaffiliated EMS Regional |
|---|---|---|---|
| **COMMUNICATIONS** | | | |
| H | Intermediate | Base Station (must be P-25 Compliant) | Base Station (must be P-25 Compliant) |
| H | Intermediate | Mobile Radios (must be P-25 Compliant) | Mobile Radios (must be P-25 Compliant) |
| H | Intermediate | Mobile Repeaters (must be P-25 Compliant) | Mobile Repeaters (must be P-25 Compliant) |
| H | Intermediate | Pagers (limited to number of active members) | Pagers (limited to number of active members) |
| H | Intermediate | Portable Radios (must be P-25 Compliant, limited to number of AFG Program-approved seated positions) | Portable Radios (must be P-25 Compliant, limited to number of AFG Program-approved seated positions) |
| M | Intermediate | Mobile Data Terminal | Mobile Data Terminal |
| M | Intermediate | Headsets | Headsets |
| M | Short | Software specifically to enable RoIP | Software specifically to enable RoIP |
| **EMS EQUIPMENT** | | | |
| H | Short | ALS/BLS Equipment | ALS/BLS Equipment |
| H | Short | Airway Equipment (Non- Disposable) | Airway Equipment (Non- Disposable) |
| H | Short | AEDs BLS Level | AEDs BLS Level |
| H | Short | Automatic CPR | Automatic CPR |
| H | Short | EMS Training Aids | EMS Training Aids |
| H | Short | CPAP Device (Non-Disposable) | CPAP Device (Non-Disposable) |
| H | Short | Monitor/Defibrillator - 15 leads | Monitor/Defibrillator - 15 leads |
| H | Intermediate | Power Lift Cot | Power Lift Cot |
| H | Intermediate | Power Lift System | Power Lift System |
| H | Short | Responder Rehab Equipment | Responder Rehab Equipment |
| H | Short | Suction unit | Suction unit |
| H | Intermediate | Power Stair Chair | Power Stair Chair |

*FY 2024 AFG NOFO*

| Priority | Age Category | Nonaffiliated EMS | Nonaffiliated EMS Regional |
|---|---|---|---|
| H | Short | Patient Carbon Monoxide Monitor | Patient Carbon Monoxide Monitor |
| H | Short | Capnography/Capnometer Device | Capnography/Capnometer Device |
| M | Short | O2 Kit | O2 Kit |
| M | Short | Non-Disposable Splints | Non-Disposable Splints |
| L | Intermediate | Stretchers | Stretchers |
| L | Intermediate | Backboards | Backboards |
| L | Short | Trauma Bag | Trauma Bag |
| L | Short | Mass Casualty Kit | Mass Casualty Kit |
| M | Short | Computers used in support of training | Computers used in support of training |
| M | Short | Mobile computing devices intended to be used on scene (tablets) | Mobile computing devices intended to be used on scene (tablets) |
| H | Short | Vehicle Mounted Exhaust Systems | Vehicle Mounted Exhaust Systems |
| L | Short | Portable Lift System (i.e., devices, hydraulic or electrical, used to assist with the lifting of patients that are not associated with cots) | Portable Lift System (i.e., devices, hydraulic or electrical, used to assist with the lifting of patients that are not associated with cots) |
| HazMat | | | |
| M | Intermediate | Basic HazMat Response Equipment | Basic HazMat Response Equipment |
| M | Intermediate | Decon, Clean-Up, Containment and Packaging Equipment | Decon, Clean-Up, Containment and Packaging Equipment |
| M | Short | Sampling Devices (HazMat) | Sampling Devices (HazMat) |

| Fire Department, Nonaffiliated EMS, Regional, and SFTA Equipment Priorities | | |
|---|---|---|
| Priority | Purpose of Request | Definition |
| H | Obtain equipment needed but not currently owned or replace equipment that is broken and/or damaged beyond repair to achieve minimum operational and deployment standards for existing missions | Applies to requests for equipment needed, and not currently owned, to achieve minimum operational and deployment standards for a department's existing mission requirements. This includes equipment that is no longer usable because it is broken and/or damaged beyond repair. |
| H | Replace noncompliant equipment to current standard | Applies to equipment that is deemed obsolete and/or is out of compliance with current standards for that type of equipment. Equipment requested under this reason for purchase has not been deemed inoperable, and while it may not be compliant with current standards it is not broken, damaged, or otherwise unusable. |
| M | Obtain equipment for new mission | Applies to requests for equipment, supplies, or inventories that are intended to fulfill minimum service requirements associated with new missions that a department is taking on and building the capability for but has not been previously fulfilled. For example, this may include, but is not limited to, establishing a new HazMat capability or Swift Water Rescue capability. |

*FY 2024 AFG NOFO*

| Fire Department, Nonaffiliated EMS, Regional, and SFTA Equipment Priorities | | |
|---|---|---|
| **Priority** | **Purpose of Request** | **Definition** |
| L | Upgrade technology to current standard | Applies to requests for equipment that may or may not be owned, but newer technology is available. |

**Eligible Equipment Activities for Fire Department, Nonaffiliated EMS, Regional, and SFTA include but are not limited to:**

- Shipping, taxes, assembly, and installation of the requested equipment
- Extended warranties and service agreements if acquired concurrent with initial acquisition
- Minor interior alterations (requested under Additional Funding and limited to $10,000 total expenditure) to support the awarded Equipment activities (e.g., removal/ construction of a non-weight bearing wall)
- Equipment for response to incidents involving CBRNE/WMD
- Training specific to the requested equipment

- Requested support activities for equipment requiring supplies or expendables or "onetime" use items essential for an award's scope of work, such as foam, breaching materials (e.g., wood or sheetrock) for ventilation or rescue props, or the amount of fuel required to sustain an awarded live fire training activity, or per NFPA 1403 Standard on Live Fire Training Evolutions, reasonable safety mitigations to a structure acquired for training
- Subscriptions necessary for the operation of the awarded equipment and purchased concurrently within the POP
- Computing device may be considered for reimbursement if essential to the operation of the funded equipment.

**Ineligible Equipment Activities Fire Department, Nonaffiliated EMS, Regional, and SFTA include but are not limited to:**

- Construction of facilities, such as buildings, towers, or sheds to house communications
- All fixed non-mobile repeaters or fixed site amplifiers
- Sirens or other outdoor warning devices
- Signage of any kind
- Phones (telephone/satellite/cell) and carrier plans
- Investments in emergency communications systems and equipment must meet applicable SAFECOM Guidance
- Personal Safety/Rescue Bailout System (PPE)
- Computer assisted dispatch (CAD) systems and software, geographic information systems (GIS), dispatch consoles, workstations and office furniture
- Nonaffiliated EMS expendable supplies (including but not limited to medications)
- Vehicle mounted fans

- Utility Vehicles and All-Terrain Vehicles (UTV/ATV)
- UAVs and Drones
- Bomb disposal equipment and robots
- Mobile radios for personally owned vehicles (except Chief Fire Officer's personal vehicle if justified)
- Supplies or expendables or common one-time use items such as foam, soaps, disinfectant wipes, medical gowns/gloves, bandages, any drug, intravenous bags/fluids, defibrillator pads/electrodes, syringes, cervical collars, batteries, exhaust system filters and splints
- Flashover or other simulators/props that do not meet NFPA 1402 or 1403 standard (homemade or aftermarket simulators)
- Subscriptions, memberships, equipment rental or lease to purchase
- Refurbished equipment

*FY 2024 AFG NOFO*

| Additional Considerations for Fire Department, Nonaffiliated EMS, Regional, and SFTA Equipment Priorities |
|---|
| • Equipment that has a direct effect on firefighters' health and safety<br>• Age of equipment considered for replacement<br>• Equipment that operationally benefits other jurisdictions<br>• Equipment that brings the department into compliance with a national recommended standard, (e.g., NFPA or statutory compliance like OSHA) |

**IMPORTANT:** The only eligible AFG Program activity for interoperable communications equipment is the acquisition of P-25 compliant equipment.

- P-25 compliant interoperable communications equipment has a digital platform that is programmable, scalable, and can communicate in analog mode with legacy radios, and in both analog and digital mode with other P-25 equipment. P-25 compliance enhances interoperability, allowing first responders to communicate with each other to coordinate their response to and mitigate all hazards.
- The procurement of interoperable communications equipment that does not meet P-25 compliance is unallowable; there are no waivers for P-25 compliance.
- All recipients awarded activities with emergency communication equipment and related activities must comply with the SAFECOM Guidance for Emergency Communication Grants, including provisions on technical standards that ensure and enhance interoperable communications. Technical specifications are located at: FY 2023 SAFECOM Guidance on Emergency Communications Grants.
- It is the recipient's responsibility to obtain documented evidence that the equipment to be acquired has been tested and has passed all the applicable P-25 compliance requirements and the recipient shall be able to produce such documentation to FEMA upon request.
- AFG Program applicants are not required to identify a specific P-25-compliant product in their application narrative, but they must affirm that the interoperable communications equipment requested or acquired will be P-25 compliant.

**Note:** Recipients using FY 2024 AFG Program funds to support emergency communications activities should review and comply with SAFECOM requirements, including provisions on technical standards that ensure and enhance interoperable communications. Communication equipment (e.g., portable radios) would be included in this standard. Recipients investing in emergency communications must ensure their projects support the Statewide Communications Interoperability Plan (SCIP) for their state.

**III. OPERATIONS AND SAFETY – PPE OVERVIEW**

AFG Program funds used to acquire PPE may only be used to acquire compliant PPE for firefighting and nonaffiliated EMS personnel. Only the acquisition of PPE compliant with the most current edition of NFPA 1971, 1977, 1981 and/or 1999 are eligible activities. The acquisition of used, refurbished, or updated PPE are ineligible for reimbursement. PPE requested should have the goal of increasing firefighter safety. When requesting to replace or purchase new PPE (e.g., Turnout Gear and/or SCBA) applicants will be asked to provide the age of the items being replaced. All PPE items in the current inventory must be accurately described and accounted for in the application narrative.

Exposure to Per-and polyfluoroalkyl substances (PFAS chemicals) has been linked to cancer and other health effects. Recipients of PPE awards are strongly encouraged to ask potential vendors about their current level of compliance with using PFAS-free materials and to purchase PFAS-free gloves, hoods, boots, etc. as these items have matured in development to include readily available PFAS-free items.

Based in part on NFPA 1851, Standard on Selection, Care, and Maintenance of Protective Ensembles for Structural Fire Fighting and Proximity Fire Fighting, in order for PPE (to include SCBA) to be considered noncompliant, the items must be a minimum of 2 NFPA cycles and 10 years of age or older from the date they were manufactured. PPE gear (to include SCBA) that is less than 10 years old and 2 NFPA cycles behind that was deemed damaged/unsafe/unrepairable is eligible for replacement if sufficient justification is provided in the application.

- Acquiring or replacing an individual SCBA face piece for each operational member of an organization is High (**H**) Priority. To the extent a request for additional face pieces exceeds any face pieces requested as part of an SCBA unit, that request should be entered as a separate request line item and will not be considered a request "to increase supplies" (e.g., if the applicant has the need for 35 Face Pieces, and requests 25 SCBA Units, the applicant should also separately request 10 additional Face Pieces).
- FEMA considers a complete set of Structural/Proximity PPE Turnout Gear to be comprised of these NFPA 1971 compliant components: one pair of pants, one coat, one helmet, two hoods, one pair of boots, two pairs of gloves, one pair of suspenders, and one pair of goggles. In the AHJ where additional PPE such as a Personal Safety/Rescue Bailout System is statutorily required, FEMA will consider all statutorily required items to be part of a complete PPE set.
- FEMA considers a complete set of EMS PPE Turnout Gear to be comprised of these NFPA 1999 compliant components: one pair of pants, one coat, one helmet, one pair of boots, one pair of gloves, one pair of suspenders, and one pair of goggles.
- FEMA considers a complete set of Wildfire PPE Turnout Gear to be comprised of these NFPA 1977 compliant components: one pair of pants, one

coat, one jumpsuit, one helmet, one pair of boots, one pair of gloves, one pair of suspenders, one pair of goggles, one fire shelter, web gear, backpack, and canteen/hydration system.

- FEMA considers PPE gear bags and RIT packs as eligible items that can be requested under Additional Funding and available as part of excess fund for the PPE activity in support of requests for PPE or SCBA items.
- FEMA considers a complete SCBA unit to be comprised of a harness/backpack, one face piece, and two cylinders.
- Recipients should consider the importance of proper fitting gear when making purchasing decisions. This includes the nuances with proper fitting for female firefighters.

Training for requested PPE:
- Applicants must certify that all grant-funded PPE will only be used by sufficiently trained personnel (failure to meet this requirement will result in the request for funding deemed ineligible).
- If applicants are requesting training to support a PPE activity, it must be entered in the "Additional Funding" section within the "Request Details" section of the application.

**The following are considerations in pre-scoring and peer review determinations:**

| Fire Department, Nonaffiliated EMS, Joint/Regional, and SFTA PPE Priorities | | |
|---|---|---|
| Priority | Purpose of Request | Definitions |
| H | Increase supply for new hires and/or existing firefighters that do not have one set of turnout gear (PPE) or allocated seated positions (SCBA). This includes replacing out of service PPE-Turnout Gear and SCBA. | Applies to PPE-Turnout Gear for new firefighters (i.e., new hires or volunteer recruits) and/or existing firefighters that do not currently have one set of PPE-Turnout Gear, and to add SCBA to fill seated riding positions that do not currently have SCBA. |
| H | Replace in-service or in-use damaged/unsafe/unrepairable PPE/SCBA to meet current standard | Applies to PPE-Turnout Gear and SCBA that is deemed damaged unsafe and unrepairable yet still in use at the time of application. |
| H | Replace in-service/in-use/expired/noncompliant PPE/SCBA to current standard | Applies to PPE-Turnout Gear or SCBA that is deemed obsolete and/or is out of compliance with current standards. PPE-Turnout Gear or SCBA to be replaced is not compliant with current standards; it is not broken, damaged or otherwise unusable. |
| L | Replace PPE/SCBA to upgrade technology to current standard | Applies to PPE-Turnout Gear or SCBA that is less than 10 years old for PPE-Turnout Gear or compliant within two NFPA cycles for SCBA. |

| Additional Considerations for Fire Department, Nonaffiliated EMS, Joint/Regional, and SFTA for PPE or SCBA Priorities |
|---|
| • Higher priority is given to the age of requested PPE, reason for purchase/replacement, priority. Applicant's call volume is a lesser factor. Applicants will be required to provide the age of the PPE being replaced. |
| • Applicants with the oldest PPE and/or trying to bring the department into 100% NFPA compliance or the number of active members who will have compliant gear. |

| PPE List | |
|---|---|
| **Structural/Proximity H** | |
| • American National Standards Institute (ANSI) Traffic Vests<br>• Boots<br>• Coats<br>• Complete Set of Turnout Gear<br>• Gloves<br>• Goggles | • Helmets<br>• Hoods<br>• Pants<br>• Pass Devices<br>• Personal Safety/Rescue Bailout System<br>• Suspenders |
| **Respiratory H** | |
| • Air-Line Unit<br>• Face Pieces<br>• Respirators | • SCBA Spare Cylinders<br>• SCBA (SCBA Unit includes: Harness/ Backpack, Face Piece, and two cylinders) |
| **Wildfire H** | |
| • Jumpsuits/Coveralls<br>• Boots<br>• Coats<br>• Pants<br>• Suspenders | • Goggles<br>• Shelters<br>• Web Gear/Backpacks<br>• Canteens/Hydration Systems<br>• Helmets |
| **Specialized PPE M** | |
| • Ballistic Protective Equipment (BPE), which includes one vest, one helmet, one triage bag, one pair of goggles<br>• Chemical/Biological Suites (must conform to NFPA 1990 2022 edition) | • Extrication Clothing/Rescue Clothing<br>• Proximity Suits<br>• Splash Suits<br>• Wet and Dry Suits<br>• Encapsulated Suits |

| Eligible PPE Activities for Fire Department, Nonaffiliated EMS, Joint/Regional and SFTA include but are not limited to: | |
|---|---|
| • ANSI approved retroreflective highway apparel<br>• Training for requested PPE<br>• Turnout gear bags | • Customized helmet shields<br>• Level C suits<br>• Personal Safety/Rescue Bailout System<br>• Face Pieces Regulators |

| Ineligible PPE Activities for Fire Department, Nonaffiliated EMS, Joint/Regional and SFTA include but are not limited to: | |
|---|---|
| • Three-quarter length rubber boots<br>• Uniforms (formal/parade or station/duty) and uniform items (hats, badges, etc.)<br>• PPE gear bags (ineligible unless requested as additional funds in association with a PPE request)<br>• RIT packs (ineligible unless requested as additional funds in association with SCBA request)<br>• Air Compressor/Fill Station/Cascade Systems (ineligible unless requested as additional funds in association with a Regional SCBA request)<br>• PPE gear washer/extractor/dryer (ineligible unless requested additional funds in association with PPE gear request)<br>• Personal Safety/Rescue Bailout System for nonaffiliated EMS organizations | • Food and beverages<br>• Integrated thermal imaging cameras (TIC) with heads-up display<br>• Bomb disposal suits<br>• Any communications equipment (e.g., radios and pagers) in the PPE section<br>• Structural, proximity, wildfire firefighting gear, or rescue and extrication gear for nonaffiliated EMS organizations<br>• Any decals, embroidery, engraving, flags, graphics, logos, vehicles, and PPE Turnout lettering that customizes awarded items beyond the normal expectation (except customized helmet shields)<br>• Funding is limited to one set of PPE- Turnout Gear per person<br>• Equipment rental or lease to purchase<br>• **Note:** Where bailout system is statutorily required, FEMA will consider all statutorily required items to be part of a complete PPE set |

IV. **OPERATIONS AND SAFETY – WELLNESS AND FITNESS OVERVIEW**

Wellness and Fitness activities are intended to strengthen emergency responders so that their mental, physical and emotional capabilities are resilient enough to withstand the demands of all hazardous operations. In order to be eligible for funding, applicants must offer, or plan to offer, all five of the following Priority 1 activities as discussed in the table below.

| Fire Department and Nonaffiliated EMS Wellness and Fitness Priorities |
|---|
| **Priority 1**<br>Departments that have some of the Priority 1 programs in place must apply for funds to implement the missing Priority 1 programs before applying for funds for any additional program or equipment within Priority 2. In addition, all grant-funded physicals (except those for explorers) must meet current NFPA 1582 standards (Chapter 9, Occupational Medical Evaluation). The cost of physicals should be based on local physician or health center prices. Detailed information on implementing NFPA 1582 physicals is available here: https://firstrespondercenter.org.<br><br>Below are the five activities required for a complete Wellness and Fitness program:<br>• Initial medical exams;<br>• Job-related immunization;<br>• Annual medical and fitness evaluation;<br>• Behavioral health; and |

## Fire Department and Nonaffiliated EMS Wellness and Fitness Priorities

- Cancer Screening Program to meet NFPA 1582.

**Priority 2**

Applicants may only apply for Priority 2 Items (listed below) if the applicant offers or is requesting a combination of the five activities required under Priority 1 (listed above):

- Candidate physical ability evaluation;
- Injury/illness rehab;
- Formal fitness, injury prevention; or
- International Association of Fire Fighters (IAFF) or IAFC peer fitness trainer program, including transportation, travel, overtime/backfill, and reasonable expenses associated with member participation in Train-the-Trainer for IAFF/IAFC and implementation of a peer fitness trainer programs. Core components included in a firefighter fitness assessment include:
  - Aerobic Capacity,
  - Body Composition,
  - Muscular Strength,
  - Muscular Endurance and
  - Flexibility.

Applicants are encouraged to review NFPA 1583 for guidance on the minimum requirements for the development, implementation, and management of a health-related fitness program.

**NOTE:** Simultaneous requests for Priority 1 and Priority 2 activities will receive a lower funding consideration than requests that complete the bundle of the five Priority 1 activities. Applicants should review Health Related Fitness Programs as outlined in NFPA 1583, which is summarized below.

### NFPA 1583 Standards on Health-Related Fitness Programs for Fire Department Members

**Scope**

This standard establishes the minimum requirements for the development, implementation, and management of a health-related fitness program for members of the fire department involved in emergency operations.

**Purpose**

The purpose of this standard is to provide the minimum requirements for a health-related fitness program for fire department members that enhances the members' ability to perform occupational activities efficiently and safely and reduces the risk of injury, disease, and premature death.

This document is intended to help fire departments develop a health-related fitness program for fire department members that requires mandatory participation but is not punitive.

This document is not intended to establish physical performance criteria.

| Eligible Wellness and Fitness Activities for Fire Department and Nonaffiliated EMS include but are not limited to: | |
| --- | --- |
| • The five Priority 1 items: initial medical exams, job-related immunization, annual medical and fitness evaluation, behavioral health, and cancer screening<br>• Behavioral health programs to include, but not limited to: Critical Incident Stress Management Programs, Employee Assistance Programs<br>• Transportation expenses related to a member's participation in offered Wellness and Fitness activities | • Contractual costs (non-hiring) for personnel (such as nutritional counseling), physical fitness equipment (including shipping charges and sales tax, as applicable), and supplies directly related to physical fitness activities<br>• Minor interior alterations (requested under Additional Funding and limited to $10,000 total expenditure) to support the awarded Wellness and Fitness activities (e.g., removal/ construction of a non-weight bearing wall); note that these will require EHP review |

| Ineligible Wellness and Fitness Activities for Fire Department and Nonaffiliated EMS include but are not limited to: | |
| --- | --- |
| • Fitness club memberships for participants or their families<br>• Non-cash incentives (e.g., t-shirts or hats of nominal value, vouchers to local businesses, or time-off)<br>• Purchase of real estate<br>• Cash incentives<br>• Food and beverages<br>• Subscriptions and memberships<br>• Saunas (including infrared)<br>• Hyperbaric chambers | • Ice baths<br>• Purchase of medical equipment<br>• Whole-body MRI scans<br>• Contractual services with anyone other than medical professionals (e.g., health care consultants, trainers, and nutritionists) for programs such as smoking cessation<br>• Purchase of equipment or personal protective equipment that is otherwise eligible under the Equipment activity or the PPE activity |

### V. OPERATIONS AND SAFETY – MODIFICATIONS TO FACILITIES OVERVIEW

AFG Program funds may be used to modify fire stations and other facilities. New fire station construction is not eligible. Eligible activities include source capturing exhaust, sprinkler, carbon monoxide alarms or smoke/fire detection systems, only for these types of systems and not multi-purpose systems that encompass ineligible features as described below.

All changes to facilities including major or minor modifications and equipment installations require EHP review.

The benchmark for eligibility does not apply to minor interior alterations (requested under Additional Funding and limited to $10,000 total expenditure) to support Training, or Wellness and Fitness activities (e.g., removal/construction of a non-weight bearing wall). In recognition of the risks posed by exposure to diesel fumes, Source Capture Exhaust Extraction Systems (SCES) are a High Priority item for vehicle exhaust mitigation under Modifications to Facilities.

An SCES is a system where exhaust gases from a vehicle are captured directly via

a conduit that attaches to/over the end of the vehicle's exhaust system at the tailpipe. The captured exhaust gases are expelled through the attached conduit via mechanical/pneumatic means to the exterior of the building.

No modification may change the structure's footprint or profile. If requesting multiple items, such as a sprinkler system and exhaust system, the funding for any projects or activities cannot cumulatively exceed $100,000 (total project cost[s]) for any individual station.

Eligible projects under this activity must have a direct effect on the health and safety of firefighters.

Note: Vehicle Mounted Exhaust Systems are now listed as a "High" priority in the equipment activity.

**Facility Considerations:**
Priority is given to facilities staffed full-time and facilities with sleeping quarters. Facilities without sleeping quarters or with part-time occupancy will receive subsequent consideration. Training facilities, marine fire facilities, and intermittently occupied facilities will be considered next.

**All of the following are considerations in pre-scoring and peer review determinations:**

| | Eligible Modifications to Facilities Priorities for Fire Department and Nonaffiliated EMS include but are not limited to: |
|---|---|
| **H** | • New source capture exhaust systems, sprinkler systems, carbon monoxide, or smoke/fire detection systems – only for these types of systems and not multi- purpose systems that encompass ineligible features as described below. <br> • Replacement or updates to existing source capture exhaust systems, sprinkler systems, carbon monoxide, or smoke/fire detection systems are considered lower priority over requests submitted for new systems. |
| **M** | • Emergency generators, Air Quality Systems (AQSs) <br><br> **Note:** AQSs are fixed equipment that are air purifying, scrubbing, and/or air exchange systems. |

| Ineligible Modifications to Facilities Priorities for Fire Department and Nonaffiliated EMS include but are not limited to: | |
|---|---|
| • Station maintenance <br> • Resurfacing of bay floors <br> • Interior remodeling not pertaining to the requested project(s) <br> • Food and beverages | Security systems, or other alerting systems of similar purpose designed to notify fire stations of unauthorized access or provide deployment notifications or multi-purpose systems that include any of these features even if they also include otherwise eligible features |

g. *Regional Applications*
A Regional application is an opportunity for a fire department or a nonaffiliated EMS

organization to act as a host and apply for funding on behalf of itself and any number of other participating AFG Program eligible organizations. The host organization and its partners must be the intended beneficiaries of the proposed project. A nonaffiliated EMS organization that serves as a host regional applicant can only host other nonaffiliated EMS organizations. A fire department that serves as a host regional applicant can apply on behalf of other eligible fire departments and nonaffiliated EMS organizations within the same application. SFTAs are not eligible to apply under the Regional activity. Eligible Regional activities are Vehicle Acquisition, and Operations and Safety but only for Training, Equipment, Wellness and Fitness, and PPE activities. Regional activities should achieve cost effectiveness, support regional efficiency and resilience, and benefit more than one local jurisdiction (county, parish, town, township, city, or village) directly from the activities implemented with the grant funds. To align with the stated program objective of fostering interoperability, departments and agencies party to regional applications must use the same vendor. Any exceptions to this requirement must be pre-approved by FEMA in writing and be based on compelling operational need.

Regional applicants will be subject to the funding limitations based on the total population served by the host of the application and the participating partners. For example, if the host and partners serve a population of 100,000 or fewer and are the recipients of a Regional award for $1 million, the host has met their cap and is no longer eligible for additional funds under the AFG Program.

The community identification characteristic (e.g., Rural, Urban, or Suburban) and the organizational status of the host applicant (e.g., Career, Combination, or Volunteer) will be entered and used for the Regional application, regardless of the composition of the participating partners.

Regional populations served are the aggregate of the geographically fixed primary first due response areas of the host and participating partner organizations. Exceptions can be made to this requirement in situations where the host is also the parent organization and is responsible for their smaller and independent stations.

Neither the Regional host nor any participating partner is prevented from also applying on behalf of their own organization for any AFG Program activity (Vehicle Acquisition, or Operations and Safety). However, it cannot be for the same item. For example, a department cannot apply for PPE under its own organization and participate in a regional PPE application.

In the application narrative, a Regional host must include a list of all the AFG Program eligible participating organizations benefitting from a proposed Regional project, including validated points of contact, each organization's EIN, and clear and detailed information on the regional activities requested.

Host organizations should provide specific details, fully explaining the distribution of any grant-funded acquisitions or grant-funded contracted services, as well as the responsibilities between the host and the partner organizations.

In order to apply for a Regional project, the host organization must agree, if awarded, to be responsible for all aspects of the grant. This includes, but is not limited to cost share, accountability for the assets, and all reporting requirements in the Regional application. The host of the Regional application is not considered a pass-through entity and may not issue sub-awards.

The host will be required to enter information that captures the macro demographics (e.g., total square miles) and master listings of information (e.g., combined SCBA inventories) of the partners that serve the region.

All participants of a Regional applicant must be compliant with AFG Program requirements, including being current with past grants, closeouts, and other reporting requirements. Upon notification by the AFG Program Office, the host agency shall not distribute grant-funded assets or provide grant-funded contractual services to non-compliant partner organizations. The host and the delinquent partners will be notified by the AFG Program Office of their specific deficiency.

Regional host applicants and participating partner agencies must execute a Memorandum of Understanding (MOU) or equivalent document signed by the host and all participating organizations. The agreement should specify the individual and mutual responsibilities of the participating partners, the participant's level of involvement in the project(s), and the proposed distribution of all grant- funded assets and/or contracted services. Copies of the MOU will be requested during the technical evaluation of the application.

***The MOU must specify the individual and mutual responsibilities of the host and participating partners, the host's and participants' level of involvement in the project(s), the participating partners' EINs, and the proposed distribution of all grant-funded assets or contracted services. Any entity named in the application as benefiting from the award must be an eligible AFG Program organization and must be a party to the MOU or equivalent document.***

h. ***Vehicle Acquisition***
Vehicles purchased with AFG Program funds must be compliant with NFPA 1900 (Standard for Aircraft Rescue and Firefighting Vehicles, Wildland Fire Apparatus, and Automotive Fire) or equivalent (Standard for Automotive Ambulances). Leases, loan payments, or installment plans to obtain a vehicle are not eligible acquisition activities under the AFG Program and will not be reimbursed.

Community Paramedic/Health vehicles are non-transport vehicles and are not intended to have a dual role (e.g., as utility or support vehicles). There is nothing inherent in the delivery of community paramedic services that requires any emergency response packages (e.g., lights, sirens) or operational equipment (e.g., rescue tools, structural/wildfire firefighting equipment). Consequently, such activities are ineligible.

Applicants may apply for more than one vehicle. Requests cannot exceed the

financial cap based on population listed in the application. If a department submits multiple types of applications, and more than one of those requests are approved, the department will be held to the same financial cap based on the population listed in the application.

When requesting more than one vehicle, applicants will be asked to fill out a separate line item and answer all the questions including a separate narrative for each vehicle. For example, if an applicant is requesting to replace three ambulances, the applicant must fill out the age and vehicle identification number (VIN) of each vehicle being replaced. Applicants cannot use the same VIN in each line item.

In the case(s) when an applicant is not replacing a vehicle but only changing the service status of a vehicle(s), such as from first due to reserve, a VIN is still required for the narrative and for the vehicle being reassigned.

Applicants requesting fire vehicles that do not have drivers or operators trained to NFPA 1002 or equivalent and are not planning to have a training program in place by the time the awarded vehicle(s) is delivered will not receive a vehicle award.

Applicants requesting nonaffiliated EMS vehicles that do not have drivers or operators trained to the National Standard Emergency Vehicle Operator Curriculum (EVOC) developed by the United States Department of Transportation (DOT), or equivalent, and are not planning to have a training program in place by the time the awarded vehicle(s) is delivered, will not receive a vehicle award.

All applicants may request funding for a driver training program within the "Vehicle Acquisition" section but must add the request in the "Additional Funding" area in the "Request Details" section of the Vehicle Application.

All driver training program(s) must be in place prior to the delivery of the awarded vehicle(s) or the recipient will be considered in violation of the grant agreement. The pre-score evaluation criteria consider the department's need for the vehicle based on the age/condition of current vehicles and/or the demands on the organization.

| Priority | Urban Communities | Suburban Communities | Rural Communities |
|---|---|---|---|
| **Eligible Vehicle Activities for Fire Department, and SFTA include but are not limited to:** | | | |
| **H** | • Aerial<br>• Ambulance<br>• Pumper<br>• Rescue Vehicle Light, Medium, or Heavy<br>• Non-Transport EMS (Community Paramedic/Healthcare)<br>• Quint<br>• Brush Type III or larger | • Aerial<br>• Ambulance<br>• Pumper<br>• Tanker/Tender<br>• Rescue Vehicle Light, Medium or Heavy<br>• Non-Transport EMS (Community Paramedic/Healthcare)<br>• Quint<br>• Brush | • Aerial<br>• Ambulance<br>• Brush/Attack<br>• Pumper<br>• Tanker/Tender<br>• Non-Transport EMS (Community Paramedic/Healthcare)<br>• Quint |
| **M** | • Command/Mobile Communications Vehicle<br>• HazMat Unit<br>• Air/Light Unit<br>• Rehab Unit | • Command/Mobile Communications Vehicle<br>• HazMat Unit<br>• Air/Light Unit<br>• Rehab Unit | • Command/Mobile Communications Vehicle<br>• Hazardous Materials Unit<br>• Air/Light Unit<br>• Rescue Vehicle Light, Medium or Heavy |
| **L** | • ARFF<br>• Foam Truck<br>• Fire Rescue/Boat<br>• Highway Safety Unit<br>• Hybrid (i.e., Transport Engine)<br>• Tanker/Tender | • ARFF<br>• Foam Truck<br>• Highway Safety Unit<br>• Hybrid (i.e., Transport Engine)<br>• Fire Rescue/Boat | • ARFF<br>• Foam Truck<br>• Highway Safety Unit<br>• Hybrid (i.e., Transport Engine)<br>• Fire Rescue/Boat<br>• Rehab Unit |

| Priority | Eligible Regional Vehicle Activities for Fire Departments (ALL Community Types) |
|---|---|
| **H** | • Aerial<br>• Air/Light Unit<br>• Bariatric Ambulance<br>• Command/Mobile Communications Vehicle<br>• Non-Transport EMS (Community Paramedic/Healthcare)<br>• Rehab Unit<br>• Rescue Vehicle Light, Medium or Heavy<br>• Tow Vehicle (Applied for under equipment) |
| **M** | • Highway Safety Unit |
| **L** | • Hazardous Materials Unit<br>• Foam Truck |

*FY 2024 AFG NOFO*

| Eligible Nonaffiliated EMS and Nonaffiliated Regional Vehicle Activities | |
|---|---|
| **H** | • Ambulances<br>• Bariatric Ambulance<br>• Non-Transport EMS (Community Paramedic/Healthcare) |

| Compliance with Standards |
|---|
| • Ambulances must comply with NFPA 1900, or GSA Federal Standard KKK-A-1822F<br>• Applicants must certify that unsafe vehicles will be permanently removed from service if awarded a grant; acceptable uses of unsafe vehicles include farm, nursery, scrap metal, salvage, construction, or donation to a foreign entity<br>• Applicants should consider adopting the principles of Traffic Incident Management Systems (TIMS); the USFA report on TIMS can be found on FEMA's website at: Traffic Incident Management Systems<br>• New fire apparatus must be compliant with NFPA 1900 for the year ordered/manufactured |

| Additional Considerations (to include, but not limited to) |
|---|
| • Age and mileage of the vehicle being replaced; older equipment receives higher consideration<br>• Age of the newest vehicle in the department's fleet that is like the vehicle to be replaced<br>• Average age of the fleet; older equipment within the same class<br>• Call volume of primary first due response area or region<br>• Converted vehicles (with an emphasis on tanker/brush trucks) not designed or intended for use in the fire service departments that have automatic aid agreements, mutual aid agreements, or both; a converted vehicle is any vehicle that is not engineered to an NFPA standard, or not being used for its original design, or over its gross vehicle weight<br>• Vehicles on loan to the organization in the application narrative but not in the organization's inventory<br>• Damaged vehicles and out of service vehicles in the organization's inventory<br>• Replacement of open cab/jump seat configurations |

**IMPORTANT**

Applicants requesting a vehicle(s) may be required to provide additional fleet information after the submission of the application. Vehicle inventory in the application must reflect currently owned vehicles as well as vehicles that are leased or on long-term loan and vehicles that have been ordered or otherwise currently under contract for purchase or lease by the organization but not yet in possession.

The following definitions should be followed when providing vehicle inventory in the application:

***Front Line Vehicle***: a vehicle that is fully equipped and ready to respond to emergency calls (first due, second due, ready-reserve vehicle).

***Ready-Reserve Vehicle***: a vehicle that is equipped and may be easily made ready to respond (i.e., emergency mobilization).

***Reserve Vehicle***: a vehicle that is not fully equipped and not ready to respond. Reserve apparatus is used when the front-line vehicle is out-of-service (repairs/maintenance). Equipment is removed from the front-line vehicle and moved to the reserve vehicle for emergency response.

***Temporarily Out of Service Vehicle:*** A vehicle which has been temporarily removed from emergency response duties due to mechanical or safety conditions requiring repair. Although currently out of service this vehicle is required to meet the response needs of the agency and will be returned to front line or reserve status once repaired. Temporarily out of service vehicles are included in the vehicle inventory, included in the seated position count and are eligible for replacement in the AFG Program.

***Decommissioned Vehicle:*** A vehicle which has been permanently removed from any or all emergency response duties or functions but is still in the possession of the organization. Examples include retired vehicles waiting disposal, vehicles used solely for parade/public relations use, antique vehicles, display, or similar uses. Decommissioned vehicles are not listed in the vehicle inventory or included in the seated position count and are not eligible for replacement in the AFG Program.

**Vehicle Contract**: Vehicle award recipients must submit a copy of their vehicle purchase contract to the designated Regional Fire Program Specialist or Program Analyst. To locate Regional Fire Specialist, please visit FEMA's website at [Assistance to Firefighters Grant Program.](#) Recipients will be asked to scan the document(s) into a PDF format and email it to the Regional Fire Program Specialist or Program Analyst for inclusion in the grant file. Submitting a vehicle purchase contract will assist in the programmatic monitoring of an award and help ensure programmatic compliance with the Improper Payments Eliminations and Recovery Act of 2012 (Pub. L. No. 112-248). If recipients do not submit a vehicle purchase contract, they will be unable to:

- Submit for an advance of federal funds for partial vehicle payment or chassis payment; and
- Submit an amendment requesting a Period of Performance extension for the project.

**Performance Bond Strongly Recommended:** Performance bonds are strongly recommended but not required by the AFG Program. This is for any organization that is going to advance its own funds to their vendor prior to receipt of the vehicle. The bond may be obtained through the vendor or bank. The concept behind this is to ensure the applicant's funds are not lost in the event of a vendor's failure to perform, e.g., not finishing or delivering the vehicle, or going out of business.

**Prepayment Bond Required:** AFG Program vehicle recipients are required to obtain a prepayment bond if the recipient plans to advance federal funds to their vendor for a down payment. This is to safeguard the federal funds against loss if the vendor goes out of business or fails to deliver the vehicle. Prepayment bonds may be obtained

through the vendor or bank. The cost of a Prepayment Bond is a reimbursable activity under a vehicle acquisition award.

**Penalty Clause Required:** All contracts for any AFG Program-funded vehicle must contain a penalty clause. Non-delivery by the contract's specified date, or other vendor nonperformance, will require a penalty that is no less than $100 per day until such time that the vehicle, compliant with the terms of the contract, has been accepted by the recipient.

Exceptions may be considered by FEMA only if an urgent and compelling need is demonstrated by the recipient. The request for exception from this requirement must be submitted in writing to the AFG Program Analyst or Regional Fire Program Specialist.

**Down Payment:** A down payment for the purchase of a vehicle is allowable if required in the vehicle purchase contract, but FEMA will only allow up to 25% of the federal share to be drawn for this purpose. Any costs over-and-above the 25% limit, such as the cost of a chassis or any other fees or services, must be borne by the recipient or deferred until final payment is drawn.

Federal funds may not be requested for any other payments to include but not limited to periodic or progress vehicle payments, loan payments, or the acquisition of equipment for the awarded if already supplied under the vehicle contract. Purchases outside of the vehicle contract can be requested for payment, i.e., driver/operator training, physical exams for driver/operator, and equipment specific to the type of apparatus awarded and as listed in the NFPA 1990.

**Final Payment:** To expedite the acquisition process, and prior to the vehicle being received, inspected, and accepted, the recipient may request the final vehicle payment as an advance payment request. However, the recipient shall not disburse or satisfy the vehicle obligation until after the vehicle is received, inspected, and accepted by the recipient.

| Eligible Vehicle Activities for Fire Department, Nonaffiliated EMS Organizations, Joint/Regional, and SFTA include but are not limited to: | |
| --- | --- |
| • Cost of vehicle<br>• Physicals to meet current NFPA 1582/US DOT 649 F<br>• Cost of associated equipment that is eligible under current NFPA 1900<br>• Driver/operator training programs that meet applicable standards, current NFPA 1002 or EVOC, or equivalent | • Travel expenses (air/rail transportation, mileage, hotel/lodging) to inspect a requested vehicle during production<br>**Note: Food and beverages are ineligible travel expenses** |

| Ineligible Vehicle Activities for Fire Department, Nonaffiliated EMS Organizations, Joint/Regional, and SFTA include but are not limited to: | |
|---|---|
| • Leasing, rental, or installment purchase of any grant funded vehicle<br>• Aircraft, bulldozers, or construction-related equipment<br>• Using the vehicle being awarded as collateral for any financial loan | • UTVs and ATVs<br>• UAVs and drones<br>• Used or refurbished apparatus<br>• Converted vehicles not originally designed for firefighting<br>• Food and beverages |

**Examples of vehicle types**

- Pumper (an apparatus that carries a minimum of 300 gallons of water and has a pump with the capacity to pump a minimum of 750 gallons per minute [GPM])
- Urban interface vehicles (Type I) pumper (300 gallons of water and 750 GPM)
- Ambulance (vehicle used for transporting patients)
- Tanker/Tender (an apparatus that has water capacity in excess of 1,000 gallons of water)
- Quint Aerial (an aerial ladder, elevating platform, or water tower that is designed to position personnel, handle materials, provide continuous egress, or discharge water)
- Quint (fire apparatus with a permanently mounted fire pump, a water tank, a hose storage area, an aerial ladder or elevating platform with a permanently mounted waterway, and a complement of ground ladders)
- Aerial Ladder (elevating platform, or water tower that is designed to position personnel, handle materials, provide continuous egress, or discharge water)

**Unsafe Vehicles**

If applicants specify the vehicle(s) to be replaced are unsafe, they must certify that if awarded, the unsafe vehicle to be replaced will be permanently removed from emergency service response. Permanently removed from emergency service response means the recipient cannot use the vehicle being replaced for any emergency service response, nor can the recipient sell or otherwise transfer title to any individual or emergency service response organization that will use the unsafe vehicle for emergency service response.

*A recipient who certifies it will remove an unsafe vehicle from service but then sells/transfers the unsafe vehicle to another emergency service response organization, or otherwise does not remove the unsafe vehicle from emergency service response, is considered to be in violation of the grant agreement.*

Acceptable dispositions (donation or sale) of unsafe vehicles include but are not limited to a training facility (NO emergency response off the training grounds), farm use, construction or nursery use, sale to a non-emergency service response entity for refurbishment, scrap metal, salvage, or foreign donation.

## 17. Appendix C – Award Administration Information

Appendix C contains detailed information on AFG Program Award Administration. Reviewing this information may help recipients in the programmatic and financial administration of their award(s).

a. ***Help FEMA Prevent Fraud, Waste, and Abuse***

If applicants or recipients have information about instances of fraud, waste, abuse, or mismanagement involving FEMA programs or operations, they should contact the DHS Office of Inspector General (OIG) Hotline at (800) 323-8603, by fax at (202) 254-4297, or email HOTLINE@oig.dhs.gov.

b. ***Economic Hardship Waivers of Cost Share and Maintenance of Effort***

In cases of demonstrated economic hardship, and upon the request of the recipient, the FEMA Administrator may waive or reduce an AFG Program cost share or MOE requirement for certain recipients (15 U.S.C. § 2229(k)(4)(A)). As required by statute, the FEMA Administrator established guidelines for determining what constitutes economic hardship and published these guidelines in Information Bulletin No. 427.

The applicant is required to submit documentation supporting their request for an Economic Hardship Waiver at the time of the application by attaching the supporting document to the grant application.

To receive an Economic Hardship Waiver the applicant must address the specific conditions as well as format the waiver request submission as specified in Section III – Guidance, Part D: Eligibility – Demonstrating Economic Hardship of Information Bulletin No. 427.

Failure to provide documentation at the time of application or address the conditions or following the prescribed format in Information Bulletin No. 427 may result in a denial of the waiver.

c. ***Grant Writer/Preparation Fees***

Fees for grant writers may be included as a pre-award expenditure. This expenditure is a subject to the cost-share requirement. For grant writer fees to be eligible as a pre-award expenditure, the services must be competitively sourced, specifically identified, and listed within the "Request Details" section of the application and must satisfy the requirements under 2 C.F.R. § 200.458. FEMA will only consider reimbursements for application preparation, not administration, up to $1,500 per annum. The allowability of grant writer fees as a pre-award expenditure must be paid between the 90 days prior to the publication date of the NOFO and up to 30 days after the application period closes. In order for Grant writer fees held either on retainer or subscription basis to be an eligible pre-award cost, the claimed retainer or subscription must have been competitively secured, and the costs are limited to the start of the appropriation period for the underlying award and meet the requirements under 2 C.F.R. § 200.458. Fees payable on a contingency basis are not an eligible expense.

Pursuant to 2 C.F.R. Part 180, recipients may not use federal grant funds to reimburse any entity, including a grant writer or preparer, if that entity is presently suspended or debarred by the federal government from receiving funding under federally funded grants or contracts. Recipients must verify that the contractor is not suspended or

debarred from participating in specified federal procurement or non-procurement transactions pursuant to 2 C.F.R. § 180.300.

***Prior to submission of the application, please review all work produced by grant writers or other third parties for accuracy. By submitting the application, applicants are certifying all of the information contained therein is true and an accurate reflection of the organization, and that regardless of the applicant's intent, the submission of information that is false or misleading may result in actions by FEMA. These actions include but are not limited to the submitted application not being considered for award, temporary withholding of funding under the existing award pending investigation, or referral to the DHS OIG.***

The following documentation shall be provided to FEMA upon request:
  i. A copy of the grant writer's contract for services;
  ii. A copy of the invoice or purchase order;
  iii. A copy of the canceled check (front and back); and
  iv. Evidence that the services were competitively procured. If an applicant's local procurement practices/policies do not require competitive bidding under $1,500, then the applicant may be asked to provide a copy of that policy.

Failure to provide the requested documentation may result in the grant writer fee being deemed ineligible and the grant reduced accordingly.

**NOTE: FEMA requires that all applicants identify the following as "Application Participants" in the "Contact Information" section of the application.**

Any individual or organization that assisted with the development, preparation, or review of the application to include drafting or writing the narrative and budget, whether that person, entity, or agent is compensated or not and whether the assistance took place before submitting the application.

d. ***Maintenance and Sustainment for AFG Programs***
The use of FEMA preparedness grant funds for the costs of repairs or replacement, as well as maintenance contracts, warranties, and user fees may be allowable.

The intent of eligible Maintenance and Sustainment activities is to provide direct support to the critical capabilities developed using FEMA and other DHS grants and support activities. Routine upkeep and the supplies, expendables, or one-time use items that support routine upkeep (e.g., gasoline, tire replacement, routine oil changes, monthly inspections or grounds and facility maintenance) are the responsibility of the recipient and may not be funded with AFG Program funding.

Generally, when purchasing a maintenance agreement, service contract, or extended warranty for systems or equipment, the period of coverage provided under such a plan may not extend beyond the period of performance of the grant with which the agreement, warranty, or contract is purchased. The duration of an extended warranty purchased incidental to the original purchase of the equipment may exceed the period

of performance as long as the coverage purchased is consistent with that which is typically provided for, or available through, these types of agreements, warranties, or contracts. When purchasing a stand-alone warranty or extending an existing maintenance contract on an already-owned piece of equipment or system, coverage purchased may not exceed the period of performance of the award used to purchase the maintenance agreement or warranty. As with warranties and maintenance agreements, this policy extends to licenses and user fees as well.

Even if purchased incidental to the original purchase of the equipment, the duration of an extended maintenance agreement or warranty must also be reasonable for the type of equipment or system being purchased. For example, if a vendor offers a 10-year extended warranty incidental to the purchase of a piece of equipment, but the useful life of that equipment being purchased is five years, the purchase of a 10-year extended warranty would not be a reasonable cost and may not be charged to the grant.

e. **Taxes, Fees, Levies, and Assessments**
Taxes, fees, levies, or assessments that the recipient is legally required to pay and are directly related to any eligible AFG Program acquisition activity may be charged to an AFG Program award pursuant to 2 C.F.R. § 200.470. These charges shall be identified and enumerated in the AFG Program application narrative, as well as the "Request Details" section of the acquisition activity.

Any avoidable and unreasonable costs that result from the action or inaction of a recipient (or recipient's agent) or that prevent that recipient from enjoying any lawful exemption, waiver, or reduction of any tax, fee, levy, or assessment directly related to any eligible AFG Program acquisition activity, are not chargeable to any AFG award.

**Example:** Governmental entities and Public Safety Agencies are exempt from some Federal Communications Commission (FCC) fees*, but only if the eligible organization submits an exemption or waiver request to the FCC.

*Government entities are not required to pay FCC regulatory fees. Nonprofit entities (exempt under Section 501 of the Internal Revenue Code) may also be exempt. The FCC requires that any entity claiming exempt status submit, or have on file with the FCC, a valid Internal Revenue Service Determination Letter documenting its nonprofit status or certification from a governmental authority attesting to its exempt status. For more information, please visit the Federal Communications Commission website.*

f. **Excess Funds**
After completing the initial project's purpose in the recipient's application, some recipients may have unexpended funds remaining in their budget. These excess funds may result from any combination of under-budget acquisition activities or competitive procurement processes.

These cost-shared excess funds may be utilized to address an organization's local

needs or to mitigate identified capability gaps. FEMA expects excess funds to be obligated concurrent with an award's period of performance to address a known or critical need.

**Excess Funds Restrictions**
In general, excess funds are limited to no more than $10,000 for any award. If you have any questions, contact the AFG Help Desk at 866-274-0960 or email FireGrants@fema.dhs.gov. The AFG Helpdesk is open Monday through Friday, 8 a.m. – 4:30 p.m. ET.

The $10,000 maximum is cumulative for any grant, regardless of the number of activities within the award, and will require no amendment except when the use of excess funds is for any eligible activity that would normally require an EHP review.

- Excess funds cannot be used to support Fire Prevention and Safety activities.
- Consistent with the funding priorities set by the panel of fire service professionals and stakeholders, excess funds are limited to the purchase of High Priority items only.
- Excess funds cannot be used for grant writer/preparer fees.
- Excess funds may only be used for allowable activities identified in the program guidance for that fiscal year's grant cycle.
- The opportunity for excess funds is limited when the original uncompleted Scope of Work is changed via an amendment.

Example: An award for the acquisition of 10 SCBA units is reduced via Amendment to eight SCBA units. The federal participation and the recipient cost obligation are both reduced and any remaining unliquidated federal funds resulting from the reduction in quantity of awarded items are not allowable as excess funds. FEMA may allow reduction in the quantity of awarded items but not total project cost if compelling justification of need is provided.

Exceptions to the $10,000 use may be considered by FEMA if urgent and compelling need that can be directly related to a demonstrated event impacting the health and safety of the firefighters within the department can be identified. This request must be submitted in writing via an amendment.

g. *Payments and Amendments*
FEMA uses the Direct Deposit/Electronic Funds Transfer (DD/EFT) method of payment to recipients. AFG Program payment/drawdown requests are generated using FEMA GO. AFG Program payment/drawdown requests from state or local government entities will be governed by applicable federal regulations in effect at the time a grant is awarded to the recipient and may be either advances or reimbursements. Recipients should not expend funds until all special conditions listed on the grant award document have been met, including completion of EHP review, active SAM.gov registration, and the request for payment in FEMA GO has been approved.

Recipients should draw down funds based upon immediate disbursement requirements; however, FEMA strongly encourages recipients to draw down funds as close to disbursement or expenditure as possible to avoid accruing interest.

Non-federal entities should keep detailed records of all transactions involving the grant. FEMA may at any time request copies of any relevant documentation and records, including purchasing documentation along with copies of canceled checks for verification. See, e.g., 2 C.F.R. §§ 200.318(i), 200.334, 200.337.

**Advances**
Recipients shall be paid in advance, provided they maintain or demonstrate the willingness and ability to maintain procedures to minimize the time elapsing between the transfer of funds and its disbursement by the recipient (not to exceed 30 days), and the financial management systems that meet the standards for fund control and accountability as established in 2 C.F.R. Part 200. The recipient shall include invoice(s) and/or purchase orders for advance AFG Program payment/drawdown requests. EHP review requirement must be met prior to advanced payments.

Although advance drawdown requests are permissible, recipients remain subject to applicable federal laws in effect at the time a grant is awarded to the recipient. Governing interest requirements include the Uniform Administrative Requirements Cost Principles, and Audit Requirements for Federal Awards at 2 C.F.R. Part 200 and the Cash Management Improvement Act (CMIA) and its implementing regulations at 31 C.F.R. Part 205. Interest under CMIA will accrue from the time federal funds are credited to a recipient's account until the time the recipient pays out the funds for program purposes. For the rate to use in calculating interest, please visit Treasury Current Value of Funds Rate.

**Reimbursement**
Payment by reimbursement is the preferred method when the requirements to be paid in advance, pursuant to 2 C.F.R. § 200.305, cannot be met. In accordance with U.S. Department of Treasury regulations at 31 C.F.R. Part 205, if applicable, the recipient shall maintain procedures to minimize the time elapsing between the transfer of funds and the disbursement of said funds. As a prerequisite of the AFG Program approval for reimbursement requests, recipients shall include proof of purchase, in the form of a canceled check or credit card transaction, active SAM.gov registration, and a final invoice(s) in each reimbursement AFG Program payment/drawdown request.

**Rebates**
Recipients shall disburse program income, rebates, refunds, contract settlements, audit recoveries, and interest earned on such funds before requesting additional cash payments, in accordance with 2 C.F.R. § 200.305. The reduction of federal financial participation via rebates/refunds may generate excess funds for the recipient if the recipient previously obligated their Cost Share match based upon the original award figures. If the recipient previously obligated their original Cost Share prior to the rebate, then the recipient may have minimum excess funds equal to the difference between the original Cost Share less the rebate adjusted Cost Share.

**Payment Requests During Closeout**

A recipient may only submit reimbursement payment requests up to 120 days after the expiration of the period of performance, during an award's closeout reconciliation.

Reimbursement payments are the only eligible type of requests to be submitted after a grant's period of performance has expired. The expenditure must have been obligated and received during the period of performance of the award. The recipient's request should contain clear and specific information certifying that the liquidation of federal funds is reimbursement for an obligation properly incurred during the active period of performance. FEMA may request documentation supporting the reimbursement for review at any time.

**Amendments**

FEMA may approve AFG Program award amendments on a case-by-case basis, for the following reasons:

- Extension of the period of performance in order to complete the scope of work;
- Changes to the activity, mission, retroactive approval (pre-award), closeout issues, and some excess funds requests; or
- Budget changes (adding funds to award/non-closeout deobligation of funds).

FEMA will only consider amendments submitted via FEMA GO. These requests must contain specific and compelling justifications for the requested change. Amendments or changes to the scope of work may require additional EHP review. FEMA strongly encourages recipients to expend grant funds in a timely manner, to be consistent with AFG Program goals and objectives. All amendments require recipients to maintain an active SAM.gov registration.

*NOTE: A recipient may deobligate (i.e., return) unused funds (i.e., those remaining funds previously drawn down via payment request and/or remaining award funding that was never requested) to DHS/FEMA prior to the end of an award's period of performance. To exercise this option, a recipient must submit an amendment via FEMA GO and state in the amendment that the unliquidated funds (i.e., the funds to be returned) are not necessary for the fulfillment or success of the grant's obligations or mission. The recipient must also indicate in the amendment that it understands that the returned funds will be deobligated and unavailable for any future award expenses. Deobligation of funds will decrease the federal portion of the grant and the amount of the recipient's Cost Share obligation. FEMA will confirm deobligation amendments with all points of contact; after confirmation of the recipient's intent to deobligate, FEMA will hold the approved deobligation request for 14 days as a period for recipient reconsideration before FEMA processes the deobligation request. The deobligation of funds cannot be reversed.*

h. *Disposition of Grant Funded Equipment*

A recipient must use, manage, and dispose of AFG Program-funded equipment in accordance with the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards at 2 C.F.R. § 200.313. With the exception of

state governments, when original or replacement equipment acquired under an AFG award is no longer needed for the original project, program, or other activities currently or previously supported by a federal awarding agency, the recipient must request disposition instructions from FEMA. FEMA strongly recommends contacting a Regional FPS or the AFG Program Help Desk prior to the disposition of AFG Program funded equipment, to include vehicles.



**U.S. Department of Homeland Security**
Washington, DC  20472

February 14, 2025

MEMORANDUM FOR:    Christopher Logan
                             Senior Official Performing the Duties of Deputy Administrator for
                             Resilience

                             Keith Turi
                             Acting Associate Administrator for Response and Recovery

                             Monroe Neal
                             Acting Chief Financial Officer

                             Regional Administrators

FROM:                         Cameron Hamilton
                             Senior Official Performing the Duties of the Administrator

SUBJECT:                   Grant Processing Guidance

On January 28, 2025, Secretary Noem issued the *Direction on Grants to Non-governmental Organizations* memorandum that directs,

    "effective immediately, all Department grant disbursements and assessment of grant applications that: (a) go to non-profit organizations or for which non-profit organizations are eligible, and (b) touch in any way on immigration, are on hold pending review, except to the extent required by the controlling legal authority." … "This hold does not in any way apply to the disbursement of essential disaster relief funds, but it does apply to the Shelter and Services Program, and any other similar program."

As such, I am directing the Agency to implement additional process steps to ensure that Secretary Noem has the opportunity to review relevant obligations, disbursements, and payments as follows:

## Grant Obligations, Disbursements, and Payments Requiring Secretary Noem's Review

    *(1) Funding for all Non-Governmental Organizations*
Effective immediately, all new obligations to non-governmental organizations and private non-profits, excluding **fire departments** and organizations comprising the **National Urban Search and Rescue System**, must be reviewed by Secretary Noem prior to issuance. In addition, for funds already obligated, all disbursements and payments must be reviewed by Secretary Noem prior to issuance. If and when you becomes aware that a government recipient or sub-receipient has used FEMA funds to pay a non-government organization, I am directing you to report that information to the Secretary.

*(2) Funding for Non-Congregate Sheltering*

Multiple states have used FEMA funding to provide non-congregate sheltering to illegal aliens. Therefore, effective immediately, all new non-congregate sheltering obligations must be reviewed by Secretary Noem prior to obligation. In addition, for funds already obligated, all disbursements and payments must be reviewed by Secretary Noem prior to issuance.

**Grant Obligations to be Provided for Secretary Noem's Visibility**

In addition to the guidance above, I am directing the Agency to ensure full transparency with Secretary Noem. As such, FEMA will leverage the transmittal process specified by Section 507 of the Department of Homeland Security Appropriations Act to notify the DHS Office of the Chief Finance Officer of all pending obligations over $1M. FEMA will notify additional DHS offices or points of contact at Secretary Noem's request.

**Additional Review of Disaster Assistance Programs**

I am directing the Office of Response and Recovery to conduct a review of all disaster relief programs that may indirectly or incidentally aid illegal aliens, or NGOs that provide assistance to illegal aliens. This review shall include the identification of these programs and potential policy changes.

**Hold of Funds Under Shelter and Services Program, Case Management Pilot Program, and Emergency Food and Shelter Program-Humanitarian**

Grants under the Shelter and Services Program (SSP), Case Management Pilot Program (CMPP), and Emergency Food and Shelter Program-Humanitarian (EFSP-H) are on hold, pending a compliance review, per Secretary Noem's direction. No new obligation, disbursement or payment of funds previously obligated may be issued pending additional guidance from Secretary Noem.

**Implementation**

I am directing the Offices of Response and Recovery and Resilience (1)to identify all pending obligations, disbursements, and payments that may require Secretary Noem's review and (2)to proceed with existing processes for obligations, disbursements, and payments that do not require Secretary Noem's review no later than close of business Tuesday, February 18.

I am directing the Office of the Chief Financial Officer, with the Offices of Response and Recovery and Resilience, to begin transmitting pending obligations, disbursements, and payments to Secretary Noem no later than close of business Friday, February 21.

**Conclusion**

This guidance is necessary to ensure that funding is obligated, disbursed, and paid in line with Secretary Noem's direction, and that we can continue to support the communities and disaster survivors who rely on us for assistance. On a weekly basis, I will engage DHS Leadership to determine whether additional or modified criteria must be applied. Therefore, you must ensure that the processes you implement are adaptable to new or adjusted review criteria.

# Cash Management Improvement Act Agreement
## between
## The State of New York
## and
## The Secretary of the Treasury,
## United States Department of the Treasury

The Secretary of the Treasury, United States Department of the Treasury (hereafter 'Secretary'), and State of New York (hereafter 'State'), in order to implement Section 5 of the Cash Management Improvement Act of 1990, as amended (hereafter 'Act'), agree as follows:

## 1.0  AGENTS OF THE AGREEMENT

1.1  The Authorized Official(s) for the State of New York shall be the Chief Budget Examiner heading the General Government and Workforce Unit of the Division of the Budget in all matters concerning this Agreement.

1.2  The Assistant Commissioner, Revenue Collections Management, Bureau of the Fiscal Service (Fiscal Service), U.S. Department of the Treasury, shall act as the Secretary's representative in all matters concerning this Agreement.

## 2.0  AUTHORITY

2.1  The authority for this Agreement is the Cash Management Improvement Act of 1990 (Public Law 101-453), as amended by the Cash Management Improvement Act of 1992 (Public Law 102-589), codified at 31 U.S.C. 6501 and 31 U.S.C. 6503.

2.2  The regulations codified at 31 CFR Part 205 shall apply to all matters pertaining to this Agreement, and are incorporated herein by reference. In the event of any inconsistency between this Agreement and 31 CFR Part 205, the regulations shall govern.

## 3.0  DURATION, AMENDING, TERMINATING, AND MISCELLANEOUS PROVISIONS

3.1  This Agreement shall take effect on 04/01/2023 and shall remain in effect until 06/30/2024.

3.2  This Agreement may be amended at any time by written, mutual consent of the State and the Fiscal Service. This Agreement shall be amended annually to incorporate new programs that qualify as major Federal assistance programs and remove programs that no longer qualify as major Federal assistance programs. A State must notify the Fiscal Service in writing within 30 days of the time the State becomes aware of a change that involves additions or deletions of programs subject to Subpart A, changes in funding techniques, and/or changes in clearance patterns. The notification must include a proposed amendment for review by the Fiscal Service.

3.3  Notwithstanding section 3.2, in the event of Federal or State non-compliance with Subpart B of 31 CFR, Part 205, the Fiscal Service may amend this Agreement at any time to incorporate additional programs and the entities that administer those programs.

3.4  This Agreement may be terminated by either party with 30 days written notice. If this Agreement is terminated, the Fiscal Service will prescribe the funding techniques, clearance patterns, and methods for calculating interest liabilities to be used by the State.

## 4.0 PROGRAMS COVERED

4.1 The State's threshold and its major Federal assistance programs shall be determined based on the threshold calculation methodology contained in 31 CFR Part 205.5 and relevant expenditure data contained in the State's Single Audit for fiscal year ending 03/31/2022.

All major Federal assistance programs shall be covered by this Agreement, unless otherwise specified in section 4.4 of this Agreement.

4.2 The State's threshold for major Federal assistance programs is $345,891,055.

The following programs meet or exceed the threshold and are not excluded in Section 4.4:

| CFDA | Program Name |
|---|---|
| 10.542 | Pandemic EBT Food Benefits |
| 10.551 | Supplemental Nutrition Assistance Program |
| 10.555 | National School Lunch Program |
| 10.557 | Special Supplemental Nutrition Program for Women, Infants, and Children |
| 10.561 | State Administrative Matching Grants for the Supplemental Nutrition Assistance Program |
| 17.225F | Unemployment Insurance -- Federal Benefit Account and Administrative Costs |
| 17.225S | Unemployment Insurance -- State Benefit Account |
| 20.205 | Highway Planning and Construction |
| 84.010 | Title I Grants to Local Educational Agencies |
| 84.027 | Special Education -- Grants to States |
| 84.425 | Education Stabilization Fund |
| 93.558 | Temporary Assistance for Needy Families |
| 93.568 | Low-Income Home Energy Assistance |
| 93.575 | Child Care and Development Block Grant |
| 93.658 | Foster Care -- Title IV-E |
| 93.767 | Children's Health Insurance Program |
| 93.778 | Medical Assistance Program |
| 97.036 | Disaster Grants - Public Assistance (Presidentially Declared Disasters) |

4.3 The following programs fall below the State's threshold but have been required to be covered by Fiscal Service in accordance with the non-compliance provisions of Subpart B of 31 CFR Part 205:

There are currently no programs listed for Section 4.3.

4.4 The following programs exceed the State's threshold but have been excluded from coverage for the reason indicated:

| CFDA | Program Name | Exclusion Reason |
|---|---|---|
| 14.195 | Section 8 Housing | Non-State |
| 14.871 | Section 8 Housing Choice Vouchers | Non-State |
| 21.019 | Coronavirus Relief Fund | Federal Statute - Full Exemption |
| 21.023 | Emergency Rental Assistance Program | Federal Statute - Full Exemption |
| 21.027 | Coronavirus State and Local Fiscal Recovery Funds | Federal Statute - Full Exemption |
| 84.268 | Federal Direct Student Loan | Non-State |
| 93.498 | Provider Relief Fund & American Rescue Plan (ARP) Rural Distribution | Non-State |
| 93.640 | Basic Health Program (Affordable Care Act) | Federal Statute - Full Exemption |

## 5.0 ENTITIES COVERED

5.1 State agencies and instrumentalities that meet the definition of a State per 31 CFR Part 205, shall be subject to the terms of this Agreement. The following is a list of such entities that administer funds under the programs listed in Section 4.0 of this Agreement:

  Department of Health
  Department of Labor
  Department of Transportation
  Division of Homeland Security and Emergency Services
  Division of Housing and Community Renewal
  Office of Children and Family Services
  Office of Temporary & Disability Assistance
  State Education Department

5.2 Entities that meet the definition of a Fiscal Agent per 31 CFR Part 205 shall be subject to the terms of this Agreement. The following is a list of Fiscal Agents that administer funds under the programs listed in the Section 4.0 of this Agreement:

| Fiscal Agent | CFDA | Program Name |
|---|---|---|
| Conduent, Inc. | 10.542 | Pandemic EBT Food Benefits |
| Conduent, Inc. | 10.551 | Supplemental Nutrition Assistance Program |
| Computer Sciences Corporation | 93.778 | Medical Assistance Program |

## 6.0  FUNDING TECHNIQUES

6.1  General Terms

6.1.1  The State shall request Federal funds in accordance with the appropriate cut-off times shown in Exhibit I to ensure funds will be received and credited to a State account by the times specified in the funding techniques. Exhibit I is incorporated by reference herein.

6.1.2  The State shall schedule the receipt of Federal funds such that the funds are received and credited to a State account in accordance with the clearance patterns specified in Exhibit II - List of State Clearance Patterns. Exhibit II is incorporated by reference herein.

6.1.3  In instances where the receipt of funds is scheduled for a Saturday, the State shall request funds for deposit on Friday. In instances where the receipt of funds is scheduled for a Sunday, the State shall request funds for deposit on Monday. In instances where the receipt of Federal funds is scheduled for deposit on a day when the State is not open for business, the State shall request funds for deposit the day following the scheduled day; in instances where the receipt of Federal funds is scheduled for deposit on a day when the Federal Government is not open for business, the State shall request funds for deposit the day prior to the scheduled day.

6.1.4  Estimates and Reconciliation of Estimates:
Where estimated expenditures are used to determine the amount of the drawdown, the State will indicate in the terms of the State unique funding technique how the estimated amount is determined and when and how the State will reconcile the difference between the estimate and the State's actual expenditures.

6.1.5  Supplemental Funding:
Unless otherwise defined by program rules, Supplemental Funding is the award of additional funds to provide for an increase in costs due to unforeseen circumstances.

The State will comply with all Federal program agency policies and procedures for requesting supplemental grant funding.

The State will comply with the following guidelines when requesting supplemental funding for the Medical Assistance Program and associated administrative payments (CFDA 93.778):

The State must submit a revised Medicaid Program Budget Report (CMS-37) to request supplemental funding. The CMS guidelines and instructions for completing the CMS-37 are provided in Section 2600F of the State Medicaid Manual (SMM). The CMS/CO must receive the revised Form CMS-37 through the Medicaid Budget Expenditure System/Children's Budget Expenditure System (MBES/CBES) no later than 10 calendar days before the end of the quarter for which the supplemental grant award is being requested.

Additional guidance on this policy is available from the respective CMS Regional Office, U.S. Department of Health & Human Services.

The State will comply with the following guidelines when requesting supplemental funding for TANF (CFDA 93.558), CCDF (CFDA 93.575), CSE (93.563), and the FC/AA (CFDA 93.658 and CFDA 93.659) programs administered by the U.S. Department of Human Services, Administration for Children and Families (HHS/ACF):

a. Timing of the Request

A State should initiate its request for supplemental funding during a quarter as soon as it becomes aware of the fact that a shortfall does/will exist. For the TANF and CCDF grants, supplemental funding requests (estimates) may be submitted by a State, for consideration by ACF, up through and including the 15th day of the third month of the first, second or third quarter of any fiscal year. Since TANF and CCDF are block grant programs, all unawarded portions of the annual allotment will automatically be issued at the beginning of the fourth quarter. Therefore, supplemental funding requests will not be available during the fourth quarter for these programs. For the CSE and FC/AA programs, supplemental funding requests may be submitted by a state, for consideration by ACF, up through and including the 15th day of the third month of any quarter of a fiscal year.

b. Justification for the Request

The request for a supplemental funding for any of the above-mentioned programs should contain a justification clearly documenting the need for the additional funding authority during the current quarter. This documentation should be in the form of State accounting records or similar documents that will show the actual expenditures through the most recent month for which such data are available, as well as the State's most accurate projection of its anticipated expenditures during the remaining month(s) of the quarter. For either the TANF or the CCDF program, the State's justification should also include an explanation of the activities requiring the obligation and/or expenditure of amounts that exceed the normal quarterly grant award restrictions and why these activities could not have been delayed until the next quarter.

c. Form Submittal

Supplemental funding requests should be made by completing the appropriate ACF quarterly report of expenditures and estimates applicable to the particular program for which the grant award request is being made.

d. Approval Process

Upon receipt of the state's request for additional funding authority for a quarter, the ACF Regional Office will promptly review the supporting documentation. If the request is properly justified, so long as ACF has adequate funding availability, the State's request will be expedited and supplemental funding will be issued within 5 days of ACF receiving the request. The State will be notified by the Regional Office when the supplemental award has been transmitted to the Payment Management System (PMS) and when it may initiate drawdowns against the supplemental funding.

Additional guidance on this policy is provided in the U.S. Department of Health & Human Services, Administration for Children and Families, letter (May 19, 2004) to State Administrators from the Deputy Assistant Secretary for Administration.

6.2 Description of Funding Techniques

6.2.1  The following are terms under which standard funding techniques shall be implemented for all transfers of funds to which the funding technique is applied in section 6.3.2 of this Agreement.

| Funding Technique Name | Description |
| --- | --- |
| Actual Clearance, ZBA - ACH | The State shall request funds such that they are deposited by ACH in a State account on the settlement date of payments issued by the State. The request shall be made in accordance with the appropriate Federal agency cut-off time specified in Exhibit I. The amount of the request shall be for the amount of funds that clear the State's account on the settlement date. This funding technique is interest neutral. |
| Actual Clearance, ZBA - Same Day Payment | The State shall request funds the same day it pays out funds, in accordance with the appropriate Federal agency cut-off time specified in Exhibit I. A Federal agency will deposit funds in a State account the same day as requested. The amount of the request shall be for the amount of funds that clear the State's account that day. This funding technique is interest neutral. |
| Estimated Clearance | The State shall request funds such that they are deposited in a State account in accordance with the clearance pattern specified in Exhibit II - EC (Estimated Clearance). The request shall be made in accordance with the appropriate Federal agency cut-off time specified in Exhibit I. The amount of each request will be a percentage of the disbursement, according to the State's clearance pattern specified in Exhibit II - EC. This funding technique is interest neutral. |

6.2.2  The following are terms under which funding techniques for administrative costs shall be implemented for all transfers of funds to which the funding technique is applied in section 6.3.2 of this Agreement.

There are currently no funding techniques listed in Section 6.2.2.

6.2.3  The following are terms under which miscellaneous funding techniques shall be implemented for all transfers of funds to which the funding technique is applied in section 6.3.2 of this Agreement.

There are currently no funding techniques listed in Section 6.2.3.

6.2.4  The following are terms under which State unique funding techniques shall be implemented for all transfers of funds to which the funding technique is applied in section 6.3.2 of this Agreement.

| Funding Technique Name | Description |
| --- | --- |
| Reimbursement (Employee Fringe Benefits and Indirect Costs) | 1. Employee Fringe Benefits - the State shall request funds biweekly. Requests shall be made in accordance with the appropriate Federal Agency cutoff time specified in Exhibit I. The amount of the request shall be determined by applying the fringe rate developed pursuant to the terms of Federal grant programs to the actual biweekly payroll. As described in Section 8.8 of this Agreement, this funding technique is interest neutral.<br><br>2. Indirect Costs - the State shall request funds biweekly. Requests shall be made in accordance with the appropriate Federal Agency cutoff time specified in Exhibit I. The amount of the request shall be determined by applying the indirect rate developed pursuant to program-specific indirect cost recovery plans that are approved by the Federal agency responsible for program oversight to the actual biweekly payroll. As described in Section 8.8 of this Agreement, this funding technique is interest neutral. This funding technique is interest neutral. |

6.3  Application of Funding Techniques to Programs

6.3.1  The State shall apply the following funding techniques when requesting Federal funds for the component cash flows of the programs listed in sections 4.2 and 4.3 of this Agreement.

6.3.2  Programs

Below are programs listed in Section 4.2 and Section 4.3.

10.542 Pandemic EBT Food Benefits
Recipient: Office of Temporary & Disability Assistance
% of Funds Agency Receives: 100
Component: Non-Payroll
Technique: Actual Clearance, ZBA - Same Day Payment
Average Day of Clearance: 0 Days

10.551 Supplemental Nutrition Assistance Program
Recipient: Office of Temporary & Disability Assistance
% of Funds Agency Receives: 100
Component: Non-Payroll
Technique: Actual Clearance, ZBA - Same Day Payment
Average Day of Clearance: 0 Days

10.555 National School Lunch Program
Recipient: State Education Department
% of Funds Agency Receives: 91
Component: Non-Payroll
Technique: Actual Clearance, ZBA - ACH
Average Day of Clearance: 2 Days

10.555 National School Lunch Program
Recipient: Department of Health
% of Funds Agency Receives: 9
Component: Non-Payroll
Technique: Actual Clearance, ZBA - ACH
Average Day of Clearance: 2 Days

10.557 Special Supplemental Nutrition Program for Women, Infants,
and Children
Recipient: Department of Health
% of Funds Agency Receives: 96
Component: Non-payroll
Technique: Actual Clearance, ZBA - ACH
Average Day of Clearance: 2 Days

10.557 Special Supplemental Nutrition Program for Women, Infants,
and Children
Recipient: Department of Health
% of Funds Agency Receives: 2
Component: Payroll
Technique: Actual Clearance, ZBA - ACH
Average Day of Clearance: 2 Days

10.557 Special Supplemental Nutrition Program for Women, Infants,
and Children
Recipient: Department of Health
% of Funds Agency Receives: 2
Component: Fringe Benefits and Indirect Costs
Technique: Reimbursement (Employee Fringe Benefits and Indirect
Costs)
Average Day of Clearance: N/A

10.561 State Administrative Matching Grants for the Supplemental
Nutrition Assistance Program
Recipient: Office of Temporary & Disability Assistance
% of Funds Agency Receives: 94
Component: Non-payroll
Technique: Actual Clearance, ZBA - ACH

Average Day of Clearance: 2 Days

10.561 State Administrative Matching Grants for the Supplemental
Nutrition Assistance Program
Recipient: Office of Temporary & Disability Assistance
% of Funds Agency Receives: 2
Component: Fringe Benefits and Indirect Costs
Technique: Reimbursement (Employee Fringe Benefits and Indirect
Costs)
Average Day of Clearance: N/A

10.561 State Administrative Matching Grants for the Supplemental
Nutrition Assistance Program
Recipient: Office of Temporary & Disability Assistance
% of Funds Agency Receives: 3
Component: Payroll
Technique: Actual Clearance, ZBA - ACH
Average Day of Clearance: 2 Days

10.561 State Administrative Matching Grants for the Supplemental
Nutrition Assistance Program
Recipient: Department of Health
% of Funds Agency Receives: 1
Component: Non-payroll
Technique: Actual Clearance, ZBA - ACH
Average Day of Clearance: 2 Days

17.225F Unemployment Insurance -- Federal Benefit Account and
Administrative Costs
Recipient: Department of Labor
% of Funds Agency Receives: 0
Component: Fringe Benefits and Indirect Costs
Technique: Reimbursement (Employee Fringe Benefits and Indirect
Costs)
Average Day of Clearance: N/A

17.225F Unemployment Insurance -- Federal Benefit Account and
Administrative Costs
Recipient: Department of Labor
% of Funds Agency Receives: 99
Component: Non-Payroll (Benefits)
Technique: Actual Clearance, ZBA - Same Day Payment
Average Day of Clearance: 0 Days

17.225F Unemployment Insurance -- Federal Benefit Account and
Administrative Costs
Recipient: Department of Labor
% of Funds Agency Receives: 1
Component: Non-Payroll (Administrative)
Technique: Actual Clearance, ZBA - ACH
Average Day of Clearance: 2 Days

17.225F Unemployment Insurance -- Federal Benefit Account and
Administrative Costs
Recipient: Department of Labor
% of Funds Agency Receives: 0
Component: Payroll
Technique: Actual Clearance, ZBA - ACH
Average Day of Clearance: 2 Days

17.225S Unemployment Insurance -- State Benefit Account
Recipient: Department of Labor
% of Funds Agency Receives: 100
Component: Non-Payroll
Technique: Actual Clearance, ZBA - Same Day Payment
Average Day of Clearance: 0 Days

20.205 Highway Planning and Construction
Recipient: Department of Transportation
% of Funds Agency Receives: 92
Component: Non-Payroll
Technique: Actual Clearance, ZBA - ACH
Average Day of Clearance: 2 Days

20.205 Highway Planning and Construction
Recipient: Department of Transportation
% of Funds Agency Receives: 3
Component: Payroll
Technique: Actual Clearance, ZBA - ACH
Average Day of Clearance: 2 Days

20.205 Highway Planning and Construction
Recipient: Department of Transportation
% of Funds Agency Receives: 5
Component: Fringe Benefits and Indirect Costs
Technique: Reimbursement (Employee Fringe Benefits and Indirect Costs)
Average Day of Clearance: N/A

84.010 Title I Grants to Local Educational Agencies
Recipient: State Education Department
% of Funds Agency Receives: 1
Component: Payroll
Technique: Actual Clearance, ZBA - ACH
Average Day of Clearance: 2 Days

84.010 Title I Grants to Local Educational Agencies
Recipient: State Education Department
% of Funds Agency Receives: 99
Component: Non-Payroll
Technique: Actual Clearance, ZBA - ACH
Average Day of Clearance: 2 Days

84.027 Special Education -- Grants to States
Recipient: State Education Department
% of Funds Agency Receives: 2
Component: Fringe Benefits and Indirect Costs
Technique: Reimbursement (Employee Fringe Benefits and Indirect Costs)
Average Day of Clearance: N/A

84.027 Special Education -- Grants to States
Recipient: State Education Department
% of Funds Agency Receives: 2
Component: Payroll
Technique: Actual Clearance, ZBA - ACH
Average Day of Clearance: 2 Days

84.027 Special Education -- Grants to States
Recipient: State Education Department
% of Funds Agency Receives: 96

Component: Non-Payroll
Technique: Actual Clearance, ZBA - ACH
Average Day of Clearance: 2 Days

84.425 Education Stabilization Fund
Recipient: State Education Department
% of Funds Agency Receives: 100
Component: Non-payroll
Technique: Actual Clearance, ZBA - ACH
Average Day of Clearance: 2 Days

93.558 Temporary Assistance for Needy Families
Recipient: Office of Temporary & Disability Assistance
% of Funds Agency Receives: 100
Component: Non-Payroll
Technique: Actual Clearance, ZBA - ACH
Average Day of Clearance: 2 Days

93.568 Low-Income Home Energy Assistance
Recipient: Office of Temporary & Disability Assistance
% of Funds Agency Receives: 94
Component: Non-payroll
Technique: Actual Clearance, ZBA - ACH
Average Day of Clearance: 2 Days

93.568 Low-Income Home Energy Assistance
Recipient: Division of Housing and Community Renewal
% of Funds Agency Receives: 6
Component: Non-payroll
Technique: Actual Clearance, ZBA - ACH
Average Day of Clearance: 2 Days

93.575 Child Care and Development Block Grant
Recipient: Office of Children and Family Services
% of Funds Agency Receives: 1
Component: Fringe Benefits and Indirect Costs
Technique: Reimbursement (Employee Fringe Benefits and Indirect Costs)
Average Day of Clearance: N/A

93.575 Child Care and Development Block Grant
Recipient: Office of Children and Family Services
% of Funds Agency Receives: 1
Component: Payroll
Technique: Actual Clearance, ZBA - ACH
Average Day of Clearance: 2 Days

93.575 Child Care and Development Block Grant
Recipient: Office of Children and Family Services
% of Funds Agency Receives: 98
Component: Non-Payroll
Technique: Actual Clearance, ZBA - ACH
Average Day of Clearance: 2 Days

93.658 Foster Care -- Title IV-E
Recipient: Office of Children and Family Services
% of Funds Agency Receives: 100
Component: Non-payroll
Technique: Actual Clearance, ZBA - ACH
Average Day of Clearance: 2 Days

93.767 Children's Health Insurance Program
Recipient: Department of Health
% of Funds Agency Receives: 99
Component: Non-Payroll
Technique: Actual Clearance, ZBA - ACH
Average Day of Clearance: 2 Days

93.767 Children's Health Insurance Program
Recipient: Office of Temporary & Disability Assistance
% of Funds Agency Receives: 1
Component: Non-payroll
Technique: Actual Clearance, ZBA - ACH
Average Day of Clearance: 2 Days

93.778 Medical Assistance Program
Recipient: Department of Health
% of Funds Agency Receives: 100
Component: Non-Payroll
Technique: Estimated Clearance
Average Day of Clearance: N/A

97.036 Disaster Grants - Public Assistance (Presidentially Declared Disasters)
Recipient: Division of Homeland Security and Emergency Services
% of Funds Agency Receives: 100
Component: Non-Payroll
Technique: Actual Clearance, ZBA - ACH
Average Day of Clearance: 2 Days

6.3.3 Materiality Exemptions

Agencies exempt from coverage on the basis of materiality:

None

## 7.0 CLEARANCE PATTERNS

7.1  The State shall develop separate clearance patterns for each of the following:

Payments made from the State's non-payroll and payroll accounts and for the Medical Assistance Program (CFDA 93.778).

7.2  The following shall develop the State's clearance patterns:

Medical Assistance Program Clearance Pattern

The New York State Department of Health calculates the Medical Assistance clearance pattern based upon check presentment data compiled by the State's contractor bank.

Functional Clearance Patterns

New York State develops functional clearance patterns based on 1) New York's Statewide Financial System records of State employee payroll checks and checks written to non-employees, and 2) from check presentment files maintained by the State's contractor bank.

7.3  The sources of data the State shall use when developing its clearance patterns are as follows:

See 7.11.0.

7.4  The State shall use the following methodology when developing its clearance patterns:

DocuSign Envelope ID: 7349D645-D84F-428C-842E-5728B0F0E24B

When developing each clearance pattern, the State shall track at least 99% of the funds disbursed, from issuance to clearance, for a period of at least three months.

7.5  The State shall identify for each check or warrant (hereafter, check) in the population: (1) the date the check was released for payment; (2) the date the check was debited from the State's account; and, (3) the amount of the check.

7.6  The State shall use the following method to calculate the dollar-weighted average day of clearance:

To determine the number of days each check was outstanding (clearance time), the issue date shall be subtracted from the date the check cleared the State's account.

To determine the percentage of the disbursement paid out each day following issuance, the amount of the checks that clear the State's account each day shall be summed and then divided by the amount of the total disbursement.

For each day following issuance, the clearance time of the checks paid out that day shall be multiplied by the percentage of the total disbursement those checks represent. This product is the clearance factor.

The dollar-weighted average day of clearance for the disbursement shall be determined by summing the clearance factor of each day following the disbursement.

7.7  The State shall adjust each clearance pattern to reflect the dollar-weighted proportion of funds paid out by EFT/Direct payroll, with the following exceptions:

No exceptions.

The State shall also adjust each clearance pattern to reflect:

Not applicable.

7.8  Each of the State's clearance patterns is calculated in Business days.

7.9  An authorized State official shall certify that each clearance pattern developed by the State accurately corresponds to the clearance activity of the programs to which it is applied. This certification shall be provided to the Fiscal Service prior to the effective date of the Agreement. The State shall recertify its clearance patterns at least every five years.

7.10  The State shall follow the procedures of 31 CFR 205 if it has actual or constructive knowledge, at any time, that a clearance pattern does not correspond to a program's clearance activity.

7.11.0     Medical Assistance Program Clearance Pattern

The State's Medical Assistance funding cycle comprises two separate disbursements. The two-disbursement cycle yields a two-part clearance pattern, each part depicting clearance activity of 100 percent of checks and electronic payments issued and cleared for that disbursement. In other words, the clearance pattern which illustrates clearance activity for a single cycle appears to total 200 percent of checks and electronic payments.

The following description of the development of the Medical Assistance two-part clearance pattern relates to a detailed spreadsheet, prepared and updated as necessary by the Department of Health, which graphically depicts the two-part clearance pattern currently used to time the Medical Assistance drawdown. The spreadsheet will be provided to the Fiscal Service upon request.

Exhibit II-EC of this Agreement reflects a variation of the State's two-part clearance pattern. One column of data from the spreadsheet reflects a recalculation of percentages whereby the two-part clearance pattern appears to total 100 rather than 200 percent of check and electronic payment clearance activity. This Exhibit approximates the State's two-disbursement funding cycle, although the data has been rounded to two decimal places, while the clearance pattern used to time the State's drawdown is actually carried out to four decimal places. The State will continue to use its more precise clearance pattern in calculating the amount of Medical Assistance funding to

draw down each day.

The State shall use the following method to develop a programmatic clearance pattern for the Medical Assistance Program (CFDA 93.778):

The State's contractor bank(s) which maintains the State's Medicaid Management Information System (MMIS) Fiscal Agent Account will provide the State each quarter with an encashed checks and electronic payments analysis reflecting clearance activity for the most recent four-quarter period. The data to be analyzed will constitute all checks and electronic payments dated and cashed during that four-quarter period, or almost 100 percent of the dollar value of checks and electronic payments issued against the MMIS account.

With the implementation of electronic payments in the State's Medical Assistance program, clearance time for program payments was reduced as providers enrolled to receive electronic payments (in lieu of checks). In order to accurately determine and document this expected change in clearance time, the State exercised the right to change from using the most recent 12 months of clearance activity data to using the most recent three months of clearance activity data, as permitted under 31 CFR 205.20(d). As a result, the clearance pattern reflects three months of clearance activity data.

The encashed checks and electronic payments analysis will track check clearance activity over 31 calendar days. For each calendar day after check and electronic payments issuance, the analysis indicates: 1) the total number of checks and electronic payments paid, 2) the total dollar amount of checks and electronic payments paid, and 3) the percent of the total dollar amount. Exhibit II-EC comprises a summary of the State's encashed checks and electronic payments analysis depicted in the clearance pattern spreadsheet.

Since checks for nearly all of the State's weekly Medicaid payment cycles are printed with a Monday check date, it will be assumed that Day 00 (check issue date) of the encashed checks analysis is a Monday. Each subsequent day in the encashed checks analysis, it will be assumed, corresponds to the next day of the week (Day 01 is Tuesday, Day 02 is Wednesday, etc.). Exhibit II-EC and the clearance pattern spreadsheet illustrate how the days of the week correspond to the reported check activity.

For electronic payments, payment files are sent to the Medicaid contractor bank on Wednesday with an effective transfer date of Thursday. In these instances, in order to maintain the integrity of the payment analysis, electronic payments will be reflected in the analysis for Day 03 for distressed facility payments and Day 17 for regular facility payments.

The calendar day encashed checks analysis must be converted to a business day clearance pattern for scheduling drawdowns. However, data for six days correspond to either a Saturday or Sunday encashment. Consequently, to arrive at the business day clearance pattern, the State shall add a Saturday entry to the previous Friday's total and a Sunday entry to the subsequent Monday's total.

The encashed checks analysis extends over 31 calendar days for two reasons: 1) There is a two-week payment lag for Medicaid checks; consequently most checks written on Day 00 are released on, and begin to clear the MMIS account on, Day 16 (the regular facility check release date); and 2) A small percentage of checks with a check date of 00 are released on Day 02 to certain distressed facilities (the distressed facility check release date).

As a result, two distinct clearance patterns emerge: Clearance Pattern A -- Distressed Facility Checks, and Clearance Pattern B -- Regular Facility Checks. Since regular facility checks are not released until Day 16, Clearance Pattern A reflects checks issued only to distressed facilities. Almost 100 percent of those checks clear between Day 02 and Day 14. Clearance Pattern B reflects checks issued to regular facilities. Almost 100 percent of those checks clear between Day 16 and Day 31. The clearance pattern spreadsheet depicts these two clearance patterns.

Therefore, the State shall apply two separate but contiguous clearance patterns in scheduling drawdowns under the weekly Medicaid payment cycle. Funds for all checks and electronic payments released to distressed facilities will be drawn according to the fixed percentages of Clearance Pattern A. Funds for all checks and electronic payments released to regular facilities will be drawn according to Clearance Pattern B.

The resultant drawdown schedule will be as follows:

For distressed facilities, the drawdown schedule will begin on Wednesday of Week 1 and conclude on Wednesday of Week 2, when outstanding funds for the distressed facility portion of the cycle will be drawn in

DocuSign Envelope ID: 73A9D645-D845-428C-A42F-5728B0F0E24B

total.

For regular facilities, the drawdown schedule will begin on Wednesday of Week 3 and conclude on Thursday of Week 5, when outstanding funds for the regular facility portion of the cycle will be drawn in total.

7.11.1    Material changes in the clearance pattern associated with the Medical Assistance Program (CFDA 93.778):

If the average dollar-weighted date of clearance of a new programmatic clearance pattern changes by more than .5 days from the average dollar-weighted date of clearance of the clearance pattern currently used to time the drawdown of program funding, or if a new programmatic clearance pattern otherwise undergoes changes that may affect clearance activity and this results in the need for a change in the timing of the drawdown of program funding, pursuant to 31 CFR 205.22 the State will inform Fiscal Service within 30 days of the change.

7.11.2    Functional Clearance Patterns:

The State shall use the following method to develop the clearance patterns for the functional payments and for the payroll bank account as noted in Section 7.1.

At least at the end of every second State fiscal year, the State shall calculate dollar-weighted average clearance patterns based on the actual clearance time for each check issued and cleared during at least six consecutive months of the State fiscal year.

The State shall provide its contractor bank(s) with a file of check numbers where federal funds have been used for payment. The State's contractor bank(s) maintains a file identifying the check number, amount, issue date, and clearance date of each check, and will compare issue dates to clearance dates to determine the clearance time, or days outstanding, of each check.

The State's contractor bank(s) will produce check clearance pattern reports. The reports will group checks into 10 dollar ranges, from checks of $1-$100 to checks over $5 million, and will identify for each dollar range: 1) total number of checks, 2) average days outstanding, in tenths of a day, and 3) average check amount. The bank shall calculate the dollar-weighted day of clearance for each dollar range by first multiplying the average days outstanding by the total dollars in each range to determine dollar-days. The bank shall then sum the dollar-days for the 10 ranges and divide that sum by total dollars for all ranges to arrive at a dollar-weighted clearance pattern for all checks issued and cleared. As the State expands direct deposit payments to municipalities and other payees, the related functional clearance pattern(s) and related components of the annual interest calculation will be modified accordingly.

Since payroll checks are issued from a separate account, the State's contractor bank(s) can produce a payroll check clearance report without receiving a file from the State. The dollar-weighted payroll clearance pattern will be adjusted for payrolls processed through direct deposit.

The State will provide and certify functional clearance patterns as part of each applicable Annual Report.

7.11.3    Clearance Pattern Maintenance:

The State shall redevelop the Medicaid clearance pattern, the non-payroll pattern, and the payroll clearance pattern every second year at a minimum, and under the conditions described in 31 CFR 205.22 using the methods described in this section of the Agreement.

## 8.0   INTEREST CALCULATION METHODOLOGY

8.1  General Terms

8.1.1  The State and the Secretary agree that no interest liabilities will be incurred for transfers of funds made in accordance with the procedures specified in section 6 of this Agreement where the following funding techniques are applied:

  Actual Clearance, ZBA - ACH
  Actual Clearance, ZBA - Same Day Payment
  Estimated Clearance
  Reimbursement (Employee Fringe Benefits and Indirect Costs)

8.1.2  The State shall maintain information on disbursements and receipts of funds to verify the implementation of any funding technique and document interest liabilities.

For each disbursement, the State shall be able to identify:

(1) amount of the issuance

(2) date of issuance

(3) date Federal funds are received and credited to a State account

(4) amount of Federal funds received

(5) date funds were requested

## 8.2 Federal Interest Liabilities

8.2.1  A Federal interest liability shall accrue from the day the State pays out its own funds for program purposes to the day Federal funds are credited to a State account. With regard to funds transferred out of the Federal Highway Trust Fund, if a State does not bill at least weekly for current project costs, the Federal interest liability shall not accrue prior to the day the State submits a request for funds.

8.2.2  The State shall use the following method to calculate Federal interest liabilities:

The Statewide Financial System shall track and document all Federal related receipt and disbursement transactions. The State maintains a daily summary reconciling Federal fund requests and subsequent receipt (the next business day) by federal agency. The reconciliation compares Federal funds deposited in a State account to amounts expected, as well as maintaining a record of any Federal funds requested not yet received to a State account.

The Statewide Financial System shall maintain a report for each program identifying:

1) The amount of the disbursement  (as recorded on a voucher);

2) The date the disbursement is charged;

3) The date Federal funds are requested;

4) The date and amount of Federal funds deposited in a State account; and

5) The Federal percentage of the disbursement, if a Federal-State matching program.

If applicable, the agency or OSC will document instances in which Federal monies were received later than expected for reasons other than the Treasury Offset Program.

The Federal interest liability on a transaction will be based on the difference in whole days between the dollar-weighted average date of clearance of the disbursement (as measured by the clearance patterns set forth in Section 7.0 of this Agreement); and the date the related Federal funds are deposited in a State account.  With Federal-State matching programs, interest will be calculated on the Federal portion of the disbursement.

## 8.3  The Unemployment Trust Fund

8.3.1  The State shall use the following method to calculate State interest liabilities on funds withdrawn from the several accounts in the Unemployment Trust Fund:

At the end of each State fiscal year, based on statements provided by the State's contractor bank, the State shall determine the actual interest earnings and the related banking costs of its State Benefit Payment Account for the State fiscal year. If actual interest earnings exceed the banking costs attributable to such funds, the State will remit the difference to the Federal government as a State interest liability. If actual interest earnings are less than the related banking costs, the State will owe no State liability.

## 8.4  Refund Liabilities

8.4.1  The State shall be liable for interest on refunds from the date the refund is credited to a State account until the date the refund is debited from the State account for program purposes. The State shall apply a $50,000 refund transaction threshold below which the State shall not incur or calculate interest liabilities on refunds. A transaction is defined as a single deposit.

8.4.2  For each refund, the State shall maintain information identifying:

(1) date a refund is credited to a State account

(2) date of the subsequent deposit of Federal funds against which the refund is offset

(3) amount of the refund

8.4.3  The State shall use the following methodology to calculate interest liabilities on refunds:

See 8.9

8.5 Exemptions

8.5.1 Where more than one State agency is a recipient of Federal funds under a program, a particular State agency's funding may be excluded from interest calculation procedures if the State agency receives an amount of funds less than 5 % of the State's threshold for major Federal assistance programs. Notwithstanding this potential exemption, however, in no case shall less than 90% of a program's total funding be subject to interest calculation procedures.

Proration of calculations: If less than total program funding is subject to interest calculation procedures, the resulting interest liability calculations shall be prorated to 100% of program funding.

8.6 State Interest Liabilities

8.6.1  The State shall be liable for interest on Federal funds from the date Federal funds are credited to a State account until the date those funds are paid out for program purposes.

8.6.2  The State shall use the following method to calculate State interest liabilities on Federal funds:

8.6.2.1  Measuring Time Funds Are Held

To determine the total time Federal funds are held, the State shall measure the time between the date Federal funds are received and credit to a State's account and the date those funds are debited from the State's account.

8.6.2.2  Source of Data

The Office of the State Comptroller produces an annual report of "Disbursements by Federal Index Number and Major Object." This report is the source document of the State's Schedule of Expenditures of Federal Awards and as such is subject to audit under the Single Audit Act.

The component cash flows listed for each program in the Section 6.3.2 are derived from, and analogous to, selected major objects in the above report. Interest will be calculated by isolating the disbursements for each major object, or component cash flow, of a program.

8.6.2.3  Standards Applied

The average daily cash balance of Federal Funds in the program's account reflects the actual activity of each draw from the date of deposit to the date of issuance or clearance, whichever is pertinent.

8.6.2.4  Calculation Procedure

The State shall use the following formula to calculate interest on each component cash flow:

$I = [A \times i \times (CT - PIT)] / 365$

"I" represents the State interest liability for a major object or component cash flow.

"A" represents the total amount of funds drawn/disbursed under the major object or component cash flow. It will be assumed that the amount of disbursements recorded is consistent with the amount of funds drawn to support those

disbursements.

"i" represents the rate equal to the average of the bond equivalent rates of 13-week Treasury Bills auctioned during the State fiscal year.

"CT" represents the clearance time for the major object, or the time from the day funds are disbursed as recorded in the Statewide Financial System and the when the funds are presented to the bank for payment.  This period will be measured by the appropriate clearance pattern as set forth in Section 7.0 of this Agreement.

"PIT" represents the time from the day funds are disbursed as requested in the Statewide Financial System to the day funds in support of those disbursements are deposited in a State account by major object. For each major object under a given program, this period is fixed.

To determine the total State interest liability for a program, the State shall add the interest liabilities of each component cash flow under the program.

Journal voucher transactions, which are internal payments from one State agency to another, are a separate category and will be excluded from the interest calculation since these are interest-neutral.

8.7.0    Interest on Employee Fringe Benefits and Indirect Costs:

The State and the Secretary agree that no interest liabilities will be incurred or calculated for employee fringe benefits or indirect costs, with one exception. If the State requests funds in accordance with the funding techniques for employee fringe benefits or indirect costs set forth in Section 6.2.4, and Federal funds are not made available to the State, the Federal Government shall incur an interest liability. The Federal interest liability will accrue from the day the State requested funds in accordance with the agreed upon funding techniques to the day Federal funds are credited to a State account.

8.8.0    The State shall use the following methodology to calculate interest liabilities on refunds:

8.8.1    With the exception of the Special Supplemental Nutrition Program for Women, Infants and Children (CFDA 10.557), Unemployment Insurance (CFDA 17.225), Highway Planning and Construction (CFDA 20.205) and Medical Assistance (CFDA 93.778) programs, the State shall use the following method to calculate interest on refunds for which the Federal share, as identified in the Statewide Financial System, reflects a gross transaction threshold of $50,000 or above.

Interest will be calculated on each refund credited to a Federal fund, as recorded in the Statewide Financial System, for which the Federal share reflects a gross transaction threshold of $50,000 or above. The Federal share of refunds by Federal program will be identified through review of a report produced by the Office of the State Comptroller. This is a unique report run through a select transaction analysis from the Statewide Financial System. The report identifies all Federal refunds by Federal program and shall be summarized by program for only those refunds that reflect the gross transaction threshold of $50,000 or above.

For each program, the State interest liability will be calculated by multiplying the total amount of refunds of Federal funds by the average length of time required for a refund to be offset against a subsequent deposit of Federal funds. Interest on the Federal portion of the refund from the day it is offset against a deposit of Federal funds to the day it is paid out for program purposes will be captured under the State's method for calculating interest under Post-Issuance Funding, set forth in Section 8.6 of this Agreement, whereby interest will be calculated based on totals disbursed, including refunds.

The average time required for the Federal percentage of refunds to be offset against a subsequent deposit of Federal funds comprises two periods: 1) the estimated average number of days a State agency holds cash refunds before depositing them in the appropriate Federal fund (see next paragraph), and 2) the estimated average number of days the State holds the refunds in the Federal fund before offsetting them against a deposit of Federal funds.

Pursuant to State statute, the Office of the State Comptroller has instructed State agencies to return all refunds to the appropriate Federal fund at least semi-monthly. State agencies which do not remit the original refund check to the State Treasury will have to account for the time that they hold the refund, when interest is calculated on

refunds for their Federal programs subject to the Act. State agencies which remit original refund checks to the State Treasury do not hold refunds and therefore will not have to account for this when interest is calculated on refunds for their Federal programs subject to the Act.

For each program, the State shall estimate the average number of days that refunds are held in a Federal fund before being offset by 1) calculating the average number of days between drawdowns by dividing 365 by the total number of drawdowns during the fiscal year, and 2) dividing the average number of days between drawdowns by 2, on the assumption that refunds are deposited in the Federal fund at the midpoint of the average drawdown cycle.

The State shall use the following formula to calculate interest on the Federal percentage of refunds which reflect a gross transaction threshold of $50,000 or above:

$$I = R \times (i/365) \times \{AD + [(365/D)/2]\}$$

"I" represents the State interest liability for the Federal percentage of refunds.

"R" represents the sum of the Federal share of all refunds.

"i" represents the rate equal to the average of the bond equivalent rates of the 13-week Treasury Bills auctioned during the State's fiscal year.

"AD" represents the agency delay (7.5 calendar days) in submitting refunds to the appropriate Federal fund, as described above.

"D" represents the total number of drawdowns during the State Fiscal Year, as described above.

8.8.2     Refunds: Average Daily Balance Interest Calculation Method

Refunds and rebates for the Medical Assistance Program (CFDA 93.778) will be tracked by program.

Since refunds and rebates for the Medical Assistance program are initially deposited into a segregated Comptroller booking account, the State's interest liability for the Federal percentage of such refunds will be based on two factors: 1) the average daily balance of the Comptroller booking account, and 2) the average number of days required for the refunds/rebates to be offset against a deposit of Federal funds after the refunds/rebates are transferred out of the booking account. For Medical Assistance program refunds deposited into a New York State bank account other than the State's General Checking Account, the State's interest liability for the Federal percentage of such refunds will be calculated on the average daily available balance in the account.

Refunds: Unemployment Insurance Program (CFDA 17.225):

UI Benefit Refunds for the Unemployment Insurance Program are deposited into the UI Benefit Account, then transferred to the States account in the Unemployment Trust Fund the same day. This transfer is interest-neutral and not subject to interest calculations under the Act.

Refunds: Highway Planning and Construction (CFDA 20.205)

Contract Overpayments: Refunds as a result of contract overpayments will normally result in no interest liability as credit is given to the Federal Highway Administration on a current bill before the State receives a check for an overpayment.

Rental of State-Owned Property or Sale of Property: Checks received for Rentals of State-Owned Property or Sale of Property acquired with Federal Highway Funds are considered to be program income and are not subject to the interest provisions of the Act.

Refunds: Special Supplemental Nutrition Program for Women, Infants, and Children (CFDA 10.557)

For each day's deposit, the Department of Health shall track and document refunds, and shall maintain a record identifying: 1) the date funds are credited to a State account, 2) the amount of the refund, 3) the Federal portion of the refund, and 4) a) the date of the subsequent deposit of Federal funds against which the refund is offset, b) the date the refund is credited to a Federal Government account, or c) the date the refund is paid out for program purposes.

The State's interest liability will be based on the difference in whole days between the date the refund is credited to a State account and the date the Federal portion of the refund is credited to a Federal Government account or paid out for program purposes.

## 9.0 REVERSE FLOW PROGRAMS

The State is not required to cover any reverse flow programs under the terms of this Agreement because the State does not participate in the program.

## 10.0    INTEREST CALCULATION COSTS

10.1    As set forth in 31 CFR 205.27, interest calculation costs are defined as those costs necessary for the actual calculation of interest, including the cost of developing and maintaining clearance patterns in support of the interest calculations. Interest calculation costs do not include expenses for normal disbursing services, such as processing of checks or maintaining records for accounting and reconciliation of cash balances, or expenses for upgrading or modernizing accounting systems. Interest calculation costs in excess of $50,000 in any year are not eligible for reimbursement, unless the State provides justification with the annual report.

10.2  The State expects to incur the following types of interest calculation costs:

1) Personal service for State staff devoted to those tasks at both central control and program agencies

2) Banking services relating to clearance pattern development

3) Computer programming time at various State agencies

4) Advisory services provided by a firm, such as a certified public accounting firm, to staff from the Office of the State Comptroller, the Division of the Budget, certain state agencies and banks, in conjunction with the development of check clearance patterns, interest calculation methodologies, the annual report, and the interest calculation cost claim required or authorized under the Act and this Agreement

10.3  The State shall submit all claims for reimbursement of interest calculation costs with its Annual Report in accordance with 31 CFR 205.

## 11.0   NON-COMPLIANCE

11.1  The provisions of 31 CFR Part 205.29 and 31 CFR Part 205.30 shall apply in cases of non-compliance with the terms of this Agreement.

## 12.0   AUTHORIZED SIGNATURES

James Dewan
Chief Budget Examiner General Government and Workforce Unit of the Division of the Budget

DocuSigned by:

*James DeWan*

ECC7087D38E14EE...

Signature: _____     Date Signed: _____   4/4/2023

Date Submitted 3/31/2023

   Sandra R. Paylor
   Assistant Commissioner
   Revenue Collections Management
   Bureau of the Fiscal Service
   U.S. Department of the Treasury

DocuSigned by:

*Sandra Paylor*

A4GB79705B9B48E...

Signature: _____     Date Signed: _____   4/6/2023

# Exhibit I - Funds Request and Receipt Times Schedule

## State of New York

| Federal Agency | Payment Type | Request Cut-Off Time | Receipt Window |
|---|---|---|---|
| Agriculture-FNS | ACH | 11:59 PM | 1 day |
| Agriculture-FNS | Fedwire | 5:45 PM | 0 day |
| Agriculture-FS | ACH | 3:00 PM | 1 day |
| Air National Guard | ACH | 12:00 PM | 15 days |
| Army National Guard | ACH | 12:00 PM | 15 days |
| Commerce-NOAA | ACH | 2:00 PM | 1 day |
| Dept of Homeland Security (FEMA) | Fedwire | 2:00 PM | 2 days |
| Dept of Homeland Security (ODP) | ACH | 2:00 PM | 2 days |
| Dept of Homeland Security (ODP) | Fedwire | 2:00 PM | 2 days |
| EPA | ACH | 2:00 PM | 2 days |
| EPA | Fedwire | 2:00 PM | 0 day |
| Education | ACH | 3:00 PM | 1 day |
| Education | Fedwire | 2:00 PM | 0 day |
| Energy | ACH | 4:00 PM | 1 day |
| Energy | Fedwire | 3:00 PM | 0 day |
| HHS | ACH | 5:00 PM | 1 day |
| HHS | Fedwire | 3:00 PM | 0 day |
| HUD | ACH | 5:30 PM | 2 days |
| HUD | Fedwire | 3:00 PM | 0 day |
| Interior-FWS | ACH | 11:59 PM | 1 day |
| Interior-FWS | Fedwire | 5:45 PM | 0 day |
| Interior-OSM | ACH | 3:00 PM | 1 day |
| Interior-OSM | Fedwire | 1:00 PM | 0 day |
| Justice | ACH | 11:00 PM | 6 days |
| Justice | Fedwire | 2:00 PM | 2 days |
| Labor-Non-UTF | ACH | 3:00 PM | 1 day |
| Labor-UTF | ACH | 3:00 PM | 1 day |
| Labor-UTF | Fedwire | 3:00 PM | 0 day |
| National Science Foundation (NSF) | ACH | 8:00 PM | 1 day |
| National Science Foundation (NSF) | Fedwire | 5:45 PM | 0 day |
| Social Security Administration | ACH | 11:59 PM | 1 day |
| Social Security Administration | Fedwire | 5:45 PM | 0 day |
| Transportation (FAA) | ACH | 2:00 PM | 1 day |
| Transportation (FHWA) | ACH | 12:00 PM | 3 days |
| Transportation (FHWA) | Fedwire | 12:00 PM | 0 day |
| Transportation (FTA) | ACH | 2:00 PM | 1 day |
| Veterans Administration | ACH | 12:00 PM | 3 days |

**Exhibit II - State of New York**

## LIST OF STATE CLEARANCE TIMES

**(Rounded Dollar-Weighted Average Day of Clearance)**

## Clearance Times Where the Timing of A Draw Down Is Based on A Clearance Pattern

| CFDA | Program Name | Recipient | % | Component | Technique | Rounded days |
|------|-------------|-----------|---|-----------|-----------|--------------|
| 10.542 | Pandemic EBT Food Benefits | Office of Temporary & Disability Assistance | 100.0 | Non-Payroll | Actual Clearance, ZBA - Same Day Payment | 0 Days |
| 10.551 | Supplemental Nutrition Assistance Program | Office of Temporary & Disability Assistance | 100.0 | Non-Payroll | Actual Clearance, ZBA - Same Day Payment | 0 Days |
| 10.555 | National School Lunch Program | State Education Department | 91.0 | Non-Payroll | Actual Clearance, ZBA - ACH | 2 Days |
| | National School Lunch Program | Department of Health | 9.0 | Non-Payroll | Actual Clearance, ZBA - ACH | 2 Days |
| 10.557 | Special Supplemental Nutrition Program for Women, Infants, and Children | Department of Health | 96.0 | Non-payroll | Actual Clearance, ZBA - ACH | 2 Days |
| | Special Supplemental Nutrition Program for Women, Infants, and Children | Department of Health | 2.0 | Payroll | Actual Clearance, ZBA - ACH | 2 Days |
| | Special Supplemental Nutrition Program for Women, Infants, and Children | Department of Health | 2.0 | Fringe Benefits and Indirect Costs | Reimbursement (Employee Fringe Benefits and Indirect Costs) | N/A |
| 10.561 | State Administrative Matching Grants for the Supplemental Nutrition Assistance Program | Office of Temporary & Disability Assistance | 94.0 | Non-payroll | Actual Clearance, ZBA - ACH | 2 Days |
| | State Administrative Matching Grants for the Supplemental Nutrition Assistance Program | Office of Temporary & Disability Assistance | 2.0 | Fringe Benefits and Indirect Costs | Reimbursement (Employee Fringe Benefits and Indirect Costs) | N/A |
| | State Administrative Matching Grants for the Supplemental Nutrition Assistance Program | Office of Temporary & Disability Assistance | 3.0 | Payroll | Actual Clearance, ZBA - ACH | 2 Days |

| | State Administrative Matching Grants for the Supplemental Nutrition Assistance Program | Department of Health | 1.0 | Non-payroll | Actual Clearance, ZBA - ACH | 2 Days |
|---|---|---|---|---|---|---|
| 17.225 F | Unemployment Insurance -- Federal Benefit Account and Administrative Costs | Department of Labor | 0.0 | Fringe Benefits and Indirect Costs | Reimbursement (Employee Fringe Benefits and Indirect Costs) | N/A |
| | Unemployment Insurance -- Federal Benefit Account and Administrative Costs | Department of Labor | 99.0 | Non-Payroll (Benefits) | Actual Clearance, ZBA - Same Day Payment | 0 Days |
| | Unemployment Insurance -- Federal Benefit Account and Administrative Costs | Department of Labor | 1.0 | Non-Payroll (Administrative) | Actual Clearance, ZBA - ACH | 2 Days |
| | Unemployment Insurance -- Federal Benefit Account and Administrative Costs | Department of Labor | 0.0 | Payroll | Actual Clearance, ZBA - ACH | 2 Days |
| 17.225 S | Unemployment Insurance -- State Benefit Account | Department of Labor | 100.0 | Non-Payroll | Actual Clearance, ZBA - Same Day Payment | 0 Days |
| 20.205 | Highway Planning and Construction | Department of Transportation | 92.0 | Non-Payroll | Actual Clearance, ZBA - ACH | 2 Days |
| | Highway Planning and Construction | Department of Transportation | 3.0 | Payroll | Actual Clearance, ZBA - ACH | 2 Days |
| | Highway Planning and Construction | Department of Transportation | 5.0 | Fringe Benefits and Indirect Costs | Reimbursement (Employee Fringe Benefits and Indirect Costs) | N/A |
| 84.010 | Title I Grants to Local Educational Agencies | State Education Department | 1.0 | Payroll | Actual Clearance, ZBA - ACH | 2 Days |
| | Title I Grants to Local Educational Agencies | State Education Department | 99.0 | Non-Payroll | Actual Clearance, ZBA - ACH | 2 Days |
| 84.027 | Special Education -- Grants to States | State Education Department | 2.0 | Fringe Benefits and Indirect Costs | Reimbursement (Employee Fringe Benefits and Indirect Costs) | N/A |
| | Special Education -- Grants to States | State Education Department | 2.0 | Payroll | Actual Clearance, ZBA - ACH | 2 Days |
| | Special Education -- Grants to States | State Education Department | 96.0 | Non-Payroll | Actual Clearance, ZBA - ACH | 2 Days |
| 84.425 | Education Stabilization Fund | State Education Department | 100.0 | Non-payroll | Actual Clearance, ZBA - ACH | 2 Days |

| 93.558 | Temporary Assistance for Needy Families | Office of Temporary & Disability Assistance | 100.0 | Non-Payroll | Actual Clearance, ZBA - ACH | 2 Days |
|---|---|---|---|---|---|---|
| 93.568 | Low-Income Home Energy Assistance | Office of Temporary & Disability Assistance | 94.0 | Non-payroll | Actual Clearance, ZBA - ACH | 2 Days |
| | Low-Income Home Energy Assistance | Division of Housing and Community Renewal | 6.0 | Non-payroll | Actual Clearance, ZBA - ACH | 2 Days |
| 93.575 | Child Care and Development Block Grant | Office of Children and Family Services | 1.0 | Fringe Benefits and Indirect Costs | Reimbursement (Employee Fringe Benefits and Indirect Costs) | N/A |
| | Child Care and Development Block Grant | Office of Children and Family Services | 1.0 | Payroll | Actual Clearance, ZBA - ACH | 2 Days |
| | Child Care and Development Block Grant | Office of Children and Family Services | 98.0 | Non-Payroll | Actual Clearance, ZBA - ACH | 2 Days |
| 93.658 | Foster Care -- Title IV-E | Office of Children and Family Services | 100.0 | Non-payroll | Actual Clearance, ZBA - ACH | 2 Days |
| 93.767 | Children's Health Insurance Program | Department of Health | 99.0 | Non-Payroll | Actual Clearance, ZBA - ACH | 2 Days |
| | Children's Health Insurance Program | Office of Temporary & Disability Assistance | 1.0 | Non-payroll | Actual Clearance, ZBA - ACH | 2 Days |
| 93.778 | Medical Assistance Program | Department of Health | 100.0 | Non-Payroll | Estimated Clearance | N/A |
| 97.036 | Disaster Grants - Public Assistance (Presidentially Declared Disasters) | Division of Homeland Security and Emergency Services | 100.0 | Non-Payroll | Actual Clearance, ZBA - ACH | 2 Days |

`

**Certification**

I hereby certify that an authorized State official has certified at least every five years that the "Rounded Days of Clearance" listed

in Exhibit 2 of this Treasury-State Agreement:

    1. Have been prepared in accordance with the standards provided in 31 CFR 205.20;

    2. Accurately represent the flow of Federal funds under the Federal assistance programs to which they apply;

    3. Reflect seasonal or other periodic variations in the clearance activities; and,

    4. Are auditable.

                        4/4/2023

Date: _____

Printed Name: _____

James DeWan

Certifying Signature: _____

**DocuSigned by:**

*James DeWan*

FCC7087D38F14EF...

Title: _____

Chief Budget Examiner

# Cash Management Improvement Act - 2024 Treasury State Agreement
# State of New York
## Exhibit II Estimated Clearance

*Effective 04/01/2023 until 06/30/2024*

93.778 Medical Assistance Program

| Day | % Cleared |
|---|---|
| Day 1 | 0.0 |
| Day 2 | 0.21 |
| Day 3 | 11.26 |
| Day 4 | 0.0 |
| Day 5 | 0.0 |
| Day 6 | 0.0 |
| Day 7 | 0.01 |
| Day 8 | 0.01 |
| Day 9 | 0.0 |
| Day 10 | 0.0 |
| Day 11 | 0.0 |
| Day 12 | 0.0 |
| Day 13 | 0.0 |
| Day 14 | 0.0 |
| Day 15 | 0.0 |
| Day 16 | 0.0 |
| Day 17 | 88.23 |
| Day 18 | 0.0 |
| Day 19 | 0.0 |
| Day 20 | 0.0 |
| Day 21 | 0.07 |
| Day 22 | 0.08 |
| Day 23 | 0.04 |
| Day 24 | 0.03 |
| Day 25 | 0.02 |
| Day 26 | 0.0 |
| Day 27 | 0.0 |
| Day 28 | 0.02 |
| Day 29 | 0.01 |
| Day 30 | 0.01 |
| Day 31 | 0.0 |
| Total | 100.0 |

**Certification**

I hereby certify that the % Cleared listed in Exhibit II Estimated Clearance of this Treasury State Agreement:

    1. Has been prepared in accordance with the standards provided in 31 CFR 205.20;

    2. Accurately represents the flow of federal funds under the federal assistance programs to which they apply;

    3. Reflects seasonal or other periodic variations in the clearance activities;

    4. Is auditable; and,

    5. Has been certified as accurate by an authorized State Official.

Date:      3/31/2023

Printed Name:      James Dematteo

Certifying Signature:      *James Dematteo*
DocuSigned by:
4670F2DE9AA84C1...

Title:      Director MFM

 

## Message to Grant Recipients on Manual Review Process

Dear Recipient,

The Federal Emergency Management Agency (FEMA) is taking swift action to ensure the alignment of its grant programs with Secretary Noem's direction. In accordance with this direction, FEMA and the Department of Homeland Security (DHS) are instituting additional reviews on all grant payments and obligations to ensure allowability, as permitted by 2 C.F.R Part 200.

Effective immediately, FEMA and DHS are conducting additional reviews of allocations before releasing funds for all grants. These actions will ensure that funding is obligated and disbursed in line with the Secretary's direction so that we can continue to support and prioritize communities and disaster survivors who rely on FEMA for assistance. Upon completion of reviews, approved funding will be processed through the respective grant systems. Per 2 C.F.R. Part 200, payment requests may take up to 30 days to process depending on the size and scope of the submission. If additional information is needed, a request for information will be issued, and the timeline may be extended.

As part of the manual review of your payment request, FEMA strongly encourages recipients to include the following information when submitting new payment requests:

- Will this disbursement go to any subrecipients, and if so, which ones?
- What is the total amount of funds going to each subrecipient?
- What activities will be funded by this disbursement?
- What is the time period covered by this payment request?

For existing payment requests currently in the system, FEMA will reach out if additional information is needed. Please note that if FEMA does not receive this information, payment requests will not be processed.

Should guidance be updated or changed, we will notify recipients that this information is no longer requested.

For questions, please reach out to your designated FEMA point of contact for the specific grant award.

Thank you,

FEMA Grant Programs Directorate

**From:**
**To:**
**Subject:** FEMA PA Notification - Message to Grant Recipients on Review Process Updates
**Date:** Friday, February 28, 2025 4:14:13 PM

---

**From:** support.pagrants@fema.dhs.gov <support.pagrants@fema.dhs.gov>
**Sent:** Friday, February 28, 2025 10:16 AM
**To:**
**Subject:** FEMA PA Notification - Message to Grant Recipients on Review Process Updates

Dear Recipient,

The Federal Emergency Management Agency (FEMA) is taking swift action to ensure the alignment of its grant programs with Secretary Noem's direction. In accordance with this direction, FEMA and the Department of Homeland Security (DHS) are instituting additional reviews on the allowability of costs for all grant payments and obligations, as permitted by 2 C.F.R Part 200, where applicable.

Effective immediately, FEMA and DHS are implementing an additional review process of allocations before releasing funds for all grants. These actions will ensure that funding is obligated and disbursed in line with the Secretary's direction.

Upon completion of reviews, approved funding will be processed through the respective grant systems. Per 2 C.F.R. Part 200, payment requests may take up to 30 days to process depending on the size and scope of the submission. If additional information is needed, a request for information will be issued, and the timeline may be extended.

For existing payment requests currently in the system, FEMA will reach out if additional information is needed.

Thank you,
FEMA Recovery Directorate

---

If you require additional assistance with the FEMA Grants Portal, please contact the Grants Portal Hotline at (866) 337-8448 or FEMA-Recovery-PA-Grants@fema.dhs.gov

*Please do not respond to this e-mail. This mailbox is not monitored, and you will not receive a response.*

## NOTICE OF COURT ORDER

You are hereby advised that a temporary restraining order has been entered in the case of *New York et al. v. Trump*, No. 25-cv-39-JJM-PAS (D.R.I.), ECF No. 50 (Jan. 31, 2025). You are receiving this Notice pursuant to the Court's directive that notice of the order be provided "to all Defendants and agencies and their employees, contractors, and grantees by Monday, February 3, 2025, at 9 a.m." A copy of the Court's Order is attached for reference.

This case challenges an alleged "pause" of certain Federal financial assistance, related to OMB Memorandum M-25-13, *Temporary Pause of Agency Grant, Loan, and Other Financial Assistance Programs* (Jan. 27, 2025) ("OMB Memo"). Although that OMB Memo was rescinded on January 29, 2025, the plaintiffs in the above-referenced case allege that the funding pause directed by the OMB Memo is still in effect, including because of recently issued Executive Orders by the President.

In response, the Court has entered a temporary restraining order prohibiting certain actions by the Defendants in the case, which is effective immediately. All Defendants—including their employees, contractors, and grantees—must immediately comply with the Court's Order. For complete details and terms of the Court's Order, please refer to pages 11 and 12 of the enclosed Order.

To assist in your compliance, here is a summary of the key terms:

1. **Federal agencies cannot pause, freeze, impede, block, cancel, or terminate any awards or obligations on the basis of the OMB Memo, or on the basis of the President's recently issued Executive Orders.**

2. **This prohibition applies to all awards or obligations—not just those involving the Plaintiff States in the above-referenced case—and also applies to future assistance (not just current or existing awards or obligations).**

3. **Agencies may exercise their own authority to pause awards or obligations, provided agencies do so purely based on their own discretion—not as a result of the OMB Memo or the President's Executive Orders—and provided the pause complies with all notice and procedural requirements in the award, agreement, or other instrument relating to such a pause.**

   a. On pages 11 and 12 of the Order, the Court prohibits agencies from pausing funding "except on the basis of the applicable authorizing statutes, regulations, and terms." Thus, agencies remain free to exercise their own discretion under their "authorizing statutes, regulations, and terms," including any exercise of discretion to pause certain funding. Additionally, agencies remain free to take action pursuant to the terms of the relevant award or obligation, such as in cases of grantee noncompliance.

   b. Any exercise of agency discretion, however, cannot be based on the OMB Memo or the President's Executive Orders, given that the Court has prohibited agencies from "implementing or giving effect to the OMB [Memo] under any other name

or title[.]" (Order, pg.12).  Additionally, any decision to pause, stop, delay, or otherwise withhold federal financial assistance programs must comply with all notice and procedural requirements in the award, agreement, or other instrument setting forth the terms of the award or obligation.

4.  **Out of an abundance of caution, all federal agencies (even those not named as defendants in the case) should comply with the above-referenced terms.**

As the Court's Order reflects, the above terms are temporary as litigation in the case is ongoing. At present, however, the Court's Order is in effect and must be complied with.

If you have any questions about the scope or effect of the Court's Order, please contact your agency's Office of General Counsel or your grant officer, as appropriate.  Thank you for your attention to this matter.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

STATE OF NEW YORK; STATE OF
CALIFORNIA; STATE OF ILLINOIS;
STATE OF RHODE ISLAND; STATE OF
NEW JERSEY; COMMONWEALTH OF
MASSACHUSETTS; STATE OF
ARIZONA; STATE OF COLORADO;
STATE OF CONNECTICUT; STATE OF
DELAWARE; THE DISTRICT OF
COLUMBIA; STATE OF HAWAI'I;
STATE OF MAINE; STATE OF
MARYLAND; STATE OF MICHIGAN;
STATE OF MINNESOTA; STATE OF
NEVADA; STATE OF NORTH
CAROLINA; STATE OF NEW MEXICO;
STATE OF OREGON; STATE OF
VERMONT; STATE OF WASHINGTON;
and STATE OF WISCONSIN,

     Plaintiffs,

v.

DONALD TRUMP, *in his Official
Capacity as President of the United
States*; U.S. OFFICE OF
MANAGEMENT AND BUDGET;
MATTHEW J. VAETH, *in his Official
Capacity as Acting Director of the U.S.
Office of Management and Budget*; U.S.
DEPARTMENT OF THE TREASURY;
SCOTT BESSENT, *in his Official
Capacity as Secretary of the Treasury*;
PATRICIA COLLINS, *in her Official
Capacity as Treasurer of the U.S.*; U.S.
DEPARTMENT OF HEALTH AND
HUMAN SERVICES; DOROTHY A.
FINK, M.D., *in her Official Capacity As
Acting Secretary Of Health And Human
Services*; U.S. DEPARTMENT OF
EDUCATION; DENISE CARTER, *in her
Official Capacity as Acting Secretary of
Education*; U.S. FEDERAL
EMERGENCY MANAGEMENT
AGENCY; CAMERON HAMILTON, *in*

C.A. No. 25-cv-39-JJM-PAS

| | |
|---|---|
| *his Official Capacity as Acting Administrator of the U.S. Federal Emergency Management Agency*; U.S. DEPARTMENT OF TRANSPORTATION; JUDITH KALETA, *in her Official Capacity as Acting Secretary of Transportation*; U.S. DEPARTMENT OF LABOR; VINCE MICONE, *in his Official Capacity as Acting Secretary of Labor*; U.S. DEPARTMENT OF ENERGY; INGRID KOLB*, in her Official Capacity as Acting Secretary of the U.S. Department of Energy*; U.S. ENVIRONMENTAL PROTECTION AGENCY; JAMES PAYNE, *in his Official Capacity as Acting Administrator of the U.S. Environmental Protection Agency*; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, i*n her Capacity as Secretary of the U.S. Department of Homeland Security*; U.S. DEPARTMENT OF JUSTICE; JAMES R. McHENRY III, *in his Official Capacity as Acting Attorney General of the U.S. Department of Justice*; THE NATIONAL SCIENCE FOUNDATION; and DR. SETHURAMAN PANCHANATHAN, *in his Capacity as Director of the National Science Foundation*, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## <u>TEMPORARY RESTRAINING ORDER</u>

The legal standard for a Temporary Restraining Order ("TRO") mirrors that of a preliminary injunction.  The Plaintiff States must show that weighing these four factors favors granting a TRO:

1. likelihood of success on the merits;
2. potential for irreparable injury;
3. balance of the relevant equities; and

> 4. effect on the public interest if the Court grants or denies the TRO.

*Planned Parenthood League v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir. 1981). The traditional equity doctrine that preliminary injunctive relief is an extraordinary and drastic remedy that is never awarded as of right guides the Court. *Id.* The Court is also fully aware of the judiciary's role as one of the three independent branches of government, and that the doctrine of separation of powers restricts its reach into the Executive Branch. The Court now turns to the four factors.

### <u>Likelihood of Success on the Merits</u>

We begin with what courts have called a key factor—a consideration of the movant's likelihood of success on the merits.

In <u>**Count I**</u>, the States allege that the Executive's actions by the Office of Management and Budget ("OMB")[1] violate the Administrative Procedure Act ("APA")[2] because Congress has not delegated any unilateral authority to the Executive to indefinitely pause all federal financial assistance without considering the statutory and contractual terms governing these billions of dollars of grants.

In <u>**Count II**</u>, the States allege that the Executive's actions violate the APA because the failure to spend funds appropriated by Congress is arbitrary and capricious in multiple respects.

---

[1] See *supra* for discussion of mootness.
[2] 5 U.S.C. § 551 et seq.

3

In **Count III**, the States allege that the failure to spend funds appropriated by Congress violates the separation of powers because the Executive has overridden Congress' judgments by refusing to disburse already-allocated funding for many federal grant programs.

In **Count IV**, the States allege a violation of the Spending Clause of the U.S. Constitution.  U.S. Const. art. I, § 8, cl. law 1.

And in **Count V**, the States allege a violation of the presentment (U.S. Const. art. I, § 7, cl. 2), appropriations (U.S. Const. art. I, § 7), and take care clauses (U.S. Const. art. II, § 3, cl. 3) (the Executive must "take care that the laws be faithfully executed . . .").

Because of the breadth and ambiguity of the "pause," the Court must consider the States' TRO motion today based on the effect it will have on many—but perhaps not all—grants and programs it is intended to cover.  Are there some aspects of the pause that might be legal and appropriate constitutionally for the Executive to take?  The Court imagines there are, but it is equally sure that there are many instances in the Executive Orders' wide-ranging, all-encompassing, and ambiguous "pause" of critical funding that are not.  The Court must act in these early stages of the litigation under the "worst case scenario" because the breadth and ambiguity of the Executive's action makes it impossible to do otherwise.

The Court finds that, based on the evidence before it now, some of which is set forth below, the States are likely to succeed on the merits of some, if not all, their claims.  The reasons are as follows:

- The Executive's action unilaterally suspends the payment of federal funds to the States and others simply by choosing to do so, no matter the authorizing or appropriating statute, the regulatory regime, or the terms of the grant itself. The Executive cites no legal authority allowing it to do so; indeed, no federal law would authorize the Executive's unilateral action here.

- Congress has instructed the Executive to provide funding to States based on stated statutory factors—for example, population or the expenditure of qualifying State funds. By trying to impose certain conditions on this funding, the Executive has acted contrary to law and in violation of the APA.

- The Executive Orders threaten the States' ability to conduct essential activities and gave the States and others less than 24 hours' notice of this arbitrary pause, preventing them from making other plans or strategizing how they would continue to function without these promised funds.

- Congress appropriated many of these funds, and the Executive's refusal to disburse them is contrary to congressional intent and directive and thus arbitrary and capricious.

- Congress has not given the Executive limitless power to broadly and indefinitely pause all funds that it has expressly directed to specific recipients and purposes and therefore the Executive's actions violate the separation of powers.

Judge Bruce M. Selya of the First Circuit succinctly set out the black letter law about appropriated funds and Executive powers:

> When an executive agency administers a federal statute, the agency's power to act is "authoritatively prescribed by Congress." *City of Arlington v. FCC*, 569 U.S. 290, 297, 133 S. Ct. 1863, 185 L. Ed. 2d 941 (2013). It is no exaggeration to say that "an agency literally has no power to act ... unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374, 106 S. Ct. 1890, 90 L. Ed. 2d 369 (1986). Any action that an agency takes outside the bounds of its statutory authority is ultra vires, see *City of Arlington*, 569 U.S. at 297, 133 S. Ct. 1863, and violates the Administrative Procedure Act, see 5 U.S.C. § 706(2)(C).

*City of Providence v. Barr*, 954 F.3d 23, 31 (1st Cir. 2020).

The Executive's statement that the Executive Branch has a duty "to align Federal spending and action with the will of the American people *as expressed through Presidential priorities*," (ECF No. 48-1 at 11) (emphasis added) is a constitutionally flawed statement. The Executive Branch has a duty to align federal spending and action with the will of the people as **expressed through congressional appropriations,** not through "Presidential priorities." U.S. Const. art. II, § 3, cl. 3 (establishing that the Executive must "take care that the laws be faithfully executed . . ."). Federal law specifies how the Executive should act if it believes that appropriations are inconsistent with the President's priorities–it must ask Congress, not act unilaterally. The Impoundment Control Act of 1974 specifies that the President may ask that Congress rescind appropriated funds.[3] Here, there is no evidence that the Executive has followed the law by notifying Congress and thereby effectuating a potentially legally permitted so-called "pause."

---

[3] If both the Senate and the House of Representatives have not approved a rescission proposal (by passing legislation) within forty-five days of continuous session, any funds the Executive is withholding must be made available for obligation.

Justice Brett Kavanaugh wrote when he was on the D.C. Circuit:

> Like the Commission here, a President sometimes has policy reasons (as distinct from constitutional reasons, *cf. infra* note 3) for wanting to spend less than the full amount appropriated by Congress for a particular project or program. But in those circumstances, even the President does not have unilateral authority to refuse to spend the funds. Instead, the President must propose the rescission of funds, and Congress then may decide whether to approve a rescission bill. *See* 2 U.S.C. § 683; *see also Train v. City of New York,* 420 U.S. 35, 95 S. Ct. 839, 43 L. Ed. 2d 1 (1975); Memorandum from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, to Edward L. Morgan, Deputy Counsel to the President (Dec. 1, 1969), *reprinted in Executive Impoundment of Appropriated Funds: Hearings Before the Subcomm. on Separation of Powers of the S. Comm. on the Judiciary,* 92d Cong. 279, 282 (1971) ("With respect to the suggestion that the President has a constitutional power to decline to spend appropriated funds, we must conclude that existence of such a broad power is supported by neither reason nor precedent.")

*In re Aiken Cnty.,* 725 F.3d 255, 261, n.1 (D.C. Cir. 2013).

The Court finds that the record now before it substantiates the likelihood of a successful claim that the Executive's actions violate the Constitution and statutes of the United States.

The Court now moves on to the remaining three injunction considerations.

## Irreparable Harm

The States have put forth sufficient evidence at this stage that they will likely suffer severe and irreparable harm if the Court denies their request to enjoin enforcement of the funding pause.

- All the States rely on federal funds to provide and maintain vital programs and services and have introduced evidence that the withholding of federal funds

will cause severe disruption in their ability to administer such vital services–
even if it is for a brief time.

- The States detail many examples of where the Executive's overarching pause
  on funding that Congress has allocated will harm them and their citizens.
  These programs range from highway planning and construction, childcare,
  veteran nursing care funding, special education grants, and state health
  departments, who receive billions of dollars to run programs that maintain
  functional health systems. *See, e.g.*, ECF No. 3-1 at 56 (highway construction
  programs in Delaware), at 73 (childcare programs in Michigan), at 113
  (veterans nursing care funding in Washington state), at 77 (special education
  programs in Minnesota), and at 100–01 (health care programs in New Mexico).

- The pause in federal funding will also hurt current disaster relief efforts. The
  States assert that the pause applies to federal actions directing federal
  financial assistance to North Carolina to address the damage inflicted by
  Hurricane Helene and to any Federal Emergency Management Agency grant
  money not yet disbursed, including key support for California's ongoing
  response to the fires. ECF No. 1 ¶¶ 80–81.

- A January 28, 2025, email from Shannon Kelly, the Director of the National
  High Intensity Drug Case Trafficking Areas (HIDTA) program, who aids law
  enforcement in high drug-trafficking areas, shows that payments to state-
  based HIDTA programs have been paused, putting the public's safety at risk.
  *Id.* ¶ 83.

8

The States have set forth facts showing that the Executive's abrupt "pause" in potentially trillions of dollars of federal funding will cause a ripple effect that would directly impact the States and other's ability to provide and administer vital services and relief to their citizens.  Thus, the federal grants to States and others that are impounded through the Executive's pause in disbursement will cause irreparable harm.

And it is more than monetary harm that is at stake here.  As Justice Anthony Kennedy reminds us, "Liberty is always at stake when one or more of the branches seek to transgress the separation of powers."  *Clinton v. City of New York*, 524 U.S. 417, 449–50 (1998) (Kennedy, J. concurring)

### Balance of the Equities and Public Interest

As the Court considers the final two factors, the record shows that the balance of equities weighs heavily in favor of granting the States' TRO.

- If the Defendants are prevented from enforcing the directive contained in the OMB Directive, they merely would have to disburse funds that Congress has appropriated to the States and others.

- On the other hand, if the Court denies the TRO, the funding that the States and others are presumably due under law is in an indefinite limbo—a hardship worsened by the fact that the States had less than 24 hours' notice to act in anticipation of the funding shortfall.

- The fact that the States have shown a likelihood of success on the merits strongly suggests that a TRO would serve the public interest.  Moreover, the

public interest further favors a TRO because absent such an order, there is a substantial risk that the States and its citizens will face a significant disruption in health, education, and other public services that are integral to their daily lives due to this pause in federal funding.

The evidence in the record at this point shows that, despite the rescission of the OMB Directive, the Executive's decision to pause appropriated federal funds "remains in full force and effect." ECF No. 44.

<u>Mootness</u>

The Defendants now claim that this matter is moot because it rescinded the OMB Directive. But the evidence shows that the alleged rescission of the OMB Directive was in name-only and may have been issued simply to defeat the jurisdiction of the courts. The substantive effect of the directive carries on.

Messaging from the White House and agencies proves the point. At 2:04 EST, less than an hour before the Court's hearing on the States' motion on Wednesday, the Defendants filed a Notice saying, "OMB elected to rescind that challenged Memorandum. *See* OMB Mem. M-25-14, *Rescission of M-25-13* (Jan. 28, 2025) ('OMB Memorandum M-25-13 is rescinded.')." ECF No. 43. Yet about twenty minutes before the Defendants filed the Notice, the President's Press Secretary sent a statement via the X platform that said: "The President's [Executive Orders] EO's on federal funding remain in full force and effect and will be rigorously implemented." ECF No. 44. And then the following day (January 30, 2025 at 7:50 MST and again at 5:27 p.m. EST) after the so-called rescission, the Environmental Protection Agency, in an email to

federal grant recipients, said that the awarded money could not be disbursed while it worked "diligently to implement the [OMB] Memorandum, Temporary Pause of Agency Grant, Loan, and Other Financial Assistance Programs, to align Federal spending and action with the will of the American people as expressed through President Trump's priorities. The agency is temporarily pausing all activities related to the obligation or disbursement of EPA Federal financial assistance at this time. EPA is continuing to work with OMB as they review processes, policies, and programs, as required by the memorandum." ECF No. 48-1 at 6, 11.

Based on the Press Secretary's unequivocal statement and the continued actions of Executive agencies, the Court finds that the policies in the OMB Directive that the States challenge here are still in full force and effect and thus the issues presented in the States' TRO motion are not moot.

## Conclusion

Consistent with the findings above, and to keep the status quo, the Court hereby ORDERS that a TEMPORARY RESTRAINING ORDER is entered in this case until this Court rules on the States' forthcoming motion for a preliminary injunction, which the States shall file expeditiously.

During the pendency of the Temporary Restraining Order, Defendants shall not pause, freeze, impede, block, cancel, or terminate Defendants' compliance with awards and obligations to provide federal financial assistance to the States, and Defendants shall not impede the States' access to such awards and obligations, except on the basis of the applicable authorizing statutes, regulations, and terms.

If Defendants engage in the "identif[ication] and review" of federal financial assistance programs, as identified in the OMB Directive, such exercise shall not affect a pause, freeze, impediment, block, cancellation, or termination of Defendants' compliance with such awards and obligations, except on the basis of the applicable authorizing statutes, regulations, and terms.

Defendants shall also be restrained and prohibited from reissuing, adopting, implementing, or otherwise giving effect to the OMB Directive under any other name or title or through any other Defendants (or agency supervised, administered, or controlled by any Defendant), such as the continued implementation identified by the White House Press Secretary's statement of January 29, 2025.  ECF No. 44.

Defendants' attorneys shall provide written notice of this Order to all Defendants and agencies and their employees, contractors, and grantees by Monday, February 3, 2025, at 9 a.m.  Defendants shall file a copy of the notice on the docket at the same time.

Defendants shall comply with all notice and procedural requirements in the award, agreement, or other instrument relating to decisions to stop, delay, or otherwise withhold federal financial assistance programs.

The TRO shall be in effect until further Order of this Court.  A preliminary hearing, at which time the States will have to produce specific evidence in support of a preliminary injunction, will be set shortly at a day and time that is convenient to the parties and the Court.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____

John J. McConnell, Jr.
Chief Judge
United States District Court for the District of Rhode Island

January 31, 2025

| Grant Program | | Federal Agency | Funding | Organization |
|---|---|---|---|---|
| Emergency Management Performance Grant | EMF-2024-05013 | FEMA | AZ | AZ DEMA |
| Nonprofit Security Grant Program | EMW-2022-UA-00008; EMW-2023-UA-00017 | FEMA | AZ | AZDOHS |
| Cooperative Technical Partnership (CTP) Program | EMF-2022-CA-00014 | FEMA | CA | Governor's Office of Land Use and Climate Innovation |
| Building Resilient Infrastructure and Communities (BRIC) | | FEMA | CO | Colorado Division of Homeland Security & Emergency Management (DHSEM) |
| Emergency Operations Center Grant Program | EMD-2023-EO-00003, EMD-2022-EO-00001 | FEMA | CO | Colorado Division of Homeland Security & Emergency Management (DHSEM) |
| Flood Mitigation Assistance (FMA) | | FEMA | CO | Colorado Division of Homeland Security & Emergency Management (DHSEM) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2022-CA-00022 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2022-CA-00027 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2022-CA-00024 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2022-CA-00018 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2022-CA-00020 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2020-CA-00020 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2022-CA-00024 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2020-CA-00021 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2019-CA-00049 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2022-CA-00023 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2019-CA-00037 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2019-CA-00038 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2020-CA-00025 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2019-CA-00057 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2018-CA-00014 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2021-CA-0027 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2021-CA-0025 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2019-CA-00050 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2022-CA-00021 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2021-CA-0029 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2021-CA-0026 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2022-CA-00018 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2019-CA-00034 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2020-CA-00027 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2018-CA-00011 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2019-CA-00028 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2020-CA-00021 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2021-CA-0025 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2019-CA-00031 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2021-CA-0024 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2021-CA-0029 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2022-CA-00023 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Floodplain Mapping Program - Cooperating Technical Partnership Award | EMD-2021-CA-0028 | FEMA | CO | Colorado Department of Natural Resources (DNR) |
| Hazard Mitigation Grant Program (HMGP) | | FEMA | CO | Colorado Division of Homeland Security & Emergency Management (DHSEM) |
| Hazard Mitigation Grant Program Post Fire (HMGP Post Fire) | | FEMA | CO | Colorado Division of Homeland Security & Emergency Management (DHSEM) |
| Homeland Security Grant Program | EMW-2023-SS-00050, EMW-2022-SS-00041, EMW-2021-! | FEMA | CO | Colorado Division of Homeland Security & Emergency Management (DHSEM) |
| Nonprofit Security Grant Program | EMW-2023-UA-00047, EMW-2022-UA-00040, EMW-2021-! | FEMA | CO | Colorado Division of Homeland Security & Emergency Management (DHSEM) |
| Shelter and Services Program Grant | | FEMA | CO | Colorado Division of Homeland Security & Emergency Management (DHSEM) |
| State and Local Cybersecurity Grant Program | EMW-2023-CY-00061, EMW-2022-CY-00045 | FEMA | CO | Colorado Division of Homeland Security & Emergency Management (DHSEM) |
| Targeted Violence and Terrorism Prevention Grant Program | EMW-2023-GR-00129 | FEMA | CO | Colorado Division of Homeland Security & Emergency Management (DHSEM) |
| Community Assistance Program – State Support Services Element (CAP-SSSE) | | FEMA | CT | CT DEEP |
| Cooperating Technical Partners (CTP) | EMF-2021-CA-00003 | FEMA, Homeland Security | HI | DLNR - ENG |
| Homeland Security Program FY 2021 | EMW-2021-SS-00030 | FEMA | HI | Hawaii Department of Law Enforcement |
| Homeland Security Program FY 2022 | EMW-2022-SS-00026 | FEMA | HI | Hawaii Department of Law Enforcement |
| Homeland Security Program FY 2023 | EMW-2023-SS-00026 | FEMA | HI | Hawaii Department of Law Enforcement |
| Homeland Security Program FY 2024 | EMW-2024-SS-05015 | FEMA | HI | Hawaii Department of Law Enforcement |
| Nonprofit Security Grant Program FY 2022 | EMW-2022-UA-00027 | FEMA | HI | Hawaii Department of Law Enforcement |
| Nonprofit Security Grant Program FY 2023 | EMW-2023-UA-00028 | FEMA | HI | Hawaii Department of Law Enforcement |
| Nonprofit Security Grant Program FY 2024 | EMW-2024-UA-05010 | FEMA | HI | Hawaii Department of Law Enforcement |
| Port Security Grant Program FY 2021 | EMW-2021-PU-00060 | FEMA | HI | Hawaii Department of Law Enforcement |
| State and Local Cybersecurity Grant Program FY 2022 | EMW-2022-CY-00024 | FEMA | HI | Hawaii Department of Law Enforcement |
| State and Local Cybersecurity Grant Program FY 2023 | EMW-2023-CY-00021 | FEMA | HI | Hawaii Department of Law Enforcement |
| State and Local Cybersecurity Grant Program FY 2024 | EMW-2024-CY-05274 | FEMA | HI | Hawaii Department of Law Enforcement |
| Targeted Violence and Terrorism Prevention Grant Program FY 2024 | EMW-2024-GR-05133 | FEMA | HI | Hawaii Department of Law Enforcement |
| Homeland Security Grant Program - 2021 | EMW-2021-SS-0001 | FEMA | IL | IEMA-OHS |

| | | | | |
|---|---|---|---|---|
| Homeland Security Grant Program - 2022 | EMW-2023-SS-00013 | FEMA | IL | IEMA-OHS |
| Nonprofit Security Grant Program - 2021 | EMW-2021-UA-0002 | FEMA | IL | IEMA-OHS |
| Nonprofit Security Grant Program - 2022 | EMW-2022-UA-00013 | FEMA | IL | IEMA-OHS |
| Nonprofit Security Grant Program - 2023 | EMW-2023-UA-00013 | FEMA | IL | IEMA-OHS |
| Cooperating Technical Partners | EMA-2016-CA-00004 | FEMA | KY | KY Energy and Environment Cabinet (EEC) |
| Cooperating Technical Partners | EMA-2017-CA-00005 | FEMA | KY | KY Energy and Environment Cabinet (EEC) |
| Cooperating Technical Partners | EMA-2018-CA-00007 | FEMA | KY | KY Energy and Environment Cabinet (EEC) |
| Cooperating Technical Partners | EMA-2019-CA-00024 | FEMA | KY | KY Energy and Environment Cabinet (EEC) |
| Cooperating Technical Partners | EMA-2020-CA-00013 | FEMA | KY | KY Energy and Environment Cabinet (EEC) |
| Cooperating Technical Partners | EMA-2021-CA-00006 | FEMA | KY | KY Energy and Environment Cabinet (EEC) |
| Cooperating Technical Partners | EMA-2022-CA-00023 | FEMA | KY | KY Energy and Environment Cabinet (EEC) |
| Cooperating Technical Partners | EMA-2023-CA-05024 | FEMA | KY | KY Energy and Environment Cabinet (EEC) |
| Cooperating Technical Partners | EMA-2024-CA-05012 | FEMA | KY | KY Energy and Environment Cabinet (EEC) |
| FEMA Non-Disasters - FEMA GO | | FEMA | KY | DMA/KYEM |
| FEMA Non-Disasters - PARS | | FEMA | KY | DMA/KYEM |
| Map & Modernization & Risk Mapping LOMR | | FEMA | KY | KY Energy and Environment Cabinet (EEC) |
| National Dam Safety Program (NDSP) State Assistance Grant-Infrastructure | | FEMA | KY | KY Energy and Environment Cabinet (EEC) |
| Community Assistance Program (CAP) – State Support Services Element (SSSE) Grant | | FEMA | MA | MA DCR |
| High Hazard Potential Dam Program (FY20 $378K) | | FEMA | MA | MEMA --> MA DCR |
| Emergency Management Performance Grant | EMP-2023-EP-0001 | FEMA | MD | Maryland Department of Emergency Management |
| Emergency Operations Center Grant Program | EMP-2023-EO-00001 | FEMA | MD | Maryland Department of Emergency Management |
| Homeland Security Grant Program | EMW-2021-SS-00047 | FEMA | MD | Maryland Department of Emergency Management |
| Homeland Security Grant Program | EMW-2021-SS-00047 | FEMA | MD | Maryland Department of Emergency Management |
| Homeland Security Grant Program | EMW-2022-SS-00009 | FEMA | MD | Maryland Department of Emergency Management |
| Homeland Security Grant Program | EMW-2022-SS-00009 | FEMA | MD | Maryland Department of Emergency Management |
| Homeland Security Grant Program | EMW-2023-SS-00011 | FEMA | MD | Maryland Department of Emergency Management |
| Homeland Security Grant Program | EMW-2023-SS-00011 | FEMA | MD | Maryland Department of Emergency Management |
| Nonprofit Security Grant Program | EMW-2022-UA-00006-S01 | FEMA | MD | Maryland Department of Emergency Management |
| Nonprofit Security Grant Program | EMW-2023-UA-00010 | FEMA | MD | Maryland Department of Emergency Management |
| Regional Catastrophic Preparedness Grant Program | EMP-2022-CA-00011 | FEMA | MD | Maryland Department of Emergency Management |
| State and Local Cybersecurity Grant Program | EMW-2022-CY-00028-S01 | FEMA | MD | Maryland Department of Emergency Management |
| State and Local Cybersecurity Grant Program | EMW-2023-CY-00006 | FEMA | MD | Maryland Department of Emergency Management |
| Targeted Violence Prevention Program | EMW-2022-GR-00056-S01 | FEMA | MD | Maryland Department of Emergency Management |
| Emergency Management Performance Grant | EMB-2023-EP-00004 | FEMA | ME | Maine Emergency Management Agency |
| Homeland Security Grant Program | EMW-2021-UA-00065 | FEMA | ME | Maine Emergency Management Agency |
| Homeland Security Grant Program | EMW-2022-UA-00032 | FEMA | ME | Maine Emergency Management Agency |
| Homeland Security Grant Program | EMW-2023-UA-00012 | FEMA | ME | Maine Emergency Management Agency |
| Nonprofit Security Grant Program | EMW-2021-UA-00057 | FEMA | ME | Maine Emergency Management Agency |
| Nonprofit Security Grant Program | EMW-2022-UA-00032 | FEMA | ME | Maine Emergency Management Agency |
| Nonprofit Security Grant Program | EMW-2023-UA-00012 | FEMA | ME | Maine Emergency Management Agency |
| Pre-Disaster Mitigation | EMB-2023-PD-004 | FEMA | ME | Maine Emergency Management Agency |
| Community Assistance Program - State Support Services Elements | EMC-2024-GR-05009 | FEMA | MI | MI Dep't of Environment, Great Lakes, and Energy (EGLE) |
| Emergency Management Preparedness Grant - FY 23 | EMC-2023-EP-00005 | FEMA | MI | Michigan State Police |
| Emergency Management Preparedness Grant - FY 24 | | FEMA | MI | Michigan State Police |
| Emergency Operations Center Grant - 22 | EMW-2023-GR-00015 | FEMA | MI | Michigan State Police |
| Emergency Operations Center Grant - 23 | EMC-2023-EO-00002 | FEMA | MI | Michigan State Police |
| Homeland Security Grant Program FY21 | EMW-2021-SS-00011 | FEMA | MI | Michigan State Police |
| Homeland Security Grant Program FY22 | EMW-2022-SS-00031 | FEMA | MI | Michigan State Police |
| Homeland Security Grant Program FY23 | EMW-2023-SS-00022 | FEMA | MI | Michigan State Police |
| Nonprofit Security Grant Program FY21 | EMW-2021-UA-00050 | FEMA | MI | Michigan State Police |
| Nonprofit Security Grant Program FY22 | EMW-2022-UA-00031 | FEMA | MI | Michigan State Police |
| Nonprofit Security Grant Program FY23 | EMW-2023-UA-00039 | FEMA | MI | Michigan State Police |
| Nonprofit Security Grant Program FY24 | EMW-2024-UA-05052 | FEMA | MI | Michigan State Police |
| Pre-Disaster Mitigation Grant - 19 | EMC-2021-PC-001 | FEMA | MI | Michigan State Police |
| Pre-Disaster Mitigation Grant - 22 | EMC-2022-PD-0002 | FEMA | MI | Michigan State Police |
| Pre-Disaster Mitigation Grant - 23 | EMC-2023-PD-0001 | FEMA | MI | Michigan State Police |
| Pre-Disaster Mitigation Grant - 24 | EMC-2024-PD-0001 | FEMA | MI | Michigan State Police |
| Safeguarding Tomorrow Revolving Loan Fund Program FY24 | | FEMA | MI | Michigan State Police |
| State and Local Cybersecurity Grant (SLCGP) - 22 | EMW-2022-CY-00003 | FEMA | MI | Michigan State Police |
| State and Local Cybersecurity Grant (SLCGP) - 23 | EMW-2023-CY-00010 | FEMA | MI | Michigan State Police |
| Targeted Violence and Terrorism Prevention Grant | EMW-2023-GR-00015 | FEMA | MI | Michigan State Police |
| Community Assistance Program – State Support Services Element (CAP-SSSE) | EMN-2024-GR-05017 | FEMA | NJ | NJDEP |

| Coordinating Technical Partners (CTP) Period of Performance | EMN-2020-CA-00001-S01 | FEMA | NJ | New Jersey Department of Environmental Protection |
|---|---|---|---|---|
| Coordinating Technical Partners (CTP) Period of Performance | EMN-2021-CA-00004-S01 | FEMA | NJ | New Jersey Department of Environmental Protection |
| Coordinating Technical Partners (CTP) Period of Performance | EMN-2022-CA-00017 | FEMA | NJ | New Jersey Department of Environmental Protection |
| Community Assistance Program – State Support Services Element (CAP-SSSE) | EMN-2024-GR-05016 | FEMA | NY | NYSDEC |
| Building Resilient Infrastructure and Communities (BRIC) (2020) | EMC-2020-BR-009 | FEMA | WI | WI Department of Military Affairs |
| Building Resilient Infrastructure and Communities (BRIC) (2021) | EMC-2021-BR-064 | FEMA | WI | WI Department of Military Affairs |
| Building Resilient Infrastructure and Communities (BRIC) (2022) | EMC-2022-BR-008 | FEMA | WI | WI Department of Military Affairs |
| Building Resilient Infrastructure and Communities (BRIC) (2023) | EMC-2023-BR-004 | FEMA | WI | WI Department of Military Affairs |
| Emergency Management Performance Grant (2023) | EMC-2023-EP-00002 | FEMA | WI | WI Department of Military Affairs |
| Emergency Management Performance Grant (2024) | EMC-2024-EP-05004 | FEMA | WI | WI Department of Military Affairs |
| Emergency Operations Center (2024) | EMC-2024-EO-05001 | FEMA | WI | WI Department of Military Affairs |
| Flood Mitigation Assistance (2020) | EMC-2020-FM-043 | FEMA | WI | WI Department of Military Affairs |
| Homeland Security Grant Program (2024) | EMW-2024-SS-05237 | FEMA | WI | WI Department of Military Affairs |
| Legislative Pre-Disaster Mitigation (2022) | EMC-2022-PD-0001 | FEMA | WI | WI Department of Military Affairs |
| Legislative Pre-Disaster Mitigation (2023) | EMC-2023-PD-0002 | FEMA | WI | WI Department of Military Affairs |
| Nonprofit Security Grant Program (2024) | EMW-2024-UA-05153 | FEMA | WI | WI Department of Military Affairs |
| Pre-Disaster Mitigation (2019) | EMC-2020-PC-0005 | FEMA | WI | WI Department of Military Affairs |
| Shelter and Services Program Grant (2024) | EMW-2024-SP-05172 | FEMA | WI | WI Department of Military Affairs |
| State and Local Cyber Security (2022) | EMW-2022-CY-00053 | FEMA | WI | WI Department of Military Affairs |
| State and Local Cyber Security (2023) | EMW-2023-CY-00052 | FEMA | WI | WI Department of Military Affairs |
| State and Local Cybersecurity Grant Program (2024) | EMW-2024-CY-05240 | FEMA | WI | WI Department of Military Affairs |



**U.S. Department of Homeland Security**
Washington, DC  20472

February 18, 2025

Michael Haney
Director, Office of Grants Management
Colorado Department of Public Safety
Division of Homeland Security and Emergency Management
8000 S. Chester Street, Suite 575
Centennial, CO 80112

Re:     Remedy for Noncompliance Letter, Shelter and Services Program (SSP)

    Grant Number: EMW-2023-SP-05037
    Period of Performance: 03/01/2023 – 09/30/2025 Award amount: $1,635,258.00

    Grant Number: EMW-2024-SP-05088
    Period of Performance: 10/01/2023 – 09/30/2026 Award amount: $4,852,467.00

    Grant Number: EMW-2024-SP-05199
    Period of Performance: 10/01/2023 – 09/30/2026 Award amount: $1,897,347.00

Dear Mr. Haney:

The purpose of this letter is to notify you that DHS/FEMA is temporarily withholding payments to your organization for the grant award(s) named above, pursuant to 2 C.F.R. § 200.339(a); has requested recovery of one payment completed via direct deposit on February 3, 2025, totaling $1,897,347.00, and which constitutes a part of this temporary withholding; and is instituting specific conditions on your award pursuant to 2 C.F.R. § 200.208.

**Findings**

The Department of Homeland Security has significant concerns that SSP funding is going to entities engaged in or facilitating illegal activities. The Department is concerned that entities receiving payment under this program may be guilty of encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(1)(A)(iv); transporting or moving illegal aliens, *id*. § 1324(a)(1)(A)(ii); harboring, concealing, or shielding from detection illegal aliens, *id*. § 1324(a)(1)(A)(iii); or applicable conspiracy, aiding or abetting, or attempt liability respecting these statutes.

DHS/FEMA is required to administer its grant awards so as to ensure that federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable federal statutes, and regulations. 2 C.F.R. § 200.300(a). The terms and conditions of the

1

award allow the Department to institute appropriate remedies for noncompliance which include temporarily withholding payments or suspending or terminating the award for a failure to comply with the conditions of the award or applicable federal statutes. See 2 C.F.R. §§ 200.208; 200.340; and 200.339(a).

**Remedy Action(s) and Specific Condition(s)**
Non-federal entities receiving financial assistance from DHS/FEMA are required to comply with requirements in the terms and conditions of their awards or subawards, including the terms set forth in applicable federal statutes, regulations, NOFOs, and policies. Throughout the award lifecycle or even after an award has been closed, DHS/FEMA may discover potential or actual noncompliance on the part of a recipient or subrecipient. This potential or actual noncompliance may be discovered through routine monitoring, audits, closeout, or reporting from various sources. In the case of any potential or actual noncompliance, DHS/FEMA may place special conditions on an award per 2 C.F.R. § 200.208 and § 200.339, DHS/FEMA may place a hold on funds until the matter is corrected, or additional information is provided per 2 C.F.R. § 200.339, or it may do both.

Based on the concerns described above, DHS/FEMA will conduct additional monitoring and review of your award(s) as permitted by the terms and conditions of the award(s) to ensure compliance with all terms and conditions of your award(s). During this time, payments under the grant award(s) will be temporarily held. This action includes the amount of funding identified above that DHS/FEMA recently clawed back. Further, you are not permitted to incur any additional costs under the grant until notified further by DHS/FEMA.

To assist DHS/FEMA in conducting this review, please respond within 30 days with the following information that your organization has not already submitted to DHS/FEMA:

1. All documents regarding the aliens with whom your organization and your subrecipients and contracts interacted with in carrying out the scope of your SSP award, including their names and contact information; and a detailed and descriptive list of specific services provided, and proof of provision of these services; or
2. A written statement that your organization has already submitted all of the information identified in No. 1, above, to DHS/FEMA.

Upon the conclusion of that monitoring, FEMA will notify you of the results and any other remedies for noncompliance or specific conditions, as appropriate.

**Opportunity to Appeal**
Your organization has the right to appeal this action within 60 days of the date of this letter. The appeal must include the following information:

1. Grant number(s).
2. Recipient name.
3. A written explanation, on your organization's letterhead, explaining why you believe FEMA's decision to temporarily withhold payments to your organization for the grant award(s) named above, pursuant to 2 C.F.R. § 200.339(a), or to prohibit your organization from incurring additional costs under the grant, is not correct.

4. Copies of any documents or statements that support your position that FEMA's decision to temporarily withhold payments to your organization for the grant award(s) named above, pursuant to 2 C.F.R. § 200.339(a) is not correct.

Written appeals should be sent directly to FEMA-SSP@fema.dhs.gov.

The FEMA Grant Programs Directorate is available to respond to any questions you may have. Please send all information and communications regarding this notification to FEMA-SSP@fema.dhs.gov.

Sincerely,

Cameron Hamilton
Senior Official Performing the Duties of the Administrator

3



U.S. Department of Homeland Security
Washington, DC 20472

March 11, 2025

Katherine Sommers
Department of Military Affairs Wisconsin
P.O. Box 14587
Madison, WI 53704

Re:     Remedy for Noncompliance Letter, Shelter and Services Program (SSP)

Grant Number: EMW-2024-SP-05172
Period of Performance: October 1, 2023 – September 30, 2026
Award amount: $380,429.00

Dear Katherine Sommers:

The purpose of this letter is to notify you that DHS/FEMA is temporarily withholding payments to your organization for the grant award(s) named above, pursuant to 2 C.F.R. § 200.339(a) and is instituting specific conditions on your award pursuant to 2 C.F.R. § 200.208.

**Findings**
The Department of Homeland Security has significant concerns that SSP funding is going to entities engaged in or facilitating illegal activities. The Department is concerned that entities receiving payment under this program may be guilty of encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(1)(A)(iv); transporting or moving illegal aliens, *id*. § 1324(a)(1)(A)(ii); harboring, concealing, or shielding from detection illegal aliens, *id*. § 1324(a)(1)(A)(iii); or applicable conspiracy, aiding or abetting, or attempt liability respecting these statutes.

DHS/FEMA is required to administer its grant awards so as to ensure that federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable federal statutes, and regulations. 2 C.F.R. § 200.300(a). The terms and conditions of the award allow the Department to institute appropriate remedies for noncompliance which include temporarily withholding payments or suspending or terminating the award for a failure to comply with the conditions of the award or applicable federal statutes. See 2 C.F.R. §§ 200.208; 200.340; and 200.339(a).

**Remedy Action(s) and Specific Condition(s)**
Non-federal entities receiving financial assistance from DHS/FEMA are required to comply with

requirements in the terms and conditions of their awards or subawards, including the terms set forth in applicable federal statutes, regulations, Notice of Funding Opportunities, and policies. Throughout the award lifecycle or even after an award has been closed, DHS/FEMA may discover potential or actual noncompliance on the part of a recipient or subrecipient. This potential or actual noncompliance may be discovered through routine monitoring, audits, closeout, or reporting from various sources. In the case of any potential or actual noncompliance, DHS/FEMA may place special conditions on an award per 2 C.F.R. § 200.208 and § 200.339, DHS/FEMA may place a hold on funds until the matter is corrected, or additional information is provided per 2 C.F.R. § 200.339, or it may do both.

Based on the concerns described above, DHS/FEMA will conduct additional monitoring and review of your award(s) as permitted by the terms and conditions of the award(s) to ensure compliance with all terms and conditions of your award(s). During this time, payments under the grant award(s) will be temporarily held. Further, you are not permitted to incur any additional costs under the grant until notified further by DHS/FEMA.

To assist DHS/FEMA in conducting this review, please respond within 30 days with the following information that your organization has not already submitted to DHS/FEMA:

1. All documents regarding the aliens with whom your organization and your subrecipients and contracts interacted with in carrying out the scope of your SSP award, including their names and contact information; and a detailed and descriptive list of specific services provided, and proof of provision of these services; or
2. A written statement that your organization has already submitted all of the information identified in No. 1, above, to DHS/FEMA.

Additionally, to ensure compliance with all applicable federal laws and regulations in the execution of your SSP award, FEMA will be imposing an additional special condition that requires you, and the executive officers of any subrecipient or contractor that receives funding under the award, to sign an affidavit attesting that you and they have not participated in, and have no knowledge or suspicion that anyone in your or their organizations participated in, any crime cognizable under 8 U.S.C. §§ 1324(a)(1)(A)(iv); 1324(a)(1)(A)(ii); or 1324(a)(1)(A)(iii). Additional details regarding this new requirement will be forthcoming shortly. Upon the conclusion of that monitoring, FEMA will notify you of the results and any other remedies for noncompliance or specific conditions, as appropriate.

**Opportunity to Appeal**

Your organization has the right to appeal this action within 60 days of the date of this letter. The appeal must include the following information:

1. Grant number(s).
2. Recipient name.
3. A written explanation, on your organization's letterhead, explaining why you believe FEMA's decision to temporarily withhold payments to your organization for the grant award(s) named above, pursuant to 2 C.F.R. § 200.339(a), or to prohibit your organization from incurring additional costs under the grant, is not correct.

4. Copies of any documents or statements that support your position that FEMA's decision to temporarily withhold payments to your organization for the grant award(s) named above, pursuant to 2 C.F.R. § 200.339(a) is not correct.

Written appeals should be sent directly to FEMA-SSP@fema.dhs.gov.

The FEMA Grant Programs Directorate is available to respond to any questions you may have. Please send all information and communications regarding this notification to FEMA-SSP@fema.dhs.gov.

Sincerely,

Cameron Hamilton
Senior Official Performing the Duties of the Administrator



GENERAL COUNSEL

EXECUTIVE OFFICE OF THE PRESIDENT
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

March 10, 2025

MEMORANDUM FOR AGENCY GENERAL COUNSELS

FROM:        Mark R. Paoletta
             General Counsel

SUBJECT:     Preliminary Injunction Against OMB Memorandum M-25-13 and Other Actions

This memorandum is notifying you about a preliminary injunction that was entered on March 6, 2025 in the case of *New York et al. v. Trump et al.*, No. 25-cv-39-JJM-PAS (D. R.I.), ECF No. 161 (Mar. 6, 2025).  The case involves a challenge to a purported "federal funding freeze," including OMB Memorandum M-25-13, *Temporary Pause of Agency Grant, Loan, and Other Financial Assistance Programs* (Jan. 27, 2025).  Although that OMB Memorandum M-25-13 was rescinded on January 29, 2025, the litigation is continuing, and the Court has issued a preliminary injunction directing certain actions.  A copy of the Court's Order is attached.

Under the terms of the Court's Order, the named agency defendants in that case "are enjoined from reissuing, adopting, implementing, giving effect to, or reinstating under a different name the directives in OMB Memorandum M-25-13 (the 'OMB Directive') with respect to the disbursement and transmission of appropriated federal funds to the States under awarded grants, executed contracts, or other executed financial obligations."  The named agency defendants are also "enjoined from pausing, freezing, blocking, canceling, suspending, terminating, or otherwise impeding the disbursement of appropriated federal funds to the States under awarded grants, executed contracts, or other executed financial obligations based on the OMB Directive, including funding freezes dictated, described, or implied by Executive Orders issued by the President before rescission of the OMB Directive or any other materially similar order, memorandum, directive, policy, or practice under which the federal government imposes or applies a categorical pause or freeze of funding appropriated by Congress. This includes, but is by no means not limited to, Section 7(a) of Executive Order 14154, Unleashing American Energy."

In addition, **all agencies are hereby instructed**:

- Your agency "may not take any steps to implement, give effect to, or reinstate under a different name or through other means the directives in the OMB Directive with respect to the disbursement or transmission of appropriated federal funds to the States under awarded grants, executed contracts, or other executed financial obligations."

- Your agency must "release and transmit any disbursements to the States on awarded grants, executed contracts, or other executed financial obligations that

were paused on the grounds of the OMB Directive and Executive Orders included
by reference therein or issued before the rescission of the OMB Directive."

You should refer to the Court's Memorandum and Order, in particular the operative
directives on pages 44-45, for a complete understanding of the preliminary injunction's
requirements.  To assist in your compliance, however, your agency should be guided by the
following principles:

1. The Court's directives pertaining to specific funding actions apply only to
"awarded grants, executed contracts, or other executed financial obligations."
Accordingly, the Court's Order does not restrict agencies' actions with respect to
issuance of new awards, or to awards that have not yet been awarded to specific
individuals or entities (such as NOFOs).

2. The Court's directives apply only to awards given "to the States," which is a
reference to the particular States that are named as plaintiffs in the case.

   a. A complete list of those State plaintiffs is set forth at the end of this
   memorandum.  An award "to the State[]" includes an award given to any
   plaintiff State-affiliated agency or entity, including State-operated
   universities.

   b. The Court's directives do not apply, however, to awards given to private
   individuals or to entities that are not affiliated with a plaintiff State.  Thus,
   the mere fact that an individual or entity resides in a plaintiff State does
   not bring that individual or entity within the scope of the Court's Order.

3. The Court's directives do not "limit[] the Executive's discretion," but provide
"that the Executive's discretion to impose its own policy preferences on
appropriated funds can be exercised only if it is authorized by the congressionally
approved appropriations statutes."

   a. To the extent funding streams are "governed by statutory commands that
   d[o] not give discretion to withhold funds," agencies must continue to
   disburse those funds for awards to the States.

   b. However, "[t]he Court's order does not prevent [agencies] from making
   funding decisions in situations under the Executive's 'actual authority in
   the applicable statutory, regulatory, or grant terms[.]'"

   c. Accordingly, agencies remain free to exercise their own discretion,
   including to pause funding for awards to the States, as long as agencies do
   so purely based on their own discretion—not as a result of OMB
   Memorandum M-25-13, the President's Executive Orders issued before
   rescission of the OMB Directive, or any materially similar order,
   memorandum, directive, policy, or practice—and as long as agencies do so
   consistent with the underlying statutory, regulatory, and grant terms
   governing the funding.

These instructions replace the "written notice of court order" that was previously disseminated on or around January 31, 2025, in connection with the temporary restraining order previously entered in this case. The above instructions do not, however, eliminate or supersede any compliance obligations stemming from the preliminary injunction issued by a federal court in the District of Columbia, as described in my memorandum of February 27, 2025. *See National Council of Nonprofits et al. v. Office of Management and Budget et al.*, No. 25-cv-239-LLA (D.D.C.), ECF No. 52 (Feb. 25, 2025).

To the extent you have questions about your obligations pursuant to this memorandum or any court order, please contact your agency General Counsel. Thank you for your attention to this matter.

Attachment (copy of preliminary injunction order)


### LIST OF PLAINTIFF STATES (alphabetical)
#### *New York v. Trump*, No. 25-cv-39 (D. R.I.)

Arizona
California
Colorado
Connecticut
Delaware
District of Columbia
Hawai'i
Illinois
Kentucky
Maine
Maryland
Massachusetts
Michigan
Minnesota
Nevada
New Jersey
New Mexico
New York
North Carolina
Oregon
Rhode Island
Vermont
Washington
Wisconsin