## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE CORPORATION FOR PUBLIC BROADCASTING,     401 Ninth St., NW     Washington, DC 20004<br><br>    Plaintiff,<br><br>v.<br><br>THE FEDERAL EMERGENCY MANAGEMENT AGENCY,     500 C Street, SW     Washington, DC 20472<br><br>and<br><br>CAMERON HAMILTON, in his Official Capacity as Senior Official Performing the Duties of the FEMA Administrator,     500 C Street, SW     Washington, DC 20472<br><br>    Defendants.<br>. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No.  1:25-cv-0740 (TJK) |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS
## MOTION FOR A TEMPORARY RESTRAINING ORDER

Unable to justify its unlawful and arbitrary freezing of appropriated funds for the Corporation for Public Broadcasting ("CPB") to reimburse expenses for the Next Generation Warning System ("NGWS") that were incurred with FEMA's approval, FEMA now pretends that such a hold never happened and is not continuing.  In its opposition brief, it contends that "there has been no withholding of funding" despite the undisputed evidence that for close to the last 30 days and counting, FEMA has prevented and *continues* to prevent CPB from having access to the

PARS portal to submit any of the $1.94 million in incurred expenses under the grant. CPB has been prevented since February 19, 2025 from submitting any reimbursement request despite CPB outreach to FEMA, as well as numerous temporary restraining orders and preliminary injunctions issued by federal courts, including this court, directing FEMA "to *continue releasing any disbursements* on open awards that were paused due to OMB Memorandum M-25-13."[1] *See National Council of Nonprofits v. Office of Management and Budget,* 2025 WL 597959, *19-20 (D.D.C. Feb. 25, 2025) (emphasis added); *New York v. Trump,* 2025 WL 715621 (D. R.I. March 6, 2025).

FEMA urges the Court to accept the remarkable argument that its "hold," which prohibits CPB from submitting requests for the reimbursement of incurred expenses under the NGWS Grant, is materially different than a "pause," a "freeze" or a "withholding." This, of course, is somewhere between nonsensical and Orwellian and, unsurprisingly, happens also to be belied by the plain meanings of the words. More fundamentally, the reality is that CPB and about twenty of the forty-two sub-awardees who purchased specialized equipment at FEMA's direction and with its approval have had payments for allowable costs withheld for nearly thirty (30) days, no longer have any way of submitting reimbursement requests, and there is no with no end in sight in direct violation of the Uniform Guidance. *See* 2 C.F.R. § 200.305 ("Payments for allowable costs *must not be*

---

[1] FEMA's declaration from Mr. Hamilton, which provides no specific information relating to the NGWS Grant, remarkably contends that FEMA was "unaware" until March 5, 2025 that PARS was not allowing awardees to access the system and submit reimbursements. *See* Hamilton Decl. ¶27. However, CPB's General Counsel, on February 20, 2025, sent a letter directly to FEMA, FEMA's Chief Counsel, the General Counsel of DHS, and FEMA's program managers for the NGWS Grant informing them that PARS was on "hold" and expressly demanding that "its access to funding under the grant award be immediately restored under PARS." *See Mintz Decl. Ex. F.* Further, despite Mr. Hamilton contending that PARS would be "functional" on or about March 14, 2025, CPB is still unable to access PARS to submit any reimbursements. *See* Exhibit 7 - Suppl. Mintz Decl. at ¶¶1-8.

*withheld* at any time during the period of performance") (emphasis added) and § 200.305(b)(3) ("The Federal agency…must make payment within 30 calendar days after receipt of the payment request").

In the wake of numerous federal injunction orders against FEMA and other agencies regarding the unlawful withholding of appropriated funds for pre-existing federal grants and programs, FEMA also *now* - close to three (3) years after the award of the NGWS Grant - suddenly seeks to unilaterally impose a new condition on the reimbursement of incurred expenses under the NGWS Grant, namely an undefined "manual review" process to ensure that payment does not, in FEMA's view, "promote fraud, waste, and abuse." *See* Hamilton Decl. ¶2. FEMA's latest position is suffused with arbitrariness and capriciousness, including a fundamental failure to offer a reasoned rationale for this change that is grounded in the operative facts relating to this grant or setting forth the specific criteria that will be used to determine whether FEMA will accept a reimbursement or deny it outright.

Glaringly, despite this lawsuit being narrowly focused on a *single* grant, FEMA fails to offer this Court any declaration from FEMA's numerous project managers actually involved in overseeing or administering the NGWS Grant or any of the numerous FEMA officials who have been closely working with CPB in reviewing and approving the very equipment and expenses incurred by CPB and its sub-awardees for the NGWS Grant. There is reason for this. For close to three years, FEMA has been intimately involved every step of the way in terms of the specific sites receiving new emergency broadcast equipment, creating a FEMA pre-approved equipment list, receiving monthly and quarterly reports on the expenses incurred and the progress of the grant. *See* Exhibit 8 - Slavitt Decl. ¶¶4-8.

Not only does FEMA fail to offer any evidence supporting even the hint of any concern of potential "fraud, waste, and abuse" in the NGWS program given its intimate involvement, the

3

undisputed evidence is that it does not exist.  Moreover, given the sheer volume of information provided and reviewed by FEMA before and after equipment is purchased by any sub-awardee, the notion that FEMA now must conduct a "manual review" of reimbursement requests is a transparent effort to continue the unlawful freeze on the draw down of appropriated funds by arbitrarily denying reimbursement requests using unidentified criteria.

Regardless of its motivations, FEMA's unilateral and post-hoc attempt to impose new conditions -- close to three years after award -- on the payments to CPB and its forty-two sub-awardees for expenses incurred under the NGWS Grant is arbitrary and capricious given that it: (i) violates 2 C.F.R. § 200.208 and 2 C.F.R. § 200.300; (ii) lacks any factual record evidence that there is even a concern of "fraud, waste, and abuse" in the NGWS program; (iii) is completely devoid of any explanation or rational basis as to why a new "manual review," with completely unidentified criteria, is necessary as to the **specific** NGWS program given that FEMA knows full well what equipment is being purchased, knows that it is being purchased from FEMA's **approved** equipment list, and knows why it is being purchased and (iv) disregards the substantial reliance interests that CPB and its sub-awardees have been operating under for close to three years.

Put bluntly, there is no expense for the NGWS Grant program that is incurred without FEMA's express knowledge and approval, underscoring the completely arbitrary nature of FEMA's undefined "manual review process" as it relates to the NGWS Grant. Despite FEMA's argument to the contrary, the equitable relief CPB seeks is narrow and straight-forward: (1) order FEMA to restore the PARS system so that CPB can **actually** submit requests for reimbursements, which it has been trying to do for close to thirty days; and (2) order FEMA to promptly review and process those requests according to the established standards under the Uniform Guidance and the NOFO,

not some undefined and unwarranted "manual review" process where FEMA's review criteria are completely unknown and arbitrary.[2]

## ARGUMENT

**I.    FEMA's Disabling Of PARS To Block The Submission Of Reimbursement Requests And The Unilateral Imposition Of A "Manual Review" Process Are Final Agency Actions**

In opposing CPB's motion, FEMA relies on the same argument that federal courts have repeatedly rejected when dealing with the fall-out from agencies freezing appropriated funds as a result of the Office of Management and Budget (OMB) Memo M-25-13, dated January 27, 2025.  *See National Council of Nonprofits,* 2025 WL 597959 at *13; *Trump, 2025 WL* 715621 at *8-9.

As the judge noted in *National Council of Nonprofits*, final agency action must mark the consummation of the agency's decision-making process and determine the rights and obligation from which legal consequences flow."  *Id. at* *13 (ruling that pause on federal finance assistance was a final agency action).  When an agency shuts off the ability to access funding, it marks the "consummation of each agency's decision-making process to comply with the President's executive order, the OMB Directive, or both." *Trump, 2025 WL* at *8.  Indeed, as the *Trump* Court noted, the plaintiffs found themselves dealing with the very real impact on their rights and obligations based on the funding freeze:

> States found themselves unable to draw down appropriated and awarded funding because they were completely shut out from accessing federal payment portals such as the Payment Management Services.

---

[2] Given FEMA's continuing hold on its PARS portal, its refusal to respond to the letter from CPB's General Counsel's letter on February 20, 2025 asking for an explanation of its conduct, its unilateral imposition close to three years after award of a "manual review" process that surfaces only after numerous courts enjoined the OMB-ordered funding freeze does not give confidence that FEMA will end its continued arbitrary practice by denying reimbursement requests based on completely unidentified criteria in an effort to otherwise achieve a continued freeze of appropriated funds.

*Id.* Indeed, FEMA has conceded in other litigation that it froze access to funding because of the OMB Memorandum. *See City of New York v. Trump*, 1:25-cv-015010 (S.D.N.Y.) (ECF Doc. 17) (FEMA's Opposition to plaintiff's motion for preliminary injunction at pp. 6-7).

Here, CPB, like the plaintiffs in *Trump* and *National Council of Nonprofits,* is facing an agency that has affirmatively taken action to remove access to the appropriated funds. It is firmly established that for nearly thirty days, FEMA has prevented and continues to prevent CPB from accessing the NGWS Grant funds despite CPB's outreach and resolution attempts, and numerous federal injunctions. In addition, FEMA has unilaterally decided more than two years after the NGWS Grant to impose new conditions on the right to reimbursement, which determines the rights and obligations from which legal consequences flow. As has been found by the other courts to have considered similar funding holds, this is final agency action.

## II.    FEMA's Decision Close to Three Years After Award of the NGWS Grant To CPB To, Without Notice, Unilaterally Impose A "Manual Review" Process To Purportedly Prevent Fraud, Waste and Abuse Is Arbitrary And Capricious

As this Court is well aware, numerous federal courts, including this one, entered temporary restraining orders and preliminary injunctions arising from FEMA and other agencies freezing access to appropriated funds for pre-existing grants and programs. For example, Judge AliKhan in National *Council of Nonprofits,* 2025 WL 597959 at *19-20 ordering that:

> Defendants are *enjoined from implementing, giving effect to, or reinstating under a different name the unilateral, non-individualized directives* in OMB Memorandum M-25-13 with respect to the disbursement of Federal funds under all open awards; it is further
>
> **ORDERED** that Defendants must provide written notice of the court's preliminary injunction to all agencies to which OMB Memorandum M-25-13 was addressed. The written notice *shall instruct those agencies that they may not take any steps to implement, give effect to, or reinstate under a different name the unilateral, non-individualized directives in OMB Memorandum M-25-13* with respect to the disbursement of Federal Funds under all open awards.

It shall also instruct those agencies to ***continue releasing any disbursements*** on open awards that were paused due to OMB Memorandum M-25-13…

*Id.* (emphasis added).  The federal court in *Trump* entered a virtually identical order.

In the wake of those orders, FEMA <u>now</u> seeks to "give effect to and reinstate under a different name" the freezing of appropriated funds by unilaterally extending to itself an undefined "manual review" process by which it can reject reimbursements that it deems to "promote fraud, waste, and abuse"  based on completely unidentified criteria.  FEMA's latest position is suffused with arbitrary and capriciousness.

It is "a fundamental requirement of administrative law . . . that an agency set forth its reasons for decision; an agency's failure to do so constitutes arbitrary and capricious agency action."  *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) ("conclusory statements will not do; an agency's statement must be one of reasoning").  As Judge AliKhan made clear:

> To pass muster, the agency "***must examine the relevant data and articulate a satisfactory explanation for its action***[,] including ***a 'rational connection between the facts found and the choice made***.' Agency action is generally deemed unlawful if it "has relied on factors which Congress has not intended it to consider, ***entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise***.

*National Council of Nonprofits,* 2025 WL 597959 at *14 (emphasis added) ("The touchstone of this inquiry is rationality, and the Defendants' actions flunk that test").  Here, there is no evidence that FEMA considered any relevant data relating to the NGWS Grant.  Nor, has FEMA offered any evidence of the existence of a "problem" – namely fraud, waste and abuse in the administration of the NGWS Grant - - requiring agency action.  There is good reason for this.

As set forth in the accompanying declaration of Evan Slavitt, Senior Vice-President and General Counsel of CPB, who also serves on the Executive Team that interacts directly with FEMA in connection with the NGWS Grant:

- Since the award of the NGWS Grant and at every stage of this process, CPB has kept FEMA fully informed of the status of the sub-awards, the proposed equipment purchases by each sub-awardee, the purpose of each piece of equipment and why it is necessary for the enhancement or modernization of the emergency alert system.

- As part of the NGWS Grant, FEMA must undertake an Environmental Planning and Historic Preservation study ("EHP") as to each site. In order to complete EHP studies, as to each site, FEMA must know *in advance*, among other things, precisely what equipment is planned to be purchased for each site and the budget for each project and its cost, which is provided by CPB *before* any equipment purchases are made. Indeed, sub-awardees cannot proceed until FEMA has an approved EHP study.

- FEMA has created a pre-approved equipment list that each sub-awardee must purchase from.

*See* Slavitt Decl. ¶¶4-8.

Moreover, FEMA appointed two program managers to work closely with CPB on the NGWS Grant: Manny Centeno, the IPAWS Director, and Tony Robles, IPAWS NGWS Program Manager. Since the inception of the grant, CPB's NGWS team has collaborated with Mr. Robles and his team during biweekly meetings to discuss:

- the total grant amounts for the sub-awardees;
- the aggregate totals of subgrant awards in each stage of the grant management pipeline.
- the number of projects at each stage of approval;
- the costs being incurred against the budget;
- rate at which CPB is planning to draw down reimbursements; and
- how much of the funding has been approved and awarded.

In addition to this information, pursuant to the NGWS Grant and 2 C.F.R. § 200.328 (Financial Reporting) and § 200.329 (Monitoring and Reporting Program Performance), CPB provides FEMA with quarterly Federal Financial Reports (SF-425) and Performance Reports as well as

monthly progress reports. These reports detail the specific expenditures made by each sub-awardee, what the expenses were for, the funding committed to each sub-awardee, the remaining funding available under each sub-award, the status of specialized equipment purchases, the total expended, and a summary of risks, issues or any areas of concerns. *Id.* at ¶¶5-6.

Despite having this information, FEMA offers this Court no evidence of any kind to believe there is waste, fraud or abuse with respect to this grant. This is because FEMA knows ***exactly*** what pieces of specialized equipment are being purchased for each ***specific site***, the budget for that site, and how that impacts CPB's need to draw down the grant funds to reimburse sub-awardees.

Second, FEMA's failure to articulate any rationale for its action is underscored by its failure to explain why FEMA would need to now do a new "manual review" process when it and its program directors have been conducting ongoing reviews and meetings with CPB, reviewing and approving the sub-awardee equipment purchases and CPB's expenses.

Third, FEMA's post-hoc imposition of a "manual-review" process for reimbursements is also arbitrary because it violates 2 C.F.R. § 200.208 and 2 C.F.R. § 200.300. Specifically, in managing a grant, an agency certainly must ensure that the funding is expended and implemented in compliance with federal law and regulations. *See* 2 C.F.R. § 200.300. However, in doing so, the Uniform Guidance requires that: "The Federal agency … ***must communicate to a recipient or subrecipient all relevant requirements***, including those contained in general appropriations provisions, and incorporate them directly or by reference in the terms and conditions of the Federal award." *Id.* (emphasis added). Here, FEMA glaringly fails to articulate anywhere ***what*** criteria will be used to determine that the reimbursements "do not promote fraud, waste and abuse." By now seeking to hold CPB and its sub-awardees to some unidentified criteria not set forth in the NOFO or the Uniform Guidance, FEMA's conduct is arbitrary and in violation of the regulations.

Moreover, under 2 C.F.R. § 200.208, an agency can impose additional conditions on a

9

grantee, but it must do so in compliance with the regulation, which provides:

> **§ 200.208 Specific conditions.**
> (a) Federal agencies are responsible for ensuring that specific Federal award conditions and performance expectations are consistent with the program design (See § 200.202 and § 200.301).
>
> (b) The Federal agency or pass-through entity may adjust specific conditions in the Federal award based on an analysis of the following factors:
>
> (1) Review of OMB-designated repositories of government-wide data (for example, SAM.gov) or review of its risk assessment (See § 200.206);
>
> (2) The recipient's or subrecipient's history of compliance with the terms and conditions of Federal awards;
>
> (3) The recipient's or subrecipient's ability to meet expected performance goals as described in § 200.211; or
>
> (4) A determination of whether a recipient or subrecipient has inadequate financial capability to perform the Federal award.

*Id.* Specific "conditions may include the following: (1) Requiring payments as reimbursements rather than advance payments; (2) Withholding authority to proceed to the next phase until receipt of evidence of acceptable performance; (3) Requiring additional or more detailed financial reports; (4) Requiring additional project monitoring; (5) Requiring the recipient or subrecipient to obtain technical or management assistance; or (6) Establishing additional prior approvals." *Id.*

However, "*[p]rior to imposing specific conditions*, the Federal agency ...**must** notify the recipient or subrecipient as to:

> (1) The nature of the specific condition(s);
>
> (2) The reason why the specific condition(s) is being imposed;
>
> (3) The nature of the action needed to remove the specific condition(s);
>
> (4) The time allowed for completing the actions; and
>
> (5) The method for requesting the Federal agency ... to reconsider imposing a

specific condition.

(e) Any specific conditions must be promptly removed once the conditions that prompted them have been satisfied.

*Id.* Here, FEMA has not complied with any aspect of § 200.208 in seeking to impose its unidentified "manual review" criteria on CPB.

Fourth, FEMA's intent to subject CPB to unidentified "manual review" criteria is also arbitrary because it disregards the substantial reliance interests of CPB and its sub-awardees. As this Court has noted, "[w]hen an agency suddenly changes course, it must recognize that longstanding policies may have engendered serious reliance interests that must be taken into account." *National Council of Nonprofits,* 2025 WL 597959, at 15. Here, CPB and its sub-awardees have operated in compliance with the NOFO and its terms and conditions along with the Uniform Guidance in incurring expenses and submitting them for reimbursement. If FEMA is now going to evaluate reimbursements under a different set of unidentified criteria against which it can reject a reimbursement request despite having previously known about and authorized the expenditure because it now considers the expense "wasteful," then its actions are de facto arbitrary and capricious given the extensive reliance by CPB and its awardees as set forth in the declarations.

## III. FEMA's Arguments Regarding Irreparable Harm Ignore The Undisputed Record Evidence And The Controlling Law

In addressing the issue of irreparable harm, FEMA once again raises arguments that have already been rejected by federal courts dealing with the consequences of agencies freezing and withholding appropriated funds for pre-existing grants and programs. Specifically, FEMA claims that CPB is not entitled to injunctive relief because its harm is monetary. FEMA ignores the record evidence and the pleadings in this case. CPB does not have a claim for monetary damages, nor does it seek an order directing FEMA to pay the $1.94 million in incurred, but unreimbursed,

expenses.  Rather, it simply seeks an order setting aside an unlawful agency action that has caused

and continues to cause significant irreparable harm.

As set forth in its motion and accompanying papers, CPB's irreparable harm is multi-fold

and based on harm that is well-established as constituting irreparable harm.  These include:

1) FEMA's actions frustrate CPB's ability to accomplish its primary purpose to ensure the proper procurement of, and payment for, critical infrastructure for the national emergency alert system under the NGWS Grant. *See League of Women Voters of United States v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) (As a matter of law, "obstacles [that] unquestionably make it more difficult for [a plaintiff] to accomplish [its] primary mission … provide[s] injury for purposes [of] … irreparable harm." ); *Nat'l Institutes of Health*, 2025 WL 702163 at *30 ("For essentially all of the Plaintiff institutions, there are myriad other immediate consequences that will make it harder to fulfill their purpose…. These consequences include the **degradation of vital infrastructure, the loss of imperative staff** necessary for research to be conducted") (emphasis added);

2) FEMA's conduct creates a risk of irreparable harm by endangering the safety and lives of citizens who rely on the emergency alert system.  FEMA and DHS have repeatedly publicly conceded that effective and timely "[e]mergency communications are critical to the Nation's ability to respond to devastating natural disasters, terrorist threats, and other emergency events, incidents, and routine activities affecting our communities every day" and indeed, the communications are "life-saving."  *See* Mintz Decl. at ¶ 8; *Trump*, 2025 WL 715621, at *14; *Nat'l Institutes of Health*, 2025 WL 702163 at *30 (recognizing that negative impact on public health and safety, "the degradation of infrastructure" constituted irreparable harm favoring the issuance of injunctive relief);

3) FEMA's continued withholding of the NGWS Grant funds will irreparably harm CPB's sub-awardees as FEMA's conduct is creating ongoing liabilities for equipment that has been purchased by the sub-awardees that **cannot** be paid with general funds.  *Trump*, 2025 WL 715621, at *13 ("[W]hen money is obligated and therefore expected (particularly money that has been spent and reimbursement is sought) and is not paid as promised, harm follows—debt is incurred, debt is unpaid, essential health and safety services stop[.]").

4) CPB has hired employees and a consulting firm for the specific purpose of assisting it and the sub-grantees in implementing and administering the NGWS Grant.  Without the NGWS Grant funds, it is statutorily prohibited from paying those employees and that consulting firm out of general funds.  *See* 47 U.S.C. § 396(k).  If the situation is not immediately remedied, those employees will have to be furloughed, with no assurance that those employees will be available when and if access to the NGWS Grant funds are restored.  *See* Mintz Decl. at ¶ 38; *Trump*, 2025 WL 715621, at *14 ("Even a temporary pause in funding could require the

University to shutter or reduce programs…and to furlough and/or lay off employees"); *Nat'l Institutes of Health*, 2025 WL 702163 at \*32 ("[T]he potential loss of human capital and talent to virtually every Plaintiff poses yet another harm incapable of run-of-the-mill legal relief"); *Nat'l Council of Nonprofits*, 2025 WL 597959 at \*6 and 10 (D. D.C. Feb. 25, 2025) (detailing organizations furloughing or laying off employees in response to funding freeze).

5) FEMA's hold on CPB's access to the appropriated NGWS Grant funds has already damaged CPB's reputation. *AIDS Vaccine Advocacy Coalition*, 2025 WL 752378, \*19, fn. 19 (finding funding freeze damaged goodwill and reputation where plaintiffs had to "***violate contractual duties by deferring payments to suppliers…,[there were] disruptions to relationships with longstanding partners whose trust had been cultivated over decades***…and having to go back on previous assurances made to clients and partners in reliance on the agreements that have now been canceled") (emphasis added); *Nat'l Institutes of Health*, 2025 WL 702163 at \*31 (finding reputational harm caused by funding freeze undermined trust in plaintiffs who had to cut back or discontinue programs or clinical trials); *Patriot, Inc. v. U.S. Dep't of Hous. & Urb. Dev.,* 963 F. Supp. 1, 5 (D.D.C. 1997) (holding that damage to reputation and goodwill with partners in the industry was an irreparable harm).

In addition to ignoring the record evidence, FEMA ignores the controlling law holding that injunctive relief that may result in the payment of money does not transform the requested relief into money damages. *See Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) (in case concerning agency's refusal to reimburse the plaintiff, Court explaining that its cases "have long recognized" that "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.' "). As the court recognized in a similar case where the plaintiffs sought an injunction where the government had frozen their access to appropriated funds:

Plaintiffs are not seeking compensation for their losses due to the failure to pay them, which, as in any contract case, could be far greater than the amount withheld pursuant to the agency policy; Plaintiffs seek only invalidation of the policy, including the withholding of payment that flowed from it.

*AIDS Vaccine Advocacy Coalition v. United States Department of State*, 2025 WL 752378, \*8 (D. D.C. March 10, 2025).

FEMA also takes the genuinely eyebrow-raising position that because CPB waited approximately three weeks before filing suit, it should be barred equitable relief. FEMA conveniently ignores the fact that the "delay" was due to *FEMA* failing to respond in any way to the letter CPB immediately sent on February 19, 2025 seeking information that would explain why FEMA had shut down the PARS portal and precluded CPB from even submitting its requests for reimbursement. FEMA also ignores that it changed the operative facts by issuing its general, non-grant specific, notice on February 28, 2025 to all FEMA grantees that had to be understood and taken into account. FEMA also ignores that during this time our federal courts were dealing with a plethora of cases, including those against FEMA, arising from the multi-agency freezing of federal funds and the resulting national chaos. Three weeks to prepare a complaint, gather affidavits, and file motion papers is hardly undue delay, particularly when FEMA itself was being less than transparent as to what it was doing as it related to the NGWS Grant and why it was doing it. *See Capitol Hill Baptist Church v. Bowser*, 496 F. Supp. 3d 284, 302 (D.D.C. 2020) (granting preliminary relief sought after six-month delay; "Church was not twiddling its thumbs during that period").

**IV.    FEMA's Argument That CPB's Proposed Injunctive Relief Would "Bind The Agency To Reimburse Plaintiff Without Limitation" Is Untethered To The Actual Requested Grant-Specific Relief**

In its opposition brief, FEMA makes the untenable contention that: "[i]f granted, Plaintiff's relief would essentially bind the Agency to reimburse Plaintiff without limitation, restricting the Agency's ability to assess whether a reimbursement request was proper under the terms of the award of the grant and to take any future actions to protect the public fisc *or to ensure the expenditure of funds is in the best interests of the United States*." (Opp. at p.9) (emphasis added). CPB's requested relief would do not such thing. CPB has merely requested that the status quo ante be reinstated—allow CPB to submit its reimbursement requests.

As a threshold matter, the fact that FEMA wants the ability to reject reimbursement requests under the NGWS Grant when it deems such expenditures to be "not in the best interest of the United States" is a telling admission of FEMA's intent to arbitrarily block, freeze, or otherwise prevent the spending of appropriated funds.  On this point, Congress has already determined year after year that the spending of the NGWS Grant funds is in the best interests of the public - - appropriating funds for NGWS grants for 2023, 2024, and most recently in the current proposed budget.  It is not FEMA's role to determine whether NGWS grant expenditures are "in the best interest of the United States."  Indeed, such a comment underscores the necessity of the actual relief that CPB seeks: (1) an injunction requiring FEMA to actually make PARS functional again to submit reimbursement requests; and (2) timely review those reimbursement requests against the known and identified standards sets forth in the NOLO and the Uniform Guidance, not against under some unknown and arbitrary criteria for whether the submission "promotes fraud, waste and abuse" or, in FEMA's judgement is "not in the best interests of the United States."

In addition, FEMA's argument that CPB's requested relief would "restrict[] the Agency's ability to assess whether a reimbursement request was proper" is untethered to the reality of what has occurred over the last three years in terms of FEMA's direct involvement every step of the way in terms of the equipment being purchased, by which sub-awardees, for what sites, and at what cost.  Indeed, CPB has brought a grant-specific lawsuit dealing with only the 2022 NGWS Grant.  The universe of sub-awardees and the universe of incurred expenditures has been and continues to be well-known to FEMA.  Yet, FEMA -- even now -- tellingly fails provide this Court with any affidavit laying out a grant-specific objection to any NGWS expense.  This is because it has been intimately involved in the process of CPB and sub-awardees incurring expenses for its benefit.

The notion that CPB is somehow going to submit reimbursement for something other than the specific equipment purchased by sub-awardees, CPB grant-related staff and consultant that

FEMA has known about for years is risible and tellingly unsupported by any FEMA official actually involved with the NGWS Grant. Indeed, it was precisely because CPB is the trusted Congressionally-created steward of public funds for public media that DHS and FEMA recognized that CPB was the *only* eligible applicant for the NGWS Grant.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff the Corporation for Public Broadcasting requests that the Court enter a temporary restraining order:

- directing FEMA to immediately remove the "hold" from its Payment and Reporting System ("PARS") so that reimbursement requests can be submitted by CPB;

- directing FEMA to promptly process those submitted reimbursement requests for payment within 30 days of submittal in accordance with the terms the NWGS Grant, the Uniform Guidance, and federal law;

- enjoining FEMA and its officers, employees, and agents from taking any steps to implement, apply, or enforce the "hold" on the disbursement of appropriated funds for the NGWS Grant.

16

Respectfully submitted,

By:  */s/ Jason W. McElroy*
Jason W. McElroy (D.C. Bar No. 502733)
Peter C. Nanov (D.C. Bar No. 230021)
SAUL EWING LLP
1919 Pennsylvania Avenue NW, Suite 550
Washington, D.C. 20006
Tel: (202) 295-6605
jason.mcelroy@saul.com
peter.nanov@saul.com

Jeffrey S. Robbins (Admitted *Pro Hac Vice*)
Joseph D. Lipchitz (Admitted *Pro Hac Vice*)
SAUL EWING LLP
131 Dartmouth St.
Suite 501
Boston, MA 02116
Tel:  (617) 912-0941
Email:  jeffrey.robbins@saul.com
            joseph.lipchitz@saul.com

***Counsel for The Corporation for Public Broadcasting***

Date:   March 16, 2025

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused one copy of the foregoing PLAINTIFF'S REPLY BRIEF IN

SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER, on all parties

and counsel of record via the Court's CM/ECF system, as well as via USPS First Class Mail to

the addresses listed below.

THE FEDERAL EMERGENCY
MANAGEMENT AGENCY,
    500 C Street, SW
    Washington, DC 20472

and

CAMERON HAMILTON, in his Official
Capacity as Senior Official Performing
the Duties of the FEMA Administrator,
    500 C Street, SW
    Washington, DC 20472

*/s/ Jason W. McElroy*