**EXHIBIT 8**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE CORPORATION FOR PUBLIC BROADCASTING,<br>    401 Ninth St., NW<br>    Washington, DC 20004<br><br>    Plaintiff,<br><br>v.<br><br>THE FEDERAL EMERGENCY MANAGEMENT AGENCY,<br>    500 C Street, SW<br>    Washington, DC 20472<br><br>and<br><br>CAMERON HAMILTON, in his Official Capacity as Senior Official Performing the Duties of the FEMA Administrator,<br>    500 C Street, SW<br>    Washington, DC 20472<br><br>    Defendants. | Case No. 1:25-cv-0740 (TJK) |

### DECLARATION OF EVAN SLAVITT

I, Evan Slavitt, do hereby state under oath as follows:

1. I am Senior Vice-President and General Counsel of the Corporation for Public Broadcasting ("CPB"). The CPB is a Congressionally-created nonprofit corporation established pursuant to the Public Broadcasting Act of 1967, 47 U.S.C. § 396 (the "Act"). As General Counsel, I am responsible for all legal affairs concerning CPB. I also serve on the Executive Team that interacts directly with Federal Emergency Management Agency ("FEMA") in connection with the

1

2022 Next Generation Warning System grant ("NGWS Grant") issued by Department of Homeland Security ("DHS") and FEMA as part of the government's efforts to modernize the national Emergency Alert System ("EAS").

2. Under the NGWS Grant, FEMA identified priority areas of the country that it wanted addressed immediately and CPB was directed to work with FEMA to focus on those priority areas in issuing sub-awards to public television and radio stations to procure equipment necessary to advance the Nation's public alert and warning system.

3. The NGWS Grant to CPB was made on a cost reimbursement basis, meaning that CPB is accruing liabilities for the costs of the CPB staff and consultant dedicated to the NGWS program and for costs incurred or expenditures made by the sub-awardees. So, pursuant to the terms of the NGWS Grant as well as the Uniform Guidance, 2 C.F.R. § 200, CPB expends funds by hiring staff to administer the NGWS Grant and make sub-awards to public television and radio stations across the country, which will, in turn, purchase the necessary equipment to enhance their EAS capability. After purchasing the equipment, those sub-awardees then submit reimbursement requests to CPB. To process those reimbursement requests, CPB accesses FEMA's Payment and Reporting System ("PARS").

4. Since the award of the NGWS Grant and at every stage of this process, CPB has kept FEMA fully informed of the status of the grant consultant's work and the sub-awards, explaining where the awards are in CPB's approvals process and requesting updates on FEMA's approvals process through bi-weekly meetings and other communications. By way of limited example, as part of the NGWS Grant, FEMA must undertake an Environmental Planning and Historic Preservation study ("EHP") as to each site. In order to complete EHP studies, as to each site, FEMA must know, among other things, precisely what equipment is planned to be purchased

for each site and the budget for each project and its cost. CPB provides the necessary EHP review information to FEMA before any equipment purchases are made. Indeed, sub-awardees cannot proceed until FEMA has an approved EHP study. Moreover, as part of this process, FEMA has established an approved equipment list for the NGWS Grant and sub-awardees must purchase the equipment off of this approved equipment list.

    5.    In addition, FEMA appointed a program manager to work closely with CPB on the NGWS Grant, Tony Robles, IPAWS NGWS Program Manager, under the direction of Manny Centeno, the IPAWS Director. Additionally, FEMA IPAWS engaged the consulting firm ArcAspicio to provide project management. Its consultants, David Stahlman and Samantha Uditsky, run bi-weekly project check-in meetings where project activities are reviewed and reported and requests for information are fulfilled by both FEMA and CPB. Since the inception of the NGWS Grant, CPB's NGWS team collaborates with the FEMA IPAWS team during biweekly meetings to discuss:

- the total grant amounts for the sub-awardees;
- the aggregate totals of subgrant awards in each stage of the grant management pipeline.
- the number of projects at each stage of approval;
- the costs being incurred against the budget;
- rate at which CPB is planning to draw down reimbursements; and
- how much of the funding has been approved and awarded.

    6.    In addition to this information, pursuant to the NGWS Grant and 2 C.F.R. § 200.328 (Financial Reporting) and § 200.329 (Monitoring and Reporting Program Performance), CPB provides FEMA with quarterly Federal Financial Reports (SF-425) and Performance Reports. Attached hereto as Exhibit A and Exhibit B are the latest Quarterly Performance Report and SF-425 provided to FEMA on or about January 30, 2025. In addition, CPB also provides monthly reports to FEMA. Attached hereto as Exhibit C is the monthly report for February 2025. As

3

detailed in these reports, they provide information about the specific expenditures made by each sub-awardee, what the expenses were for, the funding committed to each sub-awardee, the remaining funding available under each sub-award, the status of specialized equipment purchases, the total expended, and a summary of risks, issues or any areas of concerns. CPB's Quarterly Reports have always been approved by FEMA's consultants and its NGWS team.

7. FEMA has never informed CPB that there is any fraud, waste or abuse in the NGWS Grant program. Moreover, FEMA has not imposed any specific conditions on CPB as to the NGWS Grant, nor has it ever indicated that further specific conditions on CPB's administration of the NGWS Grant are in any way necessary. Moreover, neither Messrs. Robles or Centeno or the FEMA IPAWS team have ever indicated that CPB was in anything other than full compliance with the grant, nor did they ever suggest that CPB required additional monitoring or reporting or oversight, including as to the reimbursement of expenses. This is because CPB is in full compliance with the terms of the NGWS Grant.

8. Currently, the sub-awardees have incurred approximately $1.94M in out of pocket expenses for specialized equipment that has not yet been reimbursed. FEMA is well-aware of what these expenditures for each sub-awardee consists of and that these sub-awardees purchased the equipment from FEMA's approved equipment list. FEMA is equally aware of the salaries of staff being drawn against the NGWS Grant as well as the expense associated with CPB's consultant, which is an approved consultant under the NGW Grant. At no time, has anyone overseeing the NGWS Grant, including Messrs. Centeno and Robles or their team, ever indicated that they were unaware of any expenditure to be made, or that was made by either CPB or a sub-awardee.

### February 19 Message On PARS Reflecting Payment For Grant Was On "Hold"

9. As a matter of routine practice, and pursuant to the terms of the NGWS Grant as well as the Uniform Guidance, 2 C.F.R. § 200, CPB reimburses the sub-awardees by drawing for that reimbursement through FEMA's Payment and Reporting System ("PARS"). On February 19, 2025, CPB accessed PARS preparatory to submitting a reimbursement request incurred by the sub-awardees and CPB's staff costs associated with the NGWS Grant. However, it was unable to submit any reimbursement request because PARS indicated that funds were "on hold," effectively meaning that there were no funds currently available under the NGWS Grant. That was the state of the system before this lawsuit was filed and on Friday, March 14 and Saturday, March 15, and Sunday, March 16, 2025; namely that no reimbursement requests could be submitted through PARS.

10. It has now been 25 days since CPB initially attempted to access PARS to submit reimbursement requests and was unable to do so. In the absence of proper termination, the Uniform Guidance mandates prompt payment: "Payments for allowable costs must not be withheld at any time during the period of performance…" and must be paid within 30 days of the payment request. 2 C.F.R. § 200.305.

Signed under the pain and penalties of perjury this 16 day of March, 2025.

*Evan Slavitt*

Evan Slavitt, General Counsel