```
 1                 IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA
 2
                                    ---
 3
      CORPORATION FOR PUBLIC         )
 4    BROADCASTING,                  )
                                     )
 5                                   ) CIVIL NO.  25-0740
               Plaintiff,            )
 6                                   ) Monday, March 17, 2025
      v.                             )
 7                                   )
      FEDERAL EMERGENCY MANAGEMENT   )
 8    AGENCY,                        )
                                     )
 9                                   )
               Defendant.            )
10    _____)

11       TRANSCRIPT OF RULING ON TEMPORARY RESTRAINING ORDER

12             BEFORE THE HONORABLE TIMOTHY J. KELLY
                  UNITED STATES DISTRICT JUDGE
13                              ---
      APPEARANCES:       SAUL EWING LLP
14                       BY:  JOSEPH DOMINIC LIPCHITZ, ESQ.
                              PETER NANOV, ESQ.
15                       131 Dartmouth Street, Suite 501
                         Boston, MA 02116
16                       617-912-0916
                         Email: Joseph.lipchitz@saul.com
17                       Email: Peter.nanov@saul.com

18                       For the Plaintiff

19                       UNITED STATES ATTORNEY'S OFFICE
                         BY:  JOSEPH F. CARILLI, JR., ESQ.
20                       601 D Street, NW
                         Washington, DC 20001
21                       202-252-2525
                         Email: Joseph.carilli@usdoj.gov
22
                         For the Government
23                              ---

24    COURT REPORTER:    CHANDRA R. KEAN, RMR
                         Official Court Reporter
25                       333 Constitution Avenue, NW
                         Washington, DC 20001
```

**PROCEEDINGS**

(Court called to order at 2:02 p.m.)

DEPUTY COURTROOM CLERK: Civil matter 25-0740. Corporation for Public Broadcasting v. Federal Emergency Management Agency, et al.

Present for the plaintiff are Jason McElroy and Joseph Lipchitz, and present for the defendants is Joseph Carilli, Jr.

THE COURT: All right. Good afternoon to everyone. I appreciate everyone being here.

When I set this for a hearing today, I wasn't sure how fulsome an opportunity the government and the plaintiffs would have to be able to lay out the merits of the TRO. In this particular case, the plaintiff has even had an opportunity to reply, which is a little bit unusual in the TRO context.

So what I'm going to do -- and had I known I would be in this posture right now, I probably would have just had you all on the phone or on video. But I'm prepared to rule on everything you have submitted to me, and so I'm not going to hear any argument because I don't think it's necessary. I don't think it's necessary under the rules, and it's not required under the rules, and I don't think I need it to rule on the TRO request.

Anything about any of that before I proceed?

| | | |
|---|---|---|
| 14:04:22 | 1 | MR. LIPCHITZ: For the record, Joseph Lipchitz |
| 14:04:27 | 2 | for the Corporation for Public Broadcasting. |
| 14:04:30 | 3 | Just one procedural snafu. We had filed, as part |
| 14:04:34 | 4 | of our reply, the supplemental affidavit -- the |
| 14:04:39 | 5 | affidavit of Evan Slavitt. It appeared to us this |
| 14:04:41 | 6 | morning that somehow in the conversion from PDF to ECF |
| 14:04:47 | 7 | filing, it was garbled, optically garbled, so we |
| 14:04:53 | 8 | resubmitted one. It's not changed in any way, shape, or |
| 14:04:56 | 9 | form, but it should look like an affidavit. |
| 14:05:00 | 10 | THE COURT: I did see -- from the time I got to |
| 14:05:02 | 11 | it -- just to answer the question for you -- |
| 14:05:08 | 12 | Yeah, it doesn't appear that it was garbled. But |
| 14:05:17 | 13 | so anyway, I have it. I have both versions of it. |
| 14:05:22 | 14 | MR. LIPCHITZ: Thank you, Your Honor. |
| 14:05:23 | 15 | THE COURT: Anything from the government before |
| 14:05:24 | 16 | I proceed? |
| 14:05:26 | 17 | MR. CARILLI: Your Honor, good afternoon. |
| 14:05:31 | 18 | Joseph Carilli. |
| 14:05:31 | 19 | Just briefly, I wanted to update -- just because I |
| 14:05:33 | 20 | had more time to speak to the Agency today, and so I |
| 14:05:34 | 21 | would just reference the Court to the government's |
| 14:05:38 | 22 | declaration that was submitted in support of its |
| 14:05:42 | 23 | opposition in Paragraph 27, which is on Page 11 of the |
| 14:05:49 | 24 | declaration. |
| 14:05:50 | 25 | THE COURT: Let me just get to -- I have the |

| | | |
|---|---|---|
| 14:05:51 | 1 | paperwork here, but I don't have the declaration so I |
| 14:05:54 | 2 | want to pull it up before you proceed. |
| 14:06:02 | 3 | Got it. |
| 14:06:03 | 4 | MR. CARILLI: And so in there, there's |
| 14:06:05 | 5 | discussion about what is going on with the PAR Systems |
| 14:06:09 | 6 | and the inability to submit the reimbursement request. |
| 14:06:09 | 7 | The Agency indicated that it is going to take -- to me |
| 14:06:12 | 8 | earlier today -- that it will take longer than it says |
| 14:06:14 | 9 | here. I believe it says March 14th. They hope to have |
| 14:06:17 | 10 | the system remedied to be able to allow grantees to be |
| 14:06:22 | 11 | able to submit reimbursement. |
| 14:06:24 | 12 | They indicated that that is going to -- may be up |
| 14:06:25 | 13 | to a little bit more than a week to be able to get that |
| 14:06:28 | 14 | remedy in place in the computer system to be able to |
| 14:06:32 | 15 | submit those. |
| 14:06:33 | 16 | THE COURT: All right. Very well. I |
| 14:06:34 | 17 | appreciate you making that correction. |
| 14:06:37 | 18 | MR. CARILLI: Thank you. Excuse me, Your |
| 14:06:39 | 19 | Honor. |
| 14:06:43 | 20 | THE COURT: All right. Very well. |
| 14:06:43 | 21 | So I appreciate everything you've -- both parties |
| 14:06:46 | 22 | have submitted, but I am going to deny the motion |
| 14:06:51 | 23 | because, at this stage, CPB has not shown that it will |
| 14:06:56 | 24 | suffer any irreparable harm, and in particular, that it |
| 14:07:00 | 25 | would suffer any irreparable harm that would happen so |

```
14:07:04   1    soon that it would be remedied by a TRO, which, as all
14:07:09   2    of you know, can only last for 14 days.
14:07:12   3         So let me just lay out the law here.
14:07:17   4         A temporary restraining order is "an extraordinary
14:07:21   5    remedy that should be granted only when a party seeking
14:07:23   6    relief, by a clear showing, carries the burden of
14:07:27   7    persuasion."
14:07:28   8         That's Hulli v. Mayorkas, 549 F. Supp. 3d 95, 99.
14:07:38   9    That's a DDC case from 2021.
14:07:41  10         As with a preliminary injunction, a party seeking a
14:07:47  11    TRO must establish:
14:07:48  12         "One, that it is likely to succeed on the merits.
14:07:52  13         "Two, that it is likely to suffer irreparable harm
14:07:56  14    in the absence of preliminary relief.
14:07:58  15         "Three, that the balance of equities tips in its
14:08:01  16    favor; and
14:08:02  17         "Four, that an injunction is in the public
14:08:06  18    interest."
14:08:06  19         That's Aamer v. Obama, 742 F.3d 1023, 1038.  It's a
14:08:16  20    D.C. Circuit case from 2014.  And I've omitted a
14:08:20  21    citation there.
14:08:23  22         The Court also considers the underlying purpose of
14:08:27  23    a TRO, "Preserving the status quo" and preventing
14:08:34  24    irreparable harm often while proceedings for preliminary
14:08:40  25    or permanent injunctive relief are pending.
```

|          |    |                                                                            |
|----------|----|----------------------------------------------------------------------------|
| 14:08:43 | 1  | That's *AIDS Vaccine Advocacy Coalition v. United                          |
| 14:08:47 | 2  | States Department of State*, No. 25-5046, 2025, Westlaw,                   |
| 14:08:54 | 3  | 621396 at Page 1.  That's a D.C. Circuit case from                         |
| 14:09:00 | 4  | February 26 of 2025.                                                       |
| 14:09:05 | 5  | Thus, plaintiffs must show that they will suffer                           |
| 14:09:08 | 6  | irreparable harm that can be remedied by a TRO, in other                   |
| 14:09:11 | 7  | words, that will happen within 14 days.                                    |
| 14:09:13 | 8  | And I cite there *Doe v. OPM*, No. 25-CV-234 RDM, a                        |
| 14:09:23 | 9  | case before Judge Moss, 2025, Westlaw, 513268 at Page 7                    |
| 14:09:32 | 10 | and Note 4.  The date was February 17th of 2025, in                        |
| 14:09:40 | 11 | which Judge Moss held, "Plaintiffs have failed to                          |
| 14:09:44 | 12 | demonstrate that there is a significant risk that in                       |
| 14:09:47 | 13 | that case, their .gov email addresses will be stolen or                    |
| 14:09:52 | 14 | publicly disclosed in the next 14 days.                                    |
| 14:09:55 | 15 | So my analysis today begins and ends with                                  |
| 14:09:59 | 16 | irreparable harm, which is "a threshold requirement in                     |
| 14:10:01 | 17 | granting temporary injunctive relief."                                     |
| 14:10:05 | 18 | That's *Beattie v. Barnhart*, 663, F. Supp. 2d 5, 8,                       |
| 14:10:11 | 19 | a D.D.C. case from 2009.                                                   |
| 14:10:18 | 20 | "If a party fails to make a sufficient showing of                          |
| 14:10:21 | 21 | irreparable injury, a court may deny a motion for                          |
| 14:10:24 | 22 | injunctive relief."  That's the same *Beattie* case.                       |
| 14:10:30 | 23 | This Circuit "has set a high standard for                                  |
| 14:10:32 | 24 | irreparable injury."                                                       |
| 14:10:33 | 25 | That's *Chaplaincy of Full Gospel Churches v.*                             |

| | | |
|---|---|---|
| 14:10:37 | 1 | *England*, 454 F.3d 290, 297, a D.C. Circuit from 2006. |
| 14:10:46 | 2 | Not only must the injury "be both certain and |
| 14:10:51 | 3 | great," and "actual and not theoretical," but it must be |
| 14:11:01 | 4 | "beyond remediation." |
| 14:11:02 | 5 | And that's the *Chaplaincy* case.  Again, the key |
| 14:11:06 | 6 | word in this consideration, of course, is "irreparable." |
| 14:11:10 | 7 | And I don't think CPB has satisfied that high standard |
| 14:11:16 | 8 | on the record here. |
| 14:11:18 | 9 | So the plaintiff contends that it is suffering and |
| 14:11:20 | 10 | will continue to suffer irreparable harm in five ways. |
| 14:11:25 | 11 | That's ECF No. 4-1 at Pages 20 to 23. |
| 14:11:31 | 12 | Let me go through each of them and why I don't |
| 14:11:33 | 13 | think, again, on the record before me right now the |
| 14:11:38 | 14 | plaintiff has met their burden. |
| 14:11:40 | 15 | First C- -- I keep -- we have so many cases |
| 14:11:46 | 16 | involving the Customs and Border Protection that I keep |
| 14:11:49 | 17 | reversing the initials in your client's -- the initials |
| 14:11:54 | 18 | of your client. |
| 14:11:55 | 19 | First, CPB says that "FEMA has frustrated its |
| 14:12:03 | 20 | ability to accomplish its primary purpose to ensure the |
| 14:12:07 | 21 | proper procurement of and payment for critical |
| 14:12:09 | 22 | infrastructure for the national emergency alert system |
| 14:12:13 | 23 | under the Next Generation Warning System Grant." |
| 14:12:17 | 24 | Relying mainly on the D.C. Circuit's decision in |
| 14:12:22 | 25 | *League of Women Voters of the United States v.* Newby, |

14:12:25  1    838, F.3d 1 at Page 9.  It's a D.C. Circuit from 2016,
14:12:32  2    CPB asserts that "obstacles that unquestionably make it
14:12:37  3    more difficult for a plaintiff to accomplish its primary
14:12:41  4    mission provide injury for purposes of irreparable
14:12:44  5    harm."
14:12:44  6        And that's ECF No. 4-1 at 20 through 21.
14:12:51  7        But CPB's reliance on *League of Women Voters* in
14:12:56  8    this context is misplaced.  In that case, the D.C.
14:13:01  9    Circuit concluded that a change to the instructions on a
14:13:03  10   voter registration form would impair the plaintiff
14:13:07  11   organizations' efforts to register voters -- their core
14:13:12  12   mission -- and thus "provided injury for purposes both
14:13:16  13   of standing and irreparable harm."
14:13:18  14       That's the *League of Women Voters* case at Page 9.
14:13:21  15       But that's only half the equation, and in fact,
14:13:24  16   often the easier half to satisfy.  As *League of Women*
14:13:29  17   *Voters* makes clear, the injury must also be irreparable
14:13:33  18   in that preliminary relief is necessary to remediate
14:13:37  19   it.
14:13:37  20       The plaintiff organizations there cleared that bar
14:13:40  21   by alleging that the defendants had harmed their efforts
14:13:43  22   to register voters before an impending election in less
14:13:48  23   than two months.  Because "there could be no do-over and
14:13:53  24   no redress" after the voter registration deadlines, the
14:13:59  25   organizations' entries justified preliminary relief --

14:14:01  1    at least that's what the Circuit held in that case.
14:14:05  2         That element, however, is missing here.  So merely
14:14:09  3    invoking the label, "organizational injury," or injury
14:14:13  4    to its mission does not get CPB very far.
14:14:18  5         To be sure, CPB's inability to access the funds
14:14:24  6    made available under the NGWS grant somewhat frustrates
14:14:30  7    its "mission" of "updating and enhancing the country's
14:14:34  8    public emergency alert apparatus."
14:14:37  9         ECF No. 4-1 at 6, a mission it carries out by,
14:14:42  10   "supporting investments to improve the resilience and
14:14:44  11   security of public broadcasting networks and systems."
14:14:50  12        Again, that's ECF No. 4-1 at Page 9 and Page 13.
14:14:58  13        But CPB has not shown that this injury cannot be
14:15:01  14   remediated later absent a TRO.  That is, CPB has not
14:15:07  15   shown that it must access the NGWS Grant funds and
14:15:12  16   reimburse its sub-awardees now or else it simply can no
14:15:17  17   longer accomplish those objectives.
14:15:20  18        Now, just as importantly, the downstream potential
14:15:26  19   injuries that CPB mentions are far too speculative and
14:15:31  20   vague to qualify as irreparable harm, even assuming that
14:15:35  21   they are harms that would count for the purpose of its
14:15:38  22   motion, because in some ways they are best characterized
14:15:42  23   as potential injuries to third parties, not CPB itself.
14:15:49  24        And I'll cite *Cardinal Health*, *Inc. v. Holder*, 846
14:15:55  25   F. Supp. 2d 203 at 213, a D.D.C. case from 2012, for the

`14:16:02` 1    proposition that for preliminary relief, the plaintiff
`14:16:04` 2    must show irreparable harm to itself, not to third
`14:16:08` 3    parties.
`14:16:11` 4        CPB has not shown -- or even alleged -- that the
`14:16:14` 5    public broadcasting stations will shut down or that the
`14:16:18` 6    Emergency Alert System will stop working if its
`14:16:21` 7    sub-awardees are not reimbursed now.
`14:16:26` 8        Again, CPB has the burden of showing that it will
`14:16:29` 9    incur irreparable harm in the next 14 days, the standard
`14:16:33` 10   timeline -- the length of time a TRO can exist, and that
`14:16:38` 11   the harm cannot be remedied later.
`14:16:43` 12       Even after reading the set of briefing that the
`14:16:48` 13   parties have presented to me, it remains unclear what
`14:16:51` 14   difference it would really make for CPB's asserted
`14:16:55` 15   frustrated mission harm if I granted preliminary relief
`14:17:00` 16   today, or a week or two from now, or even a month or two
`14:17:05` 17   from now.
`14:17:06` 18       In short, CPB has failed to carry its burden
`14:17:09` 19   through this argument because it's not shown that
`14:17:12` 20   reimbursing its sub-awardees for improvements they made
`14:17:19` 21   to their emergency alert systems is a matter of "now or
`14:17:24` 22   never."
`14:17:24` 23       Second, CPB claims that "FEMA's conduct creates a
`14:17:31` 24   risk of irreparable harm by endangering the safety and
`14:17:35` 25   lives of citizens who rely on the Emergency Alert

1   System."
2   That's again, ECF No. 4-1 at Page 21.
3   Again, this is a claim of harm that is far too
4   speculative and vague to support a TRO.  It involves a
5   chain of potential -- in order to get to any potential
6   harm, it involves a chain of things that have to happen,
7   again, that make it far too speculative.
8   But moreover, characterized this way, it is clearly
9   potential harm to third parties that does not count for
10  purposes of its TRO request.  But to repeat, CPB has not
11  alleged, let alone shown, that the Emergency Alert
12  System will stop working or will malfunction in a way
13  that creates serious safety risks if the public
14  broadcasting stations are not immediately reimbursed for
15  the upgrades they made or if they cease making such
16  improvements for the time being.
17  Indeed, it appears that the improvements that are
18  so vital to the public emergency system -- the public
19  emergency alert system have already been made, and that
20  the sub-awardees are seeking "reimbursement for their
21  expenditures on the back end."
22  That's ECF No. 4-1 at 9, and as explained in the
23  Seifert declaration at Paragraph 12, explaining that
24  KBWR Public Radio Station "has expended $78,761 on
25  customized radio transmission equipment pursuant to the

14:19:25  1   subgrant, has paid the manufacturer for this equipment,
14:19:29  2   and has not yet been reimbursed.
14:19:32  3         And a similar declaration -- a similar example is
14:19:38  4   ECF No. 4-12, the Mollie Kabler declaration in
14:19:45  5   Paragraphs 23 to 24, in which she explains that "no
14:19:48  6   station has yet been reimbursed for emergency upgrades"
14:19:52  7   that have already been made.  And neither CPB nor any of
14:19:56  8   its sub-awardee declarants contends, again, that a
14:20:01  9   broadcasting station faces an imminent risk of shutdown
14:20:05  10  absent reimbursement.
14:20:10  11        Third, CPB asserts that FEMA's "withholding of the
14:20:14  12  NGWS Grant funds will irreparably harm CPB's
14:20:21  13  sub-awardees, as FEMA's conduct is creating ongoing
14:20:25  14  liabilities for equipment that has been purchased by the
14:20:29  15  sub-awardees."  That's ECF No. 4-1 at 22.
14:20:35  16        Again, this is harm to third parties, which does
14:20:38  17  not count for purposes of a motion for preliminary
14:20:42  18  relief brought by CPB.
14:20:46  19        In any event, such "economic harm does not
14:20:50  20  constitute irreparable injury," unless "monetary loss
14:20:56  21  threatens the very existence of a party's business" or
14:20:59  22  is "unrecoverable."
14:21:01  23        That's the *Cardinal Health* case again, 846 F. Supp.
14:21:07  24  2d at 211.  And none of CPB's declarants asserts that
14:21:12  25  either scenario will occur if the Court does not restore

```
14:21:16   1    CPB's access to the funds within 14 days.
14:21:21   2          Fourth, CPB contends that it "has nine employees
14:21:27   3    who are wholly or partly funded through the NGWS Grant,
14:21:33   4    as well as a consulting firm" that it pays using these
14:21:36   5    funds.  ECF No. 4-1 at Page 13.
14:21:41   6          Without the NGWS Grant funds, CPB contends, it will
14:21:48   7    "likely be furloughing or terminating such employees and
14:21:53   8    be in breach of contract with the consulting firm with
14:21:57   9    no assurance that those employees or the consulting firm
14:22:00  10    will be available if and when access to the NGWS Grant
14:22:07  11    funds are restored."
14:22:09  12          That is again ECF No. 4-1 at 14 and 22.
14:22:14  13          Again, in light of the very high burden that
14:22:19  14    irreparable harm is in this Circuit, I'm again
14:22:23  15    unconvinced.
14:22:28  16          As far as CPB is concerned, this, again, is the
14:22:34  17    type of -- this is the type of "economic loss" that
14:22:38  18    typically "does not, in and of itself, constitute
14:22:45  19    irreparable harm."
14:22:45  20          Indiana v. Haaland, No. 24-CV-1665, 2020 Westlaw
14:22:53  21    5213401 at Page 11.  It's a D.D.C. case from
14:22:58  22    December 24, 2024, again for the proposition that
14:23:02  23    economic loss typically does not constitute irreparable
          24    harm.
14:23:08  25          In any event, nothing suggests that irreparable
```

|          |    |                                                            |
|----------|----|------------------------------------------------------------|
| 14:23:11 | 1  | harm will befall CPB for this reason in the next           |
| 14:23:15 | 2  | 14 days.                                                   |
| 14:23:15 | 3  | Indeed, CPB's representation that there is, "no            |
| 14:23:19 | 4  | assurance" that the employees or the firm can be           |
| 14:23:24 | 5  | rehired, if furloughed, notably does not allege that       |
| 14:23:28 | 6  | such a scenario is likely.                                 |
| 14:23:30 | 7  | In other words, it doesn't allege that it is               |
| 14:23:34 | 8  | unlikely that these employees or this firm would not       |
| 14:23:38 | 9  | simply be able to be rehired.                              |
| 14:23:43 | 10 | Fifth, CPB argues that without emergency relief, it        |
| 14:23:46 | 11 | will suffer reputational harm.                             |
| 14:23:48 | 12 | This is ECF No. 4-1 at Page 23.                            |
| 14:23:54 | 13 | CPB has apparently "never had to issue any stop            |
| 14:23:58 | 14 | work order to stations or to other grantees," and "many    |
| 14:24:04 | 15 | stations and the public at large are greatly concerned     |
| 14:24:07 | 16 | about CPB's ability to reimburse the sub-awardees."        |
| 14:24:14 | 17 | Again, that's Page 23 of the plaintiff's initial           |
| 14:24:21 | 18 | memorandum in support of their motion, and as well as      |
| 14:24:25 | 19 | ECF No. 4-2, the Darryl Mintz declaration at               |
| 14:24:31 | 20 | Paragraph 28.                                              |
| 14:24:32 | 21 | To be sure, CPB is right that damage to goodwill           |
| 14:24:38 | 22 | may constitute irreparable injury under some               |
| 14:24:42 | 23 | circumstances, but, "as with all other forms of            |
| 14:24:47 | 24 | irreparable harm, the showing of reputational harm must    |
| 14:24:49 | 25 | be concrete and corroborated."                             |

```
14:24:51   1    That's the Cardinal Health case again that I
14:24:54   2    mentioned at Page 213.
14:24:58   3         CPB, however, has made no such concrete showing.
14:25:01   4    There is no evidence in the record that the public or
14:25:05   5    CPB's sub-awardees believe that CPB is responsible for
14:25:10   6    any payment pauses.  And, frankly, why would they?  If
14:25:15   7    anything, it is FEMA's reputation that may be being
14:25:19   8    tarnished.
14:25:21   9         The stop work order CPB issued to its sub-awardees
14:25:26  10    on February 19th, for example, made clear that "CPB does
14:25:31  11    not have access to funds," that it "has not received any
14:25:36  12    formal communication from FEMA," and that it was "in the
14:25:40  13    process of seeking clarification on this situation from"
14:25:45  14    the Agency.
14:25:48  15         ECF No. 4-7 at Page 2.
14:25:51  16         And neither of the two media articles CPB submitted
14:25:56  17    blame it -- that is CPB -- for its inability to
14:26:02  18    reimburse the sub-awardees.
14:26:05  19         See ECF 4-10 at Pages 14 through 18.
14:26:11  20         To the contrary, one states that, "grant money is
14:26:14  21    being withheld by the federal government."
14:26:18  22         That's at Page 14.
14:26:19  23         And the other explains that "grants have been
14:26:23  24    paused as part of a federal funding review."
14:26:28  25         That's Page 17.
```

|          |    |                                                                 |
|----------|----|-----------------------------------------------------------------|
| 14:26:31 | 1  | So the Court cannot conclude that there is a                   |
| 14:26:34 | 2  | likelihood that CPB will suffer reputational harm that          |
| 14:26:38 | 3  | qualifies as irreparable harm for the purposes of               |
| 14:26:43 | 4  | preliminary injunctive relief, and in this case                 |
| 14:26:47 | 5  | specifically, a TRO.                                            |
| 14:26:51 | 6  | So finally, I'll just add that CPB has cited                    |
| 14:26:56 | 7  | several recent District Court cases outside this                |
| 14:27:00 | 8  | jurisdiction for the proposition that it has shown              |
| 14:27:05 | 9  | irreparable harm here, in particular, one in the                |
| 14:27:08 | 10 | District of Massachusetts and another in the District of        |
| 14:27:14 | 11 | Rhode Island.                                                   |
| 14:27:15 | 12 | Obviously, those decisions are not binding on me.               |
| 14:27:18 | 13 | But from my review of those cases, they are                     |
| 14:27:23 | 14 | distinguishable from the situation here to some degree.         |
| 14:27:26 | 15 | And to the extent they are not distinguishable, I don't         |
| 14:27:28 | 16 | think the reasoning of those courts is consistent with          |
| 14:27:32 | 17 | the very high bar for irreparable harm that this Circuit        |
| 14:27:36 | 18 | requires.                                                       |
| 14:27:37 | 19 | So for all those reasons, I will find that CPB has              |
| 14:27:43 | 20 | not met its burden of showing that it will suffer               |
| 14:27:46 | 21 | imminent, irreparable harm here absent a TRO. And thus,         |
| 14:27:51 | 22 | I will deny the motion.                                         |
| 14:27:57 | 23 | It's nothing to say that I would deny -- a couple               |
| 14:28:03 | 24 | of things, let me just add.                                     |
| 14:28:06 | 25 | Obviously, this has nothing -- my ruling on the TRO             |

| | | |
|---|---|---|
| 14:28:12 | 1 | has nothing to do -- it goes without saying -- about |
| 14:28:18 | 2 | however this situation is being managed by FEMA is a |
| 14:28:23 | 3 | good idea, wise policy, anything like that, one way or |
| 14:28:28 | 4 | the other.  That's not my lane to decide. |
| 14:28:33 | 5 | And then secondly, it may well be that as things |
| 14:28:40 | 6 | progress, perhaps -- Mr. Carilli, as you mentioned -- |
| 14:28:43 | 7 | the facts on the ground shift in the government's favor |
| 14:28:47 | 8 | in some ways.  Perhaps they don't, I don't know.  But |
| 14:28:50 | 9 | this is obviously without prejudice to a motion for a |
| 14:28:57 | 10 | preliminary injunction, if that's indeed the course that |
| 14:29:00 | 11 | the plaintiffs want to take. |
| 14:29:03 | 12 | It may be that you all want to further discuss how |
| 14:29:09 | 13 | things will progress and whether the plaintiffs want to |
| 14:29:13 | 14 | go forward in that regard, but that's up to the |
| 14:29:18 | 15 | parties. |
| 14:29:19 | 16 | Any questions first from the plaintiffs, about my |
| 14:29:24 | 17 | ruling or how things -- well, about my ruling and |
| 14:29:30 | 18 | anything else about -- you want to mention about, since |
| 14:29:34 | 19 | you have me here, about how you may plan to proceed? |
| 14:29:44 | 20 | Again, sir, if you -- |
| 14:29:46 | 21 | MR. LIPCHITZ:  Sorry.  I think -- I don't have |
| 14:29:47 | 22 | any questions at this time as to your ruling; however, |
| 14:29:51 | 23 | it is likely to come back before Your Honor because we |
| 14:29:56 | 24 | continue to be deprived of access to the funding that |
| 14:30:02 | 25 | Congress appropriated, and it is having a series of |

```
14:30:10   1    collateral impacts not only on CPB but the sub-awardees.
14:30:15   2              THE COURT:  The case is going to be -- the case
14:30:16   3    is not going anywhere just because of this ruling,
14:30:19   4    obviously.
14:30:20   5       And if, you know -- and you can take -- after, if
14:30:30   6    you think appropriate, consulting with the government
14:30:33   7    about where things are headed, you all know -- you all
14:30:36   8    have been living this and I haven't.
14:30:39   9       So I'll just say that sometimes it makes sense to
14:30:43  10    consult with the government about what is likely to
14:30:45  11    come.  Of course, government counsel may not know -- may
14:30:49  12    not have all the information you would like, even if --
14:30:53  13    period.
14:30:54  14       But I hear what you're saying, and that's why I
14:30:57  15    emphasize to you today that this is not -- this is
14:31:02  16    without prejudice for you to pursue a PI, if you think
14:31:08  17    that's appropriate.
14:31:10  18              MR. LIPCHITZ:  Thank you, Your Honor.
14:31:11  19              THE COURT:  Absolutely.  Mr. Carilli, anything
14:31:14  20    you want to -- anything about the ruling you want to ask
14:31:17  21    about or just anything else?  You have me here, so I'm
14:31:22  22    happy to answer any questions or hear anything you want
14:31:26  23    to put on the record or raise?
14:31:29  24              MR. CARILLI:  Nothing further from the
14:31:31  25    government.  Thank you for your time this afternoon,
```

| | | |
|---|---|---|
| 14:31:33 | 1 | Your Honor. |
| 14:31:34 | 2 | THE COURT: Very well. |
| 14:31:35 | 3 | I'll just say this. It would be helpful -- |
| 14:31:38 | 4 | Let's put it this way: If the plaintiffs do decide |
| 14:31:42 | 5 | to pursue a PI, I think it would be helpful -- what I |
| 14:31:48 | 6 | would probably do once one was filed is -- I'll just |
| 14:31:53 | 7 | tell you all right now. |
| 14:31:55 | 8 | What I would typically do is get you all on the |
| 14:31:58 | 9 | phone relatively quickly to talk about a schedule -- a |
| 14:32:02 | 10 | briefing schedule and a hearing schedule. So that's |
| 14:32:06 | 11 | something that if you all can -- if that is where this |
| 14:32:11 | 12 | is all headed -- confer about after that -- after such a |
| 14:32:15 | 13 | motion is filed, then I'm happy to -- then when I get |
| 14:32:19 | 14 | you all on the phone, we'll be one step ahead in terms |
| 14:32:23 | 15 | of trying to plan the way forward. |
| 14:32:25 | 16 | MR. LIPCHITZ: Understood, Your Honor. |
| 14:32:26 | 17 | THE COURT: All right. Very well. |
| 14:32:27 | 18 | If there's nothing further, then, the parties are |
| 14:32:30 | 19 | dismissed. |
| 14:32:41 | 20 | (Court adjourned, 2:32 p.m.) |
| | 21 | ---- |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

CERTIFICATE

I, Chandra Kean, RMR, certify that the foregoing is a correct transcription from the record of proceedings in the above-titled matter.

_____    March 17, 2025
         Chandra Kean, RMR                DATE