UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CORPORATION FOR PUBLIC BROADCASTING,<br><br>        Plaintiff,<br><br>    v.<br><br>FEDERAL EMERGENCY MANAGEMENT AGENCY, et al.<br><br>        Defendants. | Civil Action No. 25-0740 (TJK) |

**DEFENDANTS' MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................I

TABLE OF AUTHORITIES ........................................................................................II

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND........................................................................................ 2

STANDARD OF REVIEW .......................................................................................... 5

ARGUMENT ............................................................................................................... 5

      I.      Plaintiff Fails to Demonstrate a Likelihood of Success on the Merits. ................. 5

          A.   Plaintiff Does Not Allege Any Final Agency Action...................................... 6

          B.   The Agency's Action as Alleged in the Complaint Is Permissible. ................ 7

          C.   Plaintiff's Preliminary Injunction Motion Is Divorced from the Complaint... 8

      II.     Plaintiff Cannot Establish a Likelihood of Immediate Irreparable Harm............. 13

      III.    The Balance of Harms and the Public Interest Weigh Against Relief................. 19

      IV.    The Court Should Not Grant Equitable Relief.................................................... 21

      V.     Any Injunction Should Require Plaintiff to Post Security................................... 22

CONCLUSION........................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Abdullah v. Obama,*
   753 F.3d 193 (D.C. Cir. 2014) ................................................................. 5

*Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of the U.S.,*
   840 F. Supp. 2d 327 (D.D.C. 2012) ....................................................... 14

*Al-Tamimi v. Adelson,*
   916 F.3d 1 (D.C. Cir. 2019) ............................................................... 11, 20

*Alpine Sec. Corp. v. FINRA,*
   121 F.4th 1314 (D.C. Cir. 2024) ............................................................. 5

*Am. Bar Ass'n v. Dep't of Just.,*
   Civ. A. No. 25-1263 (CRC), 2025 WL 1388891 (D.D.C. May 14, 2025) ............. 9

*Arpaio v. Obama,*
   797 F.3d 11 (D.C. Cir. 2015) ................................................................ 15

*Bennett v. Spear,*
   520 U.S. 154 (1997) ............................................................................ 6

*Califano v. Yamasaki,*
   442 U.S. 682 (1979) ........................................................................... 21

*Cardinal Health, Inc. v. Holder,*
   846 F. Supp. 2d 203 (D.D.C. 2012) ....................................................... 15

*CityFed Fin. Corp. v. Off. of Thrift Superv.,*
   58 F.3d 738 (D.C. Cir. 1995) ................................................................ 13

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ........................................................................... 15

*D.A.M. v. Barr,*
   474 F. Supp. 3d 45 (D.D.C. 2020) .......................................................... 5

*De Beers Consol. Mines v. United States,*
   325 U.S. 212 (1945) ...................................................................... 10, 21

*Dep't of Educ. v. California*
   145 S. Ct. 966 (2025).................................................................. 9, 10, 22

*Devose v. Herrington,*
   42 F.3d 470 (8th Cir. 1994) ................................................................. 10

*Dickson v. Sec'y of Def.,*
   68 F.3d 1396 (D.C. Cir. 1995) ............................................................... 6

*Dorfmann v. Boozer*,
    414 F.2d 1168 (D.C. Cir. 1969) ............................................................. 5

*DSE, Inc. v. United States*,
    169 F.3d 21 (D.C. Cir. 1999) ............................................................... 22

*Farris v. Rice*,
    453 F. Supp. 2d 76 (D.D.C. 2006) ......................................................... 13

*Fund for Animals v. Frizzell*,
    530 F.2d 982 (D.C. Cir. 1975) ............................................................. 14

*Hardway v. CIA*,
    No. 20-5172, 2021 WL 2525722 (D.C. Cir. May 17, 2021) .......................... 11, 20

*Henke v. Dep't of Interior*,
    842 F. Supp. 2d 54 (D.D.C. 2012) ......................................................... 13

*In re Microsoft Corp. Antitrust Litig*,
    333 F.3d 517 (4th Cir. 2003) .............................................................. 21

*Kaimowitz v. Orlando*,
    122 F.3d 41 (11th Cir. 1997) (per curiam) ............................................. 10

*League of Women Voters v. Newby*,
    Civ. A. No. 16-0236 (RJL), 2016 WL 8808743 (D.D.C. Feb. 23, 2016) ............. 13

*Make the Road N.Y. v. Wolf*,
    962 F.3d 612 (D.C. Cir. 2020) .............................................................. 5

*Maryland v. King*,
    567 U.S. 1301 (2012) ....................................................................... 19

*Mdewakanton Sioux Indians of Minn.*,
    255 F. Supp. 3d 48 (D.D.C. 2017) ......................................................... 13

*Miller v. Lehman*,
    801 F.2d 492 (D.C. Cir. 1986) .............................................................. 6

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) .......................................................................... 6

*N.Y. Times Co. v. Def. Health Agency*,
    Civ. A. No. 21-0566 (BAH), 2021 WL 1614817 (D.D.C. Apr. 25, 2021) ........... 10

*New York v. Trump*,
    769 F. Supp. 3d 119 (D.R.I. Mar. 6, 2025) .............................................. 3

*New York v. Trump*,
    Civ. A. No. 25-0039, 2025 U.S. Dist. LEXIS 65285 (D.R.I. Apr. 4, 2025) .......... 3

*New York v. Trump,*
   Civ. A. No. 25-0039, 2025 U.S. Dist. LEXIS 71893 (D.R.I. Apr. 14, 2025) ........................ 3

*Newdow v. Bush,*
   355 F. Supp. 2d 265 (D.D.C. 2005) ...................................................................... 14

*Norton v. S. Utah Wilderness All.,*
   542 U.S. 55 (2004) ......................................................................................... 21

*Omega World Travel v. TWA,*
   111 F.3d 14 (4th Cir. 1997) .............................................................................. 10

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.,*
   810 F.3d 631 (9th Cir. 2015) ........................................................................ 10, 21

*Palisades Gen. Hosp. v. Leavitt,*
   426 F.3d 400 (D.C. Cir. 2005) ........................................................................... 21

*PPG Indus., Inc. v. United States,*
   52 F.3d 363 (D.C. Cir. 1995) ............................................................................ 21

*Pub. Citizen Health Rsch. Grp. v. Acosta,*
   363 F. Supp. 3d 1 (D.D.C. 2018) ....................................................................... 14

*Sampson v. Murray,*
   415 U.S. 61 (1974) ......................................................................................... 13

*Spadone v. McHugh,*
   842 F. Supp. 2d 295 (D.D.C. 2012) .................................................................... 14

*Steele v. United States,*
   Civ. A. No. 14-1523 (RCL), 2020 WL 7123100 (D.D.C. Dec. 4, 2020) ........................... 10

*Univ. of Cal. Student Ass'n v. Carter,*
   Civ. A. No. 25-0354 (RDM), 2025 WL 542586 (D.D.C. Feb. 17, 2025) ............................. 5

*Weinberger v. Romero-Barcelo,*
   456 U.S. 305 (1982) ....................................................................................... 19

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) .......................................................................................... 13

**Statutes**

5 U.S.C. § 704 ................................................................................................. 6

5 U.S.C. § 706 ............................................................................................ 5, 21

**Rules**

Fed. R. Civ. P. 25 ............................................................................................ 1

Fed. R. Civ. P. 65 ................................................................................................ 22, 23

**Regulations and Executive Orders**

2 C.F.R. Part 200 ................................................................................................... 8

2 C.F.R. § 200.300 ............................................................................ 7, 8, 9, 12, 19

2 C.F.R. § 200.339 ......................................................................................... 12, 19

2 C.F.R. § 200.340 ..................................................................................... 12, 19, 20

2 C.F.R. § 200.341 ............................................................................................... 12

2 C.F.R. § 200.342 ..................................................................................... 12, 20

31 C.F.R. Part 205 ................................................................................................. 8

Exec. Ord. No. 14290, 90 Fed. Reg. 19415 (May 1, 2025) .................................. 4, 5

Defendants, the Federal Emergency Management Agency ("FEMA" or "Agency") and David Richardson, in his official capacity as Senior Official Performing the Duties of FEMA Administrator,[1] by and through the undersigned counsel, respectfully file this opposition to Plaintiff's motion for preliminary injunction (ECF No. 31). For the reasons discussed below, the Court should deny Plaintiff's motion.

## INTRODUCTION

As was anticipated at the prior hearing on Plaintiff's denied motion for a temporary restraining order, *see* Hrg. Tr. (ECF No. 17) at 17:5–8, the ground has shifted in this action considerably since Plaintiff Corporation for Public Broadcasting ("CPB") filed the Complaint, *see generally* Declaration of Thomas Breslin ("Breslin Decl.," attached), but the Complaint remains the same. Plaintiff has brought a one-count complaint that asserts that a hold that the Agency formerly placed on Plaintiff's ability to draw down on a grant violates the Administrative Procedure Act ("APA"). *See* Compl. (ECF No. 1) ¶¶ 63–75. Plaintiff alleges that the Agency formerly withheld funding for the grant related to the Next Generation Warning System ("NGWS"). As Plaintiff acknowledges, however, the Agency is presently taking no such action. *See* Pl.'s Prelim. Inj. Mot. (ECF No. 31) at 3 ("Now, after setting a briefing and hearing schedule for this preliminary injunction motion, FEMA has once more changed its position, toggling the reimbursement submission portal to re-open[.]"). Indeed, Plaintiff presently faces no impediment to drawing down funds. *See* Breslin Decl. ¶ 11 ("Plaintiff continues to have the ability to draw down funds for their NGWS grant program awards."). Plaintiff's motion for the extraordinary relief of a preliminary injunction should be denied.

---

[1]    Pursuant to Federal Rule of Civil Procedure 25(d), David Richardson is automatically substituted as defendant for his predecessor in office.

First, Plaintiff fails to demonstrate a likelihood of success on the merits because: (1) Plaintiff does not identify a final agency action; (2) the Agency has not acted contrary to law; and (3) the relief sought through the preliminary injunction motion is not the relief requested in the Complaint, and Plaintiff seeks to expand the Complaint through its motion.  Second, Plaintiff fails to establish irreparable harm because: (1) it currently faces no impediment to drawing down funds; (2) its alleged harms are monetary and therefore are by definition reparable at law, and (3) as Defendants urged when they opposed Plaintiff's delayed motion for temporary restraining order, *see* Defs.' TRO Opp'n (ECF No. 14) at 5, 10–11, Plaintiff waited to bring its demand for extraordinary relief.  Third, the balance of harms and the public interest weigh in favor of the Agency's ability to protect the integrity of government funding programs consistent with its constitutional and statutory authorities.

Accordingly, for the reasons discussed below, the Court should deny Plaintiff's demand for extraordinary relief.

## FACTUAL BACKGROUND

In 2022, the Department of Homeland Security ("Department") awarded Plaintiff a grant for the NGWS.  Compl. (ECF No. 1) ¶ 23.  The grant is on a cost reimbursement basis.  *Id*. Plaintiff seeks reimbursement through the Agency's Payment and Reporting System ("PARS").  *Id.* ¶ 25.

On January 28, 2025, the Secretary of Homeland Security issued a directive entitled "Direction on Grants to Non-governmental Organizations."  Breslin Decl. ¶ 5.  Pursuant to that directive, on February 10, 2025, the Agency began implementation of a process for the manual review of requests for payment.  Decl. of Cameron Hamilton ("Hamilton Decl.," ECF No. 14-1) ¶ 4.  In order to permit a manual review, the Agency placed a "hold toggle" in PARS, effective the following day.  *Id*. ¶¶ 4, 6; *see also* Breslin Decl. ¶ 6.  The "hold" was not a freeze on the

funds. Cameron Decl. ¶ 6. Rather, the "hold" allowed for the Agency to manually review requests prior to payment. *Id*. ¶ 7; *see also* Breslin Decl. ¶ 6 ("FEMA paused funding for all of its grants programs on February 11, 2025 and began to institute a manual review process under its inherent authority to monitor awards; review its grant records and expenditures; and ensure payments to recipients are used only for allowable, allocable, and reasonable costs under the terms and conditions of the grant award before making payment to the grant recipient."). As such, before releasing funds for reimbursement paid to its grant recipients, the Agency would review grant projects, activities, and source documentation. Hamilton Decl. ¶ 9.

On March 6, 2025, the U.S. District Court for the District of Rhode Island issued a preliminary injunction enjoining FEMA and other agencies from pausing, freezing, blocking, canceling, suspending, terminating, or otherwise impeding the disbursement of appropriated federal funds to the named plaintiffs in that lawsuit. *See generally New York v. Trump*, 769 F. Supp. 3d 119 (D.R.I. Mar. 6, 2025). On April 4, 2025, the court ordered FEMA to cease the manual review process implemented per the Secretary's January 28 directive. *See generally New York v. Trump*, Civ. A. No. 25-0039, 2025 U.S. Dist. LEXIS 65285 (D.R.I. Apr. 4, 2025). From April 7, 2025, to April 14, 2025, the court stayed this order. *See New York v. Trump*, Civ. A. No. 25-0039, 2025 U.S. Dist. LEXIS 71893, at *19 (D.R.I. Apr. 14, 2025).

To comply with the preliminary injunction, FEMA resumed allowing grant recipients, including Plaintiff, to draw down grant funds as they had prior to the manual review process. Breslin Decl. ¶ 6. On May 1, 2025, however, the President issued Executive Order 14290, entitled Ending Taxpayer Subsidization of Biased Media. Breslin Decl. ¶ 8. The purpose section of that Executive Order notes that "[u]nlike in 1967, when the CPB was established, today the media landscape is filled with abundant, diverse, and innovative news options. Government funding of

3

news media in this environment is not only outdated and unnecessary but corrosive to the appearance of journalistic independence." Exec. Ord. No. 14290, § 1, 90 Fed. Reg. 19415 (May 1, 2025). The Executive Order further notes that "National Public Radio (NPR) and the Public Broadcasting Service (PBS) receive taxpayer funds through the Corporation for Public Broadcasting," *id.* § 1, and it directs the heads of all agencies to "identify and terminate, to the maximum extent consistent with applicable law, any direct or indirect funding of NPR and PBS," *id.* § 3(a).

In response to that Executive Order, the Agency began a policy review of the NGWS grant program "because the program is designed for the Corporation for Public Broadcasting to receive the grant award and issue subgrants to public broadcasting entities that are National Public Radio and Public Broadcasting Service affiliated stations." Breslin Decl. ¶ 9. "On May 8, 2025, as a precaution, while FEMA was conducting the review to ensure compliance with the Biased Media [Executive Order], FEMA turned off Plaintiff's ability to draw down NGWS funds in FEMA GO." *Id.* Meanwhile, the Agency "continues to review the NGWS grant program to ensure that the program's design effectively serves its statutory purpose, program goals, and agency priorities." *Id.* ¶ 10.

That review remains ongoing today. *Id.* ¶ 12. "At this time, FEMA has not made a final determination whether the NGWS grant awards to Plaintiff are effectuating program goals or agency priorities." *Id.* With the review continuing to take time as the Agency ensures faithful compliance with the law, "[o]n June 6, 2025, FEMA restored Plaintiff's [ ] access and ability to draw down funds under its awards through FEMA GO." *Id.* ¶ 11. Thus, "Plaintiff continues to have the ability to draw down funds for their NGWS grant program awards." *Id.* A final decision

as to what additional action is necessary with respect to Plaintiff's NGWS grants, if any, will be made in the future, but no final decision has been made as of today. *Id.* ¶ 12.

## STANDARD OF REVIEW

Injunctive relief, whether styled as a temporary restraining order or a preliminary injunction, "is an extraordinary remedy and should be granted sparingly." *D.A.M. v. Barr*, 474 F. Supp. 3d 45, 55 (D.D.C. 2020) (TRO); *see also Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969) (same for preliminary injunction). The motions are "analyzed using the same factors" and "may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Univ. of Cal. Student Ass'n v. Carter*, Civ. A. No. 25-0354 (RDM), 2025 WL 542586, at *4 (D.D.C. Feb. 17, 2025) (cleaned up). A party seeking a preliminary injunction or TRO thus "must show that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) the issuance of a preliminary injunction is in the public interest." *Id.* (quoting *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1324 (D.C. Cir. 2024)). "[T]he movant has the burden to show that all four factors, taken together, weigh in favor of the injunction." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (citation omitted). And the requirement that a movant establish a likelihood of success on the merits includes the burden of "demonstrat[ing] a likelihood of success in establishing" a court's jurisdiction. *Make the Road N.Y. v. Wolf*, 962 F.3d 612, 623 (D.C. Cir. 2020).

## ARGUMENT

I.    **Plaintiff Fails to Demonstrate a Likelihood of Success on the Merits.**

The APA permits a reviewing court to set aside a final agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "[T]he scope of review under the arbitrary and capricious standard is narrow and a

court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Under the APA standard of review, an agency's decision need not be "a model of analytic precision to survive a challenge." *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995). It is sufficient if an agency's explanation of its decision contains "a rational connection between the facts found and the choice made." *Motor Vehicle*, 463 U.S. at 43. In addition, "if the necessary articulation of basis for administrative action can be discerned by reference to clearly relevant sources other than a formal statement of reasons, [the court] will make the reference." *Miller v. Lehman*, 801 F.2d 492, 497 (D.C. Cir. 1986) (internal quotation marks omitted).

## A.    Plaintiff Does Not Allege Any Final Agency Action.

Agency action must be "final" to be reviewable under the APA. 5 U.S.C. § 704. Agency action is final only if (1) it marks "the consummation of the agency's decisionmaking process" and (2) is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up).

Plaintiff fails to identify any final agency action. The gravamen of Plaintiff's argument in the Complaint was that the Agency was withholding payments. *See* Compl. ¶ 59 ("CPB is challenging a specific action of withholding NGWS Grant funds."). But the "hold" Plaintiff complained about was not a withholding, a pause, or a freeze. Hamilton Decl. ¶¶ 6–8. The "hold" was a mere notation in PARS that before disbursing funds, the Agency is conducting a manual review of each request. *Id.* ¶ 9.

But that issue aside, that is no longer even the issue in Plaintiff's preliminary injunction motion because that issue has indisputably been resolved. *See* Pl.'s Prelim. Inj. Mot. (ECF No. 31) at 3 ("Now, after setting a briefing and hearing schedule for this preliminary injunction motion, FEMA has once more changed its position, toggling the reimbursement submission portal

to re-open[.]"); *see also* Breslin Decl. ¶ 11 ("As of the date of this Declaration, Plaintiff continues to have the ability to draw down funds for their NGWS grant program awards."). Plaintiff's motion now appears to challenge the Agency's "refus[al] to agree to either keep the portal open or to provide any advance notice and explanation if it seeks to close it in the future." Pl.'s Prelim. Inj. Mot. at 3. Plaintiff points to no final agency decision whatsoever, and Plaintiff instead complains of "FEMA's ever-changing actions," Pl.'s Prelim. Inj. Br. (ECF No. 31-1) at 9–10, while the Agency decides how to proceed in light of the President's Executive Order. *See* Breslin Decl. ¶¶ 8–12.

If a decision is made to terminate Plaintiff's grant once the Agency concludes its review, then Plaintiff will be presented with a final agency decision. *See id.* ¶ 12. But that situation has not occurred, and Plaintiff continues to be able to draw down funds. *Id.* ¶ 11. As such, Plaintiff fails to allege a challenge to a final agency action.

**B.    The Agency's Action as Alleged in the Complaint Is Permissible.**

Even if the Court further considers the claim that Plaintiff raised in the Complaint, it fails because the Agency was permitted to complete a manual review of requests for reimbursement.

The Agency's former implementation of a manual review process was consistent with the applicable authorizing statutes, regulations, and terms for grants. Pursuant to its affirmative duty under 2 C.F.R. § 200.300(a) to properly manage and administer its federal grants, the Agency has inherent authority to manually review source documentation from a grant recipient and other information relevant to confirming the requested funding. Hamilton Decl. ¶ 5. The Agency also has inherent authority to monitor awards, review its grant records and expenditures, and ensure payments to recipients are used only for allowable, allocable, and reasonable costs under the terms and conditions of the grant award prior to making payment to the grant recipient. *Id*. Thus, FEMA has authority to implement the manual review process, as long as the process is consistent

with applicable regulations and requirements. *Id*. ¶¶ 5, 13. Notably, the Agency's former use of a manual review process was not new. FEMA had, for years now, already employed a manual review process for six of its grant programs. *Id*. ¶ 10 (listing programs).

Moreover, the Agency's former manual review process was consistent with and in furtherance of the regulatory directives set forth in 2 C.F.R. Part 200 and 31 C.F.R. Part 205. *Id*. ¶¶ 13–19. The Agency was complying with its affirmative duty "to manage and administer [its] Federal award[s] in a manner so as to ensure that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations." 2 C.F.R. § 200.300(a). This former manual review process was not a withholding, pause, or freeze on funding, nor did it mean that the grant payments were being frozen, held, or not being distributed. Cameron Decl. ¶ 9. The Agency was processing payment requests and approving them for payment as appropriate, simply with an added level of internal controls to ensure that payment requests are reviewed prior to payment being released. *See id*. ¶¶ 8–9. The "hold" formerly instituted on payments in PARS was simply a system term, which was part of a process to allow the Agency's staff to manually review grant projects, activities, and source documentation before releasing funds for reimbursement paid to its grant recipients. *See id*. ¶¶ 9, 21. Once manual review would be completed, the grants would be made available for draw down. *Id*. ¶ 21.

As such, the Agency's former implementation of a manual review process was not arbitrary and capricious, contrary to law, in excess of statutory authority, or ultra vires.

### C.    Plaintiff's Preliminary Injunction Motion Is Divorced from the Complaint.

As much as Plaintiff complains of the Agency's "shifting conduct," Pl.' Prelim. Inj. Br. at 33, it is Plaintiff who is shifting the theory and even the claim raised in the Complaint. Plaintiff brought a one-count complaint that asserts that a hold that the Agency formerly placed on

Plaintiff's ability to draw down on a grant violates the APA.  *See* Compl. ¶¶ 63–75.  Through the Complaint, "CPB is challenging a specific action of withholding NGWS Grant funds."  *Id.* ¶ 59. That is no longer what Plaintiff is challenging because indisputably the submission portal has been reopened.  Pl.'s Prelim. Inj. Mot. at 3; Breslin Decl. ¶ 11.  The "specific action of withholding NGWS Grant funds" that Plaintiff stated it was challenging, Compl. ¶ 59, has been set aside by the Agency already (although, again, the Agency notes that the Complaint had mischaracterized the Agency's former actions).  Breslin Decl. ¶ 11.

Plaintiff now seeks to litigate a First Amendment claim, analogizing this case to *American Bar Ass'n v. Department of Justice*, Civ. A. No. 25-1263 (CRC), 2025 WL 1388891 (D.D.C. May 14, 2025).  Pl.'s Prelim. Inj. Br. at 32.  But the contrast between these cases is clear.  First, in *American Bar Ass'n*, the agency had reached a final decision terminating the grants at issue. *Am. Bar Ass'n*, 2025 WL 1388891, at *1.  Second, the American Bar Association was not able to submit payments for reimbursement when it moved for the injunction.  *Id.*  Third, the *American Bar Ass'n* complaint included both an APA claim and a First Amendment claim (noticeably absent here, with the Complaint here not referencing the First Amendment at all).  *Id.* at *3. Fourth, the district court found a likelihood of success solely on the American Bar Association's First Amendment retaliation claim, which was premised on factual allegations unique to that case, and it emphatically did not opine on the likelihood of the plaintiff succeeding on its APA claim, which is the sole claim here.  *Id.* at *8.  Indeed, the district court acknowledged recent Supreme Court precedent that held, in another case, that "the government was likely to succeed in showing that the district court lacked jurisdiction over the plaintiffs' APA challenge to the termination of their grants."  *Id.* at *6 (quoting *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025)).  If a decision is ultimately made to terminate Plaintiff's grant here, then Plaintiff, too, will likewise

need to litigate any such dispute in the Court of Federal Claims, not this Court. *See Dep't of Educ.*, 145 S. Ct. at 968. That, however, puts the cart before the horse as no final determination has been made regarding whether to terminate Plaintiff's grant. *See* Breslin Decl. ¶ 12.

Plaintiff's purported First Amendment claim "is not raised in the Complaint and thus may not be the subject of preliminary injunctive relief since plaintiff can show no likelihood of success on a claim that is not even asserted." *N.Y. Times Co. v. Def. Health Agency*, Civ. A. No. 21-0566 (BAH), 2021 WL 1614817, at *4 n.6 (D.D.C. Apr. 25, 2021). Indeed, beyond the allusion to a nonexistent First Amendment claim, Plaintiff's preliminary injunction motion must be denied in its entirety because the relief it requests goes beyond the relief listed it the complaint. *See, e.g.*, *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) (finding that "[a] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally," but declining to grant relief where the requested injunction "deals with a matter lying wholly outside the issues in the suit" and so "in no circumstances can be dealt with in any final injunction that may be entered"); *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015) ("A court's equitable power lies only over the merits of the case or controversy before it."); *Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997) (per curiam) ("A district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit."); *Omega World Travel v. TWA*, 111 F.3d 14, 16 (4th Cir. 1997) ("[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action"); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) ("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."); *Steele v.*

*United States*, Civ. A. No. 14-1523 (RCL), 2020 WL 7123100, at *7 (D.D.C. Dec. 4, 2020) (denying preliminary injunction motion "because [Court] cannot grant preliminary relief on claims not pleaded in the complaint").

If the Court were to consider the "agency actions" Plaintiff appears to complain of now in Plaintiff's motion—namely, the "refus[al] to agree to either keep the [already open] portal open or to provide any advance notice and explanation if it seeks to close it in the future," Pl.'s Prelim. Inj. Mot. at 3—Plaintiff's APA claim would likewise fail. As an initial matter, though, in contrast to Plaintiff's motion, which recognizes that the portal is open and there is no current impediment to Plaintiff being reimbursed, Pl.'s Prelim. Inj. Mot. at 3, Plaintiff's brief continues to complain of the decision "to close the PARS portal." Pl.'s Prelim. Inj. Br. at 29. Both headings of Plaintiff's likelihood of success section address the former closure of the now-reopened PARS portal. *See, e.g.*, *id.* at 27 ("FEMA Closure of the PARS Portal Is Arbitrary and Capricious"); *id.* at 29 ("FEMA's Closure of the PARS Portal Is Contrary To Law, In Excess Of Statutory Authority, and Ultra Vires"). Plaintiff cannot justify a preliminary injunction by relying on actions that have already been set aside.

Even if the Court were to consider the argument in Plaintiff's motion instead of the argument in Plaintiff's brief, Plaintiff offers no argument whatsoever that the APA would require the Agency to keep the portal open in perpetuity. Because Plaintiff does not develop that argument in any meaningful way, it is forfeited. *See Hardway v. CIA*, No. 20-5172, 2021 WL 2525722, at *1 (D.C. Cir. May 17, 2021) ("A party forfeits an argument by . . . [m]entioning [it] in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." (alterations in original; quoting *Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019))).

On the merits, the Agency is permitted to close the portal when circumstances warrant. *See, e.g.*, 2 C.F.R. § 200.300(a) ("The Federal agency or pass-through entity must manage and administer the Federal award in a manner so as to ensure that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations—including provisions protecting free speech, religious liberty, public welfare, and the environment, and those prohibiting discrimination—and the requirements of this part."). The Agency is also permitted to "[t]emporarily withhold payments until the recipient or subrecipient takes corrective action," *id.* § 200.339(a), or "[s]uspend or terminate the Federal award in part or in its entirety," *id.* § 200.339(c), if, for instance, "the recipient or subrecipient fails to comply with the U.S. Constitution, Federal statutes, regulations, or terms and conditions of the Federal award," *id.* § 200.339. The Agency may also terminate a contract "if an award no longer effectuates the program goals or agency priorities." *Id.* § 200.340(a)(4).

Federal regulations do not require "advance notice" if a decision is made to terminate. *See, e.g.*, *id.* § 200.341(a); *id.* § 200.342. Rather, the Agency must only provide written notice to the recipient, *id.* § 200.341(a), and allow the recipient thereafter to have "an opportunity to object and provide information challenging the action," *id.* § 200.342. Again, no decision has been made at this time to terminate Plaintiff's grant. *See* Breslin Decl. ¶ 12. But if such a decision is made, then Plaintiff will have its opportunity to object. But federal regulations do not include any requirement that the Agency afford Plaintiff "30-days advance notice," as Plaintiff demands in its brief. Pl.'s Prelim. Inj. Br. at 42. Plaintiff cannot show a likelihood of success on any nonexistent claim that the Agency must provide thirty-days advance notice when that is not what the law requires, and that is not the claim in the Complaint. For all these reasons, Plaintiff fails to show a likelihood of success.

## II.   <u>Plaintiff Cannot Establish a Likelihood of Immediate Irreparable Harm.</u>

"Regardless of how the other three factors are analyzed, it is required that the movant demonstrate an irreparable injury." *Mdewakanton Sioux Indians of Minn.*, 255 F. Supp. 3d 48, 51 (D.D.C. 2017).  The "basis of injunctive relief in the federal courts has always been irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 88 (1974); *see also CityFed Fin. Corp. v. Off. of Thrift Superv.*, 58 F.3d 738, 747 (D.C. Cir. 1995).  The Supreme Court's "frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original).  "[I]f a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors." *Henke v. Dep't of Interior*, 842 F. Supp. 2d 54, 59 (D.D.C. 2012) (quoting *CityFed Fin.*, 58 F.3d at 747); *see also Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief.").  And "when a party seeks a mandatory injunction—to change the status quo through action rather than merely to preserve the status quo—typically the moving party must meet a higher standard than in the ordinary case: the movant must show 'clearly' that [it] is entitled to relief or that extreme or very serious damage will result." *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006) (collecting authorities); *see League of Women Voters v. Newby*, Civ. A. No. 16-0236 (RJL), 2016 WL 8808743, at *1 (D.D.C. Feb. 23, 2016) ("This conclusion is bolstered by the fact that plaintiffs here seek not to maintain the status quo, but instead to restore the status quo ante, requiring this Court to proceed with the utmost caution.").

As the Court found when denying Plaintiff's TRO motion, *see, e.g.*, Min. Order (Mar. 17, 2025); Hrg. Tr. (ECF No. 17), Plaintiff has failed to demonstrate irreparable harm sufficient to

warrant extraordinary injunctive relief.  Although Plaintiff characterizes the harm as damaging

its ability to accomplish the purpose of the grant, Plaintiff's harm is monetary.  "Monetary injuries

alone, even if they are substantial, ordinarily do not constitute irreparable harm." *Spadone v.*

*McHugh*, 842 F. Supp. 2d 295, 301 (D.D.C. 2012) (citations omitted).

Moreover, Plaintiff cannot claim irreparable harm when it waited almost a month before

seeking emergency relief initially, not to mention the approximately three months it waited

between the Court's TRO denial and moving for a preliminary injunction.  *See Pub. Citizen*

*Health Rsch. Grp. v. Acosta*, 363 F. Supp. 3d 1, 22 (D.D.C. 2018) (finding no irreparable harm

where plaintiffs waited over three months after learning that a government agency had taken the

complained-of action and over six weeks after filing their complaint to seek preliminary relief);

*Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005) ("An unexcused delay in seeking

extraordinary injunctive relief may be grounds for denial because such delay implies a lack of

urgency and irreparable harm."); *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975)

(denying preliminary injunctive relief and noting that a delay of forty-four days after final

regulations were issued was "inexcusable"); *Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of*

*the U.S.*, 840 F. Supp. 2d 327, 338 (D.D.C. 2012) ("Plaintiffs' delay in seeking relief . . . weighs

against a finding of irreparable harm.").  Plaintiff notes that it first learned of the purported "hold"

on February 19, 2025, and Plaintiff indicates that it normally was able to receive reimbursements

in a matter of days.  Compl. ¶¶ 26, 48.  Indeed, on February 20, 2025, Plaintiff issued a stop work

order to all sub-grantees on the same day, stating that Plaintiff had no access to the funding.  Stop

Work Order (ECF No. 4-7).  Additionally, on the same day, Plaintiff sent a letter to the Agency

about the "hold," demanding a response by February 24, 2025.  Decl. of Daryl Mintz (ECF

No. 4-2) ¶ 30.   Yet, Plaintiff waited until March 13, 2025, to seek relief.   That delay alone continues to preclude Plaintiff from the emergency relief it initially requested.

Further, to the extent Plaintiff asserts that the Agency's conduct is endangering lives, harming Plaintiff's reputation, impacting sub-grantees, or causing the possible loss of employees, a movant cannot show "certain[] impending" injury when the asserted injury is based on a "speculative chain of possibilities," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013), or on "speculation about the decisions of independent actors," *id*. at 414.   As the D.C. Circuit has cautioned: "Because of the generally contingent nature of predictions of future third-party action," a court should be "sparing in crediting claims of anticipated injury by market actors and other parties alike." *Arpaio v. Obama*, 797 F.3d 11, 23 (D.C. Cir. 2015).

As the Court explained previously, "[t]o be sure, CPB's [former] inability to access the funds made available under the NGWS grant somewhat frustrates its 'mission' of 'updating and enhancing the country's public emergency alert apparatus,'" "[b]ut CPB has not shown that this injury cannot be remediated later absent a TRO."   Hrg. Tr. (ECF No. 17) at 9:5–14.   "CPB has not shown that it must access the NGWS Grant funds and reimburse its sub-awardees now or else it simply can no longer accomplish those objectives."   *Id.* at 9:14–17.   "Now, just as importantly, the downstream potential injuries that CPB mentions are far too speculative and vague to qualify as irreparable harm, even assuming that they are harms that would count for the purpose of its motion, because in some ways they are best characterized as potential injuries to third parties, not CPB itself."   *Id.* at 9:18–23; *see also id.* at 9:24–10:3 (citing *Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203, 213 (D.D.C. 2012)).

Further, despite clearly rejecting Plaintiff's claim for irreparable harm due to the purported "harm to third parties, which does not count for purposes of a motion for preliminary relief," Hrg.

Tr. at 12:16–18, Plaintiff continues to rely heavily on purported harms being experienced by third parties. *See, e.g.*, Pl.'s Prelim. Inj. Br. at 32 ("CPB, its Sub-Awardees, And The Public Will be Irreparably Harmed Without a Preliminary Injunction"). Again, this purported harm is unduly speculative and, because it is not harm faced by Plaintiff, cannot be the basis for any injunction.

Plaintiff's new evidence does not change the result. Plaintiff's purported evidence largely concerns what happens if the portal is closed, but the portal, again, is indisputably open. *Compare* Pl.'s Prelim. Inj. Br. at 35 ("If FEMA does not reopen the PARS portal in time, and does not keep the portal open, for these actions to be taken, then they cannot be taken."), *with* Pl.'s Prelim. Inj. Mot. at 3 (acknowledging the portal is open); Breslin Decl. ¶ 11 (confirming the portal is open). For instance, Plaintiff states that "[w]hen the PARS system is shut off and funds are withheld from CPB, those sub-awardees are left on the hook for the expenses they have already incurred." Mintz Decl. (ECF No. 32) at 24, ¶ 71. Likewise, the paragraph of the Anderson Declaration on which Plaintiff relies states merely that "BRPT believes that if the fund freeze continues until August, it will not be able to complete the transmitter upgrades in time to comply with its NGWS grant or its FCC construction permit." Anderson Decl. (ECF No. 31-4) at 4, ¶ 24. Likewise, the Black Declaration states that, "[g]iven the funds hold, however, WNIN has not yet moved forward purchasing and installing this new equipment." Black Decl. (ECF No. 31-5) at 4, ¶ 24; *see also* Bruno Decl. (ECF No. 31-6) at 4, ¶ 23 ("As a result of the current closure of the reimbursement portal, both previously and currently, Radio Catskill has not moved forward with the installation of the new transmitter."); Dahl Decl. (ECF No. 31-7) at 3, ¶ 15 ("KRCL does not believe that it would be able to complete its upgrades in time to comply with these deadlines if the funding hold continues."); Dunlap Decl. (ECF No. 31-8) at 4, ¶ 21 ("Without reimbursement, and given the funds hold, KEDT has been forced to delay order, purchase, and installation of other components

of its NGWS upgrade[.]"); Gavin Decl. (ECF No. 31-9) at 5, ¶ 32 ("As a result of FEMA's hold on the NGWS grant funds, WDCQ has been unable to move forward with the purchase or installation of a new EAS decoder."); Griffin Decl. (ECF No. 31-10) at 3, ¶ 13 ("The current hold on funds has placed this investment in jeopardy and created fiscal strain[.]"); Tomlinson Decl. (ECF No. 31-13) at 4, ¶ 18 ("Given the funds hold, however, KMOS has not moved forward with installation of the antenna."); Yoder Decl. (ECF No. 31-14) at 5, ¶ 26 ("Given the funds hold, however, CRP has not yet moved forward with installation of the transmitters, which will cost additional funds for which CRP expects to be reimbursed."); Kabler Decl. (ECF No. 31-17) at 5, ¶ 26 ("All Stations would not have purchased the new radio transmission equipment without the express promises of reimbursement through the subgrant, unless its pre-existing equipment was no longer operational."); Teich Decl. (ECF No. 31-18) at 4, ¶ 10 ("NCPR would not have purchased the new radio transmission equipment without the express promises of reimbursement through the subgrant, unless its pre-existing equipment was no longer operational."); Spizarny Decl. (ECF No. 31-19) at 3, ¶ 11 ("WQLN had planned to move forward with further equipment purchases for its main transmitter, but has not yet done so because of the freezing of the NGWS funds.").

Again, even if the Court were to set aside for the moment that this is purported harm suffered by non-parties, there is no hold on funds at this moment, *see, e.g.*, Pl.'s Prelim. Inj. Mot. at 3; Breslin Decl. ¶ 11, so all these allegations as to harm pertaining to what happens if there is a hold on funds are entirely beside the point. Even if the Court were to consider these allegations, this is harm to third parties that is (1) speculative, (2) monetary, and (3) directed at third parties. Indeed, several of Plaintiff's declarants appear to concede that the stations would still have purchased the new radio transmission equipment even without the promises of reimbursement in

17

certain conditions, such as when the station's "pre-existing equipment" needed to be upgraded. *See, e.g.*, Kabler Decl. (ECF No. 31-17) at 5, ¶ 26 ("All Stations would not have purchased the new radio transmission equipment without the express promises of reimbursement through the subgrant, unless its pre-existing equipment was no longer operational."); Teich Decl. (ECF No. 31-18) at 4, ¶ 10 (similar). "[I]n light of the very high burden that irreparable harm is in this Circuit," the Court should once again find that Plaintiff fails to demonstrate irreparable harm. Hrg. Tr. at 13:13–15.

Even where Plaintiff has convinced its declarants to change their theory to focus instead on FEMA "repeatedly closing the portal without notice or explanation," the declarations come far short of attesting to irreparable harm. For instance, the Dahl Declaration states "[e]ven with the portal open, without assurances that the portal will remain open, KRCL is reluctant to move forward with new NGWS grant expenditures, because of the uncertainty[.]" Dahl Decl. (ECF No. 31-7) at 3–4, ¶ 16. Several of Plaintiff's other declarations from declarants with different companies repeat this language verbatim. *See, e.g.*, Anderson Decl. (ECF No. 31-4) at 5, ¶ 27; Bruno Decl. (ECF No. 31-6) at 5, ¶ 30; Dunlap Decl. (ECF No. 31-8) at 5, ¶ 29; Griffin Decl. (ECF No. 31-10) at 4, ¶ 21; Prasuhn Decl. (ECF No. 31-11) at 4, ¶ 24; Shoman Decl. (ECF No. 31-12) at 5, ¶ 30; Tomlinson Decl. (ECF No. 31-13) at 5, ¶ 27; Clayton Decl. (ECF No. 31-15) at 5, ¶ 27. The issues here are legion: (1) this is harm to a third party; (2) saying one is "reluctant to move forward" is far cry from saying that it will not move forward; and (3) this is a purely monetary harm. Again, "in light of the very high burden that irreparable harm is in this Circuit," the Court should once again find that Plaintiff fails to demonstrate irreparable harm. Hrg. Tr. at 13:13–15.

**III.**     <u>**The Balance of Harms and the Public Interest Weigh Against Relief.**</u>

The party seeking a preliminary injunction must show that the balance of equities tips in its favor and that the injunction is in the public interest. *Winter*, 555 U.S. at 20. A court "should pay particular regard for the public consequences" of injunctive relief. *Id*. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

The injunction contemplated by the Complaint, which is not the injunction Plaintiff seeks today, would effectively disable the Agency from assessing whether any request for payment is free from waste, fraud, or abuse and complies with terms of the grant. "Any time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (cleaned up). And where the Government is legally entitled to make decisions about the disbursement or allocation of federal funds but is nonetheless ordered to release the funds, such funds may not be retrievable afterwards. Indeed, Plaintiff demands that this Court allow for the immediate reimbursement of funds. Those harms will irreparably harm the sovereign and pecuniary interests of the United States.

If the Court were to untether this case from the Complaint and consider the different injunction Plaintiff seeks today, the balance of equities continues to weigh in favor of Defendants. The injunction Plaintiff seeks would still foreclose the Agency from "manag[ing] and administer[ing] the Federal award in a manner so as to ensure that Federal funding is expended and associated programs are implemented in full accordance with" the law. 2 C.F.R. § 200.300(a). For instance, ordering Defendants to "maintain access to FEMA's [PARS] portal so that reimbursement requests under the 2022 [NGWS Grant] can be submitted by Plaintiffs," without any exceptions, would prohibit the Agency from complying with 2 C.F.R. § 200.339 (permitting temporary withholding of payments, suspension, and termination) or 2 C.F.R.

§ 200.340 (concerning termination). While Plaintiff has failed to demonstrate either a likelihood of success or irreparable harm, even if the Court were inclined to issue an injunction, Defendants request that the Court make clear that nothing in any injunction prohibits Defendants from making any decisions allowed by these regulations or the terms of the grant. *See, e.g.*, Notice of Funding Opportunity (ECF No. 31-2) at 53 (termination provisions); *id.* at 62–63 (actions to address noncompliance).

To that end, Plaintiff's demand that Defendants provide thirty days' advance notice is likewise wholly untethered from the law. Defendants are clearly allowed to terminate Plaintiff's access to the PARS portal without advance notice, *see, e.g.*, 2 C.F.R. § 200.342, although Defendants emphasize that this has not happened here, *see* Breslin Decl. ¶¶ 11–12.

Lastly, Plaintiff's proposed order, but not Plaintiff's motion or brief, demands that the Court order Plaintiff to issue payment "within three business days of submission." Pl.'s Proposed Order (ECF No. 31-20) at 1. Plaintiff has failed even to argue that this is required by regulation or the terms of the contract, let alone to demonstrate that to be the case. Plaintiff has accordingly forfeited any argument that Defendants must issue payments within three business days of submission. *See Hardway*, 2021 WL 2525722, at *1 ("A party forfeits an argument by . . . [m]entioning [it] in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." (alterations in original; quoting *Al-Tamimi*, 916 F.3d at 6)). The balance of equities does not tip in Plaintiff's favor when it comes to adding conditions on the government's processing of payments that are not based in law, regulation, or contract. Thus, the balance of the equities weighs in favor of Defendants and relief should be denied.

IV.    **The Court Should Not Grant Equitable Relief.**

It is a bedrock principle of equity that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Additionally, "'preliminary relief may never be granted that addresses matters 'which in no circumstances can be dealt with in any final injunction that may be entered.'" *In re Microsoft Corp. Antitrust Litig*, 333 F.3d 517, 525 (4th Cir. 2003) (quoting *De Beers*, 325 U.S. at 220). Therefore, the scope of equitable relief available here should be constrained by what would be available to Plaintiff at final judgment under the APA. *See Pac. Radiation*, 810 F.3d at 636 (preliminary relief must be "of the same nature as that to be finally granted.").

Relief under the APA is limited; courts may "hold unlawful and set aside agency action." 5 U.S.C. § 706; *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66–67 (2004) (explaining how the APA's limits on relief are intended to "protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements"). The APA generally prohibits "specific relief," in the sense that, "when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the correct legal standards." *PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995) (citations omitted); *see also Palisades Gen. Hosp. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005). As such, if the Court is inclined to grant Plaintiff's motion, it must do so consistent with the APA.

Plaintiff's requested relief exceeds these bounds. If granted, Plaintiff's relief would essentially bind the Agency to reimburse Plaintiff without limitation, restricting the Agency's ability to assess whether a reimbursement request was proper under the terms of the award of the grant and to take any future actions to protect the public fisc or to ensure the expenditure of funds is in the best interests of the United States. Accordingly, any relief should be narrow and must

21

account for the Department's priorities and leave intact the Executive Branch's discretion to engage in further consideration of the topic at hand and implement new policies consistent with law as it completes its review. *See* Breslin Decl. ¶¶ 11–12.

## V.     Any Injunction Should Require Plaintiff to Post Security.

Federal Rule of Civil Procedure 65(c) states that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). This Rule provides "broad discretion in the district court to determine the appropriate amount of an injunction bond." *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999). Should the Court issue an injunction at this preliminary stage, Defendants request that Plaintiff be ordered to post a bond that is roughly equivalent to the remaining balance. *See Dep't of Educ.*, 145 S. Ct. at 969 (staying injunction where the government was "unlikely to recover the grant funds once they are disbursed" because "[n]o grantee 'promised to return withdrawn funds should its grant termination be reinstated,' and the District Court declined to impose bond").

Plaintiff estimated the total remaining amount of funds to exceed $37 million. Pl.'s Prelim. Inj. Br. at 22. Accordingly, if the Court enters an injunction, which Defendants oppose, then it should order Plaintiff to post a bond of $37 million. While this may seem at first glance like a large bond, Plaintiff is not a small entity. Plaintiff's most recently reported released financial statement (for 2024) reported assets exceeding $398 million, reflecting an almost $68 million increase over the prior year. Corp. for Pub. Broad., *Combined Financial Statement and Report of Independent Certified Public Accountants, Sept. 30, 2024 and 2023*, at 5, https://cpb.org/sites/default/files/Fiscal_Year_2024.pdf. Breaking down its assets, Plaintiff reported more than $178 million in cash and cash equivalents, reflecting an increase of more than

$112 million from the prior year.  *Id.*  Accordingly, if the Court enters an injunction, it should require the posting of a $37 million bond.

This case is ultimately about money, and thus, the requirements of Rule 65(c) to post security are plainly at play.  If an injunction is entered, Plaintiff should thus be ordered to post a bond roughly equal to the amount of outstanding funds.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court deny Plaintiff's motion for emergency relief.

Dated: June 24, 2025
      Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By: _____*/s/ Douglas C. Dreier*_____
      DOUGLAS C. DREIER, D.C. Bar #1020234
      Assistant United States Attorney
      601 D Street, NW
      Washington, DC 20530
      (202) 252-2551

      *Attorneys for the United States of America*

23