UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CORPORATION FOR PUBLIC BROADCASTING, <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL EMERGENCY MANAGEMENT AGENCY, et al. <br><br> Defendants. | Civil Action No. 25-0740 (TJK) |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

BACKGROUND .................................................................................................................... 1

   I.   Factual Background. ................................................................................................... 1

   II.  Procedural Background. ............................................................................................. 4

STANDARDS OF REVIEW ................................................................................................. 4

ARGUMENT ........................................................................................................................... 6

   I.   Plaintiff Does Not Challenge Final Agency Action. ................................................... 6

   II.  The Agency's Action as Alleged in the Complaint Is Permissible. ........................... 10

   III. The Court Should Not Consider Plaintiff's Shifting Views, but If It Does, Plaintiff's Argument Fails. ....................................................................................................... 11

CONCLUSION ..................................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................................ 5, 6

*Arab v. Blinken*,
  600 F. Supp. 3d 59 (D.D.C. 2022) ............................................................................. 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................... 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................... 5

*BenefitAlign, LLC v. Ctrs. for Medicare & Medicaid Servs.*,
  Civ. A. No. 24-2494 (JEB), 2024 WL 6080275 (D.D.C. Sept. 30, 2024) ............ 7, 8

\*   *Bennett v. Spear*,
  520 U.S. 154 (1997) ............................................................................................ 6, 7, 8

*Bowden v. United States*,
  106 F.3d 433 (D.C. Cir. 1997) ................................................................................... 5

*Brzezinksi v. Dep't of Homeland Sec.*,
  Civ. A. No. 21-0376 (RC), 2021 WL 4191958 (D.D.C. Sept. 15, 2021) ................. 8

*Burnside v. Dep't of Just.*,
  Civ. A. No. 20-2309 (TSC), 2022 WL 715181 (D.D.C. Mar. 10, 2022) ................. 5

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................................... 5

*Diakanua v. Rubio*,
  Civ. A. No. 24-1027 (TJK), 2025 WL 958271 (D.D.C. Mar. 31, 2025) ............. 8, 9

*Eljalabi v. Blinken*,
  Civ. A. No. 21-1730 (RC), 2022 WL 2752613 (D.D.C. July 14, 2022) .................. 9

*Kendrick v. FBI*,
  No. 22-5271, 2023 WL 8101123 (D.C. Cir. Nov. 21, 2023) ..................................... 9

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ...................................................................................................... 6

*New York v. Trump*,
  769 F. Supp. 3d 119 (D.R.I. Mar. 6, 2025) ............................................................... 2

*New York v. Trump*,
  Civ. A. No. 25-0039, 2025 U.S. Dist. LEXIS 65285 (D.R.I. Apr. 4, 2025) ............ 2

*New York v. Trump*,
  Civ. A. No. 25-0039, 2025 U.S. Dist. LEXIS 71893 (D.R.I. Apr. 14, 2025) ......................... 2

*Or. Health & Sci. Univ. v. Engels*,
  Civ. A. No. 24-2184 (RC), 2025 WL 1707630 (D.D.C. June 17, 2025) ................................ 7

*Papasan v. Allain*,
  478 U.S. 265 (1986) ............................................................................................................... 5

*Sharifymoghaddam v. Blinken*,
  Civ. A. No. 23-1472 (RCL), 2023 WL 8047007 (D.D.C. Nov. 17, 2023) ............................. 9

*Soundboard Ass'n v. FTC*,
  888 F.3d 1261 (D.C. Cir. 2018) ........................................................................................ 7, 8

*Sw. Airlines Co. v. Dep't of Transp.*,
  832 F.3d 270 (D.C. Cir. 2016) ......................................................................................... 7, 10

*West v. Lynch*,
  845 F.3d 1228 (D.C. Cir. 2017) ............................................................................................ 9

**Statutes**

5 U.S.C. § 704 ................................................................................................................................ 6
5 U.S.C. § 706 ................................................................................................................................ 6

**Rules**

Fed. R. Civ. P. 12 ................................................................................................................... 1, 4, 5
Fed. R. Civ. P. 56 ...................................................................................................................... 1, 5
LCvR 7 ........................................................................................................................................ 9, 8

**Regulations, Regulatory Materials, and Executive Orders**

2 C.F.R. Part 200 ......................................................................................................................... 11
2 C.F.R. § 200.300 ........................................................................................................... 10, 11, 12
2 C.F.R. § 200.339 ....................................................................................................................... 12
2 C.F.R. § 200.340 ....................................................................................................................... 12
2 C.F.R. § 200.340 (2021) ........................................................................................................... 12
2 C.F.R. § 200.341 ....................................................................................................................... 13
2 C.F.R. § 200.342 ....................................................................................................................... 13
31 C.F.R. Part 205 ....................................................................................................................... 11
Guidance for Federal Financial Assistance, 89 Fed. Reg. 30046 (Apr. 22, 2024) ...................... 12
Exec. Ord. No. 14290, 90 Fed. Reg. 19415 (May 1, 2025) ..................................................... 2, 3

Defendants Federal Emergency Management Agency ("Agency") and David Richardson, in his official capacity as Senior Official Performing the Duties of the Agency's Administrator, respectfully submit this memorandum in support of their motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) or for summary judgment under Rule 56. As previously previewed in Defendants' opposition (ECF No. 33) to Plaintiff's motion for a preliminary injunction (ECF No. 31), Plaintiff fails to allege any final agency action, and the Agency's action is lawful. Accordingly, Plaintiff's claim fails.

## BACKGROUND

### I. Factual Background.

In 2022, the Department of Homeland Security ("Department") awarded Plaintiff a grant for the NGWS. Compl. (ECF No. 1) ¶ 23. The grant is on a cost reimbursement basis. *Id*. Plaintiff seeks reimbursement through the Agency's Payment and Reporting System ("PARS"). *Id*. ¶ 25.

On January 28, 2025, the Secretary of Homeland Security issued a directive entitled "Direction on Grants to Non-governmental Organizations." Declaration of Thomas Breslin ("Breslin Decl.," ECF No. 33-1) ¶ 5. Pursuant to that directive, on February 10, 2025, the Agency began implementation of a process for the manual review of requests for payment. Decl. of Cameron Hamilton ("Hamilton Decl.," ECF No. 14-1) ¶ 4. In order to permit a manual review, the Agency placed a "hold toggle" in PARS, effective the following day. *Id*. ¶¶ 4, 6; *see also* Breslin Decl. ¶ 6. The "hold" was not a freeze on the funds. Cameron Decl. ¶ 6. Rather, the "hold" allowed for the Agency to manually review requests prior to payment. *Id*. ¶ 7; *see also* Breslin Decl. ¶ 6 ("FEMA paused funding for all of its grants programs on February 11, 2025 and began to institute a manual review process under its inherent authority to monitor awards; review its grant records and expenditures; and ensure payments to recipients are used only for allowable,

allocable, and reasonable costs under the terms and conditions of the grant award before making payment to the grant recipient."). As such, before releasing funds for reimbursement paid to its grant recipients, the Agency would review grant projects, activities, and source documentation. Hamilton Decl. ¶ 9.

On March 6, 2025, the U.S. District Court for the District of Rhode Island issued a preliminary injunction enjoining FEMA and other agencies from pausing, freezing, blocking, canceling, suspending, terminating, or otherwise impeding the disbursement of appropriated federal funds to the named plaintiffs in that lawsuit. *See generally New York v. Trump*, 769 F. Supp. 3d 119 (D.R.I. Mar. 6, 2025), *appeal docketed*, No. 25-1413 (1st Cir.). On April 4, 2025, the court ordered FEMA to cease the manual review process implemented per the Secretary's January 28 directive. *See generally New York v. Trump*, Civ. A. No. 25-0039, 2025 U.S. Dist. LEXIS 65285 (D.R.I. Apr. 4, 2025), *appeal docketed*, No. 25-1413 (1st Cir.). From April 7, 2025, to April 14, 2025, the court stayed this order. *See New York v. Trump*, Civ. A. No. 25-0039, 2025 U.S. Dist. LEXIS 71893, at *19 (D.R.I. Apr. 14, 2025), *appeal docketed*, No. 25-1413 (1st Cir.).

To comply with the preliminary injunction, FEMA resumed allowing grant recipients, including Plaintiff, to draw down grant funds as they had prior to the manual review process. Breslin Decl. ¶ 6. On May 1, 2025, however, the President issued Executive Order 14290, entitled Ending Taxpayer Subsidization of Biased Media. Breslin Decl. ¶ 8. The purpose section of that Executive Order notes that "[u]nlike in 1967, when the CPB was established, today the media landscape is filled with abundant, diverse, and innovative news options. Government funding of news media in this environment is not only outdated and unnecessary but corrosive to the appearance of journalistic independence." Exec. Ord. No. 14290, § 1, 90 Fed. Reg. 19415 (May 1, 2025). The Executive Order further notes that "National Public Radio (NPR) and the Public

Broadcasting Service (PBS) receive taxpayer funds through the Corporation for Public Broadcasting," *id.* § 1, and it directs the heads of all agencies to "identify and terminate, to the maximum extent consistent with applicable law, any direct or indirect funding of NPR and PBS," *id.* § 3(a).

In response to that Executive Order, the Agency began a policy review of the NGWS grant program "because the program is designed for the Corporation for Public Broadcasting to receive the grant award and issue subgrants to public broadcasting entities that are National Public Radio and Public Broadcasting Service affiliated stations."  Breslin Decl. ¶ 9.  "On May 8, 2025, as a precaution, while FEMA was conducting the review to ensure compliance with the Biased Media [Executive Order], FEMA turned off Plaintiff's ability to draw down NGWS funds in FEMA GO." *Id.*  Meanwhile, the Agency "continues to review the NGWS grant program to ensure that the program's design effectively serves its statutory purpose, program goals, and agency priorities." *Id.* ¶ 10.  During the recent preliminary injunction hearing, counsel for Plaintiff represented that "if there was some concern that this grant somehow dealt with NPR or PBS, they knew that wasn't true" and "[t]hey knew full well this grant has nothing to do with NPR or PBS," Prelim. Inj. Hrg. Tr. (ECF No. 35) at 12:2–7; however, even a cursory review of the sub-awardees' websites demonstrates that there is much more of a connection than Plaintiff represents.  *See, e.g.*, Delta College Public Media, *About Us*, https://www.deltabroadcasting.org/about/ (last accessed July 16, 2025) ("We are your PBS station and your NPR station."); Blue Ridge Public Television Inc. d/b/a Blue Ridge PBS, *About US*, https://www.blueridgepbs.org/about-us (last accessed July 16, 2025); *see also* List of Sub-Awardees (ECF No. 4-6) at 2 (identifying sub-awardees).

The Agency's review of the NGWS grant program remains ongoing today.  Breslin Decl. ¶ 12.  "At this time, FEMA has not made a final determination whether the NGWS grant awards

3

to Plaintiff are effectuating program goals or agency priorities." *Id.* With the review continuing to take time as the Agency ensures faithful compliance with the law, "[o]n June 6, 2025, FEMA restored Plaintiff's [ ] access and ability to draw down funds under its awards through FEMA GO." *Id.* ¶ 11. Thus, "Plaintiff continues to have the ability to draw down funds for their NGWS grant program awards." *Id.* A final decision as to what additional action is necessary with respect to Plaintiff's NGWS grants, if any, will be made in the future, but no final decision has been made as of today. *Id.* ¶ 12.

## II. Procedural Background.

On March 13, 2025, Plaintiff filed the Complaint in this action. The Complaint brings one cause of action for violation of the Administrative Procedure Act ("APA"). The Complaint does not assert a constitutional claim or any other claim. The Complaint states that "CPB is challenging a specific action of withholding NGWS Grant funds." Compl. ¶ 59. Plaintiff then moved for a temporary restraining order (ECF No. 4), which Defendants opposed (ECF No. 14). The Court thereafter denied Plaintiff's motion. Min. Order (Mar. 17, 2025); *see also* TRO Hrg. Tr. (ECF No. 17). On June 12, 2025, Plaintiff moved for a preliminary injunction (ECF No. 31), which Defendants opposed (ECF No. 33). The Court denied that motion on July 15, 2025 (ECF Nos. 36, 37).

Pursuant to the Court's Orders, *see, e.g.*, Min. Order (May 29, 2025); Order (ECF No. 36), Defendants now move to dismiss or for summary judgment.

## STANDARDS OF REVIEW

Under Rule 12(b)(6), the Court may dismiss a complaint where a plaintiff fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

4

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When resolving a motion to dismiss pursuant to Rule 12(b)(6), the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. *See id.* A court is not, however, required to accept conclusory allegations or unwarranted factual deductions as true. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Likewise, a court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, the focus is on the language in the complaint and whether that sets forth sufficient factual allegations to support a plaintiff's claims for relief.

Under Rule 12(b)(6), the Court may consider additional documents beyond the four corners of the Complaint—such as Defendants' declarations—only if Plaintiff does not object to their consideration at this stage. *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (allowing consideration of "the pleadings and undisputed documents in the record" on a motion to dismiss for failure to exhaust); *see also Burnside v. Dep't of Just.*, Civ. A. No. 20-2309 (TSC), 2022 WL 715181, at *4 (D.D.C. Mar. 10, 2022).

Summary judgment is appropriate when the pleadings and evidence "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. A genuine issue is one that "might affect the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party

5

"may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

## ARGUMENT

The Complaint should be dismissed, or summary judgment should be entered in favor of Defendants, because Plaintiff does not allege any final agency action, and the Agency's former temporary hold was lawful.

The APA permits a reviewing court to set aside a final agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "[T]he scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

### I.  Plaintiff Does Not Challenge Final Agency Action.

Agency action must be "final" to be reviewable under the APA. 5 U.S.C. § 704. Agency action is final only if (1) it marks "the consummation of the agency's decisionmaking process" and (2) is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up). Plaintiff's challenge fails, at minimum, at the first step—Plaintiff has not challenged the consummation of the Agency's decisionmaking process, as that process remains ongoing to this day. *See* Breslin Decl. ¶ 12 ("At this time, FEMA has not made a final determination whether the NGWS grant awards to Plaintiff are effectuating program goals or agency priorities.").

As the D.C. Circuit has confirmed, "*Bennett* directs courts to look at finality from the agency's perspective (whether the action represents the culmination of the agency's decisionmaking) and from the regulated parties' perspective (whether rights or obligations have

been determined, and legal consequences flow).' *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1271 (D.C. Cir. 2018). "Deficiency from either perspective is sufficient to dismiss a claim." *Id.* "Thus, there is no need to reach the second *Bennett* prong if the action does not mark the consummation of agency decisionmaking." *Id.*

"Context matters, especially when determining whether an action is the 'consummation' of a decision-making process." *Or. Health & Sci. Univ. v. Engels*, Civ. A. No. 24-2184 (RC), 2025 WL 1707630, at *7 (D.D.C. June 17, 2025). To mark the consummation of the agency's decisionmaking, the decision "must not be of a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 177–78. The Agency's decision must instead "represent[ ] the culmination of the agency's decisionmaking." *Soundboard*, 888 F.3d at 1271. Subsequent actions by an agency may prove that an interim event in question was precisely that—i.e., interim—and was not the culmination of the agency's decisionmaking process. *See, e.g.*, *Sw. Airlines Co. v. Dep't of Transp.*, 832 F.3d 270, 275 (D.C. Cir. 2016) ("In assessing whether a particular agency action qualifies as final for purposes of judicial review, this court and the Supreme Court have looked to the way in which the agency subsequently treats the challenged action."); *BenefitAlign, LLC v. Ctrs. for Medicare & Medicaid Servs.*, Civ. A. No. 24-2494 (JEB), 2024 WL 6080275, at *1 (D.D.C. Sept. 30, 2024) ("Here, given that CMS is currently conducting an audit that will determine Plaintiffs' final status, it is unclear why the interim suspension could stand as the consummation of the agency's decisionmaking process.").

Plaintiff fails to identify any final agency action and has now admitted that the actions it initially challenged were not the culmination of the Agency's decisionmaking process. *See* Pl.'s Prelim. Inj. Br. (ECF No. 31-1) at 9–10. By the time Plaintiff filed the Complaint on March 13, 2025, the Agency had initiated a manual review process for grants. Compl. (ECF No. 1) ¶ 33.

Plaintiff has stated that "on April 21, 2025, close to two weeks after committing to maintain the manual review process regardless of the Court orders, FEMA reversed itself." Pl.'s Prelim. Inj. Br. at 9. "Thereafter, FEMA returned functionality to the PARS portal such that CPB was able to submit expense reimbursement requests, which were then processed consistent with the Uniform Guidance and FEMA's pre-February protocols." *Id.* Then, "on May 13, 2025, FEMA . . . ***reversed itself again*** by blocking CPB's access to submit NGWS expenses through PARS." *Id.* (emphasis in original). Later, "[r]oughly 24 hours before CPB's motion for preliminary injunction was due to be filed, FEMA ***once again reversed*** its position, and stated, through its counsel, that the PARS portal—first closed . . . , then opened, then once again closed . . .—would now be re-opened." *Id.* Plaintiff now complains of "FEMA's ever-changing actions," *id.* at 9–10, but ever-changing actions are the paragon example of actions that do not "represent[ ] the culmination of the agency's decisionmaking," *Soundboard*, 888 F.3d at 1271, and are instead actions of "a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 177–78.

Because Plaintiff has not identified a final agency action, Defendants are not presently able to compile an administrative record, and Local Civil Rule 7(n) does not apply. *See, e.g.*, *Brzezinksi v. Dep't of Homeland Sec.*, Civ. A. No. 21-0376 (RC), 2021 WL 4191958, at *3 (D.D.C. Sept. 15, 2021). The production of an administrative record at this stage is unnecessary—Defendants seek dismissal not based on an administrative record, but instead based on the facts alleged in the Complaint and the arguments described herein. *See Diakanua v. Rubio*, Civ. A. No. 24-1027 (TJK), 2025 WL 958271, at *11 n.10 (D.D.C. Mar. 31, 2025) ("[T]he Court will 'follow the general practice' and deny that motion because 'the administrative record is not necessary for the

8

Court's decision.'" (citation modified; quoting *Arab v. Blinken*, 600 F. Supp. 3d 59, 65 n.2 (D.D.C. 2022))).[1]

But moreover, consider what the administrative record would look like if the Court were to deem Plaintiff to have challenged a final agency action. Certainly, the administrative record could not include documents that postdate the Complaint because actions that postdate the Complaint are not part of the Complaint. *See, e.g.*, *Kendrick v. FBI*, No. 22-5271, 2023 WL 8101123, at *1 (D.C. Cir. Nov. 21, 2023) (summarily affirming; "[t]o the extent appellant argues that appellee's search was inadequate because it failed to produce documents related to a separate FOIA request he submitted, appellant's other FOIA request was not at issue in this litigation because he had not yet submitted that request when he filed his complaint in this case, and he never amended his complaint to add claims about it"); *West v. Lynch*, 845 F.3d 1228, 1235 n.8 (D.C. Cir. 2017) (explaining that any "assertions of injury" that "postdate[ ] West's complaint" "are chronologically problematic"). But then Plaintiff must be challenging the state of affairs as it existed on March 13, 2025, which Plaintiff has acknowledged has shifted multiple times in the interim, Pl.'s Prelim. Inj. Br. (ECF No. 31-1) at 9–10, including with Plaintiff now having received the payments it formerly alleged were being temporarily withheld, *compare* Compl. ¶ 59, *with* Mem. Op. (ECF No. 32) at 8–9. The "ever-changing" history of this action cries out for a finding that Plaintiff has not challenged the culmination of the Agency's decisionmaking progress because Plaintiff has acknowledged that the Agency's prior interim decisions have been superseded by

---

[1] In all events, Defendants respectfully request that the Court relieve them of any purported obligation to comply with Local Civil Rule 7(n). *See, e.g.*, *Diakanua*, 2025 WL 958271, at *11 n.10; *Sharifymoghaddam v. Blinken*, Civ. A. No. 23-1472 (RCL), 2023 WL 8047007, at *3 (D.D.C. Nov. 17, 2023) ("In any case, courts in this District routinely allow agencies to waive compliance with Rule 7(n)(1) if 'the administrative record is not necessary for the court's decision.'" (quoting *Eljalabi v. Blinken*, Civ. A. No. 21-1730 (RC), 2022 WL 2752613, at *3 n.3 (D.D.C. July 14, 2022))).

9

subsequent events. Pl.'s Prelim. Inj. Br. (ECF No. 31-1) at 9–10. Again, "[i]n assessing whether a particular agency action qualifies as final for purposes of judicial review, [the D.C. Circuit] and the Supreme Court have looked to the way in which the agency subsequently treats the challenged action." *Sw. Airlines*, 832 F.3d at 275. A review of that record here, as confirmed by Plaintiff's own admissions, demonstrates that the Agency had not consummated its decisionmaking process when Plaintiff filed the Complaint. Pl.'s Prelim. Inj. Br. (ECF No. 31-1) at 9–10.

Eventually, if a decision is made to terminate Plaintiff's grant once the Agency concludes its review, then Plaintiff will be presented with a final agency decision. *See* Breslin Decl. ¶ 12. But that situation has not occurred, and Plaintiff continues to be able to draw down funds. *Id.* ¶ 11. As such, Plaintiff fails to allege a challenge to a final agency action.

## II.     The Agency's Action as Alleged in the Complaint Is Permissible.

The Agency's former implementation of a manual review process was consistent with the applicable authorizing statutes, regulations, and terms for grants. Pursuant to its affirmative duty under 2 C.F.R. § 200.300(a) to properly manage and administer its federal grants, the Agency has inherent authority to manually review source documentation from a grant recipient and other information relevant to confirming the requested funding. Hamilton Decl. ¶ 5. The Agency also has inherent authority to monitor awards, review its grant records and expenditures, and ensure payments to recipients are used only for allowable, allocable, and reasonable costs under the terms and conditions of the grant award prior to making payment to the grant recipient. *Id*. Thus, the Agency has authority to implement the manual review process, as long as the process is consistent with applicable regulations and requirements. *Id*. ¶¶ 5, 13. Notably, the Agency's former use of a manual review process was not new. The Agency had, for years now, already employed a manual review process for six of its grant programs. *Id*. ¶ 10 (listing programs).

Moreover, the Agency's former manual review process was consistent with and in furtherance of the regulatory directives set forth in 2 C.F.R. Part 200 and 31 C.F.R. Part 205. *Id*. ¶¶ 13–19. The Agency was complying with its affirmative duty "to manage and administer [its] Federal award[s] in a manner so as to ensure that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations." 2 C.F.R. § 200.300(a). This former manual review process was not a withholding, pause, or freeze on funding, nor did it mean that the grant payments were being frozen, held, or not being distributed. Cameron Decl. ¶ 9. The Agency was processing payment requests and approving them for payment as appropriate, simply with an added level of internal controls to ensure that payment requests are reviewed prior to payment being released. *See id*. ¶¶ 8–9. The "hold" formerly instituted on payments in PARS was simply a system term, which was part of a process to allow the Agency's staff to manually review grant projects, activities, and source documentation before releasing funds for reimbursement paid to its grant recipients. *See id*. ¶¶ 9, 21. Once manual review would be completed, the grants would be made available for draw down. *Id*. ¶ 21.

As such, the Agency's former implementation of a manual review process was not arbitrary and capricious, contrary to law, in excess of statutory authority, or ultra vires.

### III. The Court Should Not Consider Plaintiff's Shifting Views, but If It Does, Plaintiff's Argument Fails.

Plaintiff brought a one-count complaint that asserts that its former temporary inability to draw down on a grant violated the APA. *See* Compl. ¶¶ 63–75. As stated in the Complaint, "CPB is challenging a specific action of withholding NGWS Grant funds." *Id.* ¶ 59. Plaintiff appears to have shifted its theory because indisputably the submission portal has been reopened. Pl.'s Prelim. Inj. Mot. at 3; Breslin Decl. ¶ 11. The "specific action of withholding NGWS Grant funds" that

11

Plaintiff stated it was challenging, Compl. ¶ 59, has been set aside by the Agency already (although, again, the Agency notes that the Complaint had mischaracterized the Agency's former actions). Breslin Decl. ¶ 11.

In any event, if the Court were to consider the "agency actions" that Plaintiff's preliminary injunction motion complained of—namely, the "refus[al] to agree to either keep the [already open] portal open or to provide any advance notice and explanation if it seeks to close it in the future," Pl.'s Prelim. Inj. Mot. at 3—Plaintiff's APA claim would likewise fail. The Complaint offers no argument whatsoever that the APA would require the Agency to keep the portal open in perpetuity.

On the merits, the Agency is permitted to close the portal when circumstances warrant. *See, e.g.*, 2 C.F.R. § 200.300(a) ("The Federal agency or pass-through entity must manage and administer the Federal award in a manner so as to ensure that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations—including provisions protecting free speech, religious liberty, public welfare, and the environment, and those prohibiting discrimination—and the requirements of this part."). The Agency is also permitted to "[t]emporarily withhold payments until the recipient or subrecipient takes corrective action," *id.* § 200.339(a), or "[s]uspend or terminate the Federal award in part or in its entirety," *id.* § 200.339(c), if, for instance, "the recipient or subrecipient fails to comply with the U.S. Constitution, Federal statutes, regulations, or terms and conditions of the Federal award," *id.* § 200.339. The Agency may also terminate a grant "if an award no longer effectuates the program goals or agency priorities." *Id.* § 200.340(a)(2) (2021).[2]

---

[2] 2 C.F.R. § 200.340 was amended in 2024. Guidance for Federal Financial Assistance, 89 Fed. Reg. 30046, 30168–69 (Apr. 22, 2024). The language in the cited subsection was amended and moved to 2 C.F.R. § 200.340(a)(4).

Federal regulations do not require "advance notice" if a decision is made to terminate. *See, e.g., id.* § 200.341(a); *id.* § 200.342. Rather, the Agency must only provide written notice to the recipient, *id.* § 200.341(a), and allow the recipient thereafter to have "an opportunity to object and provide information challenging the action," *id.* § 200.342. Again, no decision has been made at this time to terminate Plaintiff's grant. *See* Breslin Decl. ¶ 12. If such a decision is made, then Plaintiff will have its opportunity to object. But federal regulations do not include any requirement that the Agency afford Plaintiff "30-days advance notice," as Plaintiff demanded when moving for a preliminary injunction. Pl.'s Prelim. Inj. Br. at 42. The Complaint points to no requirement in law or contract that would compel the Agency to provide thirty-days advance notice.

As such, even if the Court were to allow Plaintiff to amend its Complaint through its denied preliminary injunction motion, which it should not, the Agency's actions were not arbitrary and capricious, contrary to law, in excess of statutory authority, or ultra vires.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint or enter summary judgment in Defendants' favor.

Dated: July 22, 2025
      Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:     */s/ Douglas C. Dreier*
DOUGLAS C. DREIER, D.C. Bar #1020234
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2551

*Attorneys for the United States of America*

13